IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSSETTS

RECEIPT # 54377
AMOUNT $ 150
SUMMONS ISSUED X-4
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK. M
DATE 3-8-04

| | |
|---|---|
| ANTHONY BAYAD, ) | |
| ) | CIVIL ACTION |
| Plaintiff, ) | |
| ) | CASE NO. _____ |
| ) | |
| JOHN CHAMBERS, PATRICIA ) | 04  10468 GAO |
| RUSSO, ANTHONY ) | |
| SAVASTANO and CARL ) | JURY TRIAL DEMANDED |
| WIESE, ) | |
| Defendants, ) | MAGISTRATE JUDGE Bowler |

## COMPLAINT

Plaintiff Anthony Bayad complains of defendants John Chambers, Patricia Russo, Anthony Savastano, and Carl Wiese as follows:

### PRELIMINARY STATEMENT

1.   This action seeks declaratory, injunctive, and equitable relief, compensatory and punitive damages, legal costs, and other remedies as deemed and appropriate, for intentional conspiracy to discriminate based on the plaintiff's Moroccan ancestry, and his Arab race; breach of contractual of obligations (Business & Employment Relationship); emotional distress, mental anguish, and loss of enjoyment of life, and; include injury to character and reputation (defamation) ,and injury to credit standing suffered by plaintiff Anthony Bayad while working and associating with Defendants.

1

## JURIDICTION

2.  This action arises under the Civil Rights Reconstruction Era Statues, 42 U.S.C §§ 1981, 1981(a) as amended by the Civil Rights Act of 1991, the Civil Right Act of 1871, section two now codified at 42 U.S.C. § § §1985, 1985(3), 1985(C),1988, and § 2000a; Title VII of Civil Act of 1964, codified at 42 U.S.C. § 704; and the Supplemental Right of Due Process under the State law.

3.  Jurisdiction over the federal issues is invoked pursuant to 28 U.S.C. § 1343(4) and, over the state law claims pursuant to the doctrine of supplemental jurisdiction, now codified at 28 U.S.C. §1367.

4.  Declaratory, injunctive, and equitable relief is sought pursuant to 42 U.S.C. §§§§ 1981, 1985, 2000a and 2000e-5(g) (administrative remedies once before exhausted and plaintiff had complied with provision of 28 U.S.C § 2000e-5(f)(1) ); and the supplemental State law claims.

5.  Compensatory and punitive damages are sought pursuant to 42 U.S.C. § 1981 and § 1985; 42 U.S.C. § 704, and§ 2000a, Title VII of Civil Act of 1964, codified at 42 U.S.C. § 704; and the supplemental state laws claims.

Costs and other fees may be awarded pursuant to 42 U.S.C §§ 1988 and 2000e-5(k), Federal Rule 54 of Civil Procedures and Massachusetts state law.

## VENUE

6.      This action lies in the district of Massachusetts, pursuant to 28 U.S.C. § 1391(b), because the claim initially arose in the judicial district, and pursuant 28 U.S.C. § 2000e-5(f) (3); Because the plaintiff associated, and works in this judicial district. Moreover, Defendants John Chamber, Anthony Savastano, Carl Wiese, and Patricia Russo have a business office located in this district, and the Plaintiff resides here.

7.      Plaintiff Anthony Bayad is an Arab/American who was born in Casablanca Morocco (North Africa) and is of Arab ethnicity. Plaintiff is currently a United States citizen who resides in the United States of America.

8.      Defendants John Chambers, Carl Wiese, and Anthony Savastano own most or substantial shares of Cisco Systems Inc. ("Cisco") or Lucent Technologies Inc. ("Lucent"), an employers that engages in an industry affecting commerce and employs more than 40,000.00 employees World Wide. Defendant Patricia Russo is employed by Lucent and owns most or a substantial shares of the company Lucent or Cisco.

