distress, and loss of enjoyment of life, and; include injury to character and reputation , and injury to credit standing ( He did not succeed this time around at Cisco ).

108.    Shortly after his termination, Lynn Fraser called Mr. Bayad on his Cell phone and admitted to him the asserted reason was not her decision and it was the sole action of  **Cisco Corporate** ( Meaning from Defendants), and she will inform  Mr. Bayad of any opening in the nearest future with Cisco.

109.    Lynn Fraser'  call to Mr. Bayad was **alerting,** as she was not a **trustworthy "persona".**

110.    Mr. Bayad informed her that he was in Florida trying to open a consulting firm (a new company of his) , and welcomed her  if she can assist him with any advise or sales ' leads to jump start his company, Knowingly her contact that day was  to ascertain the effect of her discriminative conduct

111.    Subsequently upon Mr. Bayad 'termination of employment with Cisco, on about May 30th of 2001, **Bruce Bastian** a Systems Engineer **Manager** sent a **"wicked racial Audio "via Electronic mail** within **the authority of Cisco Systems 's** way of mail communications, intentionally to Mr. Bayad's coworkers with Cisco Systems Inc.

112.    The directive audio that was sent and  was controlled with "**multifarious racial jokes**" about Mr. Bayad 's ineptitude to verbalize the expression of the English tongue, clearly ridicule any and all **foreign nationals,** sound stylish and  **feebleminded** of the of **English palaver,** and relate to employees getting terminated as  Mr. Bayad was.

113.    The **consignation** of the multifarious **racial jokes** audio was titled as Follow: **hate this "Fucking " job, and I will be fired; I have just been fired , and By-By-everybody; I need a "P" quick and my Etc...),**  and it  goes on and on. It is a shame.

114.   Moreover Rick Justice and all other Cisco Executives admitted of Bruce Bastian' misconduct of sending the racial audio email , and as quoted from their email of correspondence; The email was racist in nature and against all minorities with broken English (It was Cisco 'policy and customs). Unfortunately they do not terminate White employees but only Minorities if they violate the Cisco Business conduct.  **Exhibit T attached to the complain** as copy of the email and CD contains multifarious sound as word perfect , click and listen.

115.   At all the time pertinent to this complaint, The Defendant John Chambers had an employee hand book and a stated policy barring discrimination and retaliation on the basis of race, religion, and origin. **Exhibit U attached to the complain of Defendant John Chambers of Cisco Code of Business Conduct.**

116.   **Along the multifarious racial** Email from Se Manager Bruce Bastian, Defendant **Anthony Savastano** visited a coworker Mr. Amado Navas Cisco Channel Manager out of Tampa office Florida , to let him know personally that Mr. Bayad or any Minorities including Mr. Navas , has **no business in Cisco Systems** a company of **His Friend** Defendant **John Chambers**. Mr. Bayad was informed by Mr. Navas a Spanish employee of Defendant John Chambers of Cisco Systems as **Follows ( Exhibit V attached to the complain** of Cisco Channel Manager letter of correspondence) :

" **Mr. Bayad,**

**Per your request I am enclosing this electronic mail message sent with the sole purpose of ridicule your termination from Cisco Systems by Tony Savastano and Bruce Bastian. The content of this email is public record currently under review by the US Federal of the Middle District of Florida in Tampa. This email was sent as a warning and ridicule to all**

22

employees of foreign origin that work at Cisco and want to pursue a management career. The white employees above mentioned warned both me you that we would be terminated if we attempted to seek promotions and or transfers to better jobs within the company. I know this fact because Mr. Savastano came to the St Petersburg office soon after your Termination in early May of 2001, to verbally warn me, and ridicule both me and you. That people like me and you would not be allowed to stay at Cisco Systems. He said that he took care of us at Lucent with the help of Patricia Russo, and know he would take care of us again with the help of Carl Weise.

If you have any questions at all about my case please do not hesitate to contact me, since it is a matter of public record. If you aware of any other individuals that are also victims of this discriminatory behavior, and the conspiracy led by Savastano, Wiese and Patricia Russo please let me know immediately.

Respectfully,

Amado Navas"

117.    After his termination Mr. Bayad was vesting time **and Money** to achieve the **Cisco Certification Internetworking Expert and "CCIE**, which it comprised of **two** parts, the **writing** and the **lab Exam**, was designed by Defendant **John Chambers** and his company Cisco Systems Inc., to favor only the **White Engineers** in the field of internetworking Technologies field.

