IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSSETTS

| | |
|---|---|
| ANTHONY BAYAD, ) | |
| ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION |
| ) | |
| ) | |
| ) | CASE NO. 04-cv-10468-GAO |
| ) | |
| JOHN CHAMBERS, PATRICIA ) | |
| RUSSO, ANTHONY ) | |
| SAVASTANO and CARL ) | |
| WIESE, ) | |
| Defendants, ) | |
| ) | |

**LUCENT TECHNOLOGIES DEFENDANT <u>PATRICIA RUSSO</u> IN SUPPORT OF PLAINTIFF' MOTION REQUESTING THE COURT TO NOTIFY THE ATTORNEY GENERAL TO INTERVENE AS <u>MATTER OF DISTRICT COURT'S DISCRETION</u>**

### BACKGROUND

<u>Defendant Patricia Russo</u> is the newly chairman and President of **Lucent** Technologies, **On about April 6, 2004**, just week later and right after Plaintiff introduced his motion under Federal **Rule 24** of Civil Procedure in regard of the **unlawful conducts** of Patricia Russo, John Chambers, Anthony Savastano, and Carl Wiese against the public and plaintiff protected **class** under **Civil Act §§1981** and **1985** of the interest to notify the attorney general to intervene as matter of district Court ' discretion. Lucent Counsel acting under the **authority** of Defendant Patricia Russo filed the **Form 8-K** of Public disclosure pursuant to **§ 13 or 15(d)** of the Securities Exchange Act of 1934. (**Exhibit A hereto attached**). In filing with the Securities and Exchange

1

Commission, Lucent stated an investigation by outside counsel "found incidents and internal control deficiencies in its operations in China" that could violate the Foreign Corrupt Practices Act. Also Lucent stated it "separated "four people from the company, including the president of its China operations, its Chief operating officer, a marketing executive and a finance managers. Lucent (Defendant chairman Patricia Russo) did not identify the executives. But the records pinpoint the president of Lucent's China operations was **Jason Chi** and the **Chief operating officers** was **Michael Kwan**. (Article on Lucent website from January quoted Mr. Chi " China 's growth in demand for advanced telecom services in enormous"). Also Defendant and Chairman Patricia Russo was in China meeting her counterparts Chinese and Lucent Executives.

## Statement of fact

The quantum of proof necessary to sustain the conviction of a corporation for a **criminal** act of its agent as in Lucent Technologies, is met if it is shown that the corporation has placed the agent in a position where [t]hey, The president of lucent ' China operations **Jason Chi** and Chief operating officers **Michael Kwan** of Lucent, Possessed enough authority and responsibility to act in its behalf in handling the particular corporate **activities** (**as cash flow and finance**) in which [T]hey (Chinese lucent President and Chief Finance Officer) were engaged at the time of the act was committed as Defendant Patricia Russo admitted in her filing with U.S. Security Exchange and Commission and The U.S. Justice Department.

See; **In Commonwealth   v.  Beneficial Finance Co., 360 Mass 188, (1971).** The **Massachusetts Supreme Court** was presented with the question of whether the Model Penal Code or a Trial court's jury instructions correctly reflected the law in the jurisdiction. Since the corporate defendants argued that acts of a "high

2

managerial agent" were required for imposing criminal liability on the corporation. In contrast, the **Commonwealth** argued for the trial court's standard that stated, "[i]t isn't the **name** of the **office** that counts, but it is the **position** in which the corporation ( as in our case is **Lucent**) placed that **person** with relation to its Business, with regard to the powers and duties and responsibilities and authority which it gave him which count.

**It is concluded** Lucent President Jason Chi and his Chief operating officers Michael Kwan was engaged at the time they committed the criminal act of stealing money from the company and from the American People' retirement and savings accounts, defendant Patricia Russo and Chairman of Lucent Technologies gave them power of decision as to what they would or would not do while acting for Lucent Technologies Inc. and [t]hey were acting for and in **behalf** of Lucent Technologies Inc. in the accomplishment of that particular business (China C N C; See **Exhibit B** of Patricia Russo in China) or operation or project, and that they (Lucent President and CFO) committed a criminal act while so acting. (**Pictures and photo speaks more than a words**).

