UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-10468-GAO

ANTHONY BAYAD,
Plaintiff,

v.

JOHN CHAMBERS, PATRICIA RUSSO,
ANTHONY SAVASTANO, and CARL WIESE,
Defendants.

MEMORANDUM and ORDER
October 25, 2004

O'TOOLE, D.J.

Pro se plaintiff, Anthony Bayad, brings this employment discrimination action against individual defendants John Chambers, Patricia Russo, Anthony Savastano, and Carl Wiese, seeking monetary damages and declaratory and injunctive relief. The defendants have filed two motions to dismiss: one on behalf of Chambers, Savastano, and Wiese (Docket No. 17) and one on behalf of Russo (Docket No. 31). After careful consideration of the complaint and the briefs in support of and in opposition to the motions,[1] I conclude that oral argument is unnecessary and I make the following rulings based on the parties' submissions.

---

[1] I have considered the plaintiff's arguments in his Motion to Strike the Cisco Defendants' Partial Motion to Dismiss (Docket No. 20) as arguments in opposition to the three defendants' motion (Docket No. 17), and his Motion in Response to Defendant Russo's Motion to Dismiss (Docket No. 35) as his opposition to Russo's motion (Docket No. 31).

**I.      Summary of Alleged Facts**

For the purpose of evaluating the motions to dismiss, the following factual allegations by the plaintiff are assumed to be provable:

Bayad is a Moroccan born United States citizen. In 1995 he began working for Lucent Technologies, Inc. ("Lucent") as a manager in the company's Largo, Florida office, where he reported to Russo, Savastano and Wiese. While at Lucent, Bayad created a plan of action to save Lucent's failing data networking business and communicated his plan to Russo, Savastano, Wiese, and Lucent Chairman, Henry Schachts. Thereafter, Savastano and Russo sent Wiese to meet with Bayad and to advise him that by communicating Lucent's business flaw to Schachts, Bayad had given Lucent a black eye and that it would be just a matter of time before he was fired.

Over the course of his employment with Lucent, Bayad became aware that Russo, Savastano, Wiese, and other Lucent managers did not like him because of his Arab descent. Russo, Savastano, and Wiese conspired to discriminate against Bayad by stripping him of his status as lead manager without cause and in order to humiliate him.

On January 21, 1997, Bayad applied for the vacant position of general manager of Lucent's Largo, Florida office, but Savastano refused to promote him and promoted a less experienced white employee instead. Savastano also prevented Bayad's promotion to other management positions within Lucent. In addition, Wiese told Bayad that Lucent would never promote or consider an Arab to be Vice President of Operations.

On January 23, 1997, Savastano directed Lucent corporate police to imprison Bayad in a room where he was mentally tortured, interrogated, intimidated, physically assaulted, and accused of stealing from Lucent by incurring personal charges on his corporate American Express credit card.

Savastano led the conspiracy to falsely accuse Bayad of stealing from the company. When Bayad tried to leave the room, Savastano and corporate security police attempted to restrain him and keep him in the room. A scuffle ensued and Bayad was dragged or thrown down a flight of stairs and ended up submerged head first in a fountain on the floor below. Bayad received injuries to his head and neck. While Bayad was on his way to the hospital, Savastano, who was on the phone with Wiese and Russo, terminated his employment with Lucent. The defendants also had Bayad committed to a psychiatric hospital for seventy-two hours before being released.

Between 1997 and 1999, Bayad attempted to find subsequent employment in the data networking industry, but Russo, Savastano, and Wiese conspired to prevent him from obtaining and sustaining employment with other companies, including Bay Network, Inc. and International Networking Services, Inc.

In April 2000, Bayad began working as a project engineer at the Lexington, Massachusetts office of Cisco Systems, Inc. ("Cisco"). During a business trip to Cisco's San Jose, California office, Bayad was spotted by Savastano, who was also now a Cisco employee. Savastano reported to John Chambers, the President of Cisco. Upon returning to Massachusetts, Bayad's manager, Lynn Fraser, began keeping close tabs on Bayad in order to find a reason to terminate his employment with Cisco.

In November 2000,[2] Bayad applied for the position of systems manager or engineer for Cisco in the North Africa region. After three interviews for the position in Dubai, London and Paris, Bayad was given a verbal offer by the region manager but was advised that the decision to hire him had to be approved by Cisco's corporate office in California. Even though Bayad, who speaks Arabic,

---

[2] It appears that Bayad incorrectly states this date as November 2, 2001 in paragraph 88 of his complaint, because he also alleges that he applied for the systems manager position *before* being terminated from Cisco in May 2001. Compl. ¶ 88.

French and English, was a perfect match for the position, he was not given the position. Bayad complained to Chambers of the discriminatory treatment and misconduct, but was ignored.

In May 2001, Bayad was terminated from Cisco. Lynn Fraser told Bayad that he was laid off due to the economy and that he would be eligible for rehire one year from the date of termination. His termination was completely pretextual. He was then asked to sign documents and contracts behind closed doors in the presence of Cisco corporate police. After Bayad's termination, Savastano told one of Bayad's former coworkers that Bayad and other minorities had no business at Cisco, and Chambers prevented Bayad from obtaining his Cisco Internetworking Expert Certification.

