tongue, clearly ridicule any and all foreign nationals, sound stylish and feebleminded of the of

English palaver, and relate to employees getting terminated as Mr. Bayad. The consignation of the

multifarious racial jokes audio was titled and state the following : "hate this "Fucking " job, and I

will be fired; I have just been fired , and By-By- everybody; I need a "P" quick and my Etc...), and it

goes on and on. It is a shame. Savastano and Wiese 'pattern of discrimination was shown also

during Bayad ' termination of employment with  Lucent , Broadcast a racist Electronic Email Title; "

It is done" This Email was sent by a white  Employee and Manager reporting to Defendant Savastano '

friend Bruce Brewer ( a relative of  Dale  Ronowski a Cisco Manager and report to Weise). The Email

was delivered the day of Bayad  termination of employment with Defendants  Savastano and Wiese, to

the entire Bayad ' coworkers  and to the Defendants, and the e: mail express antipathy toward

foreigners and toward Plaintiff Bayad in particular, and it used ethnic epithets to describe Plaintiff

Bayad . The e: mail further expressed the  hope that writer  (was promoted by Defendants  as he is

very close to them) could make Plaintiff  Bayad look bad and have him terminated; The " it's Done!"

e-mail states: ( Mike Reed the author is a high school drop out and could not spell the word "NIGER"

as he admitted in his answer evidencing herein)

| " **From:** | **Mike Reed** |
| --- | --- |
| **To** | **Bay, BBRewer** ( Bay & BBRewer correspond to a group of Employes) |
| **Date** | **1/24/97 12: 25 am** |
| **Subject :** | **It's done!** |

Bruce, I need your help we need to stop these dammned foreigners they think they can
come over to my country and first of all take our jobs, then be our bosses. Anthony
Bayad needs to be stopped or before you know it he will be running this company. He
is nothing but a **sand nigger** or **dirty arab** or something like that.
I think that with your help , we can make him look bad in the eyes of upper
management, so we can finally get rid of him and his spick boss, once and for all.
Tony ( means Defendant **Savastano** herein) already has a plan Scott Boda will get
**certified** in the near future, and two other people they told to get certified, we can
finally get rid of them, Even if they are right in saying most people in this company
don't like to work hard , and all they do is play games they should not come in and
make waves.
**Mike Reed"**

23

Additionally Defendant Wiese is promoting racism as the fact drawn herein, Defendant Wiese ' Sales group ( Wiese is the Cisco Vice President of Sales), promoting racial joke among his sales team as the evidence provided by Cisco evidencing , Wiese ' Director of Sales Chuck Robbins and Mountford Paul disgracefully broadcasting to their sales team members ( all White persons), the improper word –"*NIGER*" with an "*L*" and the word "*PUPIL*" for "*BLACK*" . 124 F.3d at 1148-49; In similarity see *Wright      v.      Southland* Corp., 187 F.3d 1287, 1297 ( 11th Cir. 1999); See *Slattery      v.     Swiss Reinsurance America*, 248 F.3d 87 ( 2d Cir. 2001). Statement of **bias** from a top **Executive** in the **corporate hierarchy** can be enough to establish a *Prima Facie* case- that is to raise an inference of discrimination sufficient to shift the burden of explanation onto Defendants. Hence once Prima Facie case is established, the burden of proof is shift to the Defendants to articulated a legitimate reason for its action . *McDonnel Douglas Corp v. Green*, 411 U.S. at 792, 802.

**IX.**       **Definition of ownership or partnership in legal contest** ( **Defendants Chambers, et, al.**)

The United States District Court of the **Fist Circuit** ' definition of ownership of an organization as Cisco Systems, an individuals (such as Chambers, Savastano, Wiese) are owners when showing have ownership in organization ( Cisco Systems) receives compensation based on its profit, and participate in managing the organization would qualify as an " owner" or " Partner". ( as there are) See *Serapion      v.      Martinez*, 119 F.3d 982, 990 (1st Cir. 1997), cert. Denied, 118 S. Ct. 690 (1998).

**X.**       **Liability fall on Decision-makers , Supervisor (s) or Manager (s), or Executive (s) or Partner(s), or Owner(s) of Cisco System (s) or Organization or Employer Cisco Systems**

1.       Fifth (5) phase of *Prima Facie* Established

We [d]raw and conclude that Defendants Chambers et, al., are all owners and Executives of Cisco Systems , Defendant Chambers is a Cisco President , Defendant Savastano is a Cisco Finance Vice President, and Defendant Wiese is a Cisco Vice President of Sales and Potential to become President of Cisco, because is white known to promote Racism in the work force as in Lucent Technologies and Cisco; And implying the Ruling of this Court that the biases of those (Defendants Chambers et, al.) who do made or influence the employment decision (Termination) are probative,

Having stating that , The *Prima Facie* in Bayad ' case is established on the ground of the support of this court Ruling ( sustain) and no further argument will defeat nor rebut the Ruling of the Court in Bayad ' case as it has decided in others with others circuits have reached similar conclusions. Furthermore in Similar in *Stoller   v.   Marsh*, 682 F.2d 971, 972 (D.C. Cir. 1982). The District of Columbia Circuit Court of Appeals ruled:

"[a]n unfavorable employment decision resulting from inaccurate, discriminatorily motivated evaluation by the employee ' s violates the statue Clause even though the decision maker was completely free of animus...." When a supervisor ... deliberately places an inaccurate, discriminatory evaluation into an employee file ( as Cisco-No-Hire-List), he intends to cause harm to the employee ...[T]he employer—that is, the organization as a whole ( such as Cisco Systems)—cannot escape the statue Claus Title VII  (§1981in similar) liability simply because the final decision maker was not personally motivated by discrimination." 682 F.2d at 977. Also *Cariglia   v.   Hertz Equip. Rental Corp* ., 363 F.3d 77  (1st Cir 2004), in Massachusetts an employer is liable under the statue §, 1981, when discrimination animus of one or more employees affects or causes the decision to terminate, even the decision was made neutral decisionmakers.   Similar, the Fifth Circuit has held that:
" discrimination animus of a manager can be imputed to the ultimate decisionmaker if the [manager]...had influence or leverage over" the decisionmaking. *Laxton   v.   Gap Inc.*, 333 F.3d 572, 584 ( 5 th Cir. 2003).   See also *Russel   v.   McKinney Hosp. Venture* , 235 F.3d 219, 226  ( 5th Cir. 2000). If the employee as Bayad  can demonstrate that others  had influence  or leverage (as he has proven herein) over the official decisionmaker, and thus were not ordinary  coworkers, it is proper to impute their discriminatory attitudes to the formal decsionmaker.  *Abramson   v.   Willaim Paterson Coll.*, 260 F.3d 265, 285-86 (3rd Cir. 2001);   It is sufficient if those exhibiting discriminatory animus influenced or participated in the decision to terminate.

