## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSSETTS

FILED
IN CLERKS OFFICE

2005 MAR -9 A II: 27

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | | |
|---|---|---|
| ANTHONY BAYAD, | ) | |
| | ) | |
| | ) | **CIVIL ACTION** |
| Plaintiff , | ) | |
| | ) | |
| | ) | **CASE NO. 04-cv-10468-GAO** |
| | ) | |
| JOHN CHAMBERS, PATRICIA | ) | |
| RUSSO, ANTHONY | ) | |
| SAVASTANO and CARL | ) | **JURY TRIAL DEMANDED** |
| WIESE, | ) | |
| Defendants, | ) | |

## PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT'S SUMMARY JUDGMENT (AS PREMATURE) WITH SUPPORT BY PREPONDERANCE EVIDENCE AND WITH MEMORANDUM OF LAWS AND WITH FEDERAL RULE OF EVIDENCE [404] AND CIVIL PROCEDURE [56 (F)] TO PERMIT FURTHER DISCOVERY BY THE OPPOSING PARTY, DEFENDANTS CHAMBER ET. AL.

I.    ***Pro Se* Statement** (due diligent)
     *(Americans have seen a steady expansion of "due process" until it has become "unending process," with the only winners being the lawyers)*

     *Pro Se* Complaint or Motion ( Herein) must be held to less stringent standard than

formal pleadings drafted by attorneys. *Bach v. Scott*, N. D. Ill. 1973, 357 F.Supp.1125. And this

Court should endeavor to construe *Pro Se* complaint for protection of Civil rights with utmost

liberal reading and interpretation , and without regard to technicalities. *Gale v. Wagg*, E.D.

Mich.1956, 140 F. Supp. 6. See also *Stambler v. Dillon*, S. D. N. Y. 1969, 302 F. Supp. 1250.

Additionally United Supreme Court recognized that natural person ( such as Bayad) have a right to

represent him self, which is described as " a basic right of free people". *Faretta v. California*,

422  U.S. 806, 95 S. C. t. 2525, 45 LE. d 562 ( 1975).

The Old Testament is clear that **God loves justice**. From Moses to David to Isaiah, the giants of the Old Testament reflect this: Jesus carried forward the prophets' justice theme in his ministry on earth. In the Sermon on the Mount, **Jesus twice refers to justice.** In Matthew 5:6, he says, "Happy are those who hunger and thirst for what is right." And in verse 10: "Happy are those who are persecuted in the cause of doing right."(Justice we shall pursue)

1

the American Bar Association ( ABA) fact finding shows that when a person situated as

Plaintiff *Pro Se* Bayad cannot access the civil justice system he or she typically does one of two

things, " take no action at all " ( as Bayad have done in Florida ( justice miscarriage) )( 38% low

income, 26%moderate-income) or " handle by own initiative outside of Civil justice" ( 41% low

income, 42% moderate-income ). These results seem unacceptable and unjustifiable when the

professed goal of the American Legal system is " Equal Justice for all, ( as defined by the Scale of

Justice of this Court set forth by its Honorable Judge(s) and Magistrate ( s) and Clerk (s)) and as

defined by Lady Scale of Justice, The figure of " a Blindfold ed women with a scale in one hand

and a sword in the other " demonstrates that we are dedicated to treating all Americans with

fairness, equity and in a manner that is right. Such a figure implies that the imposition of justice will

not be affected by demographic characteristics such as race, social class, or even gender. In essence,

according to the myth of *Justitia* and in this Court every one deserves equal justice : " *Justitia* is

blinded so that she may be impartial."

## II. **Standard of Review**

Summary Judgment is appropriate when " the pleading, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56

( c). A party seeking summary judgment must make a preliminary showing that no genuine issue of

material fact exists. *Nat' l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir.

1995), cert. denied, 515 U.S. 1103 ( 1995). Once the movant has made such showing, the nonmovant

must point to specific facts demonstrating that there is, indeed, a trial worthy issue .

An issue is " genuine " if a reasonable jury could return a verdict for the nomoving party.

Anderson  v. Liberty Lobby, Inc., 477 U. S. 242, 248, 106 S.C.t 2505, 2510, 91 L.Ed.2d 202 ( 1986).

The fact is " material " if it has the " potential to affect the outcome of the suit under the applicable

law. " *Santiago-Ramos v. Cential P. R. Wireless Corp*., 217 F. 3d 46, 52 ( 1st Cir. 2000) , and a

2

" genuine " issue is one supported by such evidence that " a ' reasonable jury, drawing favorable inferences, ' could resolve it in favor of the nonmoving party.' *Triangle Trading Co., Inc. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 ( 1st Cir. 1999) ( *quoting Smith v. F.W. Morse & Co.*, 76 F.3d 413 , 428 ( 1st Cir. 1996) ). Summary judgment is "appropriate" when, after adequate time for discovery, the nonmoving party cannot establish an essential on which it bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 323, 106 S. Ct. 2548, 2552-53, 91 L.E.d.2d 265 ( 1986). " In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case renders all other facts immaterial." See also *Ealey v. Champion Int'l Corp.*, 907 F.2d 1077 ( 11th Cir. 1990). In considering the motion, the Court must construe the evidence and the interferences drawn from the underlying facts in the light most favorable the nonmoving party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed. 2d 176 ( 1962).

> " [T]he weighing of the evidence, and drawing of legitimate inference from the facts are [trier of fact] function, not the opinion of an attorney.... who may influence the ruling on the motion for summary ( as they have done with Discovery). . . The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor. . . . Nor do we suggest that district Court should act than with caution in granting summary judgment or that the district Court may not deny summary judgment in a case where there is reason to believe that the better course would be to proceed to full trial."

Furthermore, facts asserted by the nonmoving party opposing a summary judgment must be regarded as true when it is supported by affidavit or other evidentiary material. *Coke v. General Adjustment Bureau, Inc.*, 640 F.2d 584, 595 ( 5th Cir. 1981) ( quoting 10c Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure, § 2727 at 524-30 ( 1973)). Indeed, a district Court must be <u>cautious</u> with employment cases, since in the absence of direct evidence of discrimination, motivation and intent must often be decided though the use " circumstantial evidence " which can raise conflict inferences, a task peculiarly within the province of the Jury. Nevertheless, despite the subject matter of the case, summary judgment allows the just inexpensive resolution of controversies, where based upon the substantive law and the evidence, a reasonable jury could not find a verdict for the nonmoving party.