9.      Defendants John Chambers, Anthony Savastano, Carl Wiese, and Patricia Russo are very close friends, and all one time had worked or had been associated with Lucent Technologies Bell Lab Inc., Cisco Systems Inc., International Networking Services Inc., or Wang Laboratory Inc.

## FACTS

10.     Mr. Bayad was born in Casablanca Morocco and immigrated to the United States when he was 17 years old to get an education with an eye toward supporting his elderly parents, his four brothers, and his two sisters in Casablanca Morocco.

3

11. Mr. Bayad worked his way through school by washing dishes at burger King, doing construction work and as a gasoline attendant, as well as other low paying jobs such as cleaning bathrooms, and distributing news papers. Mr. Bayad graduated with Bachelor's of Science in Computer Engineering Technologies the year of 1994 from Wentworth Institute of Technology, with a GPA approaching 3. 5 on a 4.0 scale, and was placed four time in the honorable Dean's list for his high achievement during his four year College. After graduation he began his career as a network engineer.

12. Prior of working for Defendant John Chambers (Cisco Systems Inc.) Mr. Bayad become employed by lucent Technologies Inc., holding a title as a Manager; and on about December 15, 1995 Mr. Bayad worked in Lucent Largo, Florida office (outside Tampa), where he met Defendants Carl Wiese, Anthony Savastano, and Patricia Russo. Mr. Bayad was reporting to them. **See Exhibit A attached.**

13. Within one week of becoming employed by Lucent Mr. Bayad accomplished a certification that entitles Lucent significant discounts from its supplier Bay Networks Inc. (it was acquired by Nortel Networks Inc.). Mr. Bayad was the first Lucent Technologies Manager who successfully completed the Bay Network Certification testing at the Expert Level, and was promoted by his direct Lucent Manager Mario Calvez (a Spanish person) to the position of a lead Manager, and Mr. Bayad made a voluntarily sacrifices by teaching Routing and switching technologies (data networking ), and computer technologies to all Lucent engineers in order to bring them up to speed in this competing high tech market. **See Exhibit B attached.**

14. Mr. Bayad was an excellent leader and a knowledgeable network engineer who consistently satisfied Lucent ' customers with his expertise and services. **See Exhibit C**

15. As an officer, Share holder, and manager of Lucent, Mr. Bayad was encouraged To provide his technical knowledge and his initiatives to add value and to build the confidence of Lucent 's customers, this include a plan to favor Lucent against its **rivals as Cisco Systems Inc.**, in the business of data communication field.

16. As he was told and instructed, he communicated his concern and his plan of action to save Lucent failing Business of Data Networking to Defendants Anthony Savastano, Carl Weise, Pat Russo, and Chairman Henry Schachts of Lucent Technologies Inc. **Please Exhibit D attached.**

17. Defendants Anthony Savastano, Carl Wiese, and Patricia Russo did not like Mr. Bayad, simply because he was an Arab from North Africa. Mr. Bayad had never Breathed discrimination against him in any where else in the world, and not even during his **twenty years** of living and residing in the state of Massachusetts.

18. Mr. Bayad was able to come up with a plan of attack and solutions to the problems that Lucent was facing, and decided to help. His action was conducted in a professional manner by following the chain of the command from Defends up to their Chairman Henry Schacht. It was achieved accordingly, and under the encouragement of Lucent executives.

19. Unfortunately the flaw of business was purposely put in place by Defendant Patricia Russo and her followers, Lucent was a start up company and every one was back stabbing each others, and Mr. Bayad was unaware of this game , and he was found in the middle of cross fire and Defendant Patrica Russo 's back yard.

20. Lucent Chairman Henry Schacht and his right hand man CEO Rich Mcguin

for lucent were loosing business to competitors and could not compete in this demanding high tech Market.