118.    Defendants accession of discrimination and disparate treatment against Mr. Bayad proceeded far more of their jurisdictions with threatening to restrict Mr. Bayad from taking his **CCIE Lab exam** and since Mr. Bayad successfully passed the Written exam that was administered by **Silva Prometic Company. The written Exam** was out of their control. Unfortunately the CCIE Lab was not. John Chamber has all the

jurisdiction under his control and Mr. Bayad was scheduled for the CCIE lab exam which
due in February of the year 2004, in Sao Paolo Brazil. **Exhibit V attached to the**
**complain of the threatening and restraining Mr. Bayad's right as share holder to**
**pursuit his certification as white Engineers of Cisco.**

119.    The white Engineers were **(cheating)** given the original copies of the actual
exams of the CCIE, and were **facilely appointed** as the **best Engineers** in the field of
internetworking technologies field. They were **compensated a subsequently** a
ridiculous amount of money exceeding a some of **$200,000.00** dollars; and  **some of**
**them were high school drop out. (Bruce Brewer and Dale Ronowski one of them)**

120.    On about between the **year of 1996 and 1997**, Mr. Bayad was an eyewitness
Defendant Anthony Svastano aided two persons of common ancestry (white person)
**Bruce Brewer** and **Dale Roznowski,** were provided **the original exams** copies for the
**Cisco Certify internetworking expert level. Exhibit Y attached to the complain** of
**the CCIE copies dated the year of 1997 that was given to Mckinney, Brewer, and**
**Ronowski**.

121.    Like wise Defendant Savastano promoted Bruce Brewer and Dale Ronowski to
Management positions while at Lucent and Dale Ronowski while at Cisco.

122.    Mr. Bayad was also au courant of neither Bruce Brewer nor Dale Ronowski
has worked for any fortune  500 companies as Mr. Bayad did, nor they have graduated
from any University in the U.S as Mr. Bayad had accomplished,  and ought to pay back
over $60,000.00 of Governments students loan.

123.    **Cisco Travel Expenses reports** will show Defendant Savastano took mission
trips or tours to Tampa (Florida) at the account of Cisco Systems to visit his  friends Dale

Ronowski Cisco Systems and Bruce Brewer with Lucent Technologies In, and to deliver His personal message of superiority to the Channel Manager of Cisco Systems and . Spanish ethnicity about Mr. Bayad' termination.

124.    While working with Cisco Systems Mr. Bayad (recall) had obtained a copy of the CCIE exams that was distributed to only white Cisco employees by Cisco Systems Managers Gene Popula was given them to his friends at the Lab of Cisco Lexington, Defendant Anthony Savastano provided them to his Friends Bruce Brewer and Dale Ronowski , and John Chambers made it available to Mckinney of International Network Services Inc., and Patricia Russo of Lucent Technologies for her Engineers in Tampa. **the updated copies of the CCIE Lab exam will be provided upon request ( they are too many copies)**

125.    On about September 2001, Mr. Bayad founded a company, Global Internetworking Consulting Inc., that engages in the computer and networking technology, security, IP telephony, client server technologies, and routing and switching technologies. **Exhibit z attached to the complain of Company GIC registration in Massachusetts**

126.    Mr. Bayad invested his retirement saving to promote his company Global Internetworking Consulting Inc.,("GIC") and became partner with other solutions provider such as Cyber guard Inc., Kalix Inc., for Surveillance and Security, and Cisco Systems Inc., Routing and a Switching Technologies.

127.    GIC has chosen these service providers as Cisco Systems for its customers, to build a strategist alliances and business relationships, and **GIC** was acting as the front

Liner for Cisco Systems Inc., to promote and to recommend all the Cisco System's

products and services according to Cisco Systems agreements and guidelines.

**Exhibit X-1 attached in the complain the copy of the registration of Global**

**Internetworking Consulting as Cisco Register Partners.**

128.    Mr. Bayad  was the owner of  Global Internetworking Consulting Company , he

was also aware of  neither of Defendants John Chambers for Cisco  nor Patricia Russo

for Lucent Technologies,  do not promote or **support small business minority owner**

**of companies,** in fact they only promote white businesses as they have done with

Mckinny of International networking Services and not with businesses owned as Mr.

Bayad.

129.    Additionally Defendants John Chambers **did not provide any Business** support

to Mr. Bayad 's company GIC as  he did with his friend **Mckinney of INS,**  and the fact

shows Mr. Bayad requested from **Cisco SE Nick Brandaleone** to provide him with the

name of Cisco Sales Manager for (GEM) Jim Skeele.

130.    Mr. Bayad was a customer and partner of Cisco Systems and it was of his right  to

schedule a business meeting ( Business orientation) to discuss some opportunities  that

GIC will bring to Cisco Systems and vice versa, neither **Jim Skeely of Cisco** nor any

other **Sales Manager of Cisco Lexington office** had contacted Mr. Bayad, and the reason

being of their authority. They proceeded as instructed by Corporate ( meaning John

Chamber) not to do any businesses with minorities and Arabs as Mr. Bayad).**Exhibit X-**

**2 attached to the complain of the request made to  the Cisco SE Nick Brandaleone.**

131.    Each time Mr. Bayad visited Cisco Lexington Office, where it is white race

only dominating office, and  every one from Cisco  was alienating them selves from Mr.

Bayad as he was a **criminal or in the Federal Bureau of Investigation ' most wanted list.**

132.    Hence since he left Cisco Systems Inc., in good term and was told he was eligible for rehire (Supposedly). Mr. Bayad corresponded with his Manager and since she informed him back in May of the year 2001 that he was eligible for rehire, he also informed her of his intend to apply, he even sent a letter to Human resources who replied back by encouraging him to apply. Unfortunately when they process Mr. Bayad's application it get stalled and it get denied the right by Defendants and the excuse is always Corporate ( meaning Defendants).