This approach to corporate criminal liability seemed more appropriate to the court in light of the evidentiary deficiencies of the model Penal Code approach, and Corporate criminal liability requires that the conduct be for the benefits of the corporation as it was shown lucent Technologies Defendant Patricia Russo had made Millions and millions from **deals conducted by Lucent President of China and his Chief finance officers, Mr. Jason Chi and Michael kwan.**

**STATEMENT OF INTEREST**

**Lucent Technologies Patricia Russo** , who pleaded **guilty** to a violation of Rule **§10b-5 Security act of 1933** and Securities Exchange **Act 1934**, was precluded form obtaining the benefits of the **no knowledge proviso** in the **United States v. Lilley 291 F.Supp. 989 S.D.Tex., Oct 2, 1968**. **The court** found that the " **no knowledge**" clause meant that the accused had no knowledge that their conduct was contrary to law. The **Court** stated that it doesn't mean that the defendant did know "the precise number or common name of the rule, the book and page where it was to be found, or the date upon which it was promulgated. It doesn't even mean proof of a lack of knowledge that their conduct was proscribed by rule rather than statue." **The court** found that by pleading guilty to **security fraud**, the "defendant" admitted that they **knew** securities fraud was **prohibited**, which is the substance of **Rule 10b-5**. **No more Knowledge is required**."

Defendant Patricia Russo and Lucent Executives were found **Laundering Money** with help of the **Minister of "Saudi Arabia"** of Telecommunication and other "**Chinese officials**", and Lucent **Private Air Plane' Log** was showing the **Private jet** was utilized by **foreign officials** to smuggle money **out** of United States of America. More Over the Minister of Saudi Arabia and Chinese official were **immune** from any **U.S. Law enforcement** to be suspect of **search** and **seize of money. They** were **Diplomat with immunities**. Additionally the record shows Lucent Chairman **Patricia Russo**, Lucent President **Mc Guinn**, Former Lucent Vice President and New Avaya Chairman **Donald Peterson**, and Lucent Chairman and

advisor **Henry Schacht ( a good "friend" of Former Secretary Paul H. O' Neil**; Mr. O' Neil was also on Lucent payroll before becoming Secretary of **Treasure**), have made several trips to **Europe** in particular **Swiss Zealand**, and probably to check on their fat **unnumbered Swiss account**. These newly techniques was just discovered by United State Intelligent communities (**CIA) that** the same techniques are being exercised by "**terrorists**" to smuggle weapon and money on America and elsewhere in Europe. ( as Libya as done with Pan am in Scotland). Defendant **Patricia Russo** has duty to disclose to the American any activities and how Lucent Technologies Private plane are used to smuggle money and other illegal material and with help of foreign diplomat as the Saudis who have carried out our U.S Money out of our Country the United States of America). See; **Exhibit D** hereto attached.

## SUMMARY

Plaintiff strongly the intervention of Attorney General and the United States District Court is of general public importance and will materially further the vindication of Rights, Privileges, or immunities secured or protected by the constitution or the Laws of our State and our Country the United States Of America. Additionally the Intervention of our judiciary branch will also bring confidence to the investors and the American people that their Retirement saving and their investment of their Child education college fund will not be deposit in Europe in an Unnumbered Suisse Account and will not serve to build big houses and mansions in Atlanta and West Palm Beaches Florida.

Although Plaintiff is confidence that John Chambers for Cisco Systems , Patricia Russo for Lucent , and Sir McKinney for International Networking Services will admit to conspiracy to commit security fraud and false filing with security & exchange

5

commission as was stated in Plaintiff **complain ¶¶ 66, ff 14**:

"66.   Defendant **John Chambers** was a good friend with **McKinney**, the primary investor for International Networking Services, and made it happen for Mckinney to raise a capital venture approaching to "**1.5 millions**" and provided him with all the material support that resulted of the   **flying colors with a take home of 3.5 Billions**, and Mickiney was very grateful to both his friend Defendant **Patricia Russo** and John Chambers. Exhibit O attached the complain of InformationWeek wire regarding the purchase INS."