In September 2001, Bayad formed his own computer and networking technology company and attempted to do business with Cisco, but Chambers instructed Cisco employees not to do any business with minorities and Arabs such as Bayad.

Since at least September 2003, Bayad has applied for a multitude of employment opportunities at Cisco but has been denied a position. On or about December 3, 2003, in connection with one of Bayad's applications to Cisco, the defendants sent Bayad an email requesting he provide his ethnic or racial background and gender before Cisco could proceed with its hiring decision.

On March 8, 2004, Bayad filed the instant action.

## II.    Discussion

Chambers, Savastano, and Wiese, who are now all employees of Cisco, move to dismiss all of the claims against them, except for claims for violation of 42 U.S.C. § 1981 that arose after May 2001, on the grounds that they are barred by the applicable statutes of limitation, res judicata, collateral estoppel, have been released, or fail to comply with the statutory prerequisites for filing such claims. Russo moves to dismiss all of the claims against her on the grounds that they are barred

by the applicable statutes of limitation, res judicata, collateral estoppel, or because Title VII does not create individual liability.

      A.    <u>The Federal and State Employment Discrimination Claims</u>

          1.    The pre-June 1997 claims

Counts I, II, VII, VIII, and IX of Bayad's complaint can be considered together, as there are many overlapping allegations, primarily related to employment discrimination in one facet or another. However, the discrimination claims arising out of Bayad's employment and termination at Lucent (i.e. the pre-June 1997 claims) have already been considered by the United States District Court for the Southern District of Florida and summary judgment was granted for the defendants in that case (Civ. No. 97-06671-NCR).

On June 2, 1997, Bayad, represented by counsel, filed an employment discrimination action in the Southern District of Florida alleging causes of action under Title VII, the Florida Civil Rights Act, 42 U.S.C. § 1981, false imprisonment, intentional infliction of emotional distress, defamation, and breach of contract against Lucent, Savastano and others not parties to the present action. The allegations in his complaint in the Florida action are virtually identical to those in his complaint in this action with respect to events surrounding his employment and termination at Lucent. He also alleged in the Florida action that unnamed Lucent personnel interfered with his attempts to find subsequent employment after he was terminated from Lucent. Summary judgment was granted for the defendants in that action and the Eleventh Circuit dismissed Bayad's appeal.

The judgment in the Florida action bars relitigation of Bayad's Title VII, § 1981, false imprisonment, intentional infliction of emotional distress, and breach of contract claims against Savastano, Wiese and Russo arising out of their pre-June 1997 conduct. See Massachusetts Sch. of Law v. Am. Bar Ass'n, 142 F.3d 26, 38 (1st Cir. 1998) ("Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.") (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980)). Savastano was a named defendant in the Florida action. Wiese and Russo were allegedly co-conspirators in the discriminatory actions taken against Bayad at Lucent who should have been joined in the Florida action, and Bayad has not offered any good reason why they were not named in that action. Massachusetts Sch. of Law, 1142 F.2d at 38; see also In re El San Juan Hotel Corp., 841 F.2d 6, 10-11 (1st Cir. 1988). His assertion of these pre-June 1997 claims here is an impermissible attempt to relitigate issues already decided.[3]

        2.      The post-June 1997 Title VII and Mass. Gen. Laws ch. 151B claims

Bayad's Title VII claims against all of the defendants must be dismissed because individuals are not subject to suit under Title VII. Foley v. Univ. of Houston Sys., 355 F.3d 333, 340 n.8 (5th Cir. 2003); Holly D. v. California Inst. of Tech., 339 F.3d 1158, 1179 (9th Cir. 2003); Akers v. Alvey, 338 F.3d 491, 500 (6th Cir. 2003); Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061, 1078 (3d Cir. 1996) (en banc).

---

[3] As evidence of his desire for a second bite at the apple, Bayad claims in his current complaint that he is confident that "this time around" the defendants will be declared in violation of the law. Compl. ¶ 61.

Bayad alleges violations of "Massachusetts State law" in Counts I, II, VII, VIII, and IX.[4] I construe the complaint as alleging violations of chapter 151B of the Massachusetts General Laws. See Morrissey v. Boston Five Cents Sav. Bank, 54 F.3d 27, 31 n.2 (1st Cir. 1995) ("Mass. Gen. L. ch. 151B is the exclusive remedy under Massachusetts law for employment discrimination claims."). Unlike Title VII, chapter 151B allows for personal liability of individual employees. Thomas v. EDI Specialists, Inc., 773 N.E.2d 415, 420 (Mass. 2002). However, Bayad's post-June 1997 discrimination claims under Massachusetts law are subject to dismissal for failure to first file a timely administrative complaint with respect to these claims. See Mass. Gen. Laws. ch. 151B, §§ 5-9; Carter v. Comm'r of Correction, 681 N.E.2d 1255, 1259 (Mass. App. Ct. 1997).