<u>COUNT VIII</u>
<u>RECONSTRUCTED ERA CIVIL RIGHTS ACT CLAIM TITLE 42 § 1981</u>
<u>Against all Defendants Chambers et, al.</u>

1.    The Sixth Phase (6) Prima Facie established (Reinstatement/Rehire)

*Mc Donnell Douglas* theory in a claim of discrimination the Court States that the complainant:

" must carry the initial burden of establishing a prima facie case of discrimination.  This may be done

by showing    (1) that he belong to a racial minority;  ( 2) that he applied and was qualify for a job for

which the employer was seeking applicants ;  (3) that, despite his qualifications, he was rejected;  And

(4) that his rejection, the position remained open and the employer continued to seek applicants

from persons of complainant's qualifications ".  The facts drawn her are in favor of the plaintiff Bayad

as he has stated above that :  ( 1) Bayad  belongs to a racial minority or protected group or class

within the protection of Title 42 § 1981,  because Plaintiff is a U.S. Citizen native Moroccan. See

*Nieto  v. United Auto Workers Local* 598, 672  F. Supp. 987 (E.D. Mich. 1987).  *Sinai   v.   New*

*England Telephone and Telegraph Company*, 3 F.3d 471  (1st Cir.  1993), Cert. Denied, 513 **U.S.**

1025,  115 S.C.t. 597, 130 L.E.d 2d. 509 (1994). See *Sharre  Tefila  Congression  v.  Cobb*, 481 U.S.

615, 107 S.Ct.2019, 95 L.E.d 2.d 594 (1987);  (2) he did apply as required by the employer Cisco

Systems for multitude of positions called requisites herein on about September 30 of the year 2003 to

present time, and  stated in the complaint and herein as noted by **Cisco requisitions as follow:**

"1) Requisition 714007 contact name Michael Kent, 2) Requisition 713667 contact name Niki

Peleuses,3) Requisition 713906 contact name Michael Kent,4) Requisition 713644 contact name Niki

Peleuses, 5) Requisition 713123 contact Michael Kent, 6) Requisition 711846 contact name Chuck

Ramsburg, 7) Requisition 711780 contact Domick Delfino, 8) Requisition 72133 contact Scoot Lovett,

9) Requisition 712669 Michael Kent, 10)  and Requisition 713950 Liz Bacchi, and many more. Also

attached as Exhibit X-3 attached to the complaint ( Dkt. 1) of all the inquiry regarding opportunities

with Cisco Systems.  *Byrnie  v.   Town of Cromwell, Board of Education*, 243 F.3d 93, 101, 85

FEP Cases 323 ( 2d Cir. 2001);   That  Plaintiff Bayad was subject to an adverse employment decision.

The fact is drawn by preponderance of evidence introduced in his complaint ( Dkt.1) and herein, when Bayad applied for an open positions in direct contact with Cisco' Human Resources, no reply is provided or consideration is given to Bayad , and to the contrary when Bayad contact or dealt direct with the hiring Manager evidencing herein , the hiring Manager as with Robert Bardani a Cisco Systems SE Manager, who shortly replied and asked Mr. Bayad to provide a convenient time for a telephone interview. Exhibit X-5 attached to the complaint ( Dkt.1) of the communication with Robert Bardani. Additionally Bayad directly contacted another Hiring Manager for another open position , Mike Kent a Manager of Cisco Systems , who was very professional and welcomed Bayad back to Cisco, who proceeded further in the application process. In fact his team sent an electronic mail indicating that Bayad was considered for a position with Cisco Systems, an application is required to be filled in order to proceed further in this process. Exhibit X-6 attached to the complaint (Dkt.1) and provided herein of the correspondence of Mike Kent. Accordingly Bayad has complied fully with the entire process of Cisco requirement and demands in regard the application process Cisco, therefore the process was open for Bayad consideration for those positions as he was qualified. Unfortunately Cisco Manager Bardani backed off; Also Cisco Manager Kent has sent back an electronic mail to Bayad stating in it as Follow: "It is all in the Management hand" (meaning Defendants Chambers, Savastano, Carl Wiese) (3) that Plaintiff was subject to an adverse employment decision in the final stage of the interview Mr. Bardani asked Bayad about his preceding direct Manager Lynn Fraser, to contact her regarding the history of his employment with Cisco Systems Inc., Thereafter Bayad had never heard from him again;    *Gu v. Boston Police Dept.*, 312 F.3d 6, C.A.1. ( Mass. 20020) ; also Townsend v. Gray Bus Co., 767 F.2d 11, C.A.1 (Mass. 1985); And (4) that adverse employment decision was made under circumstances giving rise to an inference of unlawful discrimination, and During the application process an inference of intent of discrimination occur , When Defendants deliberately sent an employment" e:mail" of correspondence to Bayad requesting him to provide his Ethnic, race background , and his genders

27

and states the following:

" **From**:        **Cisco Systems [vsid@cisco.com]**
  **Sent**:        **Wednesday, December 03, 2003 6:01 PM**
  **To**:          **Anthony Bayad**
  **Subject**:     **Cisco Systems:: Voluntary Self Identification**

Dear Anthony,

To assist Cisco Systems, Inc. in collecting government required candidate EEO information, please go to the website address listed below. Once there, enter your e-mail address in the e-mail address field, this will be used to identify you. Then enter the unique password ( include below. Submit the information , and you will be logged on to Voluntarily self Identification form. Once you have logged in, please complete and submit the form.   "

Even though before Cisco Systems a company of Defendants Chambers, Savastano, and Wiese, can

proceed in the regards of his hiring decisions of Bayad, this unlawful act is also in violation

Massachusetts law and States the following :

" Employer cannot ask employees about their race, origin, ethnicity, disability, and age, during the interview process, but Employer can ask only about the candidate qualifications background ."

*Fernandes v. Costa Bros. Masonry, Inc.* 199 F.3d 572. C.A.1( Mass. 1999).

This unlawful employment of race preferences and practices that was intentionally consigned by

Defends intend to discriminated and to retaliation against Bayad U.S. Citizen native Moroccan.