3

**III.**    **Analysis**

> A. Count VIII  Reconstructed Era Civil Rights Act  Claim of  tile 42 U.S.C § 1981, Against all the Defendants Chambers, Savastano, &  Wiese (Partners/Owners of Cisco Systems)

In employment discrimination cases, the plaintiff ( such as Bayad) continuously bears the burden of proving that unlawful discrimination was a determinative factor in the defendant's employment decision. The Plaintiff has the initial burden of establishing a *Prima Facie* case of discrimination by a  history of discrimination actions, intent  or motive;  such factors as departure from  normal procedures , history of discriminatory actions, and disparate impact upon racial plaintiff or similar protected group ( *Israeli, Arab Jews, Arab Christian, Haitian,  Lebanese, Libyan,  Tunisian, Egyptian Moroccan , Spaniard, etc.…*)  is considered as evidence of discriminatory intent in suit to establish an employment discrimination claim.   *Blair    v.    Philadelphia Housing authority* Ed. Pa. 1985, 609 F. Supp. 276.    And by  establishing a *Prima Facie case* of discrimination by a  preponderance of  the evidence.  *Texas Dept. of  Community affairs v. Burdine*, 450 U.S. 248   ( 1981 ).    A plaintiff can present a prima facie case of discrimination by : (1) showing direct proof of discrimination  [1]  ; (2)  satisfying the scheme for circumstantial evidence of discrimination  established by *McDonnell Douglas Corp  v.  Green*, 411 U.S. 792 ( 1973); or     (3) demonstrating , though history , pattern, or statistic  of discrimination.  *Cruz-Ramos   v.   Puerto Rico Sun Oil Co.*, 202 F.3d 381,385 (1st Cir.2000).   In this case, Plaintiff ( Bayad) has presented in light of the  restriction barred on him in conducting  discovery in pursue of his statutory right the  *7th  amendment  U. S Constitution*,   and the Federal Rule of Civil Procedures in Particularly Rule 16, and 26 (discovery is automatic), was halted with prejudice ( in different  context) by Defendants and their  Army of Lawyers ( the Firm of *D LA Piper Rudnick Gray Cary* with  one Billion Dollars in  Revenues and with strong Lobby with the Legal Communities and Politicians);

.  _____  .

---

[1]      Direct  evidence is evidence sufficient to prove discrimination without inference or presumption. *Santiago-Ramos v.  Centennial  P. R.   Wireless Corp.*, 217  F.3d 46, 56 (1st Cir.). In light of the forgoing Plaintiff has managed to produce herein by preponderance of

evidence to establish his accumulative of allegation set forth in his complaint (Dkt.1) that established the prima facie theory, whether this Court will pursuit or analyze the plaintiff ' claim using the McDonald Theory or just relaying on plaintiff direct evidence for his claims set forth in his complaint of the wrongful acts of , retaliation, disparage treatment, denying promotion, transfer, re-hire, impact, wrongful -termination, harassment , defamation, false imprisonment, and in denying access to Business or grant certifications, proven by preponderance evidences outweighed as scale of justice required by law, and it is accompanied (evidences) simultaneously herein with the Plaintiff ' Motion opposing Defendants ' Summary Judgment, this evidences will give the fact finder the motive and the intend and the history of the Past ( Defendant Savastano et al.,( including Wiese) with Lucent Technologies, Florida ) and at this Present time ( Chambers et al., including Savastatno again with Cisco Systems, Massachusetts) of the outrageous unlawful act of race discrimination orchestrated and executed intentionally upon Bayad by defendants in two occasions with two different company at to separate States, for the sole intend and motive because Bayad is a U. S Citizen Native of Morocco ( Race Discrimination).

VI.    _McDonell Douglas_ Standard ( theory)

Plaintiff Bayad _Pro Se_ claims Defendants Chambers et, al., discriminated against him on basis of race in violation of Title 42 § 1981 and Massachusetts Civil Act which led to his constructive discharge with Lucent Technologies ( Florida) and now Cisco Systems ( Massachusetts). The analysis applied to cases under § 1981 is the same as applied in Title VII cases. _Roxas    v.    Presentation College_, 90 F.3d 310, 315 (8th Cir. 1996).    _Brown  v. American Honda Motor Co_., 939 F.2d 946, 949 ( 11th 1991), cert. denied, 502 . 1058, 112 S.C.t. 935, 117 L.E.d.2d 106 (1997). Therefore, if the court decide to pursue in analyzing the Plaintiff claims under the _McDonell Douglas_ standard;    And under the _McDonnell Douglas_ Standard of proof, a plaintiff must first establish a _Prima Facie_ case of intentional discrimination. _McDonnell Douglas_,    411 U.S. at 802. if the plaintiff meets this burden, there is a presumption that intentional discrimination has occurred.

Burdine,  450 U.S. at 254 ;  See *Fernandes v. Costa Brothers  Massonery, Inc.*, 199 F.3d 572, 584

(1st Cir.), in section C, 10,  See also *White  v.  New Hampshire  Department of Corrections*, 221 F.3d

254, 262, (1st Cir. 2000);     See also *Cruz-Ramos  v.   Puerto  Rico Sun Oil Co*. 202 F.3d 381, 384

(1st Cir.). Thereafter, the presumption raised by the Plaintiff's prima Facie case may be rebutted by

the employer's articulation of a legitimate, nondiscriminatory  reason for its adverse employment

action. Burdine, 450 U.S. at 253.   Although the employer's burden at this stage is one of production,

and not persuasion, and  thus not onerous, the burden cannot be met by mere formality.    *Walker v.*

*Mortham*, 158 F.3d 1177,  1184 ( 11st Cir. 1998).  Instead " [t] he  defendant must clearly set forth,

through the introduction of admissible evidence," the reason for its adverse action, and that reason "

must be legally sufficient to justify a judgment  for defendant." Burdine, 450 U.S. at 255.    If the

Defendant carries its burden by  producing evidence of legitimate, nondiscriminatory reason for its

action, the presumption of discrimination raised by Plaintiff *Prima  Facie* case falls away.   Leaving

the plaintiff with Burden of persuading the fact finder that the  employer' articulated reasons are a

pretext for  discrimination. Burdine, 450 U.S. at 255. if the plaintiff fails to demonstrate that the

defendant's reason was but a  pretext for discrimination – not credible or was not real basis for its

decision, then judgment must be entered in favor of the defendant. *Mauro  v.   Southern New England*

*Telecommunication*, Inc., 208  F3.d 384, 387-88 ( 2d Cir.); See also *Cruz  Ramos  v.   Puerto Rico*

*Sun Oil Co*., 202 F.3d 381, 385  (1st Cir.) ; See        *Arrington  v.  Cobb County*,139 F.3d 865, 873

( 11th Cir. 1998) ( citing Burding, 450  U.S. at 252-53, 101 S.Ct. at 1093).