21. One of the Defendants Anthony Savastano, Carl Wiese, and Patricia Russo's plan of conspiracy and discriminatory action was, to first terminate his Spanish Manager Mario Galvez, and then by stripping Mr. Bayad of his status as lead Manager for no cause or any wrong doing; It was aimed to humiliate and to arm Mr. Bayad well being.

22. Over the course of Mr. Bayad 'employment with lucent Technologies, He become repeatedly aware that Defendant Anthony Savastano, Carl Wiese, Patricia Russo, and other Lucent Technologies managers did not like him because of his Arab race, ethnic background, and his national origin.

23. Mr. Bayad informed Defendants Patricia Russo, Anthony Savastano, and Carl Wiese over the telephone and in person that this intentional discrimination followed by disparate treatment must end now.

24. In January 21 the year of 1997, Mr. Bayad applied for the vacant position of general manager of the largo office (as well as other management positions), but was also denied these promotions by Defendant Savastano (Director of Lucent). **See Exhibit E attached to the complain.**

25. Defendant Carl Wiese was sent by Defendants Anthony Savastano and Patricia Russo, who met with Mr. Bayad in Fort Lauderdale Lucent office to advise him that by Pinpointing the flaw of Business to Lucent Chairman Henry Sheachts, Mr. Bayad has given Lucent a black eye and that his time in this company (Lucent) is just a matter of time.

26. Defendant Carl Wiese also told Mr. Bayad that Lucent will never promote or

6

consider an Arab to be Vice President of Operation. He was right. Mr. Bayad was blind by working very hard trying to make it, He did not know any thing about discrimination, or games played in corporate America by individuals as the Defendants.

27. Defendant Savastano has denied Mr. Bayad a promotion to a "Sale Manager" once before. Mr. Bayad had been offered a lucrative transfer and promotion to sales management position in another lucent division, but Defendant Savastano refused to promote Mr. Bayad or allow him to be promoted within lucent Technologies Inc. **See Exhibit F attached to the complain.**

28. Defendant Anthony Savastano, Carl Wiese, and Patricia Russo promoted Lewis Kaslow instead who was a white employee to the largo, Florida office as General Manager for Lucent that Mr. Bayad had sought, despite the fact Lewis Kaslow knew virtually nothing about data networking field and was simply a phone technician.

29. Lewis Kalsow 'first day on the job was instructed by Defendant Savastano, Carl Wiese, and Patricia Russo (He was reporting to them) to call Mr. Bayad who is working In Fort Lauderdale Florida area and demanded him to come to Largo, Florida as soon as possible.

30. When, Mr. Bayad declined his demand to meet immediately because of his Commitment with a Customer in the Fort Lauderdale area (Lucent has a policy in place that customers comes first). Mr. Bayad nicely communicated his concern to Lewis Kaslow, to simply reschedule the meeting at some other time (knowingly all Lucent managers are playing golf all day long).

31. Mr. Bayad was out there in the field working as slave because he was an Arab from Africa and he cannot say a word fearing the consequences of being terminated

and defamed against him ( to make it hard to find a job).

32. Lewis Kaslow begun angry and screamed at Mr. Bayad and accuse him of misconduct, and called him a "**dirty Arab**" and he stated openly that he "did not care if [Mr. Bayad] had to take" **a flying carpet** to Largo Florida office. It is shame.

33. Mr. Bayad is an American born in Morocco, a country who has long been recognized as a strategic allied, and the country that was the first nation to acknowledge the existence of the United State independent and free nation in the free world. (**Check with U.S State Department for more info**)

34. Mr. Bayad understood Mr. Kaslow's remarks to be demeaning and disparaging to his Arabic background, his race, his ethnicity. He also understand this desperate treatment has been encouraged by Defendants Anthony Savastano, Carl Wiese, and Patricia Russo.