133.    Mr. Bayad was destroyed economically and his business was not doing well, he decided to put his resume out in the market by applying with Cisco as he was told by his good Cisco coworkers about Cisco employments opening.

134.    On about **September 30 of the year 2003** to **present time**, Mr. Bayad had applied of **multitude employment** opportunities within Cisco Systems Inc., and noted as " **Cisco requisition** ";

1) **Requisition 714007** contact name Michael Kent, 2) **Requisition 713667** contact name Niki Peleuses,3) **Requisition 713906** contact name Michael Kent,4) **Requisition 713644** contact name Niki Peleuses, 5) **Requisition 713123** contact Michael Kent, 6) **Requisition 711846** contact name Chuck Ramsburg, 7) **Requisition 711780** contact Domick Delfino, 8) **Requisition 72133** contact Scoot Lovett, 9) **Requisition 712669** Michael Kent, 10) and **Requisition 713950** Liz Bacchi, and many more. **Exhibit X-3 attached to the complain of all the inquiry regarding opportunity with**

**Cisco Systems Inc.**

135.    These individuals named above were all Manager of Cisco Systems Human

Resources, and all have been contacted via **Electronics Emails and certified mail**.

**Exhibit X-4 attached to the complain a correspondence to Human Resouces and**

**Lynn Fraser of Mr. Bayad complaining about this inequality within Cisco.**

136.    **Untowardly** they **did not** confirm nor acknowledgements Mr. Bayad's pursuit of

opportunities with Cisco Systems Inc., because of the inequality policies Seth forth

intentionally against Mr. Bayad. They were interfering with his rights and his way of life.

137.    In good faith Mr. Bayad had complied fully with all Cisco's requirement including

signing unspecified documents during his exit interviews, and vis-à-vis with Lynn Fraser

Mr. Bayad was informed that he was eligible for rehire after one year from the time he

was Terminated, and presumably her excuses was the economy. It was a clear conspiracy

aimed to terminate him without justifiable cause.

138.    When Mr. Bayad applied for an open positions with Cisco Systems Inc., and dealt

**directly** with  the hiring Manager as he did with  **Robert Bardani  an SE Manager** with

Cisco Systems, who shortly replied and asked Mr. Bayad to provide a convenient time,

for a Telephone Interview. **Exhibit X-5 attached to the complain of the**

**communication with Robert Bardani.**

139.    In the final stage of the interview Mr. Bardani asked Mr. Bayad about his

preceding direct Manager Lynn Fraser, to contact her regarding the  history of  his

employment with Cisco Systems Inc., and after he spoke to Lynn Fraser he lost interest

for no reason. It was obvious conspiracy that was aimed at Mr. Bayad.

140.    Additionally Mr. Bayad has **directly** contacted  **Mike Kent of Cisco Systems**

Inc., He was very professional and welcomed Mr. Bayad back to Cisco.

141.    He was willing to proceed further in the application process. His team sent an

electronic mail indicating that Mr. Bayad was considered for a position with Cisco

Systems, an application is required to be filled in order to proceed further in this

process. **Exhibit X-6 attached to the complain** of the correspondence of Mike Kent

**indication of Corporate intention of discriminating against Mr. Bayad.**

142.    About all Bayad has **complied entirely** with all the Cisco requirement and

demands, but Unfortunately Mr. Kent sent back an **electronic mail** to Mr. Bayad stating

in **it as Follow:**

**"It is all in the Management hand"** meaning Defendants **John Chambers, Carl Wiese,**

and **Anthony Savastano.** Mr. Bayad had never heard from him again and it was

**"anew"** pattern of behavior and conspiracy against Mr. Bayad, and frimely it was proven

by the Hard copies of all correspondence Sent back and forth by **Cisco European**

**Managers, SE Robert Bardani,** and **Mr. Kent, have taken** in regarding the

hiring of Mr. Bayad (the decision to hire Mr. Bayad is a decision of **Corporate,**

**Defendants John Chambers, Carl Wiese, Anthony Savastano**).

143.    On about **December 3rd of the year of 2003,** Defendants deliberately sent an

employment email of correspondence to Mr. Bayad requesting him to provide his Ethnic

**race background** and his **genders** before Cisco Systems a company of Defendants John

Chambers can proceed in the regards of his hiring decisions of Mr. Bayad, and it was a

clear act of Discrimination that is totally unlawful and contradicting the **Fair Labor act**

**and the Massachusetts Rules of Law.**

144. This unlawful employment of race preferences and practices that was intentionally consigned by Defends in retaliation of Mr. Bayad as Arab of Race. **Exhibit X-7 attached to the complain** of Cisco making sure that the applicant Are white Engineers and not black before being hired and Defendant John Chamber of Cisco is still living the 1960's the era of Ms. Rose Parker.