## Conclusion

Plaintiff has acted in good faith during the entire proceeding in favor to the American People and it was his duty to assist his government to protect the Public interest and enforce the law from these depraved individuals. Their **Attorneys are silent** and it is an indication of a **"Smoking Gun"**. Even though, Plaintiff is living in **poverty** as he is trying to attend Law School and it could be possible if his **health** permits him to do so; he ask the court as deemed and appropriate and with all the Evidence stated in his complain and his high **credibility of honesty** that has led to discover **unlawful** conduct by the Defendants, as they have " **no**" credibility with this Court nor with any Jury for their criminal act; WHEREFORE, Plaintiff Bayad prays that this court:

(a)   **declare the Defendants' conduct to be in violation of his rights;**

(b)   **enjoin defendants from engaging in such conduct;**

## CERTIFICATE OF SERVICE

I certify that on April 14, 2004, a copy of this document was served by Anthony Bayad personally and

by hand on :


Lisa Gaulin Esq.
Exchange place
53 State Street
Boston, MA 02109-2804
(617) 2480-5000

&

Mark Batten Esq.
150 Federal Street
Boston, MA 02148

By U.S Mail to:
& U.S. Security Exchange Commissions
**Counsel Charls Cain
450 5th Street N.W
Washington, DC 20549**

&

**Attorney General John Ashcroft**

**U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001**

ANTHON BAYAD
PLAINTIFF PRO SE
2 MAGOUN AVENUE
MEDFORD, MA 02155
(781) 704-8982

_____
Anthony Bayad

**EXHIBIT-A**

Case 1:04-cv-10468-PBS   Document 9   Filed 04/12/2004   Page 8 of 20

Table of Contents

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

# FORM 8-K

CURRENT REPORT

Pursuant to Section 13 or 15(d) of the Securities Exchange Act Of 1934

Date of report (date of earliest event reported):
April 6, 2004

# LUCENT TECHNOLOGIES INC.

(Exact name of registrant as specified in its charter)

Delaware
(State or other jurisdiction of incorporation)

| 1-11639 | 22-3408857 |
|---|---|
| (Commission File Number) | (IRS Employer Identification No.) |
| 600 Mountain Avenue, Murray Hill, New Jersey | 07974 |
| (Address of principal executive offices) | (Zip Code) |

(908) 582-8500
(Registrant's telephone number)

Table of Contents

## Item 5. Other Events and Required FD Disclosure

Lucent Technologies Inc. previously reported in its Annual Report on Form 10-K for the year ended September 30, 2003, that the company became aware of internal control deficiencies in foreign operations involving the Foreign Corrupt Practices Act ("FCPA"), in addition to those previously reported in Saudi Arabia for which a government investigation is ongoing. The company's ensuing FCPA compliance audits and an outside counsel investigation has found incidents and internal control deficiencies in its operations in China that potentially involve FCPA violations. The company has reported these findings to the Department of Justice and the Securities and Exchange Commission and is cooperating with those agencies.

The company has taken actions to improve its controls and policies in a manner the company believes should prevent such incidents from recurring. In addition, four people in China involved in the incidents are being separated from the company: the president; the chief operating officer; a marketing executive; and a finance manager. The company's China operations will now report to Robert Warstler, President of Global Sales, on an interim basis until a new president is named.

The company believes the deficiencies and incidents did not have a material impact on its financial results. The company cannot ascertain at this time any impact this matter may have on the company's future business operations in China.

The deficiencies in China were found during the course of extensive FCPA compliance audits performed by the company of its operations in 23 foreign countries, including Brazil, China, India, Indonesia, the Philippines and Russia, a U.S.-based operation that supports sales in China, and other functions in the U.S. that support non-U.S. activities. The examinations of these foreign and U. S. operations and support functions confirmed the effectiveness of the company's FCPA compliance controls and policies in all of these operations and functions other than China.