Bayad alleges that he filed a charge with the federal Equal Employment Opportunity Commission on April 4, 1997, as a precursor to his Florida lawsuit and was issued a "right-to-sue" letter on April 22, 1997. Compl. ¶ 59. He then filed the Florida action on June 2, 1997. He did not timely file a complaint with the Massachusetts Commission Against Discrimination (the "MCAD"), as is required prior to seeking redress in the courts. See Mass. Gen. Laws. ch. 151B, §§ 5-9; Lindsay v. Future Elec. Corp., 930 F. Supp. 677, 678 (D. Mass. 1996) (filing charge with EEOC insufficient to satisfy exhaustion requirement under Mass. Gen. Laws ch. 151B). Bayad's failure to timely file an administrative complaint with the MCAD requires dismissal of his discrimination claims under Massachusetts law.

---

[4] The complaint also alleges that the defendants violated the "Fair Labor [A]ct" and the "Massachusetts Rules of Law." Compl. ¶¶ 143, 146.

3. The post-June 1997 § 1981 claims

Bayad's § 1981 claims have a four-year statute of limitations. See Jones v. R.R. Donnelley & Sons Co., __ U.S. __, 124 S.Ct. 1836, 1845-46 (2004). Therefore, his § 1981 claims against Chambers, Savastano, and Wiese for discriminatory conduct that occurred prior to March 8, 2000 are time barred, but § 1981 claims against these defendants that arose after March 8, 2000 survive. Because all of the allegations against Russo concern events that occurred prior to March 8, 2000, Bayad's § 1981 claims against her are time barred.

4. The post-June 1997 § 1985 and state law conspiracy claims

Similarly, Bayad's conspiracy claims under 42 U.S.C. § 1985 and Massachusetts law against Chambers, Savastano, and Wiese for discriminatory conduct that occurred prior to March 8, 2001 are time barred because these claims are subject to a three year statute of limitations. Nieves v. McSweeney, 73 F. Supp.2d 98, 102 n.4 (D. Mass. 1999), aff'd, 241 F.3d 46 (1st Cir. 2001).[5] But § 1985 and state law civil conspiracy claims against these defendants that arose after March 8, 2001 survive. Because all of the allegations against Russo concern events that occurred prior to March 8, 2001, Bayad's § 1985 and state law conspiracy claims against her are time barred.

I reject the defendants' contention that the narrow "intracorporate conspiracy doctrine" requires dismissal of Bayad's § 1985 claims at this stage of the litigation, as I find he has at least sufficiently alleged a series of acts over time by Chambers, Savastano, and Wiese going beyond simple ratification of managerial decisions. See Strathos v. Bowden, 728 F.2d 15, 21 (1st Cir. 1984).

---

[5] Bayad fails to articulate a specific legal basis for his conspiracy allegations in Count V, so I liberally construe this count as setting forth a claim under both federal and state law.

      B.      <u>The State Law Tort and Contract Claims</u>

            1.      False imprisonment

Though Bayad alleges false imprisonment under both federal and Massachusetts law, Count III is essentially a claim under state tort law for events occurring in 1997 and is therefore time barred. See <u>Lavecchia v. Massachusetts Bay Transp. Auth.</u>, 804 N.E.2d 932, 936 (Mass. 2004) (noting three-year statute of limitations for false imprisonment claims under Mass. Gen. Laws ch. 260, § 2A). This claim is also barred under the doctrine of res judicata. <u>See</u> discussion, <u>supra</u>, Part II(A)(1). To the extent that Bayad alleges a claim for false imprisonment during his tenure at Cisco, there are no factual allegations to support such a claim against the named defendants. The arguably relevant allegations are that Lynn Fraser at Cisco, who is not a defendant in this action, confined Bayad to a room to sign Cisco documents upon his termination. Compl. ¶ 104. Accordingly, Count III is dismissed against all defendants.

            2.      Intentional infliction of emotional distress and breach of contract

As noted above, Bayad's pre-June 1997 intentional infliction of emotional distress and breach of contract claims are barred under the doctrine of res judicata. <u>See</u> discussion, <u>supra</u>, Part II(A)(1). Bayad fails to adequately plead claims under Massachusetts law for intentional infliction of emotional distress and breach of contract for conduct that occurred post-June 1997. Counts IV and VI are dismissed against all defendants.

**III.    Conclusion**

For all the foregoing reasons, the motion to dismiss of Chambers, Savastano, and Wiese (Docket No. 17) is GRANTED IN PART AND DENIED IN PART, and the motion to dismiss of Russo (Docket No. 31) is GRANTED.    All of the claims against Chambers, Savastano, and Wiese except for the § 1981 claims against them that arose after March 8, 2000 and the § 1985 and state law conspiracy claims against them that arose after March 8, 2001, are dismissed.  The complaint is dismissed in its entirety as against Russo.

It is SO ORDERED.


October 25, 2004                              \s\ George A. O'Toole, Jr.

DATE                                          DISTRICT JUDGE