Exhibit X-7 attached to the complaint (Dkt1) and introduced herein . Defendants Chamber et, al., and

the President of Cisco cannot deny nor can they provide a defense in this litigation to such

information is for the sole use ( a pretext) so called "EEO" and it is volunteered information only ,

or it is not requirement, and if it is assumed required based of their policy ,then it should have been

provided to Bayad or other similar situated protected class of applicants" when" they have finalized

and secured their positions with the Defendants and with their company called Cisco , and then

Cisco or Defendants can proceed with the request of race identification or as they calls it "self

identification" as matter of privilege, but unfortunately it was not the case with Bayad who is from

28

Morocco. Furthermore, for the convenience of the Fact finder under [teir of fact] we drawn and
thus [c]onclude that Defendants have no ground herein [i]f argued and therefore prove that its
action or practice enabled it to entertain the maximum number of minority applicants. *Furnco Const
v. Corp Waters*, 438 U.S. 567 ( 19973). And or that the person the Defendants ( Cisco ) chose for a
position was better qualified that a minority applicant. *Texas Dept't of Community Affairs v.
Burdine*, 450 U.S. 248 (1981). And or even that its non discriminatory reason for its action was
rational. *Foster v. Dalton*, 71 F.3d 52 ( 1st Cir. 1995). The Supreme Court, in *St Mary's Honor
Cneter v. Hicks*, 509 U.S.502 ( 1993), states :

" The fact finder ' disbelieve of the reasons put forward by Defendants ( as herein)
. . . may, together with the elements of the *Prima Facie case,* suffice to show intentional
discrimination. Thus, rejection of the defendant's proffered reason, will permit the trier of fact to infer
the ultimate fact of intentional discrimination, and the Court of Appeal was correct when it noted that,
upon such rejection, " [n]o additional proof of discrimination is required, " . . .

## COUNT IX
### RETALIATION

(Against Defendants, John Chambers, Carl Wiese, Patricia Russo, & Anthony Savastano)

1.    Phase Seven (7) of *Prima Facie* Established

The plaintiff typically must satisfy three elements to make out a *Prima Facie* case of retaliation:
(1) Plaintiff engaged in statutorily protected conduct or expression; ( 2) Plaintiff suffered an adverse
action subsequently to such activity; and (3) there was a casual link between the protected conduct or
expression and the adverse action. Fact drawn herein as proven by preponderance of the evidence [1]
Bayad participated in a protected activity and was known to Defendants , the activity commenced the
year 1997 at Lucent Technologies Florida , where Bayad was discriminated against by Defendants
Wiese and Savastano; then Bayad filed an administration complaint with the Equal Employment
Opportunity Commission , a Right-To-Sue letter was provided to him , There after a law suit was filed
in the United States District Court , the law suit was pending until the year 2000, where Bayad
were Employed at Cisco Massachusetts Lexington with Savastano ( déjà vu) between the year 2000
and 2001 ( while the law suit was pending against him). Additionally Bayad correspondent By Cisco

29

Inter-Mail and by Electronic Mail with the Cisco Sr. Vice President of Human Resources Kate

Dcamp, Sr. Vice President of Sales Rick Justice, and Defendants Chambers the President of Cisco , a

friend of Defendant Savastano , in regard to the discriminatory conduct executed upon Bayad By

Savastano while at Lucent the year 1997 and now at Cisco the year 2000, accordingly to the Cisco

Open door Policy that encourage any Cisco Employee as Bayad to freely communicate without fear

of appraisal or retaliation to upper management and to Human resources of, any discrimination or any

wrong doing by Cisco Employees ( and this include Managers). Therefore the first Element [ 1] is

established fact drawing Bayad engaged in statutorily protected conduct or expression as stated in

*McDonnell Douglas* and thus satisfy the first Element; [2] Bayad suffered an adverse action

subsequent to such activity. Fact Shown as stated above and herein, Defendants Chambers et, al.,

broadcast Bayad' name in the Cisco- No-Hire-List, Deny Bayad transfer or better opportunity with

Cisco as Systems Engineer for North Africa Region, ( please see stated facts above under disparage

treatments); [3] there was casual link between the protected conduct or expression

and the adverse action. The fact Bayad' litigation during that was pending in Florida, was

conducting discovery including deposition to Defendant Savastano, Wiese, and other Employees

involve in the Law suits. Thereafter Defendants terminated Bayad 'employment with Cisco using the

economy as pretext, and there is substantial evidence from which a retaliation motive is inferred herein.

*Cones v. Shalala*, 1999 F.3d 512, 81 FEP Cases (D.C. Cir. 2000). In similarity to Bayad herein in

the Cones case the Court held that Plaintiff ( as Bayad) produce sufficient evidence to support a jury

finding that employer ( as Defendants) 'articulated reason for transferring another employee into the

position to which Plaintiff sought –a downsizing – was a pretext for retaliation against the plaintiff,

sufficient to preclude summary judgment for the employer. See also in similarity *White v. New*

*Hampshire Department of Corrections*, 221 F.3d 254, 83 FEP Cases 851 ( 1st Cir. 2000). The Court

held that a jury instruction need not track McDonnell Douglas exactly, so long as the instruction

"identify the importance factual issues for the jury to resolve." Internal Citation omitted). See

*Gregory   v.   Daly*,243 F.3d 687, 85 FEP Cases 1032 ( 2d Cir. 2001); See also *Wood v. Community*

*Action agency of Greene County, Inc*., 239 F.3d 517, 85 FEP Cases 259 (2d Cir.2001); And *Farrel*

*v.  Plainters life savers Co*., 206 F. 3d 271, 82 FEP Cases  464 ( 3rd Cir. 2000).  Additionally other

sufficient direct   and indirect evidence of  retaliation, and  therefore established a sufficient *Prima*

*Facie* case using direct  and indirect evidence. *Rhoads v. FDIC*,  257 F.3d  373, 11 AD Cases 1776, 7

WH Cases 2d. 129 (4th  Cir.), cert. denied, 535  **U.S.** 933 (2002).  The court held that to prevail on a

claim of retaliation a  Plaintiff ( such as Bayad) must  either: (1) offer  sufficient  direct  and indirect

evidence ( as herein) of  retaliation, or (2) proceed under a  burden shifting of proving as herein.