However , a plaintiff 's proof that Defendant reason should be disbelieved coupled with elements of

his prima Facie case raises an inference of intentional  discrimination to defeat a summary judgment

motion .    *Mary 's honor Center    v. hicks*, 509 U.S. 502, 511 ( 1993);    *Combs  v.  Plantation*

*Patterns*, 106 F. 3d 1519 ( 11th Cir. 1997). See also *Fernandes    v. Costa Brothers Massonry* , Inc.,

199 F.3d  572 , 584 n.4 ( 1st Cir); Also see *Smith    v.  Davis,* 248 F.3d 249, 251, ( 3d Cir. 2001).

Therefore the weighting of the evidence,  and drawing of  legitimate inference from the facts are [tier

of fact] function and the evidence of nonmoving is to be believed, and all justifiable inferences are to

be drawn in his favor by tier of fact and not by the Attorney.( an opinion of an attorney of record is

not a record set in Federal Proceeding in this Court.)

V.      Plaintiff '*Prima Facie* established   Count  VIII – Title 42 § 1981( Wrongful Termination)

1.      First (1) Phase of *Prima Facie* Established

        Hence *Pro Se* Plaintiff Bayad has proven his *Primary Facie* case of racial discrimination in

employment against defendants Chambers, Savastano, and Wiese, as Plaintiff Bayad prove:

(1) he is member of a protected class as proscribe by § 1981;    (2) he was qualified for the job which

he was discharged;      (3) he was discharged;        And (4) someone of a different race was given the

position. *Brennan   v.   Metropolitain Opera Association, Inc.*, 192 F.3d 310, 316 ( 2d Cir. 1999);

See  *Freedman   v.   MCI Telecommunication Corp.*, 255 F.3d 840, 843  ( D.C. Cir 2001).

The fact stated in Plaintiff ' complaint and record submitted herein , has proven and has established

that he is member of a protected class ( or group) as proscribed by [ § 1981],   Bayad is a United

States Citizen native Moroccan and Citizen of the Commonwealth of Massachusetts.  In similarity

*Shaare Tefila Conngregation   v. Cobb*, 481 **U.S.** 615, 107 S.Ct.2019, 95 L.E.d2d 594 ( 1987).

The Supreme Court reversed and concluded that *Jews* (as well as *Arabs*) were among the people that

[Congress] then considered to be distinct races and hence within protection of the statues [§ 1981].

See also *Sinai ( Pro Se)   v. New England Telephone and Telegraph Company* , 3 F.3d 471 ( 1st Cir.

1993), cert. denied, 513 U.S. 1025, 115 S.C.t. 597, 130 L.Ed. 2d 509 ( 1994).   In Plaintiff *Pro Se*

similarity The  Massachusetts appellate Court upheld the verdict, ruling that a jury could find that

Israeli national origin in which populace is composed primarily of a particular race as *Israeli* (in

similarity as *Moroccan*) considered within the protective group within the protection Clause [§1981],

also *MacDissi   v. Valmont industries, Inc.*, 856 F.2d 1054 (8th Cir.1988) discrimination on basis

of Lebanese descent has been prohibited by [§ 1981].    In similarity  *Nieto v.  United Auto work*

*workers Loca*l 598, 672 F. Supp. 987 ( E.D.Mich. 1987), § 1981 applies to claim based on Mexican on

Mexican Ancestry but not fact of Plaintiff 'birth; Also *Quintana v. Byrd*, 669 F. Supp. 849 (N.D.

L11. 1987) (Discrimination on basis of Hispanic Ethnicity, but not country of birth is proscribed

racial discrimination).  ( 2) By preponderance of Evidence introduce  in his Complaint and herein,

Bayad has proved that he met the employer' legitimate performance  review and it expectations and

performed his jobs satisfactorily, in fact Bayad ' Cisco Director Sigrund Shoemaker and his Cisco

Manager Lynn Fraser rated Plaintiff Bayad ' Job Performance a  Scale of Letter E ,  means employee

is Successful meets and  Exceeds all key  performance  expectations, additionally they ( Bayad'

Cisco Director and Manager) are mandated and required  to insert their input summary as quoted :

> " Anthony is very dedicated to Customer satisfaction. He works hard and is very conscientious
> . . . Anthony has been mentoring a former Strata-Com Engineer who is working hard to cross-
> train on LAN technologies. Anthony has been an integral part of the Engineer's success, who
> is constantly giving me positive feedback on Anthony' mentoring and reasoning capabilities. . .
> he is also very impress with Anthony' s technical capabilities. . . Anthony is clearly a Team
> Player. He is very supportive of his Team, and encourages other's success. . . I would like to
> See Anthony gain Better understanding of the Team's goal and Objectives. I realize he is
> putting all his efforts on passing the CCIE exam, but I think this would increase his overall
> contribution to the team. Technical Expertise is very important for an Engineer, but they also
> need to e able to correctly handle the day-to-day Team requirements as well. Anthony has not
> always been successful at this, but he is working to improve."

Hence Plaintiff Bayad has been successful at meeting his performance objectives and  clearly

performed in an exceptional manner  accordingly to the rating of his Manager and His directors.