35. Mr. Bayad had to drop every commitments promised to lucent's customers, and flew immediately from Fort Lauderdale to Tampa (Largo) on the same day of **January 23, of the year 1997**. Defendants Anthony Savastano, Carl Wiese, and Patricia Russo were mandating Mr. Bayad to execute Lewis Kaslow's demand without any further delay or otherwise. (Defendants were planning to send him to the hospital as they did )

36. Upon Mr. Bayad's arrival at Lucent Largo (Tampa) office, Mr. Bayad was escorted by Defendant Anthony Savastano, the new General Manager Lewis Kaslow, and the Lucent corporate Police Renold Laurino .**Exhibit G attached to the complain of Lucent Front Desk guard's report being briefed for his shift (conspiracy).**

37. Mr. Bayad was then imprisoned alone in a room with lucent corporate Police acting under the direction of Defendant Anthony Savastano, who proceeded with mental torture and accused Mr. Bayad of stealing from Lucent Technologies Inc. by charging

8

items on his corporate American Card, and it was common conduct by every white people of Lucent Managers including Defendant Carl Wiese and Mike Reed. **Exhibit I attached to the complain of Wiese and Mike Reed of Lucent Amex Credit card .**

38.  Since Defendant Savastano's title was the Director of Lucent Finance and accounting. This **conspiracy** was clearly initiated by him without a doubt, and all the facts implicated him as the author of this ridiculous conspiracy of accusing Mr. Bayad of **finance fraud** (stealing from the company), Defendant Savastano had a **complete access** to Mr. Bayad 's lucent personal financial records. **Exhibit J attached.**

39.  Moreover Defendant Anthony Savastano was **an accountant** during his entire career and a **financial analyst** with **Wang Laboratory , Lucent Technologies**, and now **Cisco Systems Inc.**

40.  Defendant Savastano was the **lead conspirator** and the **expert in Finance** and **accounting.** It was conspicuous of him to accuses Mr. Bayad of **financial fraud** and **stealing** from **Lucent technologies Inc.**, It was a **dumb pretext** to **finish him up once and for all**, Brightly Mr. Bayad was a hard working, very educated, and very technically competent in field of internetworking .

41.  The fact are indisputable about Mr. Bayad's conduct. He is a Tax Payer, as well as a responsible citizen during his entire life, and without any criminal behavior, or any mental history as he was framed by Defendants and was committed involuntarily to the psychiatric award against his will.

42.  Mr. Bayad has never considered filing chapter 11 or any other credit discharge even when he was destroyed financially by Defendants.

43.  After being screamed at, abusively interrogated, intimidated, physically assaulted,

and confined alone in a room with Lucent Corporate Police, Mr. Bayad became extremely scared and afraid for his safety.

44. Mr. Bayad advised Lucent Corporate Police that this action taken against him was not right, and if he could leave the room or could call his attorney, or if someone else could be admitted to the room so that his personnel safety could be assured.

45. Lucent Corporate Police refused Mr. Bayad's demand and kept Mr. Bayad falsely imprisoned and proceeded to scare, Harass, intimidate him as he has been instructed by Defendants. Lucent corporate police Renold Laurino continuously made derogatory remarks about Mr. Bayad's ethnic, racial background as Arab, and about Mr. Bayad's ability to speak English.

46. While falsely imprisoned at the hand of lucent corporate police acting under the direction of Defendants Anthony Savastano. He stated things like: "I don't know what's wrong with company (Lucent) hiring people like you. "And "ten year ago I wouldn't even be talking to someone like you."(Meaning Arabs)

47. Such remarks were directed specially at Mr. Bayad's Arab race and ethnic background, and the fact he had been born in Africa and was considered foreigner under the eyes of Defendants.

48. After being falsely imprisoned and abusively interrogated by Lucent Corporate police for such intense period of time, Mr. Bayad became sick with fear and tried to leave the room.

49. When Mr. Bayad reached the door, several Lucent Technologies including corporate Police, security and Defendant Anthony Savastano attempted to physically

restrain him and kept him locked in the room where he was being falsely imprisoned.