145. Defendant **John Chamber the President of Cisco** cannot deny nor can he provide a defense in this litigation to such information is for the sole " **pretext**" so called "**EEO**" and it is volunteered information only , or it is not requirement, and if it is assumed required based of his policy ,then it should have been **provided** to Mr. Bayad and all Cisco employment applicant" **when" they have finalized and secured their positions with this company called Cisco , and then Cisco can proceed with the request of race identification or as he calls it "self identification" as matter of privilege, but unfortunately it was not the case with Mr. Bayad as Arab.**

146. Moreover Defendant **John Chamber the President of Cisco** "over" again of his selection policy targeted only **American minorities applicants** of color as **Black, Arab, Spanish, Indian** has violated the Title VII of Civil Act of 1964, codified at 42 U.S.C. and 42 U.S.C section 1981 and 1985, the Fair Labor Law Act, and the Law of Massachusetts. Defendant john Chambers's misconduct has lawfully admitted to count I, II, V, and VIII of this complain.

147. Mr. Bayad who may proceed of fear of not complying with John Chambers 's Race so called self identification's request of being rejected, and forcibly proceed with Defendant John Chambers 'demand to identify his race of origin, and even though he has not "**secured**"nor have been "**guaranteed**" a **Job** with Defendant **John Chambers**

of Cisco Systems Inc., and  by intentionally sending him the letter of race definition before hiring him. Defendant John Chambers intentionally discriminated against minorities and Mr. Bayad as an Arab.

148.    Defendant John Chambers **"barbarously"** proceed even further by demanding Mr.Bayad,  to submit a letter from his current employer Aztec Inc. and even though no decision of employment was offered to Mr. Bayad with Defendant Chambers, Cisco Systems. Defendant John Chambers's policies mandate Mr. Bayad to furnish an employment of authorization or release letter sign and dated from his employer Aztec Communications and for the purpose to be eligible to work with his company Cisco, and it is clear abuse of power and the Law by  Defendant John Chambers.

**Exhibit X-8 attached to the complain Mr. Bayad requesting a letter from his current employer in order to be considered for hire with Cisco Systems.**

149.    And John Chambers and his company Cisco Systems upon receiving the letter from Mr. Bayad 's  employer Aztec Communication, he  request one of his Manager as Lynn Fraser to find out about Mr. Bayad 's  current salary from his employer Aztec Communication Inc, even before considered or hired with Defendant John Chambers Cisco Systems Inc. Again Defendant 's conduct is only targeted Mr. Bayad.

150.    Defendant John Chambers disrespectfully neglected the fundamentals **Rules of Law Seth forth in this complain**  that strictly prohibit all person and employer such as Defendant John  Chambers of **Cisco** or Patricia Russo of **Lucent** to intentionally threats person as Mr.Bayad differently because of his/her **race,** or national origin; then to **pose** a specific disparate of treatment of  certain race as Defendant John Chamber of

Cisco or Patricia Russo of **Lucent** have done with Mr. Bayad , and to conspired to intentionally causing emotional distress, mental anguish, and loss of enjoyment of life; and defamation including destroying his Character and reputation as Defendants John Chamber of **Cisco** or Patricia Russo of **Lucent** have done to Mr. Bayad.

151.    Employers as Defendant John Chamber of **Cisco** or Patricia Russo of **Lucent** are Liable **(law of Tort)** of conducting any internal investigation intentionally for personal reason and aimed to hurt that person as they have done with Mr. Bayad , by summoning any employee as they did with Mr. Bayad for the sole purpose to conduct a **pretextual** so" **called** "company internal investigation or termination of employment;

both conducts **run parallel** and **produce the same result**, and Employer as Defendants should proceed with cautious in such process as deemed respectfully and appropriate to the well being of such person, as they did not with Mr. Bayad, and the interview **shall not** be conducted by **one person** and absolutely no close doors as they have done.

152.    Moreover if so called Cisco or Lucent "Corporate Police" is conducting the interview then the interviewer shall inform the person as Mr. Bayad of his rights at the presence of a person or witnesses and in open doors at the convenience and at the direction of such person as Defendants did not, additionally if Defendants John Chambers or Patricia Russo believes the matter is criminal as they have accused Mr. Bayad then you should have been handled by the Law enforcement and with the judicial of such district. Unfortunately Defendants took the matter in their own hand and acted intentionally and against the Law and a violation of his Civil Rights.

153.    Defendant John Chamber of **Cisco** or Patricia Russo of **Lucent** cannot deny the fact that Cisco Systems Inc. or Lucent is **"designedly"** setup to allocate white race only to

be admitted to the Program of Cisco Certify Internetworking Expert and to Managements positions, and which group of ethnicity ( race) will be dispensed from the job market of the Internetworking Technologies Field, as they have done to Mr. Bayad.

154. Mr. Bayad is in mental chock as a young American man of 37 years old, unemployed even though he is a college grad, and a hardworking citizen. He was definitely escorted with his family too poverty and to the berth end of misery. Defendants had successfully set him up to be eligible as an applicant for Public assistance and Welfare programs, and absolutely without remorse or opportunity in his field of Internetworking, as it is always said "in our country as ours, America is a land of opportunities and the right of due process for all the citizens"

155. Unfortunately, Mr. Bayad is now living in poverty in Massachusetts and rather far of his salary of 120,000.00 dollars and his contribution to thhe U.S government of more than 40,000.00 in taxes of every single year.