## SIGNATURES

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned, thereunto duly authorized.

LUCENT TECHNOLOGIES INC.

Dated: April 6, 2004    By:   /s/ Richard J. Rawson

Name:   Richard J. Rawson
Title:   Senior Vice President, General Counsel and Secretary

**End of Filing**

Powered By EDGAR
© 2004 | EDGAR Online, Inc.

**EXHIBIT-B**

9

首页　新闻与杂志　方案与产品　贝尔实验室　关于朗讯　　　　术语表　联系我们　登录

搜索 [进入]  

图片 - 朗讯公司董事长兼首席执行官陆思博女士拜会中国网通副总裁冷荣泉



&gt;&gt; 返回

使用声明　保密声明
朗讯科技（中国）有限公司版权所有 © 2001 Lucent Technologies, Inc. All rights reserved.

**EXHIBIT-C**

首页　新闻与杂志　方案与产品　贝尔实验室　关于朗讯　　　　术语表　联系我们　登录

搜索  [进入]　　　

图片 – 朗讯公司董事长兼首席执行官陆思博女士拜会中国电信副总裁张继平



>> 返回

使用声明　保密声明

朗讯科技（中国）有限公司版权所有 © 2001 Lucent Technologies, Inc. All rights reserved.

菅页  新闻与杂志  方案与产品  贝尔实验室  关于朗讯          术语表  联系我们  登录

搜索
[进入]            

图片 - 国务院副总理曾培炎
会见朗讯公司董事长兼首席
执行官陆思博女士



>> 返回

使用声明  保密声明
朗讯科技（中国）有限公司版权所有 © 2001 Lucent Technologies, Inc. All rights reserved.

**EXHIBIT-D**



Wednesday, April 7, 2004

# Moneyline

## Tuesday markets



▲12.44

| Index | Close | | Change |
|---|---|---|---|
| Nasdaq composite | 2059.90 | ▼ | 19.22 |
| Standard & Poor's 500 | 1148.16 | ▼ | 2.41 |
| Treasury bond, 30-year yield | 5.00% | ▼ | 0.04 |
| Treasury note, 10-year yield | 4.15% | ▼ | 0.06 |
| USA TODAY Internet 50 | 117.16 | ▼ | 1.64 |
| e-Business 25 | 104.59 | ▼ | 1.57 |
| e-Consumer 25 | 155.78 | ▼ | 1.78 |
| Oil, light sweet crude, barrel | $34.97 | ▲ | 0.59 |
| Euro (dollars per euro) | $1.2093 | ▲ | 0.0072 |
| Yen per dollar | 105.69 | ▲ | 0.64 |

Sources: USA TODAY research, MarketWatch.com

► Market scoreboard with currencies, 4B

### Lucent boots four top execs in China

Lucent Technologies, confronting widening allegations of participating in overseas bribes, ousted four top executives in its China unit, according to a filing Tuesday with the Securities and Exchange Commission. Lucent said the China operation's president, chief operating officer, a marketing executive and a finance manager were "being separated from the company." An investigation by Lucent and an outside law firm discovered suspected violations of the Foreign Corrupt Practices Act, the technology company said. The SEC and Justice Department were informed of the findings, Lucent said. Last summer, the SEC and the Justice Department launched investigations into bribery allegations involving Lucent contracts with Saudi Arabia. Lucent spokesman Bill Price said the company is cooperating with those investigations.

**A8** WEDNESDAY, APRIL 7, 2004                                                                                            THE WALL STR

# Lucent Fires Top China Executives

By KEN BROWN
And GEE L. LEE

Lucent Technologies Inc. dismissed its two top executives in China, its second-biggest market, after it found potential violations of U.S. rules that bar American companies from paying bribes abroad.