COUNT IV
INTENTIONAL INFLICT OF EMOTIONAL DISTRESS & ENJOYMENT OF LIFE
(Against Defendants, John Chambers, Carl Wiese, & Anthony Savastano)

Defendant intentionally brought the trauma back to Bayad during his employment with them at

Cisco and by  disparately treating him and wrongfully terminated him that brought him back the flash

back of the abuse executed upon him at Lucent Technologies Florida made it more critically very

serious . As stated in his complaint , Plaintiff established  a claim of intentional infliction of emotional

distress twice once [1]  in  Florida while employed with defendants at Lucent Technologies as it will be

stated herein and for the  second [2] time in Massachusetts at Cisco Systems with the same Defendant

Chambers et, al., The  conduct of Savastano and Wiese so outrageous and so extreme in degree as to

go beyond all possible  bound of decency and to be regarded as atrocious and utterly intolerable in a

civilized community. *Mundy   v.   Southern Bell Telephone and Telegraph  Co*., 676 F.2d 503, 505

(11th Cir. 1982) ( interpreting and citing Florida Law).  Determination of the degree of outrageousness

of the  complained of act is a mixed question of law and fact which is improper before the court on a

motion for summary;   The Defendants orchestrated a criminal act ( hate crime);  While falsely

imprisoned Bayad at the hand of lucent corporate police acting under the  direction of Defendants

Savastano and   Wiese who Bayad reported to them,  stated things like: "**I don't know what's wrong**

**with company (Lucent) hiring people like you**." And  "**ten year ago I wouldn't even be talking**

31

**to someone like you**."(Meaning Moroccans ), and such remarks were directed specially at Bayad's

Arab race and ethnic background, the fact he had been born in North Africa and was considered

foreigner under the eyes of Defendants. After being falsely imprisoned and abusively interrogated by

Lucent Corporate police for such intense period of time,    Bayad became sick with fear and tried to

leave the room; when Bayad reached the door, several Lucent Technologies including corporate

Police , security and Defendant Anthony Savastano attempted to physically restrain him and kept him

locked in the room where he was being falsely imprisoned, in the scuffle that ensued, Bayad was

dragged or thrown down a flight of stairs and ended up submerged head first in a fountain on the

floor below; as result of the scuffle, Bayad received injuries to his head and neck and his clothes

were torn. Exhibit K attached to the complaint (Dkt.1) of the Pinellas County Sheriff's office

incident/Offense report; an ambulance was called to take Bayad to the hospital, while he was lying

in the ambulance with an I.V in his arm and being treated by paramedics, Bayad was terminated

from Lucent at the presence of Defendant Savastano who was on the phone with Carl Wiese and

Patricia Russo. Bayad was charged of trespassing even though he was asked to come to Largo

(Tampa Florida) office at their request even though Bayad was still an employee of Lucent

Technologies Inc., while lying in the ambulance and with an I.V. in his arm, Bayad was forced

through the humiliation of having to give back his business addresses, his pager was wet and not

operational, and his corporate American Express cards despite the fact the card had already been

deactivated and could no longer be used by anyone. Exhibit L attached to the complaint ( DKt.1) of

the Fire Department's report at the scene during the 911 call . Defendant deliberately and

intentionally humiliated, tortured and degraded Bayad. They reposed the occurrences of the incident

and conspired against Mr. Bayad, and they were the ones who called the Police and the Fire Rescue

to the Scenes, also they were the ones who provided defamatory Occurrences to the police, simply to

convinced them to commit Mr. Bayad to the Psychiatric ward against his will (in Florida they call it

"Backer Act"). At the scene, Defendant Savastano 'secretary Joan Grohe was heard stating , "I

32

warned", and "I told them (Defendants) not to do it. They fucked it up." Grohe also knew that

Bayad was going to be Baker Acted (or committed to the psychiatric ward against his will) before the

ambulance had even left the parking lot of the Lucent Largo office and remarked to a coworkers that

"we're going to baker Act him." Forcibly Mr. Bayad was obeyed to spent a good 72 hours in the

psychiatric ward, and since he Was recognized not having any problem, the Sun cost Mental

Hospital's Doctors released him very shortly.(It was the most grim moments of his life). Hence

when Bayad was released from the hospital, and he was left by defendants without any money,

clothes, or means of transport ting him self to his home, it was an obvious conduct of hate and

disgrace by the Defendants during his employment at Lucent Technologies and now at Cisco

Systems. A claim for negligent infliction of emotional distress requires that the plaintiff ' s emotional

injuries flow from physical injuries as was done to Bayad . *R.J    v.    Humana of Florida* , 652 So.2d

360, 362  (Fla. 1995). Bayad has alleged or presented proof of the physical injuries he has incurred as

the result of the actions by defendants in Florida and now in Massachusetts. Therefore , Bayad ' claim

of negligent infliction of emotional distress as declaration of  Bayad ' doctor introduced herein must

be granted as matter of law and summary judgment is an  appropriate on Plaintiff' claim for negligent

infliction of emotion distress.

COUNT V

CONSPIRACY TITLE 42 § 1985

(Against Defendants, John Chambers, Carl Wiese & Anthony Savastano)

The facts drawn herein and in the complaint that Defendants whom were named and acted

outside the scope of their employment for personal reasons that goes way back while Bayad was

employed with them at Lucent Technologies, Tampa Florida and now at  Cisco Systems,

Massachusetts Lexington -Boston.  Bayad has proven  by preponderance of the evidence that

Defendants possess a strong hate toward Moroccan whom some are race of Arab Christians and  Arab

Jews. Additionally Defendants conducts was "not a single act" but an outrageous "unaccounted of acts

of discriminations", The act commenced back in Florida with a Company called Lucent Technologies

the year  1995 , where Bayad was reporting to Defendants Savastano and Wiese,  and lasted until the