And before Bayad Being spotted October 16-20, 2000 (direct evidence herein) By Defendant

Savastano ( as stated in the Complaint), his friend  ( Savastano and Chamber' friendship  goes way

back to their employment with Wang Laboratories)    the President of Cisco Defendant Chamber

sent  a letter to Bayad on August 21, 2000 addressed to his Home address begin with Dear Anthony

(formality Mr. Bayad) and signed personally by him (Chambers) and  by Bayad ' Manager also

wrote on top of  the page with her hand writing " Congratulation Anthony ! ( sign)---Lynn" . .... and

Chamber' s letter to Bayad state the following :

8

" ...I want to <u>congratulate</u> you on our 42nd quarter of consecutive revenue and earnings growth which was the strongest quarter and year-over-year growth . . .. Your individual contributions have played a significant role in making year 2000 a success. As a result, you ( Anthony) will be receiving a Cisco Incentive Plan ( CIP) <u>bonus</u> for $5, 858.05 in recognition of your accomplishments this past year. You ( Anthony) will receive your bonus via direct or, if you do not have direct deposit, via mail to your home..."

Therefore Bayad established his *Prima Facie* and provided to the fact finder by preponderance of Evidence that he performed his duty and task as defined by his job description for the Cisco Project Engineer that he was hire for it; And even the Plaintiff' Manager wanted Bayad to performed another task outside of his duties ( not within his job description ) such as becoming and performing a Project Manager function that constitute a new Position and a new responsibility ( Cisco Customers usually involve Professional Services as billable hours for their critical Project from Cisco , the standard :1) Project Manager called by Cisco "the Pretty Boy with good English or a player with Golf skill" – 2) [and] a Project Engineer highly Technical person also called by Cisco the " Bombay ( for India) Guru Boy or Green Card ( for resident alien statue) " ). Fact shows Bayad was shoveling between his primarily duties and assignments and passing the CCIE Certify exam . In fact Bayad did comply with his Manager recommendations of becoming also a Project manager ( Project Engineer and Project Manager are two different tasks and absolutely not a job Promotion in that context , it is just a change of duties and tasks) , and pursue that route as his Manager stated above :" Bayad is working to improve". Requirement of Prima facie (2) is established. *Feliciano De La Cruz v. El Conquistador Resort and Country Club*, 218 F.3d 1, 5 ( 1st Cir. 2000); *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 54 (1st Cir. 2000). See also *Landrau-Romero v. Banco Popular de Puerto Rico*, 212 F.3d 607, 712-13 ( 1st Cir. 2000). ( 3) Bayad was discharged in the contest of Laid off as pretext that the sole reason is the economy. Bayad prove that he was qualify for the position that he held, met the Employer' legitimate performance expectations, and that his employer ( Defendants) treated similar situated employees who were not in the protected class more Favorably. *Maarouf v. Walker Manufacturing Co.*, 210 F.3d 750, 752 (7th Cir. 2000),

and adverse employment action , and circumstances giving rise to an inference of discrimination.
*Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 567 ( 2d Cir.).      And (4) circumstances supporting an
inference of discrimination –is an evidentiary standard, not a pleading required. 411 U.S., at 800.the
fact drawn that Bayad was replaced by someone with similar skills and qualification. *Lewis    v.*
*City of Boston*, 321. F.3d 207, C.A.1 ( Mass. 2003); Bob Tracy a white person whom Plaintiff
was cross- training in order to meet the expectation of his Job description  and his duties required by
such position  the Project Engineer, and Mike Illpolito another white person  also Bayad was cross
training to bring him to the similarity position and confidence in order to handle  the high demanding
Cisco Customers for the Position that Cisco hired  him for it,  the Project Engineer as Bayad. And
there are more names  to stated that Plaintiff will leave to the Trial day. *Stalter v. Walmart Stores,*
*Inc.*,  195 F.3d 285, 289  (7th Cir 1999);    Also *Rice-Lamar    v.    City of Ft.    Lauderdale*,
232 F.3d 836, 842-43 ( 11 th Cir. 2000);   The Court States: " the firing of a qualified and skilful and
technically competent and well educated  minority employee (such as Bayad) raises the inference of
discrimination because it is facially illogical for an employer to  randomly fire  ( in absence of any
wrong doing or of any act of  any violation of Company Business Ethics or guidelines such as Cisco )
an otherwise qualify employee and thereby incur the  considerable expense and loss of production
associated with hiring and training a replacement" . *Perry v. Woodward*, 199 F.3d 1126, 1135 (10 th
Cir. 1999);    See *Crapp   v.   City of Miami Beach*, 242  F.3d  1017, 1020 ( 11th Cir 2000).
 In addition Bayad was the sole person of protected group (Minority) in his department or group at
Cisco Systems ,    was  incrementally in demand  than other in the same situated   Position as his , the
Project Engineer,  in term of Time Utilization  called  Billable Hours to Cisco Customers and to the
employer Defendants Cisco . Bayad is providing by  preponderance of evidence of the time sheet
called by Cisco Time Tracker herein. *Landrau-Romero    v. Banco Popular de Puerto Rico*, 212 F.3d
607, 712- 13 ( 1 st Cir. 2000).   See also *Cable v.   Lvy Tech State College*, 200 F3.d 467 ( 7th Cir.
199) in similarity to Bayad case stated :    "In the context of a reduction in force, where employees are

laid off and replaced, a Plaintiff must establish that    (1)    he is member of a protected class;

(2)    He was  adequately performing his job;    ( 3) he was laid off in a reduction in force; And

( 4) employees outside the protected class were treated more favorably.  ”  In essence accordingly

with *McDonnell*  test and drawing of legitimate inference from the facts [tier of fact] function,

Plaintiff met his Burden of proving by Preponderance of Concrete evidence the first phase of his

*Prima Facie* is  established.  Also see *Tatom    v.   Georgia- Pacific Corp.*, 228 F3.d 926, 931,

( 8 Cir. 2000).  In similarity in the case of  *O' connor    v.   Consolidated Coin Caterers Corp.*,

517 U.S. 308, 312 ( 1996),    The Supreme Court Held that  Plaintiff only needs to show race

discrimination as factor.  (*[Hypothetically]* to  assume for the convenience of the fact finder that

Defendants Cisco replaced Bayad By Spanish or Israeli( not Arab/race) or an Indian ( Bombay  Asian)

or Bangladeshi ( India Asia), Spanish , African or  even  African American). The Court  States :

“The fact that one person in the protected class has lost out to another person in the protected class is

thus irrelevant , so long as he lost out because of  his race.” (Defendant Cisco ‘pretext of Bayad

termination  will survive [ if ] and [only] such  person is a Moroccan or Lebanese or Arab Jewish,

Arab Christian, or Egyptian …, or  Arab descent ( any Arab of Religions  ).