50. In the scuffle that ensued, Mr. Bayad was dragged or thrown down a flight of stairs and ended up submerged head first in a fountain on the floor below.

51. As result of the scuffle, Mr. Bayad received injuries to his head and neck and his clothes were torn. **Exhibit K attached of the Pinellas County Sheriff's office incident/Offense report.**

52. An ambulance was called to take Mr. Bayad to the hospital, while he was lying in the ambulance with an I.V in his arm and being treated by paramedics, Mr. Bayad was terminated from Lucent at the presence of Defendant Anthony Savastano who was on the phone with Carl Wiese and Patricia Russo.

53. Mr. Bayad was charged of trespassing even though he was asked to come to Largo (Tampa Florida) office at their request and Mr. Bayad was an employee of Lucent Technologies Inc.

54. While lying in the ambulance and with an I.V. in his arm, Mr. Bayad was forced through the humiliation of having to give back his business addresses, his pager was wet and not operational, and his corporate American Express cards despite the fact the card had already been deactivated and could no longer be used by anyone. **Exhibit L attached of the Fire Department's report at the scene during the 911 call .**

55. Defendant deliberately and intentionally humiliated, tortured and degraded Mr. Bayad and it was well act of conspiracy. They **reposed** the **occurrences** of the incident and **conspired** against Mr. Bayad, and they were the **ones** who **called** the **Police and the Fire Rescue to the Scenes**, also they were the ones who provided **defamatory Occurrences to the police**, simply to convinced them to commit Mr. Bayad to the

**Psychiatric ward** against his will (in Florida they call it "**Backer Act**").

56. At the scene, Defendant Savastano 'secretary Joan Grohe was heard to Exclaim, "I warned", and "I told them (Defendants) not to do it. They fucked it up." Ms. Grohe also knew that Mr. Bayad was going to be Baker Acted (or committed to the psychiatric ward against his will) before the ambulance had even left the parking lot of the Lucent Largo office and remarked to a coworkers that "**we're going to baker Act him.**"

57. Forcibly Mr. Bayad was **obeyed** to spent a good **72 hours in the psychiatric ward**, and since he Was recognized not having any problem, the Sun cost Mental Hospital's Doctors released him **very shortly.(It was the most grim moments of his life)**.

58. When Mr. Bayad was released from the hospital, and he was left by defendants without any money, clothes, or means of transport ting him self to his home, it was an obvious conduct of hate and disgrace by the Defendants.

59. On April 4 the year 1997, Mr. Bayad filed a charge of discrimination under the Equal Employment Opportunity Commissions and Human Right Division against Lucent technologies Inc. Mr. Bayad was issued a right-to-Sue letter by the EEOC on April 22 the year of 1997 and legal action is still pending in the U.S District Court of the 11th Circuit of Appeal.

60. The reason Mr. Bayad 'law suit is still pending is because Lucent with their power and money and their attorneys Todd Legon and Fash paid off Mr. Bayad ' attorney attorneys David Sales and Stephanie Alexander, Mr. Bayad attorney threaten Mr. Bayad to accept an amount of $50,000.00 from Lucent Technologies or otherwise they will

withdraw from the case and they were acting at the direction of Lucent Technologies.

61  Mr. Bayad 'Attorney David Sales and Stephanie Alexander introduced a bogus Local rules and withdrew from the case. Lucent took advantage of the weak judicial systems put in place in Florida which is all the lawyers are known for their connection, and Mr. Bayad is confident of this time around they will not find any one to pay off, but they will be declared of their violation of the Law. Additionallylawsuit against Mr. Bayad 'corrupted attorneys is in progress. **Exhibit M of Right-to-Sue letter attached to the complain (a complain is being with the Bar and Supreme Court of Florida).**

62.  Moreover Lucent **employees Cisco Mr. Hamdi Elsiah and Mr. Amado Navas**, had also been targeted by the same defendants and discriminated against while working with Lucent, and simply because one of them was an Arab and the other one was a Spanish of descend, and they were very technically knowledgeable of internetworking field.