156. Moreover Defendants intentionally promoted Mr. Bayad 's coworker Robert Tracey who has no education nor has he did not work for any fortune 500 companies nor has he achieved any internetworking certifications. He was promoted purposely as they have done in the past with others and knowingly he was thought data internetworking and trained as Cisco Associate Engineer (CCNA) with the leadership of Mr. Bayad.

157. Cisco employee Robert Tracy was given promotion and relocation packages estimated more than 100,000.00 dollars. Defendant John Chambers purchased his House in Massachusetts and bought him a new house in New Jersey and gave him a public Stocks option Cisco Systems worth more than **800,000.00 dollars and his Cisco portofolio of public Cisco Stocks options is more than 1,000,000.00 dollars,** and

33

simply to sent a message to Mr. Bayad that the American Dreams are only for White and not for Arabs, Blacks, or Spanish. As of the birth of the year of **1997 to present time** Mr. Bayad and his family have suffered financially and mentally at the hand of Defendants.

158.    Mr. Bayad as human being with emotional distress brought to him by defendant and without control of his anger and depression , Mr. Bayad decided to inform Defendants about their misconduct and his intention of a pursuit of a legal action that implicating them as **liable** of the **crucifixion  of his career and his way of life**.

159.    Defendants responded shortly as accustomed with retaliations and humiliations with emails containing **police badges** and threatening letters from their **powerful Co-council** who is also an **officer of the court** and knowledgeable of  the rules of **professional conduct & Ethics** that states as follow : " An attorney as **Cisco Co-counsel** shall not engage in conduct in connection with the practice of law that is prejudicial to the administration of justice, including to knowingly or through callous indifference, disparage, humiliate, or discriminate against litigants, jurors, witnesses, court personnel, or other lawyers on any basis, include, but not limited to , on account of race, ethnicity, gender, religion, national origin, disability, martial status, sexual orientation , age socioeconomic status, employment, or physical characteristics".

160.    Cisco Co- counsel was viewing Mr. Bayad as a terrorist and second class citizen. He intentionally encouraged of the threatening emails targeting Mr. Bayad , and plan to arrest and apprehend him   as of **January 20  the year of 2004 of any of his visit to any of Cisco Systems offices.**

161.    **As stated in their threatening legal Letter dated as of January 20 of the year**

2004, **Defendants** and **Cisco Co-counsel** begun intentionally sending **soliciting conspiring** emails and invitations **dating as of January 20 if the year 2004 and were served to welcome** Mr. Bayad to Cisco Systems for the sole purpose to **arrest and to reprimanded** him as a c<u>riminal and terrorist</u> even though in their letters mandating in it **no contact** what so ever with Defendants and vice versa.

162.   The fact show Mr. Bayad is not criminal nor terrorist nor a second class Citizen, but an honest American Citizen and a person who is **registered** with **the United States Selective Arms Services** and was willing to **volunteer with the United States Central Intelligent Agency without** pay just to **save life of our Men and Women of the Arms Force. <u>Exhibit 10 attached of the Complain</u> is Letters by the CIA and Mr. Bayad requesting to volunteer without pay to serve in IRAQ and Elsewhere.**

163.   Moreover Mr. Bayad was employed by a much known family Mahon family in Boston. Mr. Bayad and Mr. Mahon were responsible for network and security design of Massachusetts government agencies that include all the Police Stations, all the court houses, District Attorney, Criminal History Build in Chelsea, and Miami Airport as well. We all can agree about Mr. Bayad well proper reputation and honesty. <u>**Exhibit X-9 is soliciting email and threatening letter by their Co counsel and Defendant John Chambers with  Cisco Systems Inc.**</u>

164.   The real dishonest individuals are the Defendants themselves who are in violation of <u>**United States Securities and Exchange**</u> as they are currently holding strategic positions with Cisco Systems as V.P of accounting and Finance and, and Sales & advance Technologies and working on conspiring deals to only favor their Stocks options over others as they have done with **"Sir" Mckinney** with International Network

Services who sold a company INS that has none of liquid able assets or any valuable
intellectual properties innovations but simply it was a company admired by John
Chambers as business and reseller of Cisco products.

165.    Furthermore **Sir** Mckinney of INS **derailed** and **cons** the Wall Street and Share
holders by introducing a **bogus Software** and calls it **INS Management software** at
value **of 3.5 Billions** as Defendant Patricia Russo pretended.

166.    During the period of Defendant Patricia Russo closing the deals with her Friend
Mckinney of INS, all the INS engineers were offer employment with John Chamber
of Cisco Systems Inc., and all INS Engineers were Cisco Certify Engineers by his
contributions and his generosity to his friends as McKinney.

(It is facts backed up by witnesses). It is a violation of Law and Securities fraud.