In a filing with the Securities and Exchange Commission, Lucent said an investigation by an outside counsel "found incidents and internal control deficiencies in its operations in China" that could violate the Foreign Corrupt Practices Act. The telecommunications-equipment maker reported the findings to the Department of Justice and the SEC.

While Lucent said it believes the findings won't have a material effect on its financial results, it said it didn't know how they would affect its business operations in China. That could be a tough blow for Lucent, which received 11% of its revenue from China during its 2003 fiscal year. The company didn't break out its 2002 revenue from China because it was below 10% of company revenue. Besides the U.S., which accounted for 60% of Lucent's 2003 revenue, no other country topped 10% of revenue.

Asia, and China in particular, have been Lucent's top growth areas, particularly after the collapse of much of its U.S. business during the telecommunications meltdown. "The majority of their growth is coming from China this year and next year," said Susan Kalla, an analyst at Friedman Billings Ramsey & Co.

Lucent, Murray Hill, N.J., has 3,000 employees in China in eight regional offices, two Bell Labs branches and five research-and-development facilities. It has signed multimillion-dollar contracts with many of the country's biggest telecom companies.

Lucent said it "separated" four people from the company, including the president of its China operations, its chief operating officer, a marketing executive and a finance manager. The company didn't identify the executives. But people close to the situation said the president of Lucent's China operations was Jason Chi and the chief operating officer was Michael Kwan. An article on Lucent's Web site from January quoted Mr. Chi as saying, "China's growth in demand for advanced telecom services is enormous." Mr. Chi declined to comment, and Mr. Kwan couldn't be reached for comment.

Mr. Kwan, who began his career as a software engineer at AT&T Bell Laboratories in 1984, had been president of Lucent Technologies Qingdao Telecommunications Systems Ltd., a Lucent joint venture in China, before assuming his most recent post in January 2001.

The filing didn't provide additional information, and a company spokesman declined to provide details. Lucent shares fell 10 cents to $4.32 in 4 p.m. New York Stock Exchange composite trading.

Spokesmen for the SEC and Justice Department declined to comment. Last year, Lucent reached a preliminary settlement with the SEC on its investigation of revenue-recognition issues, though the U.S. agency proposed a $25 million fine last month, citing Lucent's "lack of cooperation during the investigation."

Lucent said it has taken actions to improve its controls and policies overseas. The company said its operations in China will report to Robert Wartsler, president of global sales, until a new president is named.

# ACLU Files Suit As Challenge To 'No Fly' List

By AMY SCHATZ

WASHINGTON—The American Civil Liberties Union filed the first national challenge to the federal government's "no fly" list that stops travelers sus-

**EXHIBIT-E**

12



By Andy A. Rogers for USA TODAY

**Uncertain future:** Laid-off computer programmer Stephen Gentry says he was asked to train the worker from India who'd be taking his job. "It was very callous," he said in a recent USA TODAY cover story.

# Protect 'intellectual property'

USA TODAY's report about companies transferring knowledge overseas is the first I've read ("Workers asked to train foreign replacements," Cover story, Money, Tuesday).

Engineering, for instance, is knowledge. Every time an engineer moves from one organization to another, the knowledge needed to build something goes with that engineer. This knowledge, referred to in the corporate world as "intellectual property," is considered so valuable that firms spend billions each year to protect it.

Now, U.S. workers are being asked to train foreign replacements, known as "knowledge transfer." Recovering intellectual property, in my view, is far more expensive than moving factories. In a short year or two, few people in the United States will know how some of our most vital financial and information-technology systems work.

Of course, corporations spend significant amounts of money in research and training to create and maintain intellectual property. But where do you think this money will be spent when the engineers who hold the knowledge and use it are in India and China?

Reza Safarnejad
Potomac, Md.

## Tech workers are key

It needs to be communicated over and over again that today's computer professionals — including analysts, designers, programmers and operators — make up part of the United States' critical infrastructure.

We workers are as critical as the telephone lines, electrical lines, highways and the United States' emergency response network.

By farming out critical business and public software, we will be at the mercy of foreign nationals.

Darrell Barber
Fort Washington, Md.

E