year 2001- present . Thereafter his employment at Lucent Bayad was discriminated against by Defendants in an act that was so outrageous and so extreme in degree as to go beyond all possible bound of decency and to be regarded as atrocious and utterly intolerable in a civilized community. And now at Cisco in a different and in a new Company Cisco Systems in the State of Massachusetts and in a new City Lexington-Boston. Defendants for the second time have discriminated against Bayad unlawfully of acts of , wrongful termination , transfer, hire or rehire, retaliation, disparaged treatment, defamation, false imprisonment, and in denying him access to conduct business or grant of CCIE certification. *Rackin v. University of Pennsylvania*, 386 F. Supp. 992, 1005-1006 (E. D. Pa. 1974) (claim continued and varied instances of discrimination and harassment involving more that a single decision by business entity supported a conspiracy allegation). And Cross Correctly we must points out that case law does not completely foreclose that possibility of applying § 1985 (3); *Great America Savings and Loan Ass'n v. Novotny*, 442 U.S. 366, 372 n. 11, 99 S.Ct. 2345, 2349 n.11, 60 L.E.d. 2d 957 (1979); See also *Stathos v. Bowden,* 514 F. Supp. 1288, 1291-1293 (D.Mass.1981). And as Plaintiff Bayad *Pro Se* proved herein that a conspiracy occurred and the actors were three (3) persons, Chambers, Savstano, and Wiese, within the Intra-corporate Conspiracy Doctrine, and the violation of § 1985 (3) is established. Additionally the first Circuit, in *Harrison v. Brooks* 1st Cir. 1975, 519 F.2d 1358, adopted and explained the elements of a cause of action under the § 1985 (3) first set forth by the Supreme Court in *Griffin v. Breckenridge* 1971, 430 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338. In Harrison the Court states that " the Complaint must allege facts showing that the Defendants conspired against the Plaintiff because of their membership in class ( also Executives of Cisco) and that the criteria defining the class were invidious" 519 F.2d at 1360. There is no doubt that purposeful race discrimination is invidious discrimination. *Personnel Administrator of Massachusetts v. Feeney*, supra 442 U.S. at 273, 99 S.Ct. at 2293. Thus Courts held that an actionable section 1985 (3) claim is presented have generally done so only where individuals Defendants are named and the corporation ( such as Cisco ) (even though Defendants are owners of

34

Cisco ), and Defendants acted outside of the scope of their employment or for personal reasons. *Coley v. M & M bars, Inc.*, 461 F.Supp. 1073, 1076-1077 ( M.D.Ga.1978); See also *Gaza v. City of Omaha*, 814 F.2d 553 (8 th Cir.). Therefore Bayad as proven his count V under the Title 42 § 1985 that Defendants    (1) acted in concert outside the scope of their employment and discriminated for personal reasons;    (2) within the scope of their supervisory ( as Cisco Executives) but in ways which did not further the company legitimate business concern. *Volk v. Loler*, 845 F.2d 1422 ( 7th Cir. 1988);    And (3) Defendants acted in connection with multiple acts of Discrimination as stated in the complaint ( Dkt. 1) and herein. See *Anti Char v. Michigan Technological University* 493 F. Supp.1137 ( W.D.Mich. 1980). In similarity *Nieto v. United auto workers local* 598, 672 F. Supp. 987 (E.D. Mich. 1987). In addition the Prima Facie is established in Count V Conspiracy as proven the elements of conspiracy, the plaintiff' claim has four essential elements which were established  :

(1) Two or more persons must conspire;   (2) The purpose of the conspiracy must be to deprive, directly or indirectly, any person or class of persons of the equal protection of the laws or equal privileges and immunities under the laws;   (3) third that one or more of the conspirators mist commit some act in furtherance of the conspiracy, whereby ;   And (4) another person ( Bayad) was either injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States. See the Civil Rights  Statues mentioned above is Title 42 § 1985 (3), which is entitled Conspiracy to Interfere with Civil  Rights. Facts drawn here are being proven mere similar of conduct among Defendants Chambers, Savastano, and Wiese. The fact  that they are associated with each  other, and have assembled in many  meeting with each others as Executives and owners of Cisco Systems, and have discussed the common aims  and interests, is prove of the existence of a conspiracy, However, the evidence in the case need  not show that the defendants entered into any express or formal agreement or that they directly, by  words spoken or in writing, stated between selves what their object or purpose was to be, or the details  thereof, or the means by which the object or purpose was to be accomplished . What preponderance of  the evidence must

35

show, in order to establish proof that a conspiracy existed, that the members in some way or manner, or through some contrivance, positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan ( to violate Bayad ' Federally protected Rights granted by the [Congress]). What a preponderance of the evidence in the case must show is that the alleged conspiracy was formed, and that one or more of the means or method described in the complaint was agreed upon to be use in an effort to effect or accomplish some object or purpose of the conspiracy alleged in the Plaintiff Complaints' complaint; and that two or more persons, including one or more of the defendants, were knowingly members of the conspiracy alleged in the complaint. Additionally one Defendant as Chambers may become a member of a conspiracy without full knowledge of all the details of the conspiracy, on the other hand , a person who has no knowledge of a conspiracy; Thus a Fact Finder or Jury may find that a defendant has become a member of a conspiracy, preponderance of the evidence in the case must show that the conspiracy was knowingly formed, and that the Defendant who is claimed to have been a member knowingly participated in the unlawful plain with the intent to advance or further some object or purpose of the conspiracy. The act or participate knowingly means to act or participate voluntarily and intentionally, and not because of mistake, or accident , other innocence reason. So, if Defendant with understanding of the unlawful character of a plan intentionally encourages, advises, or assists, or condones such action, for the purpose of furthering the undertaking or scheme, he thereby becomes a conspirator. One knowingly joins an existing conspiracy is charged with the same responsibility as if he had been one of the originators or instigators of the conspiracy. In determining whether or not a defendant was a member of a conspiracy, the Fact Finder or Jury is not consider what others may have said or done. That is to say, the membership of a defendant in a conspiracy mist be establish by evidence in the case as to his own conduct –by what he him self knowingly said or did; (2) Elements of a violation of section 1985 was that conspiracy had to have the purpose of depriving, either directly or indirectly , any person or class of persons, or the equal protection laws or the equal privileges and immunities under the laws;

In the context of this case there is an intentional racially discriminatory purpose behind the

conspirators action . The conspirator ( such as Defendants), in other words, must aim at depriving

Bayad a minority and protected class in the context of the statue clause of law § 1981 of the equal

enjoyment of rights secured by the law to all person. Therefore Bayad has proven this element of

conspiracy as stated in his complaint ( Dkt.1);    (3) Element  herein proves that the purpose of the

conspiracy was to deprive him of his rights under the law ( The federally protected civil rights ) as

they have done herein ; Defendants Chamber , Savastano, and Wiese,  to fail Bayad for the " eleven

times " (11) to deny him the Cisco Certification  Internetworking Expert,   other White Persons were

facilitate the granting of the CCIE; their act is against their company Cisco Systems' daily Business

or Ethics or  Guidelines and  against the Federal Protected Civil Rights of Bayad, and  directing their

friend and partner of  Cisco Director of Human  Resources Celia Harper-Guerra  to  Broadcast Bayad

' Name  in the  Cisco- No-Hire-List in the Internal Web Site of Cisco accessed by all the Managers

and Executives ( the Policy is like an Electronic  personal file accessible via the internet and secured to

only Cisco High personnel) ;   for their  personal reason and interest of Defendant  Wiese who ' s Job