## VI.    **Direct Evidence**

A.             Count VIII Title 42 § 1981 against  Chambers & Savastano
               (“Policy Cisco-No-Hire-List” Race Discrimination in transfer/hire/deny opportunities)

1.             Factual background

(Refer to page/paragraph ¶¶17, 88 of the complaint Dkt. 1),  On about November 2nd of the year 2000

just before being wrongfully terminated by Defendants Chambers et, al. with Cisco Systems . Bayad

applied for the position of Systems Engineer for North Africa Region with Cisco Europe Shared

Middle East Africa, because Bayad aptitude to speak the Language of English, France, Arabic , and

the North African dialect , in addition of  his educational and technical background,   this include

his requirement of being with the company accordingly to the time permitted for a Cisco Employees

to transfer ( 3 to 6) months of employment,    is allowed according to Cisco Europe Manager(s),

who proceeded with the interview process, and Bayad was considered mainly because Cisco did not

have an Office in North Africa ( Morocco, Tunisia, and Libya) and for his familiarity of the region

in term of the laws and business requirement and contact (s) of North Africa, was considered for

multiple sets of phone of interviews. The manager (s) were very impressed and decided to meet with

Bayad in person in 3 countries, United Arab Emirates ( Dubai), France ( Paris), and England

( London). And the interviews went well and the Arab Managers , the France Mangers, and The

British Manager provided Bayad with "verbal Offer" and proceeded with the Transfer Process. See

*Boothby v. Texon, Inc.*, 414 Mass. 468, 608 N.E.2d 1028 (1993). (an oral contract for permanent

Employee (as Bayad) is enforceable and is not barred by the Statue of Fraud). Upon Bayad return to

the States he was denied - advised with regret that the Decision was standing at Corporate. All the

European Managers Backed up and only the Arabs Manager(s), who spent considerable money and

effort for benefit of Cisco Systems to add a skillful Engineer (Bayad) to compete against other

companies presence in those region. On November 29, 2000 (week Later) the Arab Manager(s)

provided and informed Bayad that a Cisco Executive based out of San Jose classified and Broadcast

him in a secure website within Cisco, only Cisco Executives as Defendants and Hiring Manager[s],

have access to it. Defendant Savastano intentionally with racial motive and for his personal agenda

and for his racial belief as he has done in Florida Lucent Technologies , acted out side of his scope of

duty within Cisco ( one of the owner) and in violation of the law and his own Cisco Business Ethics

and guidelines, Classified, Broadcasted, and positioned Bayad 'name in the Titles the Cisco Sensitive

List called Cisco-No-Hire-List stated as Follows:

" ***        Do not hire/transfer/promote Anthony Bayad Cisco Employee # 73799        *** . . . .

Should you have question, contact Savastano.."    It is a shame that the list contains Cisco Agent and

Representatives in constant communication with Companies Employers (Cisco Partners/Resellers),

who will and could hire Bayad ( also Potential employer ), who has not worked for about 7 years.

And the List also contains 100 to 1000 Minorities-- Protected class within the Context clause of §

1981 not to be hired as Bayad, Classification based on race and gender is a Constitutional Right

violation by Defendants,   whom are owners of Cisco Systems.  The Cisco-No- Hire-List is docketed

before this  court as Exhibit 8 and it will be provide herein as a soft copies and hard copies for the fact

finder to  draw  legitimate inference from the fact [tier of fact] as justifiable inference is to be drawn

in  Bayad ' favor.

B.      Direct Evidence prove discrimination without inference or presumption, Count VIII Tile
        42 § 1981 against Chamber & Savastano (Discrimination in transfer and hire)

2.      The Second ( 2) Phase of *Prima Facie* Established

        Plaintiff Bayad' direct evidence ( Cisco-No-Hire-List ) is evidence of discrimination animus

introduced herein and with the accordance with *Fed. R. Evid.* 803(6),   within records of regularly

conducted activity of Defendants owners of Cisco; And this Court generally have admitted computer

Records upon showing that the Records ( Cisco-No-Hire-List Defendants' Policy) fall within the

Business Records  Exception.   *United  States  v.  Moore*,     923 F.2d 910, 914 (1st Cir.).

In essence with  the accordance of the  Federal Rule of Civil Procedures  Rule  **16** ,  Rule **26**, Rule

**34**  , and Rules of practices and Procedure of the Judicial Conference of the United States ( August

2004). As proposed in particular, Rule 34 (a) will be amended to include " electronically stored

information. See *Rowe Entm't, Inc.  v.  William Morris Agency, Inc*.,  205 F.R.D. 421, 421, 428

(S.D.Y. 2002).  Plaintiff provided to Defendants the Cisco-No-Hire List as  Electronic file and as

hard copies,  also accordingly to <u>Fed. R. Evid. 1001 (3)</u>, defined of an accurate printout of computer

data [i]f data as herein is stored in a computer or similar device ( CD, Floppy Drive, Hard Drive), any

printout or  other output readable by sight, shown to reflect the data accurately , is an " original"

satisfy the best "Rule".   *Doe   v.  United States* ,  805 F. Supp.  1533,  1517 (D.  Hawaii.  1992);

See also Proposed  *Federal Rule  of Evidence 1001 (3) (1972)*.   Savastano conduct was racially

intended  to  discriminate , to harass, and to retaliate against Bayad as the records has shown of the

orchestrated abuses proceeded with  his Buddy  Wiese back in Florida  Lucent Technologies to ,

humiliate, imprison,  defame, and finally terminate  him  for a unfounded pretext or reason just

13

motivated by hatred to Bayad ' race ( Moroccan);  again his conduct was _déjà_ vu  under any

circumstantial of evidence,    it was  not surprisingly to Bayad to be racially with intent of being

classified or positioned or announced Bayad  in the Cisco-No-Hire-policy that state as follow:

"DO NOT  HIRE/PROMOTE/TRANSFER  ANTHONY BAYAD EMPL ID#73799,  SHOULD YOU HAVE

QUESTION CONTACT TONY SAVASTANO ";   Defendants and their attorneys admitted to and

produced it on about February 3, 2005 ,  Attorney Robin Tarr with the Firm Piper Rudnick  and Gray