63.  Very shortly after his termination and between the year of 1997 and 1999, Mr. Bayad attempted to find subsequent employment in data networking industry. Mr. Bayad was aware of Defendant Anthony Savastano, Carl Wiese, and Pattricia Russo had spoken to Bay Network Inc., and told them not to hire Mr. Bayad. He was crazy and that he had been fired for stealing form the company Lucent.

64.  Defendants Anthony Savastano, Carl Wiese, and Patricia Russo did not stop there. The fact shows Defendants openly conspired with International Network Services Inc. "INS" against Mr. Bayad. He was humiliated and to terminated him on his first day on the job. **Exhibit N attached to the complain of the Defendant Patricia Russo conspiracy and defamation.**

65. About One month later Defendant Patricia Russo without caution to conceal her misconduct for her conspiracy and liability of interfering with Mr. Bayad 's Civil Rights. She purchased International Networking Services company to demonstrate her power to all Minorities and specifically to Mr. Bayad of her **power** and her **fortune**, but in **contrary** she has provided and alleviate the burden of proof of this litigation by admitting of the <u>**defamation**</u> and <u>**conspiracy Counts**</u>. Further more and all the **Exhibits attached in this complain** all pointing at her and her followers (Defendant Savastano, Wiese, and Mckinney of INS). This conspiracy caused Mr. Bayad a greater pain to his health, mental anguish, loss of enjoyment of life; include injury to character and reputation.

66. Moreover it was done with the collaboration of Mckinney of INS to conspire against Mr. Bayad and to purposely terminate his employment with INS Inc., This misconduct Caused Mr. Bayad a greater pain to his health, mental anguish, loss of enjoyment of life; include injury to character and reputation.

66. Defendant John Chambers was a good friend with McKinney, the primary investor for International Networking Services, and made it happen for Mckinney to raise a capital venture approaching to "**1.5 millions**" and provided him with all the material support that resulted of the **flying colors with a take home of 3.5 Billions, and Mickiney was very grateful to both his friend Defendant Patricia Russo and John Chambers. Exhibit O attached the complain of InformationWeek wire regarding the purchase INS.**

67. **Their conduct was well severe as Martha Stuart 'case or even far than Enron**

14

corporation. **It is shame their action goes unnoticed.**

68.     On or about **April 12 of the year 2000**, Mr. Bayad was offered a position as Project Engineer I I grade level 9 Cisco Systems Inc., Professional Services- U.S. Enterprise Northeast region, reporting directly to Lynn Fraser starting salary of $90,000.00 yearly, working out of Cisco Systems Lexington office located in Massachusetts. **Exhibit P attached of employment offer by Defendant John Chamber 'company Cisco Systems Inc.**

69.     Mr. Bayad was hired because of his experience in the field of Data Networking, after the well known rigorous five interviews process, and personal background check that Mr. Bayad was put through by Cisco; Mr. Bayad has been through out his entire career an excellent employee and Project Engineer with Cisco Systems.

70.     Mr. Bayad continued his outstanding performance by executing well all of his duties. His Manager Lynn Fraser rated his overall **job performance as an "E"**, which in Cisco performance rating means: "Employee is successful; meets or exceeds all key performance expectations". **Exhibit Q attached.**

79.     During a Business trip to San Jose California, Mr. Bayad was **spotted** by Defendant Anthony Savastano **wearing a Cisco Badge**, while working at the corporate office in San Jose California. Defendant Savastano hold a tile as Director or **"Vice President of finance"** with Cisco Systems Inc., and was reporting to his friend John Chambers the President of Cisco and owner (An old Body of Wang Laboratory Inc.), Defendant Savastano was reunited again with Mr. Bayad. **Exhibit R attached**

80.     Upon returning from his trip back to Massachusetts, Plaintiff Anthony Bayad has informed his Manager Lynn Fraser, was made aware of the act of the discrimination

15

and disparate treatment that Mr. Bayad have undergone while working with Defendant Anthony Savastano with Lucent

81. From that Moment on, Lynn Fraser lunched her self into fishing expeditions by looking at every avenues for the sole purpose to find an alibi and to dismiss Mr. Bayad from his employment with Cisco, and knowingly Mr. Bayad was technically competent and knowledgeable of his job as a Project Engineer, and it was impossible to dismiss him for no cause.