167.    As always, Defendants are exchanging of crucial information and vice versa about
AVAYA Inc., Lucent technologies and Cisco Systems. They are purposely favoring
their Cisco , Lucent, and AVAYA ' public Stocks options and looking forward of their
values to increase (Securities fraud). **Exhibit X- 11 attached to the complain**

168.    **On about February 25, 2004 Lucent Technologies** and **Cisco Systems unveil
joint** voice over IP offering their mobile service providers and the reason behind of this
**amicable relationship** was for personal **profit from the public offering Stocks of
Lucent** Technologies and **Cisco** Systems, It is an unlawful joint venture and clearly
evidence that they belong to the good old boys clubs beginning of he year 1997.
Defendants are openly admitting of their engagement of aggressions and conspiracy
against Mr. Bayad that had begun since January 23 of the year 1997 to present.

**Exhibit X-12 attached to the complain** of Lucent news wire.

169.    Respectfully to this **Honorable Court** and to the **American Tax Payer**,. Mr.

Bayad whish not filed multiple separate law Suites for multiple violation of his Civil

rights and Discrimination; retaliation and defamation, conspiracy against all defendants.

170.    For all the facts Seth forth in this complain, and since Plaintiff Anthony has

suffered great deal of pain and emotional distress, mental anguish, and loss of enjoyment

of life, and; include injury to character and reputation (defamation), and injury to credit

standing. **Therefore Mr. Bayad respectfully demands as matter of right the**

**following:**

### COUNT I
### RACE, ETHNIC NATIONAL ORIGIN
### IN VIOALATION OF MASSACHSSETTS LAW

**(Against Defendants, John Chambers, Carl Wiese, Patricia Russo, & Anthony Savastano)**

171.    Mr. Bayad incorporates as if realleged paragraphs 1 through 170 of the complaint.

172.    By disrespectfully neglecting the fundamentals **Rules of Law Seth forth in this**

**complain** that strictly prohibit all person and employer to intentionally threats person as

Mr.Bayad differently because of his/her **race,** or national origin; then to

**pose** a specific disparate of treatment of certain race , and to conspired to intentionally

causing emotional distress, mental anguish, and loss of enjoyment of life; and defamation

including destroying his Character and reputation.

173.    By conducting any internal investigation intentionally for personal reason

aimed to hurt Mr. Bayad, by summoning Mr.Bayad for the sole purpose to conduct a

**pretextual** so" **called** "company internal investigation or termination of employment; by

knowingly both conducts **run parallel** and **produce the same result,** By proceeding

recklessly in such process as deemed disrespectfully and inappropriate to the well being

of Mr. Bayad, by interviewing conducting the interview by **one person** and with close

doors, by allowing the Corporate police to conduct such interview and knowingly it is

unlawful, and by failing to inform the person of his rights at the presence of witnesses

and in open doors at the convenience and direction of such person as Defendants did

not, Defendants are in violation of Title VII of the Civil Right Act of 1964, Codified at 42

U.S.C. § 407, 42 U.S.C. § 1981, 42 U.S.C. § 1985, 42 U.S.C. § 200a, and Massachusetts

State law.

## COUNT I 1
### DISPARATE TREATMENT
**(Against Defendants, John Chambers, Carl Wiese, Patricia Russo, & Anthony Savastano)**

174.    Mr. Bayad Incorporates as if realleged Paragraphs 1 through 170 of the Complain.

175.    By intentionally treating Mr. Bayad differently because of his Arab Race, by

failing to provide equal employment opportunity and by failing to truthfully investigate

and reprimand all employees as Mr. Bayad, by not providing equally protection, by

purposely restricting Mr. Bayad promotional opportunity, and by harassing him.

176.    By restricting Mr. Bayad of achieving the Certify Cisco Internetworking Expert,

by discriminating against him, and finally terminating him one time with Lucent and

second time with Cisco Systems on account of his race,

177.    By encouraging or participating of the distribution of the multifarious racial jokes

and remarks aiming at Mr. Bayad as an Arab, by excluding him from certifications

and promotion, By sending him soliciting emails with the police Badge intentionally

aimed to scare him, by threatening him with restraining order and knowingly he is

a Business owner and partner and reseller of Cisco,

178.    By implementing race preference in hiring and firing of employment selection, by recklessly, maliciously, injurious negative, communicating a false information to the Police and to cause  Mr. Bayad to be committed in psychiatric ward,

179.    By  locking him in room, and abusively interrogating him, by firing him while lying in the ambulance and with an I.V. in his arm , and by taking his business address, his pager was wet and not operational, and his corporate American cards despite the fact the card had already been deactivated, by intentionally humiliating tortured.

180.    By Firing wrongfully terminating him while with Lucent Technologies and once again with Cisco Systems, Defendants are in violation of Title VII of the Civil Right Act of 1964, Codified at 42 U.S.C. § 407, 42 U.S.C. § 1981, 42 U.S.C. § 1985, 42 U.S.C. § 200a, and Massachusetts State law.

## COUNT III
## FALSE IMPRISONMENT
**(Against Defendants, John Chambers, Carl Wiese, Patricia Russo, & Anthony Savastano)**

181.    Mr. Bayad Incorporates as if realledge paragraphs 1 through 170 of the Complain.

182.    By unreasonably confining Mr. Bayad to a locked room at Lucent & Cisco office against his will and by refusing to let him leave that room, by keeping the door locked with out his consent , failing to keep the door open and by failing to have  the Corporate police informing him about his rights, failing to not allowing him to leave, by forcing him to sign document against his will in a locked room, by having Mr. Bayad to **obey** to spent a **72 hours in the psychiatric ward**  Sun cost Mental Hospital, Defendants are in violation of Title VII of the Civil Right Act of 1964, Codified at 42 U.S.C. § 407, 42 U.S.C. § 1981, 42 U.S.C. § 1985, 42 U.S.C. § 200a, and Massachusetts State law.