Offer Letter is pending upon the termination of Bayad ' employment at Cisco, Orchestrated with

Chambers  and  Savastano, Directed the Co-owner and partner the  Sr. Vice President of Cisco

human Resources  Mrs. Kate Dcamp to personally   handle with due care and to supervise the

termination of Bayad ' Employment,    (3) elements that  Defendants refused  to contract or allow

Bayad to conduct Business with Cisco or its partners or Resellers, his company  Global

Internetworking Consulting ;  Further more Defendants and their Counselor Mark Batten and now

Bruce Falby Discriminatory and absent to Bayad,  swear a Trespassing against him,  under

Massachusetts  law person who remains without right, on the property of another commits a

continuing  Misdemeanor, even though Plaintiff is owner of Global Internetworking a partner and

resellers of Cisco Systems; Although Defendants denied Bayad access to Cisco or to any potential

Customers as they have done with potential employers, and therefore Massachusetts criminal trespass

statue does not enable Business ( as Defendants Cisco) to exclude business licenses on discriminatory grounds as they have done here. *M. G. L.A. c.266. § 120*.  (4) element  and final that Bayad was put in poverty and unemployed from 1997 to 1998, destroyed financially unable to pay back to his promissory to the American people the student Loans ( worth over $50,000.00), no retirement to fall on , no family ( Children),  and unemployed for almost 7 years ( 2001- present), and finally was discriminatory disabled from his careers that he loves. (by the defendants chambers) Savastano, and Wiese, the  owners, partners of Cisco Systems.

### COUNT  VI
### BREACH OF CONTRACTUAL OF OBLIGATION
### BUSINESS & EMPLOYMENT  RELATIONSHIP

(Against Defendants, John Chambers, Carl Wiese, & Anthony Savastano)

The complaint alleges Four [4] bases for Defendants ' s breach of contract – One (1) Oral Contract binding in Massachusetts ( in regard of Job offer for the position for North Africa Region); two (2) the selective discriminatory of  Cisco  minority Partners/Resellers ( as admitted in the Cisco Business of Conduct) similar situated as Bayad '  Business the Company *Global Internetworking Consulting*;    And Defendants ' Code of Business guidelines states in part and admit to  as follows:

> "  **Investments in Private Companies**:  Cisco employees will occasionally find them selves in a position to invest in **Cisco partners or customers**. It is imperative that employees presented with such opportunities understand the potential conflict of interest that may occur in these circumstances. Cisco employees must always serve our shareholders first. Investing in companies that Cisco has an actual or potential business relationship with may not be in our shareholders' best interests. The guidelines a re intended to cover such circumstances:  . . . "

three (3)  Defendants Cisco discriminatory selection of minority candidates similar situates as Bayad in the making of the CCIE EXAM that promote non-minority Engineers ever the minorities, with intent, retaliation  deny  Bayad the  grant of the Cisco  Certify Internetworking Expert that other white persons were granted and enjoyed that privilege; And Four (4)  Defendants Cisco '

38

failure to follows its own policy and procedures to protect Plaintiff Bayad form discrimination and retaliation, as it was alleges a cause of action for breach of contract:

The day of his termination Defendants inserted a 40 + drafted pages to Bayad to sign ( against his will) and is sufficient and evidencing of an existing of a contract, and the Cisco Business Code of Ethics and guidelines, also called the personnel manual for permanent employment constitute a binding contract requiring the Cisco ( Defendants ) to discharge an employee in accordance with the written procedure. However, the employee must follow the procedure outlined in the manual to maintain a cause of action for breach of contract. *Dalton v. Herbruck Egg Sales Corp*., 164 Mich. App. 543, 417 N.W. 2d 496 (1987); An employer such Cisco ( Defendants) ' disciplinary policy published in an employee hand book and communicated to all employees ( as herein with Cisco the Business Code of Ethics and guidelines) detailing the progressive procedures to be followed in job termination constitutes an offer of a unilateral contract and becomes enforceable as part of the original employment contract . *Pine River State Bank v. Mettillle,* 333 N.W. 2d 622 (Minn. 1983); and Bayad ' employment with Cisco (Defendants) demonstrated that cited personnel policies from part of his employment contract rather than comprising a unilateral declaration by the employer; An employer can avoid breach of contract claims based upon policy manuals by setting forth clear disclaimers. *Tiranno v. Sears Roebuck & Co.*, 99 A.2d 675, 472 N.Y.S. 2d. 49 ( 1984) Additionally, when Bayad entered in the program of the *Cisco Certify Internetworking Expert*, Cisco required Plaintiff Bayad to enter into a contractual agreement to bind and to follow and was given to him to sign. Also Cisco provided and required Bayad ' owner of his company *Global Internetworking Consulting* to become a partners and reseller for Cisco, *Global Internetworking Consulting* Cisco entered into a contract with set of the rule as required by Cisco (Defendants), ( evidence introduced in the complaint (Dkt.1) and herein of the contractual agreement of Global Internetworking with Cisco Systems. Although Defendants admit that they pick and chose who to promote and who to do business with and absolutely they do not do business with Arabs.

COUNT VII
Wrongful denial of Certification to candidate of Arab race
Against all Defendants

Defendants Disparately failed Plaintiff Bayad for the 11 times, and deny him access to take the test in any administered sited within his County the United States of America, The fact drawn by preponderance of evidence Bayad had to travel to North America Canada, to South America Brazil, and to Europe Belgium. Additionally Defendants denied Bayad any reimbursement of any accrued expenses of the Cisco Certification Internetworking Expert ( " CCIE") even Plaintiff Bayad was employed with Defendants Cisco, and Records shown that other non minority are being treated differently and even though they were given all the test in advance and helped to pass the test the CCIE, designed to favor non minority Engineers over the minority Engineers. Plaintiff can prove his Prima Facie with two elements, Direct evidence as produced herein or using the McDonnell theory: That (1) Plaintiff Bayad is member of a protected class as proscribed by § 1981; (2) he was qualify for the requirement of the Exam ( CCIE); (3) he was denied the Exam ( CCIE) ; and (4) someone of a different race was given the Exam (CCIE). The fact stated above Plaintiff is a member of protected class or group as proscribed by § 1981; (2) The fact drawn from the evidence in his complaint (Dkt.1) that prove Bayad graduated with a GPA approaching to 3.5 out 4.0 and was name 3 time in the dean list during his college years, hold a bachelors of Science in Computer Engineering Technologies, additionally he is High tech Certified by 500 fortune companies as Bay Network/ Nortel Networks, the first certification in the industry and before Cisco , granted him in 1994-95 the Certification at the Expert Level (in similar to Cisco to CCIE was introduced the year 1997)), and Proteon Co. Certify ( 1993-94) (in similar to Cisco) Cyberguard Co Certify ( the year 2001). Additionally Bayad attended all the training ( Courses suggested and required) required to pass the CCIE exam, moreover Bayad attended a two weeks CCIE called the CCIE Boot Camp that guaranty the passing of the CCIE exam, after all the effort and money spent and to this dated ; Defendants are still discriminatory committed to deny the grant of Bayad ' s CCIE Certification. The fact Plaintiff Bayad was qualify and prove

40

his achievement by direct evidence; ( 3) Defendants failed Bayad for the 11 time and did not pay for

any of the Exams Expenses even he was an official employee at Cisco. The fact show other non

minority were granted the CCIE more favorably and were permitted to take the Exam in the United

States at their convenience, provided time and all they need to pass it, also paid for all their expenses.