Carry served and provided to Plaintiff of some request of Production of Documents included in their

package  the copy of Cisco-No-Hire- Policy,  and admit to it as a  record that fall  within one of its

daily usage of business records. The list was created since 1997 to  control and to discriminate

against Minority Companies , to assign  Cisco Agents or Representatives in contact  of all the

Employers/Resellers ( Bayad ' potential employer),    also  contains Hundred to Thousand of names

of Minorities not to be hired;    The fact finder or the jury will find such unlawful race classification

outrageous and disturbing  that Defendants as  Chambers,  Savastano, and Wiese the owners of

Cisco acted outside of their daily scope of duty,    created a discriminatory policy such as this

( Cisco-No-Hire-List) as it is morally and  ethical  wrong and constitutionally unlawful ,   to

classify a block or   group of race minority and publish them ( as Bayad) in a data file on the Cisco

Intra Website ( internal use) to intentionally deny them the right to pursue the American dream,

to interfere with their Civil Rights that all white person enjoy. _Strauder     v.    West Virginia_, 100

U.S. 303 (1879), and national  origin, cf. City of _Cleburn     v.     Cleburn living Center_,  473 **U.S.**

432 (1985). --The Court   must    subjects them to strict scrutiny review and that only a

compelling interest, such as military  necessity,  can justify such classification  and never less

Defendants owners of a company such as  Cisco Systems,   do not process such power as it is a clear

violation of similar situated persons to  Plaintiff Bayad. _Korematsu   v.    United_ States, 323 **U.S.**

214 (1944), (military exclusion order,  during  World War II , of persons of  Japanese ancestry from

certain West Coast areas justified).   Therein  Plaintiff was able to prevail by producing a direct

evidence without  proving all the Element(s) of a *Prima Facie* . *See Trans World Airline, Inc.,*    *v.*

*Thurston, 469  U.S.* 111,121 ( 1985);  " [T] he *McDonell Douglas* test  is inapplicable where the

Plaintiff ( Bayad ) present direct evidence of Discrimination". Thereafter [D]efendant  Savastano

acted with malice or reckless  indifference in two different times ( year 1997 and 2000-2001) to the

Plaintiff Bayad ' s Federally protected rights as it is centered around the subjective knowledge or

intent of the Defendant Savastano also the owner of Cisco Systems. See *Romano    v.  U-Haul Int'l*

233F.3d  655, 669 (1st Cir. 2000). *Also  Kolstad  v.  Am. Dental  Ass'n* 527  U.S. 526, 534 (1999)

COUNT I I

DISPARATE TREATMENT

(Against Defendants, John Chambers, Carl Wiese, & Anthony Savastano)

**VII.    History of discrimination actions , intent or motive**
**( actual malice is a spiteful, malignant purpose or motive.)**

1.      Third (3) Phase of Prima Facie Established

A.      Factual background --( Cisco Systems-Defendant  Chambers , Savastano, and Wiese)

The concept of disparage treatment is best captured by the understanding of discrimination

expressed in Title VII ( similar § 1981):

> To discriminate is to make a distinction, to make a difference in treatment
> or favor, and those distinctions or differences in treatment or favor which
> are prohibited . . . are those which are based on any five of the forbidden-
> criteria : race ( applies § 1981), religion, sex, and national origin. Any other
> criterion or qualification is not affected by this title.

There is, within this understanding, no right to freedom from distinctions in treatment as such. There is

no right to freedom from refusal to hire, discharge, lay off or other employment-related action and,

therefore, no legal harm ( under the disparate treatment model) inflicted by such action. *Price*

*Waterhouse  v. Hopkins,* 490 U.S. 288, 239 n.4  (1989). There is rather,  merely , a right to freedom

from employment actions ( or non actions) based upon prohibited grounds. Additionally the term "

Intentional  Discrimination" , and the disparate treatment prohibition is of course also described and

applied using the language of " intent" and  " motive." Thus, disparate treatment is " intentional

discrimination"  or , more accurately, distinction in treatment motivated by race ( or other prohibited

15

ground). However, the use of "intent" and " motive" to describe and apply the prohibition a can be seriously misleading. " intent " is a term with many potent ional legal meaning . See *Ratheon   Co.  v.   Hernandez* , 124, S.Ct. 513 (2003) (Proof of illicit motive necessary to disparate treatment  theory; Also see Personnel *Adm'r of Massachusetts   v.  Feeney*, 442 **U.S**. 256 (1stCir. 1978) ( illicit motive or purpose necessary for equal protection violation). And *Feeney    v.   Massachusetts*, 415 F. Supp. 143 (D. Mass. 1978), rev'd  442 **U.S**. 256 (1979).  When Bayad was  spotted by Defendant Savastano, informed his Manager Lynn Fraser (will be stated herein as " Fraser "  for the convenience)  was made aware of the fact of the discrimination and  disparate treatment Bayad  have undergone while reporting to Defendant Savastano  at Lucent Florida,  also communicated with  Defendant Chamber in writing and in person of the malice,  and the intentional  discrimination  executed upon Bayad during his employment with Savastano at  Lucent and now Cisco.   Thereafter  Fraser  (Savastano and Wiese orchestrated , to  influence and direct and supervise) begun  to micro manage Bayad  , ordering him to check with her every day and not to work from home while  other white persons ( co-workers) were enjoying that privilege and freedom given to them. Also Fraser  assigned two of her best buddies (Bayad co-workers),  Brian Low and Jeremy Nooman  to watch over  Bayad and to page him each time they wanted for no reasons, simply to harass Bayad;  And Because  Defendant Savastano is a finance Executive of Cisco, directed Fraser demanding Bayad to be scrutinize and to submit his Cisco Corporate Finance Expenses (Business Travel Expenses)  at all the  time to her or to her buddies (Jeremy Nooman and Brian Low) before being submit -  to Corporate  for reimbursement;  And Bayad ' ( evidence provided herein)   professional group work in  conjunction and in join effort all  the time in regard of the Purchase Order ( PO) or Submit Order With  Approval ( S.O.W) required final Signature authority on behalf of Cisco  the finance Director – Defendant Savastano.  Hence during that time period, Bayad was preparing for his Cisco Certification  Internetworking Expert as he has passed many Harsh Exams of College and from other 500 Fortune  Companies as Proteon Inc., Bay Networks, and  Cyber Guard, Defendant  Savastano without remorse or hiding motive of intentional