82. Lynn Fraser begun to micro manages Mr. Bayad by ordering him not to work from home and to show up in the Lexington Office, while all his white co-workers were enjoying the freedom of working from home and her conduct become political toward Mr. Bayad.

83. Hence Lynn Fraser was ignoring her commitments to her customers, instead she was occupied with Mr. Bayad, and she was helped by her friends Brian Low and Jeremy Noonan. These individuals were always slaking and Lynn Fraser was very protective of them.

84. Lynn Fraser demanded Mr. Bayad to submit his **<u>Corporate Financial Expenses</u> (Travel expenses, Business Expenses)** at **all the time** to her before being reimbursed. her demand of action against him was very abusive of her authority as a manager, and knowingly all his white co-workers were not mandated as Mr. Bayad was.

85. Mr. Bayad au courant of these disparate treatments of a **<u>long- standing of pattern</u>** of behavior from Defendant **Anthony Savastano**. Lynn Fraser was simply a messenger with an order to conspire and to terminate him from his employment.

86. Lynn Fraser was serving Defendant Savastano Vice President of Cisco's Finance and accounting, **his office was involved in preparing yearly budgetary and monetary reports to all Cisco Managers including Lynn Fraser**.

87. Mr. Bayad understand his future and his **career** with <u>**Cisco Systems is over**</u>, specially when Defendant Anthony Savastano and John Chamber were very close friends, and their friend ship goes way back when they were working or associating at (INS) International Networking Services Inc., and Wang Laboratory Inc.

88. On about **November 2nd of the year 2001** and **before** Mr. Bayad being wrongfully terminated from Cisco Systems Inc., Mr. Bayad had applied for the position as a Systems Manager or System leads Engineer for North Africa region, and since Mr. Bayad speaks the languages of Arabic, English, French, and North African Dialect. He was considered well suited for the position by Cisco Europe Division.

89. Mr. Chris Dedicoat's team of Managers (no Arabs/American as Executives in Cisco) of **Cisco Systems Shared Middle East, Africa** – France were very impressed about Mr. Bayad's technical background, and decided **to fly him halfway around the world** for 3 very lengthy and tough rounds of **interviews** with several Engineers and Managers from 3 different countries, the **United Arab Emirate (Dubai)**, the **United Kingdom (London)**, and **France (Paris)**, all within <u>**3 days time period**</u>.

90. All the European Managers reported to Defendant John Chambers and the interview went very well and Mr. Bayad was offered a verbal offer by the Manager of the region. **(Travel Documents, Visas, places, and Managers 'names contact will be Provide during discovery of the 3 days trip half around the world.**

91. Upon Mr. Bayad return from his trip he was advised by several European

17

Managers that the decision to hire him was **standing at Cisco Corporate** office in California (Meaning John **Chamber's office**).

92. Mr. Bayad was acquainted with the Defendants intend to construct the "**Chinese wall**" to **bar** him of all the **enjoyment of life** and block him from being promoted or even of being able to **support his families** ( paying the bills).

93. The **Managers** of **Cisco Europe** have **invested** a considerable amount of money approaching more than **$10.000.00 dollars** in travel **expenses** and **time**. They spot him as a well suited and a professional and a potential candidate to the **North African regions.**

94. It was with certainty that Mr. Bayad was a perfect match for Cisco Africa regions because of his technical background and his abilities to speak the languages, such as the English in the East, West of Africa; French and Arabic in Africa.