## COUNT IV
## INTENTIONAL INFLICT OF EMOTIONAL DISTRESS & ENJOYMENT OF LIFE
**(Against Defendants, John Chambers, Carl Wiese, Patricia Russo, & Anthony Savastano)**

183.   Mr. Bayad incorporates as if realleged Paragraphs 1 through 170 the Complain.

184.   By engaging in a concert effort to harass and discredit Mr. Bayad, by fostering a

hostile environment, by locking him in room, screaming at him and hitting him and

falsely accusing him of finances fraud, by firing him from his employment while

he was in an ambulance on the way to the hospital, by ordering, arranging, and

encouraging Mr. Bayad 's confinement in a psychiatric hospital, by leaving him stranded

in largo after his release form the hospital without any money stranded in Largo after his

release form the hospital without any money or mean of transportation back to his home,

and by swearing out of a trespassing complaint against him while he was hospitalized and

after he had been specifically ordered to come to the office by Defendants while working

and associating with  Defendants at Lucent Technologies Inc.

185.   By repeating the same long standing of misbehavior against Mr. Bayad  while

working and associating with Cisco Systems, by engaging for the second time in a concert

effort to harass and discredit Mr. Bayad, by fostering a hostile environment, by locking

him in room, By unconditionally mandating Mr. Bayad to sign documents approaching to

twenty pages that was signed in locked doors at presence of Corporate police, by causing

Mental and emotional distress, loss of enjoyment of life, injury to character and

reputation and injury to credit, by keeping him from achieving the Cisco Certification

Internetworking Expert, By interfering with his way of life, by denying him business

opportunities for his company, by lying to him for rehire, by denying him employment .

186.    by intentionally sending email with multifarious racial jokes toward Mr. Bayad

Arab Race and requesting his race and gender before being eligible for hiring while

working and associating with Defendants at Cisco systems Inc., Defendants are in

violation of Title VII of the Civil Right Act of 1964, Codified at 42 U.S.C. § 407, 42

U.S.C. § 1981, 42 U.S.C. § 1985, 42 U.S.C. § 200a,  and Massachusetts State law.

### COUNT V
### CONSPIRACY

**(Against Defendants, John Chambers, Carl Wiese, Patricia Russo, & Anthony Savastano)**

187.    Mr. Bayad Incorporates as if realleged Paragraphs 1 through 170 of the Complain.

188.    By discharging him whit not cause with Cisco Systems, by terminating Mr.

Bayad 'employment from International Networking Services and Cisco Systems, by

denying equal privilege as white employees, by engaging in mental and physical torture,

189.    by accusing him of stealing and finance fraud, by restricting him access and

achievement to Certifications, by denying promotion, by interfering with life, by

intentionally sending multifarious racial jokes, by unreasonably confining Mr. Bayad to

locked room at Lucent Technologies  and Cisco Systems, by refusing to let him leave that

room, by ordering, lying to the police and Fire Rescue, and causing Mr. Bayad 's illegal

an unwarranted confinement in a psychological ward, the Defendant have violated

### COUNT VI
### BREACH OF CONTRACTUAL OF OBLIGATION
### BUSINESS & EMPLOYMENT  RELATIONSHIP

**(Against Defendants, John Chambers, Carl Wiese, Patricia Russo, & Anthony Savastano)**

190.    Mr. Bayad Incorporates as if realleged Paragraphs 1 through 170 of the Complain.

191.    By failing to follow its own personnel policies and procedure and procedures

on evaluating, promoting, and providing equal business and employment opportunity, By

41

restricting fair access to the Cisco Certifications, and the support material needed for his

business , and by failing to truthfully investigate an reprimand the author of the

multifarious jokes against Mr. Bayad and the other conspirators in discrimination ,

192.    By providing a full support to **Sir (McKinney)** the owner of INS Inc.,

Defendants has breached its contractual obligation to Mr. Bayad in violation of

Massachusetts State law.

**COUNT VII**
**Wrongful denial of Ceritification to candidate of Arab race**
**Against all Defendants**

**193.**    Mr. Bayad incorporate as if realleged paragraph 1 through 173 of the complain .

194.    By restricted and threatened Mr. Bayad from the **taking of the CCIE Lab**

**exam** that was due in February of the year 2004.

195.    By promoting and aiding two persons of common ancestry (white person) **Bruce**

**Brewer** and **Dale Roznowski,** were provided **the original exams** copies for the **Cisco**

**Certify internetworking expert level.**

196.    By promoting and allowing only white Engineers **cheating** and given the original

copies of the actual exams of the CCIE, and which they were **facilely appointed** as the