( 4) Defendants and in particularly grant the CCIE to only non Minorities employees as he did with

Dale Ronowski, Bruce Brewer, Michael Purcel, Greg Gall, and the list goes on and on...]

Therefore Plaintiff ' Prima Facie is established. _do v. Tomes, 54 F.3d 9, C.A.1 ( Mass. 1995); (_

pointed to restriction on physician ' medical license making it impossible for physician to "bump" to

another hospital) . Hence fact introduced herein proving Defendant Chambers' personal involvement

of the granting the CCIE certification and sign personally all the letters to the passing candidates and

personally congradulated them and welcome them for a better future in the High tech Industry.

COUNT I
RACE, ETHNIC, & NATIONAL ORIGIN
IN VIOLATION OF MASSACHUSETTS LAW
(The Post-June Title VII and Mass. Gen. Laws ch. 151 B claims)
(Against Defendant Anthony Savastano and Carl Wiese)

The Post-June 1997 _Title VII_ and _Mass. Gen. Laws ch. 151B_ claims against Chambers is

Dismissed, but against Savastano and Wiese (Executive and owners of Lucent) survived, Because

Savastano and Wiese ( Lucent ) was subject to suit under Title VII. _Floley v. Univ. of Houston Sys._,

355 F.3d 333, 340 n.8 ( 5thCir. 2003); _Holly D. v. California Inst. Of Tech._, 339 F.3d 1158, 1179

(9th Cir. 2003); _Akers v. Alvey_, 338 F.3d 491, 500 ( 6 th Cir. 2003); _Sheridian v. E.I. Dupont de_

_Nemours and Co._, 100 F.3d 1061, 1078 ( 3d Cir. 1996) ( en Banc). Additionally Plaintiff Bayad has

once comply with the requisite of Title VII and the right the Sue Letter was provided, thereafter a law

suit was filed on June 1997 against Defendants Savastano and Wiese (for Lucent Technologies),

docketed in the United State District Court of Fort Lauderdale and was on going ( discovery ,

Deposition , interrogatories, admission etc..) , was pending until the year 2000. Thereafter in the same

year ( 1997- 2000) while the Law suit was pending against Savastano ( Lucent-Wiese), in the same

year Bayad was again working and reporting to Savastano at Cisco in Massachusetts ( year 2000-2001), was discriminated against by the same defendant Savastano and Wiese . Therefore Count I survived against Savastano and Wiese Because:    ( 1) Bayad filed a complaint with the EEOC in Florida and this Court has personal jurisdiction over a defendant Savastano in a violation of Bayad Federally Protected rights case, if Defendant ( Savastano) is within of the Massachusetts long-arm statue, and if the exercise of personal jurisdiction comports with the due process requirements of the Fourteenth Amendment. *Ticketmaster-new York, Inc. v. Alioto*, 26 F.3d 201, 204 (1st Cir. 1994). The Massachusetts long-arm statue provides, in pertinent part, that its Courts may exercise jurisdiction over a defendant ( such as Savastano) if Plaintiff ( Bayad)' s cause arises from the Defendant's " transaction any business in this commonwealth." (Lexington Mass, Boston Mass). *Mass. Gen Law ch. 223A, § 3(a)*. The "transacting any business" requirement is broadly construed. *Tatro v. Manor Care, Inc.*, 625 N.E.2d 549, 551 ( Mass. 1994).    (2) And Bayad Filing with EEOC in 1997 and proceeded with filing a Law suit that was pending from 1997 until 2000, and Bayad was again discriminated against (in 2000-2001 to present) for the second time by the same Defendant Savastano , in violation of Title 42 § 704 (Title VII) time limitation has no barring in this case. (3) And filing with EEOC demand the same requirements and is automated with Massachusetts Commission Administration of Discrimination ( MCAD) division , and the administration requirement required the filing on either of the two (2) administrations ( the EEOC or MCAD), thus the filing with the Equal Employment Opportunity Commission ( EEOC) is considered at Federal level and required and provide the same remedies as the State level. Then Count I survived and summary judgment denied.

42

<u>ARGUMENT</u>

Plaintiff Bayad Pro Se herein argue as stated in the complaint ( Dkt.1);  when an Employer  as Defendants Cisco , at different times , gives different and arguable inconsistent explanations for  terminating him , Jury may infer that articulated reasons are pretexts for race discrimination  filed herein. *<u>Dominguez-Cruz   v.    Shuttle Caribbean , Inc</u>.*   202 F.3d 424, 431-32, ( 1st Cir.);   (Defendant Inconsistent or Changing Explanations) .  Prior the litigation the Defendants Cisco told  Plaintiff  Bayad that his employment was terminated as a result of the Economy factor the wall street lost and the Cisco shares dropped, then during  the litigation and in,   and,   before this Honorable Court evidenced on the Record during the Pre-trial Hearing and digitally  recorded  before this Court  presiding the   Honorable Chief Magistrate Bowler, on February 7, 2005,  Counselor for the record Bruce E. Falby  for the Defendants Chambers et, al.  argued and Stated That ( the proffered reason) Defendants  is rational by terminated Bayad' employment with Cisco with two other none minorities ( two white Persons), but  he did not  argue nor did he  state anything of the  cause was the economy,  thereafter  during the short discovery,  Counselor for  Defendants  Chambers et, al. Bruce E. Falby, introduced a Cisco document evidencing the real proffered reason of Bayad ' termination, Third time [3] was  the result  of Re-Organization Plan, also he used interchangeably the  word Restructuring  and the word Re-org, the real cause of  Plaintiff 'termination of his employment with Cisco the Defendants, and not the Economy and not the statement of two [2] non-minorities ( two white co-workers).  Thus the fact drawn herein with the support of  preponderance  of the evidence introduced  for the fact finder,  that  at different times defendants have given different  and  arguable inconsistent explanations for  terminating the employment of Plaintiff Bayad Cisco , and it is a  prove that articulated reasons are thus  a reason of a race discrimination of employment. *<u>Roge     v.   NYP Holding</u>*,  Inc., 257 F.3d 164, 170 (2d Cir).  Defendants ' counselor various Explanation and statements and  records and exhibits herein, Defendants attempt to conceal its true reason for taking the challenge action ( which can be considered) . *<u>In Reeves   v.   Sanderson  Plumbing  Products, Inc</u>.*,