16

discrimination, (1) Orchestrated by Savastano and Wiese, to direct his buddy Defendant Chambers as in his answer admit that he worked for about 8 years with Savastano at Wang Laboratory situated at Lowell MA, to fail Bayad for the " eleven times " (11) to deny him the Cisco Certification Internetworking Expert, other White Persons were facilitate the granting of the CCIE and will name couple for the record, as stated in the complaint and herein; Two white persons Dale Ronowski and Bruce Brewer both related and both are very close friend of Savastano, their friendship goes way to their Employment at 3 different companies , 1) AT&T Paradyne Florida , 2) Lucent Technologies, and now Cisco Systems, Records also drawn he Promoted them both while at Lucent Technologies and now at Cisco;    (2) Orchestrated by Savastano and Wiese, to directed Lynn Fraser not to pay Bayad for any accrued expenses of the CCIE Exam, The records drawn for Example other White Employees as Michael Pucel defendant Chambers is Cisco who paid for all white person to pass the CCIE exams including Michael Pucel and gave him( others white persons ) free Vouchers and paid full expenses to him ( others white persons) , and granted him ( other white persons) [six Titles] of different subjected the CCIE Exams, the CCIE for Routing and Switching, the CCIE SNA/IP, the CCIE for ISP, the CCIE, for Security, the CCIE for VOICE, and the CCIE for Services, also Greg Gall Senior a white person and the list goes on and on . . . ].

Defendant Savastano 'actual "malice" is a "spiteful", malignant purpose or motive of Discrimination, and he did not stop there ;        (3) Orchestrated by Savastano and Wiese, and Chambers , to deny Bayad during his employment with them at Cisco Systems not to be scheduled for any CCIE exam date, to any location based in the States ( CCIE is only conducted in North Carolina and San Jose), their retaliation is cleared of making it very impossible and never for Bayad to Pass the CCIE Exams, each time he tried to schedule it the Cisco CCIE' group provide a pretext as such the Seats are not available and to check back in 6 to 12 months, and, that the only seats are Over Seas, Canada, Europe or South America. (it is a shame);    (4) Orchestrated by Savastano and Wiese, to direct an associate at Cisco and a Finance Representative of the Corporate American Express Card residing

17

at Cisco Corporate with Defendant Chambers et, al., without cause or justification to limit Bayad'

credit line to $7,000.00 where compared to other white employees Bayad ' s Co- workers in the

same Professional Group , their cards have no spending limit. This discriminatory conduct was only

applied ( only minority in his group) to Bayad who's American Express Card is limited to set him

up in using other mean of fund strictly prohibited by Cisco Business Guidelines ( the use of

personal cash or personal Credit cards when the limit is reached), to find cause or pretext to terminate

Bayad ' employment at Cisco as they did at Lucent Technologies, also to intentionally provoke and to

demoralize him and to affect his performance and his requirement set by Cisco performance

threshold measured by it, in term of Customers Satisfaction that Bayad ' group is measured by it;

(5) Orchestrated by Savastano and Wiese with an intentional act out side of their normal duties of

the company Cisco Systems' daily Business or Ethics or Guidelines and against the Federal

Protected Civil Rights of Bayad, motivated by race , directing his friend the Cisco Director of Human

Resources Celia Harper-Guerra ( based out of Corporate as Savastano and then was relocated to

England ( defendants admit to the fact) to separate herself from Savastano) [ for the convenience of

the fact finder]; She administrate to this day the Cisco-No-Hire-List, who Broadcasted Bayad '

Name in the Cisco- No-Hire-List;    (6) For the personal interest of Wiese who ' s Job Offer Letter is

pending upon the termination of Bayad ' employment at Cisco, Orchestrated with Chambers and

Savastano, Directed the Co-owner and partner the Sr. Vice President of Cisco human Resources

Mrs. Kate Dcamp to personally handle with due care and to supervise the termination of Bayad '

employment, as it was provided by Defendant during discovery and state as follow:

( also submitted herein for the convenience of the [Fact Finder] )

.... the above terms and acknowledge receiving Appendix A, including the separately provided data on the job titles and ages of all individuals covered by the program and on the job titles and ages of all individuals not covered by the program. This data has been offered for a full forty-five (45) days prior the expiration of the offer of this Agreement. ...

FOR CISCO USE ONLY

Approved  by

Signature/ Amy huges 5/3/01                    Signature/ Kate Dcamp
Name/Date                                      Name/Date *

* Approval to be binding on Cisco must be signed by Kate Dcamp, Vice President, Human Resources, or Authorize Designee.  "

(7) Savastano and Wiese as they have done at Lucent Technologies, Orchestrated the Same

stressful environment simply to provoke , humiliate, to sent message that Arab as Bayad  have no

business at Lucent and now Cisco and without even right of due process ( as it was proven  justice

miscarriage (Discrimination) in the year 2000),  and directing and supervising  of the day of

Bayad ' termination that  has been postponed for one more week to figure out how they will proceed

with him in term of legal aspect and liability, then they decided to draft a 30 to 40 pages and in close

doors at present of Cisco  Police and Lexington  police  hiding in another office waiting for action ,

mandating Bayad  to sign  them without prior review or what for or  the purpose of signing , then he

was told  [2]   that his  employment was  terminated immediately with Cisco . ( Bayad Thank them and

which them good luck and left  traumatized and left to Florida without knowing what to do).

---

[2]   To sign or not sign you will suffer the same consequences (termination) (as move or not  to move you will get shot). And  the last time Bayad refused to sign while back at Lucent, he ended up in fountain and in an ambulance and in hospital , was transferred to a confined prison against his will( not a hospital), and was put homeless and now unemployed and disabled  (In the eyes of the Defendants  Bayad is a Moroccan) .

(8)   Additionally Defendant  Savastano  (and Wiese) have  orchestrated  participated  prior of joining

Cisco, causing Bayad to be   wrongfully  terminated (to happen) of Bayad employment with

International Network Services  (" INS")  (the primary investor of "INS" is Savastano' friend and Co-

owner of Cisco  Systems  Defendant Chambers),   by defaming and portraying Bayad as a   Thief

and  mentally  retarded as they  herein  introduced 200 pages of transcript of communication out side

of the cope of  this litigation and  between attorneys and Bayad, simply attacking Bayad Character

contradicting the  Federal Rule of  Evidence Rule 404 that define :

_____   _____

" Fed. R. Evid.  404 preclude evidence of a person's character or prior acts to
prove action in conformity…".