95. Mr. Bayad was also an **American Born in Casablanca Morocco** a 30 Minutes distance duration of **Spain** and **Gibraltar**, and who is well **acquainted** with all the of obligation and the understanding of the **North Africans** way of doing business.( As was said by Defendant **Carl Wiese** Arabs as you (Mr. Bayad) are **disbarred** of being **promoted** as **Managers** and **Executives** at **Cisco Systems Inc.**, or **Lucent** .

96. Mr. Bayad was very **distress** of these inequitable treatments **targeting** him, Mr. Bayad decided to write a letter to Defendant **John Chamber** and to **Rick Justice** the Vice President of world wide operation for Cisco Systems and copied Defendant John Chambers in it.

97. In the Letter Mr. Bayad laid down his concern and advised him about this unfair

18

treatment and misconduct, knowingly he was over qualify for this position.

98. Rick Justice or defendant John Chamber had not replied to Mr. Bayad's request for immediate attention to his matter. It was a clear sign that they were admitting their misconduct. **The Letter of correspondence in this matter is in both computers of Mr. Bayad , Defendant John Chambers, and Rick Justice.**

99. Mr. Bayad had the fortuity to meet with Defendant John Chambers for the first time in New York City, where he was conducting a meeting with Key Span Energy at Cisco office of 10 Pen Plaza New York. **(Travel document and expenses reports of both Mr. Bayad and Defendant John Chambers, and Testimonies of Cisco Client Key Span Energy about the meeting that took place in Cisco office 10 pen plaza New York).**

100. Mr. Bayad was assigned to a project of migrating NY 'Office from the old phone systems to the new IP Telephony call Manager (AVVID).

101. While in the office of New York Defendant John Chambers had made contact with several Cisco Employees, spoke to every one of them, but ignored Mr. Bayad. It was a clear behavior of dislike toward him.

102 On about April/ May 2001 time frame, Mr. Bayad for the second time met personally with Defendant John Chambers, and who was conducting a town meeting in Massachusetts. Mr. Bayad, and all his coworkers was also Invited, He had the chance to speak with Defendant John Chamber and to confront him about this conspiracy and discrimination aimed specially against him. Defendant John Chambers ignored and walked way fearless to another crowd tried to avoid Mr. Bayad.

103. **In May of the year 2001, Mr. Bayad was taking by surprise and terminated from**

his Employment. Lynn Fraser used a ridicules excuse such as the economy was the reason why he was terminated from his employment. (Lay off)

104. During the time of Mr. Bayad's termination with Cisco Systems, Lynn Fraser' under the direction of Defendant John Chambers and Anthony Savastano, had created the same stressful environment as Lucent Technologies have accomplished back in **January 23rd of 1997**, to purposely frighten Mr. Bayad knowingly he was mentally and physically abused while employed with Defendants at Lucent , likewise she had Mr. Bayad in close doors and at presence of Cisco Systems Corporate Police while he was signing with **obscure ness a Cisco Systems 'documents or contracts.( the obscure Cisco documents will be read and provided during discovery)**.

105. Lynn Fraser unconditionally mandated Mr. Bayad stressfully to sign Cisco documents approaching to twenty pages that was signed without any prior notice or review.

106. The asserted reason for Mr. Bayad's termination was completely **pretextual** since Mr. Bayad **exceeded** his white coworkers, **Robert Tracy, Mike Ippolito, Brian Low, Jeremy Nooman**, and even **exceeded** his manager **Lyn Fraser**, in any territorial expertise, of educational background or Internetworking technologies field. **Exhibit S attached to the complain of Mr. Bayad s experiences and achievement during his 10 years in the Data Internetworking field and will be compared against the qualification if his Manager Lynn Fraser and his Coworkers who did not get fire as Mr. Bayad was.**

107. Defendants and specially Savastano was athirst to cause mental and emotional