**best Engineers** in the field of internetworking technologies field, and favoring them and

**compensating them subsequently** a ridiculous amount of money exceeding a some of

**$200,000.00** dollars over minorities as Mr.Bayad , and by giving Sir Mckinney all the

Exams in order to raise His company INS 'Stocks values, Defendants are in violation of

Title VII of the Civil Right Act of 1964, codified at 42 U.S.C. § 407, 42 U.S.C. § 1981,

42 U.S.C. § 1985, 42 U.S.C. § 200a and, Massachusetts State law.

## COUNT VIII
## RECONSTRUCTED ERA CIVIL RIGHTS ACT CLAIM
### Against all Defendants

197.    Mr. Bayad incorporates as if realleged paragraphs 1 through 170 of the complaint.

198.    By deliberately sending Mr. Bayad a correspondence requesting him to

provide his **race** and his **genders** before Cisco Systems a company of Defendants John

Chambers can proceed in the regards of the decisions of hiring.

199.    By **barbarously**" proceeding and demanding Mr.Bayad, to submit a letter from

his current employer Aztec Inc. and even though no decision of employment was offered

to Mr. Bayad with Cisco, by mandating Mr. Bayad to furnish from his employer a letter

of employment of authorization for no purpose simply to work with his company Cisco

200.    By intentionally theating Mr. Bayad differently, by restricting promotions and

opportunites, by harassing, abusing, and finally terminating him while working at Lucent

Technologies and Cisco Systems.

201.    By purposely not promoting equality among races in promotional opportunities,

Company access to certification achievement, by targeting Mr. Bayad's race when

deciding who get terminated and who get reinstated in employment practices, and By

encouraging racial prejudice in the making of work and business, by discriminating

against Mr.Bayad job applicant on the basis of the belief of his race, ethnicity, and

national origin, Defendants are in violation of Title VII of the Civil Right Act of 1964,

Codified at 42 U.S.C. § 407, 42 U.S.C. § 1981, 42 U.S.C. § 1985, 42 U.S.C. § 200a and

Massachusetts State law.

## COUNT IX
## RETALIATION

**(Against Defendants, John Chambers, Carl Wiese, Patricia Russo, & Anthony Savastano)**

43

202. Mr. Bayad Incorporates as if realleged Paragraphs 1 through 170 of the complain.

203. By intentionally treating Mr. Bayad differently because of his Arab Race, by failing to provide equal employment opportunity and by failing to truthfully investigate and reprimand all employees as Mr. Bayad, by not providing equally protection, by purposely restricting Mr. Bayad promotional opportunity, and by harassing him,

204. By restricting Mr. Bayad of achieving the Certify Cisco Internetworking Expert certification, by discriminating against him, and finally terminating him not once but the second time in the row with Lucent and with Cisco Systems of his race as Arab.

205. By encouraging or participating of the distribution of multifarious racial jokes and remarks aiming at Mr. Bayad as an Arab, by excluding him from certifications and promotion, By sending him Emails with police Badge and by humiliating him and to intentionaly scare him, by threatening with restraining order against him and knowingly he is a Business owner and partner and reseller, by implementing race preference in hiring and firing of employment selection, by recklessly, maliciously, injurious negative, and false information to the Police for the purpose to commit Mr. Bayad in psychiatric ward, by selecting and locking him in room, and abusively interrogating him, by firing him while lying in the ambulance and with an I.V. in his arm , and by taking his business address, his pager was wet and not operational, and his corporate American cards despite the fact the card had already been deactivated, by intentionally humiliating tortured, Defendants are in violation of Title VII of the Civil Right Act of 1964, Codified at 42 U.S.C. § 407, 42 U.S.C. § 1981, 42 U.S.C. § 1985, 42 U.S.C. § 200a ,and Massachusetts law.

## **RELIEF REQUSTED**

WHEREFORE, Plaintiff Bayad prays that this court:

    (a) declare the Defendants' conduct to be in violation of his rights;

    (b) enjoin defendants from engaging in such conduct;

    (c) award him back pay and benefits ( with interest ) that have accrued to date;

    (d) award him front pay until normal retirement age;

    (e) award him compensatory damages of $10,000,000.000 or more for emotional

    distress, mental anguish, and loss of enjoyment of life , humiliation and the

    disparate treatment, and discrimination and false imprisonment he suffered at the

    hands of the defendants;

    (f) award him compensatory damages off $1,000,000.00 for interfering with his

    Civil Rights, conspiring to restrict him from equal rights and benefits,

    and for retaliation for the second time by the same defendants while at Lucent and

    Cisco;

    (g) award him damages of 1,000,000.00 or more for defamation and damage to his

    business and career, his reputation, injury to character and to credit standing;

    (h) award him punitive damages in the amount of 10,000,000.00 or more ;

    (i) award him costs and legal fees;

    (j) grant such other relief as the court may deem just and proper.

## **JURY DEMANDED**

Mr. Bayad demands a jury on all claims liable to a judicial trial as a matter of right by Jury or as deemed appropriate and right by this honorable court, and with the Right of Due Process as a citizen of this land.

Date March _8_, 2004

Anthony Bayad, Pro Se
2 Magoun Avenue
Medford, MA 02155
(781) 704-8982
abayad@gicamerica.com