43

530 **U.S.** 133, 147-49 (2000).  The Supreme Court states :

> " that proffering a false reason for the challenged action would ordinarily support the inference that the real reason was unlawful, and such a proffer may be made in the Defendants ' origin explanation to the Plaintiff, in its position statement to the (EEOC) or other enforcement agency, in its responses to discovery , in its pretrial Court Filing, or in its efforts to confuse the Jury during opening  or closing statements. In none of these situations is the Plaintiff barred from relying  on the employer's deceit unless the employer attempts to repeat the deceit in the evidence it offers at trial.  Nowhere in the law is there rule that a liar suffers adverse consequences only if he or she repeats the lie in court."

 In similarity, _Horwitz   v.   Board of Education of Avoca School District No. 37_,260  F.3d 602, 614-15 (7th Cir.); Also _Cardenas     v.  AT&T Corp_., 245 F.3d  994, 999 ( 8th Cir.), and _Santiago-Ramos  v. Centennial  P.R. Wireless  Corp._,  217 F.3d  46, 56 (1st Cir.).  Additionally Most of the arguments stated in Defendants 'Summary Judgment misstate the law in the  Defendants ' favor ( thereby, directly  prejudicing the Plaintiff proceeding Pro Se). It is easy to win a  case when you can change the law by  simply asserting arguments or defense or tweaking the  statements and the law, which provides more  protection than the law currently allows, this doe not  mean, however, that they can insert a summary  judgment but without a  proper time allowed for discovery as proscribed by Federal Rules of  Civil Procedures .  And Defendants will not be prejudiced by allowing the completion of discovery as  matter of law in his litigation.  Additionally Defendant  defense admit that there is  a "Fire" (disputed facts) in this  litigation but there is  "no Smoke"  ( pretending no disputable facts), thus  the smoke is only coming from the "Smoking Gun" , [t]he weighting of the evidence , and drawing of legitimate inference facts in the light most favorable of the nonmoving party Bayad; thus Defendant did not introduced of any admissible evidence , the reason for its adverse action, and that reason must be legally sufficient to justify a judgment for Defendant , unfortunately they failed to carry its burden by producing evidence of legitimate, nondiscriminatory reason for its action and therefore summary judgment is precluded herein and  full course to trial by a jury is mandated. Moreover they have demonstrated during this litigation by even refusing  to comply with the Rules of law and this include

the Massachusetts law , the access to Personnel Records ( law) [e]mployers in Massachusetts are required to provide employees with an opportunity to review their personnel records  and the relevant law is Codified in general laws of *the Commonwealth law of Massachusetts at Part I , Title XXI, Chapters 149, section 52 c.*

## CONCLUSION

In *Santiago-Ramos     v.   Centennial  P. R.  Wireless Corp.*, 217  F.3d 46, 56 (**1st** Cir.); *Graham     v.    Long Island Rail Road*,  230 F.3d 34, 38 ( 2 d Cir), The Court states :

"Summary Judgment is paringly used intent and state of mind are at issue . . . because, as we emphasis, careful scrutiny of the factual allegations may reveal circumstantial evidence to support the required  inference of discrimination." More over this discrimination case where intent and state of mind in  dispute Summary Judgment is ordinarily inappropriate- District Court should exercise caution when granting summary to employer, where , as here, its is a genuine factual issue. *Carlton v.  Mystic  Transportation , Inc.*, 202 F.3d 129, 134 ( 2d Cir.). However the Court " must also careful distinguish between evidence that allows for a reasonable inference of discrimination". *Bckerstaff    v.   Vassar College*, 196 F.3d 435, 448 ( 2d Cir);  See also *Straughn    v.   Delta Airlines, Inc.*, 250 F.3d 23, 33 ( 1st Cir. 2001), This honorable  Court states:  " Caution must be exercised in particular before [sustaining] Summary judgment[s] for employers on such issues as pretext, motive, and intent. And  viewing the aggregate package of proof offered by Plaintiff ( Bayad *Pro Se)* taking all inferences in the Plaintiff (Bayad )' favor, he  (Bayad) has raised a genuine issue of fact as to whether the termination, ( retaliation, conspiracy,  disparage (intent) treatment),  infliction of emotional distress,  Breach of contract, and in  deny him the  grant to the Cisco Certification Internetworking  Exam ("CCIE") ), was motivated as proven herein by  race discrimination**.**"

» *Title  42 § 1981, § 1985, § 407 (of Title VII).*   Therefore  **§ 1985 has**  survive as  it founder parent **§ 1981** has survived and Summary judgment is denied.  Plaintiff Bayad *Pro Se* pray to this Court to grant him his statutorily right the 7th amendment of the U.S. Constitution of our land and declare Defendants in violation of his right and to let him go back to work as descent human being.

ANTHONY BAYAD, PRO SE

2 Magoun Avenue
Medford, MA 02155
Telephone (781) 704-8982

_Anthony Bayad_

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that a true and correct copy of PLAINTIFF OPPOSE TO DEFENDANTS SUMMARY JUDGMENT (AS PREMATURE) WITH SUPPORT BY PREPONDERANCE EVIDENCE AND WITH MEMORANDUM OF LAWS AND WITH FEDERAL RULE OF EVIDENCE  [404]   AND CIVIL PROCEDURE  [56 (F)]   TO PERMIT FURTHER DISCOVERY BY THE OPPOSING PARTY, DEFENDANTS CHAMBER ET, AL. was furnished via U.S. mail to : Bruce E. Falby BBO #544143, PIPER RUDNICK GRAY CARY LLP , One International Place, Boston MA 02110,  this . 9 . day  of  March,  2005.

ANTHONY BAYAD, PRO SE
2 Magoun Avenue
Medford, MA 02155
Telephone (781) 704-8982

_Anthony Bayad_