_____   _____

## VIII.    Prima Facie established by history and patterns of discrimination actions ( Count VIII Tile 42 § 1981 against all Cisco defendants Chambers et,. al)

1.     Fourth (4) Phase of Prima Facie Established

Thus Plaintiff Bayad presented by preponderance of Evidences with history of

patterns, and  for the convenience of the [ fact finder] accordingly to the U.S. district of the  1st Circuit

ruling herein  that :   " evidence of corporate state-of-mind or discrimination atmosphere is not

rendered by its failure to coincide precisely with the particular actors ( such as Defendants) or time

frame involved  in [t]hat specific events that generate a claim of discrimination treatment."  See

*Conway    v.  Electro Switch  Corp.*, 825  F.2d  597 ( 1st Cir. 1987) (emphasis added). See also

*Cumming    v.   Standard Registry Co.*, 265 F.3d  56 ( 1st Cir. 2001) ( same). Similarity, *Freeman*

*Package Machinery Co.*, 865  F.2d  1331, 1342 (1st Cir. 1988), This Court rejected a defense that

the decisionmaker personally lacked animus and held that   " [t]he inquiry into a corporation's motives

need not artificially be limited to the particular officer who carried  out the action ., *In medina-*

*Munoz    v. R.J. Reynolds  Tobacco* ., 896  F.2d  5, 10 ( 1st Cir. 1990), this Court also held that the "

Biases of one who neither makes nor influences the challenged personnel decision  are not probative

in an employment discrimination case, " imply that the biases of those who do make or influence

the employment decision are probative." In light of this Court Decision also stated :

" Our decision have described the causal element in various ways, which essential have been the proximate or determinative cause standard used in negligence cases. . [T]he Plaintiff must prove by preponderance of the credible evidence that the Defendant's discriminatory animus contributed significantly to that action, that it was a material and important ingredient in causing it to happen. That Defendant's discriminatory intent, motive or state of mind is " the determinative cause". See _Dartt    v.   Browing-ferry Indus., Inc. (Mass)_. Supra at 7-9, 691 N.E.2d 526. ( Defendants argue herein that : The motive of race while Bayad ' Employment with them at [L]ucent Technologies in the State of Florida and now [C]isco evidence of corporate state-of-mind of   "_See yea " does not mean " déjà vu_ " and " _because of " does not mean "solely because of_" ( Bayad is Moroccan ). Moreover Defendant Savastano was named as a defendant in 4 law suits of Employment discrimination , in three (3) separate cities and times, totaling of (3) during his employment with lucent Technologies Florida (year 1997-2000) , one (1) filed in the U.S. District Court of Miami Florida in violation of his Federal Protected rights, by a Lucent Engineer Hamdi Elsiah a U.S. Citizen native of Egypt, second (2) field in the U.S. District Court of Tampa Florida in violation of his Federal protected rights, by a Lucent Manager Amado Navas a Spanish from Venezuela, and third (3) filed in the U.S. District Court of Fort Lauderdale, Anthony Bayad a U.S. Citizen native of Morocco ,   And fourth (4) a new and different claims in new jurisdiction filed against Savastano in the U.S. District of Massachusetts , by once again Bayad a U.S. Citizen native of Morocco and it on ongoing, during his employment with Cisco Systems in Massachusetts. Defendant Savastano and Wiese intentionally discriminate for the 2nd time against Bayad now the year 2000 to 2001, in the State of Massachusetts (déjà vu ) with his employment at Cisco, Bayad also reporting to them at Lucent. Additionally Savastano and Wiese have discriminated against 2 Lucent Employees ( women), Joanna Lopes a U. S. Citizen and Spanish descent and Tracy Schamot a U.S. Citizen a Jewish descent, who Were terminated for no cause simply because they were Spanish and Jewish. (It is a shame and

outrageous). _Anderson v. Group Hospitalization, Inc._, 820 F.2d 465, 469, ( Circumstantial ).

Defendant Savastano and Wiese used the two Lucent Women employees as cover up that Lucent

Technologies Code of the conduct is applied cross the board to other situated persons (minorities) as

well as to Bayad.(See above Supreme Court Ruling on Race versa Origin). Furthermore, during

Bayad ' employment with Savastano and Wiese at Lucent Technologies, they demoted him as team

leader Manager ( a declaration of witness introduced herein) and promoted less qualify white person

whom do not qualify nor posses a College degree and was a simple Phone technician ( Lewis

Kaslow); Record drawn herein that Wiese approached Kaslow and offer him the managerial

position, instead of Bayad and other qualify minorities sought that position the Manager of the Largo

Florida ' Office. Wiese met personally with Bayad and told him that "Bayad gave a black eye to this

organization and Arab like you are disbarred of being promoted as Managers and Executives at

Lucent Technologies. Defendant Wiese during his employment at Lucent, was a Right Hand man

of Patricia Russo and likes to promote racism . The fact drawn he directed Lewis Kaslow to verbally

humiliate Bayad , calling him **"Sand Niger"**, **"dirty Arab"**, admitted to in his answer provided

herein . Wiese only promote white persons as he approached Kaslow who hired him ,( Kaslow

admitted ), who called Bayad in the open (as admitted in his answer) a " dirty Arab" while Bayad

was on the phone as he did not car if Bayad had to take a **"flying carpet"**. _Cordova v. State Farm_

_Insurance Companies,_ 124 F.3d 1145 ( 9th Cir. 1997).( in Cordova statement of bias of the hiring

Manager referred to another employee a **"dumb Mexican"**). Additionally just after Bayad termination

on about may the year 2001, Savastano and Wiese orchestrated an electronic mail to be sent by

Bruce Bastian a Manager of Sales reporting to Wiese the Vice President of Sales, and on about May

30th of 2001, a Systems Engineer Manager Broadcasted a "wicked racial Audio "via Electronic mail

within the authority of Cisco 's way of mail communications, intentionally to Mr. Bayad's

coworkers with Cisco Systems Inc.  The directive audio that was sent and was controlled with

"multifarious racial jokes" about Mr. Bayad 's ineptitude to verbalize the expression of the English

22