UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANTHONY BAYAD,<br><br>           Plaintiff,<br><br>      v.<br><br>JOHN CHAMBERS, PATRICIA RUSSO,<br>ANTHONY SAVASTANO, and<br>CARL WIESE,<br><br>           Defendants. | CIVIL ACTION NO.  04-10468-GAO |

## DECLARATION OF ROBIN C. TARR

I, ROBIN C. TARR, declare under the pains and penalties of perjury, pursuant to 28 U.S.C. § 1746, the following:

1.    I am an associate with the law firm of DLA Piper Rudnick Gray Cary US LLP, counsel to the defendants (the "Cisco Defendants") in the captioned matter.  I submit this declaration in further support of the Cisco Defendants' motion for summary judgment and in opposition to Plaintiff's cross-motion for summary judgment.  In my capacity as counsel for the Cisco Defendants, I am fully familiar with the conduct of this litigation to date.

2.    This law firm previously represented other employees of Cisco Systems, Inc. ("Cisco") and Cisco in an action styled <u>Amado Navas v. Cisco Systems, Inc., Bruce Bastian, Chuck Robbins, David Campbell and Rick Justice</u>, commenced in the United States District Court for the Middle District of Florida (the "Navas Litigation").  Attached hereto as Exhibit A is a copy of the complaint in the Navas Litigation ("Navas Complaint").

3.      I have read the affidavit of Mr. Navas that Plaintiff filed in support of his cross-motion for summary judgment and make this declaration to place before the Court certain facts relevant to this litigation concerning Mr. Navas, his relationship with Plaintiff, and their respective lawsuits against Cisco and/or Cisco employees.

4.      Like Plaintiff here, Mr. Navas proceeded as a pro se litigant in the Navas Litigation.

5.      As counsel to both the Cisco Defendants and to all defendants in the Navas Litigation, I know that Plaintiff and Mr. Navas have an ongoing relationship and have observed that Plaintiff and Mr. Navas have conducted themselves similarly in prosecuting their respective claims.

6.      For example, both Plaintiff and Mr. Navas have attempted to extort settlements from Cisco in exchange for their silence concerning their allegations about Cisco and/or its employees.

7.      During the course of defending against the Navas Litigation, counsel from this firm interviewed Plaintiff on May 22, 2003, in response to Plaintiff's call on behalf of Mr. Navas, to Rick Justice, a defendant in the Navas Litigation.  During the course of the telephone interview, Plaintiff stated that Cisco should give him a job in Africa and "make [him] disappear like corporations do all the time, and [he would] go away and not say anything to anybody about anything about Cisco."

8.      Similarly, Mr. Navas threatened to go to the news media concerning his allegations of corporate wrongdoing against Cisco unless Cisco agreed to resolve the dispute outside of litigation.  Mr. Navas repeatedly advised counsel that he was "willing to resolve [the Navas Litigation] quietly and privately, or in the eyes and the ears of the American public.  You

2

and your clients decide." Attached hereto as Exhibit B are copies of Mr. Navas's April 17, 2003 and June 11, 2003 letters to this law firm containing this and similar statements.

9.    In addition, like Plaintiff, Mr. Navas attempted to rely on the June 4, 2002 email Mr. Bastian sent containing a list of fictitious names which when read aloud loosely sounded like inappropriate phrases, to support his allegations of employment discrimination. This email was the centerpiece of the Navas Litigation. Mr. Navas alleged that Mr. Bastian sent the email to express a "racial threat; clearly [Mr. Bastian] was telling him that he would be fired." (Navas Complaint, ¶ 16.)

10.    Plaintiff now asserts, and Mr. Navas now contends, that Mr. Bastian, and now, Mr. Savastano, jointly sent the email for "the sole purpose of ridicul[ing] [Plaintiff's] termination from Cisco." (Plaintiff's Complaint ¶ 116.) The email no where mentions Mr. Savastano, and Mr. Navas did not once assert during the course of the Navas Litigation that Mr. Savastano was in any way involved with sending the email.

11.    With respect to the Navas Litigation, Mr. Navas attempted to thwart the orderly prosecution of his claims. For example, Mr. Navas would not agree to fulfill his contractual obligation to arbitrate his employment dispute and instead forced defendants to incur the expense of moving to compel arbitration. Mr. Navas did not respond to the motion to compel arbitration once filed and the United States District Court for the Middle District of Florida ultimately ordered the matter to proceed to arbitration.

12.    Once in arbitration, Mr. Navas refused to withdraw his baseless claims against Cisco and Messrs. Robbins, Campbell, Justice and Bastian. Instead, Mr. Navas once again forced these defendants to incur the expense of moving to dismiss the claims. And, once again, Mr. Navas did not respond to the motion.

13.     On or about July 12, 2004, however, Plaintiff directed a package to the arbitrator in the Navas Litigation and purported to be acting on behalf of Mr. Navas. Attached hereto as Exhibit C is a copy of the arbitrator's letter to this firm and Mr. Navas. This act alone evinces that Plaintiff and Mr. Navas are more than just professional acquaintances.

14.     On July 22, 2004, we obtained pre-discovery dismissal of all of Mr. Navas's claims of discrimination against Cisco and Messrs. Robbins, Campbell and Justice on grounds that Plaintiff's conclusory allegations did not support his claims of discrimination.

15.     Following this partial dismissal, the remaining parties to the Navas Litigation were ordered by the arbitrator to proceed with discovery. Mr. Navas repeatedly refused to comply with the arbitrator's discovery orders and the deadlines imposed by those orders.

16.     The arbitrator repeatedly warned Mr. Navas that his failure to comply with the arbitrator's orders would result in dismissal of his claims.

17.     Ultimately, we moved on behalf of the remaining defendants to dismiss the remaining claims on grounds that Mr. Navas refused to participate in the process and, by order dated December 27, 2004, the arbitrator granted our motion and dismissed the remaining claims.

18.     Almost immediately following the dismissal of the Navas Litigation, Plaintiff, who had since the inception of this litigation continuously contacted counsel and various Cisco employees about the litigation, began leaving more frequent and lengthier voice mails for Cisco's General Counsel, and for at least three attorneys in this law firm, often entirely filling our voice mail messaging systems. These voice mails were progressively threatening in tone.

19.     Plaintiff often referenced Mr. Navas during these voice mails, stating that Cisco would not defeat him as it did Mr. Navas, because Plaintiff is Moroccan, not Hispanic as is Mr. Navas.

Signed under the pains and penalties of perjury this 21st day of March, 2005

_____
Robin C. Tarr

RECEIVED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**

03 MAR 18 PM 3:06

CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

AMADO NAVAS,                    )
                               )
        Plaintiff, Pro se       )
                               )     Case No. 8.03CV487-T23TGW
v.                             )
                               )     Magistrate Judge Wilson
CISCO SYSTEMS INC.,            )     Judge Merryday
BRUCE BASTIAN,                 )
CHUCK ROBBINS,                 )
DAVID CAMPBELL, AND            )
RICK JUSTICE,                  )
                               )     JURY TRIAL DEMANDED
        Defendants             )
_____)

## COMPLAINT

Plaintiff Amado Navas complains of defendants Cisco Systems, Inc., Bruce
Bastian, David Campbell, Chuck Robbins, and Rick Justice as follows:

## PRELIMINARY STATEMENT

1.      This action seeks declaratory, injunctive, and equitable relief, compensatory
and punitive damages, and any other legal fees and costs, for racial and ethnic
discrimination; breach of contractual obligations; intentional or negligent infliction of
emotional distress, and; defamation suffered by Plaintiff Amado Navas while
employed by Cisco Systems, Inc.

1

## JURISDICTION

2.     This action arises under the Reconstruction Era Civil Rights Act, codified at 42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e et seq.; and the laws of the State of Florida.

3.     Jurisdiction over the federal issues is invoked pursuant to 28 U.S.C. § 1343(4) and, subject to being held in abeyance until the receipt of a right-to-sue letter, 42 U.S.C § 2000e-5(f); and over the state law claims pursuant to the doctrine of supplemental jurisdiction, now codified at 28 U.S.C § 1367.

4.     Declaratory, injunctive, and equitable relief is sought pursuant to 28 U.S.C §§ 2001 and 2002; 42 U.S.C. §§ 1981 and 2000e-5(g); and the supplemental state law claims.

5.     Compensatory and punitive damages are sought pursuant to 42 U.S.C. § 1981; 42 U.S.C. § 2000e et seq.; and the supplemental state lawsclaims.

6.     Costs and other legal fees may be awarded pursuant to 42 U.S.C. §§ 1988 and 2000e-5(k), Federal Rule of Civil Procedure 54, and also under state law.

## VENUE

7.     This action properly lies in the Middle District of Florida, pursuant to 28 U.S.C. § 1391(b), because the claim initially arose in this judicial district, and pursuant 28 U.S.C. § 1391(b), because the claim initially arose in this judicial district, and pursuant to 42 U.S.C. § 2000e-5(f)(3), because the Plaintiff works in this judicial district. Moreover, Defendant Cisco Systems Inc. has a business office located in this judicial district, and the Plaintiff resides here.

2

## PARTIES

8.    Plaintiff Amado Navas is a Hispanic male.

9.    Defendant Cisco systems Inc. (also referred to as simply "Cisco") an employer that engages in an industry affecting commerce and employs more than 15 regular employees. Defendants Bruce Bastian, David Campbell, and Rick Justice are all current management and/or executives, employed by Cisco.

## FACTS

10.    Amado Navas became employed by Cisco on or about August 25 of 1999 with a starting salary of $85,000 yearly.

11.    Mr. Navas was hired because of his vast experience in the field of Data Networking, after the well know rigorous five interviews process, that each candidate is put through by Cisco; Mr. Navas has been throughout the entire term of his employment with Defendant Cisco Systems Inc., an excellent employee and Systems Engineer.

12.    Not being able to relocate as initially planned, Amado Navas transferred to the Channels department, a job that would allow him to stay in Tampa, on or about February of 2000. Reporting to Mr. Scott Urban, who had been just promoted to the position of S.E. Manager (Systems Engineer Manager) for this territory. Mr. Navas and Scott Urban maintained an excellent working relationship, Mr. Navas valued and respected Mr. Urban, Mr. Urban nominated Mr. Navas for the "Channels SE (Systems Engineer) of the Year" award for the Atlantic area, for outstanding

performance. Mr. Navas won the award in the form of a medal. A photo of the medal is attached hereto as **Exhibit A** to the complaint.

13.     Mr. Navas continued his outstanding performance by executing well all of his duties, Mr. Urban rated his overall job performance as an "E", which in Cisco performance rating means: "Employee is successful; meets or exceeds all key performance expectations", a copy of this performance review document is attached hereto as **Exhibit B** to the complaint.

14.     When Mr. Urban announced that he was transferring out of the Atlantic Channels group into the Software Channels group, due to his pursue for a strategic career move, Amado Navas wanting a career in management with Cisco, and having had considerable prior experience as a Manager in previous jobs, immediately applied for the job, by informing Mr. Urban, and his manager Chuck Robbins. Mr. Navas was told he did not have enough time in the company to be promoted into management. The position was given to Bruce Bastian. Bruce Bastian a peer of Mr. Navas, who did not have any prior Management experience, and is a white male.

15.     Bruce Bastian started to show his dislike for Plaintiff Amado Navas immediately, upon taking over as the SE Manager for the Atlantic Channel SE group. His attitude towards Amado Navas showed lack of respect, and an obvious dislike. On the mean time Mr. Navas continued to pursue a career into management by cultivating a strong working relationship with Mr. Jack Torgow, another key member of the local Florida channels management team, who also reported to Chuck Robbins, and a peer of Bruce Bastian. Mr. Torgow shared with several employees the fact that he also considered Bruce Bastian to be clearly inexperienced, and incompetent as a

4

manager. But also thought that Bruce Bastian was protected by Chuck Robbins. Mr.

Torgow started to campaign in favor of Amado Navas for a management position,

and to have Bruce Bastian's Atlantic group split into north and south territories, and

to have Amado Navas take over the South group.

16.     Bruce Bastian's hostile treatment towards Plaintiff Amado Navas soon

escalated to racial hate, from pure harassment, and abuse of his authority, his actions

began including  racial jokes, this behavior continued to escalate, until on or about

May 29, 2001 during a visit to the Florida territory, while sharing a rental car on a

road trip from Tampa, to Orlando and Jacksonville, Defendant Bruce Bastian told

Plaintiff Amado Navas that people from other countries should not come to the

United States to take jobs from Americans, and worst than that, take management

jobs from Americans. And that he Bruce Bastian had full support from his manager

Chuck Robbins. He suggested to Plaintiff to check his email later for a message that

Defendant Bruce Bastian wanted Plaintiff Amado Navas to read very carefully.  On

or about May 30th of 2001, Plaintiff Amado Navas received an electronic mail

message directly from Defendant Bruce Bastian, sent via the Cisco systems Inc.

company network, containing racial jokes that clearly ridicule any and all foreign

nationals, and that also described people getting fired. Plaintiff Amado Navas was

deeply offended and hurt by this action. Plaintiff Amado Navas interpreted the

message as a racial threat; clearly Bruce Bastian was telling him that he would be

fired. Mr. Navas knew that this action was in direct violation of the Cisco Systems

Code of Business Conduct, but decided not to press any charges immediately

knowing that Bruce Bastian was indeed protected by upper management. A copy of

Case 1:04-cv-10468-PBS    Document 86    Filed 03/21/2005    Page 12 of 37

the Cisco Systems Code of Business Conduct is attached hereto as **Exhibit C** to the complaint. Plaintiff Amado Navas wanted to do everything he could to save his job, and continue to provide for his family a wife and three children. Plaintiff Amado Navas believed that in time maybe Mr. Jack Torgow would be successful in splitting up the Atlantic territory into North and South, and Mr. Navas would not have to report to Bruce Bastian any longer.

17.    Plaintiff Amado Navas will prove in a Court of Law with hard evidence that the hate email in question was indeed sent by Bruce Bastian, and that later Cisco Systems Inc., upper management, would protect defendants Bruce Bastian, David Campbell, Chuck Robbins, and Rick Justice by attempting to sweep it under the rug, not punishing the white managers involved accordingly, and by conducting an incompetent investigation with clearly unqualified personnel not trained in the field of Data Forensics. A printed copy as well as audio recording of the email in question is attached hereto as **Exhibit D** to the complaint.

18.    On or about August 16 2000 Amado Navas was nominated into the Cisco SLDP program, a Cisco internal leadership development program. Mr. Navas was nominated mainly because of his outstanding job performance and for demonstrating strong leadership potential. A copy of the notice sent by Cisco Vice President Bob Bruce is attached hereto as **Exhibit E** to the complaint. This event marked the beginning of the conspiracy to mentally harass and abuse Plaintiff Amado Navas, led by defendant Bruce Bastian and his upper management, teaming up with other white employees in the Florida region.

6

19.    On or about March 19 2001 Cisco Systems Inc., announced company wide layoffs, officially Cisco announced that all the employees impacted by this personnel reduction, were not chosen by poor performance, but the amount of revenue associated with their positions. The following individuals all belonging to a racial or religious minority group were singled out by defendant Bruce Bastian and his manager, defendant Chuck Robbins. Mr. Gary Lopez a male Hispanic, Mr. Jack Torgow a Jewish male, Mr. Joe Thibodeau an African American male, all these individuals worked in the Cisco Channels group where defendants Bruce Bastian and Chuck Robbins are members of the leadership team. Both Mr. Gary Lopez and Mr. Jack Torgow, were almost immediately replaced white males, or individuals of the white race.

20.    This action of firing both Mr. Lopez, and Mr. Torgow, was indeed shocking since both individuals had outstanding performance records, had excellent relationships with the Cisco Partner/Reseller community, and had very strong sales records. The only logical explanation was that both individuals were fired because their race and/or religion.

21.    Plaintiff Amado Navas continued to successfully attend the SLDP program hoping that he could still have a chance to be promoted to the manager position for the South East Channels group. Mr. Navas made it clear to his managers defendants Bruce Bastian, and Chuck Robbins, and several of his peers that he wanted to pursue a management career with Cisco, not the technical path; and therefore Mr. Navas would continue to focus his efforts in developing the management skills taught in the courses offered by the SLDP curriculum.

7

22.    On or about August 1st of 2001 defendant Bruce Bastian wrote a performance evaluation about Plaintiff Amado Navas; continuing his harassment tactics defendant Bastian wrote:

> **"I AM CONCERNED ABOUT AMADO'S ABILITY TO EXECUTE AND UNDERSTAND THE BUSINESS. HE WAS NOMINATED FOR THE LEADERSHIP DEVELOPMENT PROGRAM LAST FISCAL YEAR OF WHICH I HAVE NOT SEEN ANY RESULTS. I ALSO ASKED AMADO TO HELP ME MANAGE THE FL TERRITORY. OUR COMMUNICATION HAS BEEN LIMITED AT BEST. I WILL DEFINITELY TAKE OWNERSHIP FOR THE LACK OF COMMUNICATION;......."**

A copy of the Performance Review is attached hereto as **Exhibit F** to the complaint. It was obvious to Mr. Navas that defendant Bastian was on a mission to destroy Mr. Navas's reputation, and to eventually drive him out of the company.

23.    On or about August 23d of 2001 Plaintiff Amado Navas graduated successfully from the Leadership Development program. A copy of the certificate of graduation signed by the Senior Vice President of Worldwide Channels Mr. Tom Mitchell is attached hereto as **Exhibit G** to the complaint.

24.    It is impossible to believe that Cisco Systems would task a whole team of professionals to develop the SLDP program, to then have Defendant Bruce Bastian, an individual with little or no management experience, conclude that Plaintiff Amado Navas does not have the potential to become a good Cisco Manager. Plaintiff Amado Navas intends to prove in a court of law that defendant Bruce Bastian embarked in a

8

racially biased mission to destroy the career and reputation of Plaintiff Amado Navas, and to inflict serious and permanent Psychological damage.

25.    On or about February 11 2002, defendant Bruce Bastian traveled to Tampa to visit the territory. At that time Bastian handed Plaintiff Amado Navas a document entitled "Letter of Concern" in which defendant Bastian tries to further continue to damage Plaintiff Amado Navas's reputation. In this letter defendant Bastian mentions the fact that Plaintiff Mr. Navas did not meet a requirement for completion of a technical certification called the CCNP:

> "...- BASED ON YOUR EXPERIENCE LEVEL AND TIME AS A CISCO CHANNELS SE, YOUR LACK OF ACHIEVEMENT WITH REGARDS TO CCNP HAS FALLEN SHORT OF EXPECTATIONS. YOUR TECHNICAL SKILLS NEED TO IMPROVE IN ORDER TO EFFECTIVELY DEVELOP CISCO'S PARTNER COMMUNITY....."

Mr. Bastian conveniently forgot that Plaintiff Amado Navas had been focused for the last fiscal year in developing his management skills further, in accordance with Cisco's SLDP program requirements. Defendant Bastian also purposely forgot that Plaintiff Amado Navas has had over 12 years of relevant technical experience in the field of Network Engineering, and held several professional certifications including the Nortel Networks Router Support Expert, a rigorous technical certification which included several written examinations, as well as a hands-on test. Mr. Navas has also work for other big networking companies such as Wellfleet Communications, Racal Datacomm, AT&T, Lucent

9

Technologies; as well as having a Bachelor Degree in Electronic

Engineering from Wentworth Institute of Technology in Boston,

Massachusetts. A copy of this Letter of Concern is attached hereto as

**Exhibit H** to the complaint.

26.    Also within this Letter of Concern Defendant Bruce Bastian points

out poor customer satisfaction survey results in the central Florida area.

Mr. Bastian added this item to the Letter of Concern to also blame

Plaintiff Amado Navas for these poor results:

27.    **"INITIATIVES/PRIORITIZE ACTIVITIES – WHILE YOU DEVELOP**

**AND VISIT PARTNERS, WE NEED TO WORK ON PRIORITIZING**

**THE PARTNER BASE AND DEVELOPING THEM IN THE**

**EMERGING MARKETS ALONG WITH SPECIALIZATIONS. YOU**

**NEED TO BE MORE PROACTIVE IN PROVIDING DEVELOPMENT**

**PLANS FOR YOUR TERRITORY/PARTNERS INSTEAD OF**

**RELYING ON THE CAM'S DIRECTION. THE CSAT SCORES FOR**

**THE FL OPERATION SHOWS DISSATISFACTION IN THE**

**CENTRAL FL REGION FROM THE CUSTOMERS WITH RESPECT**

**TO SUPPORT AND PRODUCT KNOWLEDGE PROVIDED BY YOUR**

**PARTNERS. "**

28.    The truth is that blaming any single employee of Cisco Systems for

poor CSAT or Customer Satisfaction survey results would be like blaming

any individual for poor weather conditions; furthermore Plaintiff Amado

Navas intends to prove in a Court of Law that Defendant Cisco Systems

Inc. is falsifying Customer Satisfaction Survey results to mislead customers, employees, Wall Street, and all shareholders. In a meeting led by Robert Grant, Manager of Channel Operations in Florida, and Defendant Bruce Bastian Channel Engineering Manager for the State of Florida, held on or about April 16 2002, at the Cisco Systems Orlando, Florida office Defendant Bruce Bastian said at 11:06am:

**"WE ARE FUDGING THE NUMBERS ANYWAY..."**

referring to the CSAT, or Customer Satisfaction Survey results in general. The following Cisco employees witnessed, and heard Defendant Bastian make the comment: Laura Clark, John Bruno, Bob Abrams, John Roberts, Chris Ozor, Jeff Rodawald, Tom Strausser, Carlton Larrieu, Sam Fahed, Robert Grant, and Plaintiff Amado Navas; Plaintiff Amado Navas wrote this down in his work notebook. A copy of the page from Plaintiff Amado Navas's notebook is attached hereto as **Exhibit I** to the complaint.


29.    During the meeting at the Cisco Saint Petersburg office where defendant Bastian handed Mr. Navas this so called "Letter of concern", defendant Bastian made a comment that deeply hurt Plaintiff Amado Navas, he said that Mr. Navas should shape up or the same thing that happened to Mr. Joe Thibodeau could happen to him. Bastian explained that Mr. Thibodeau was let go because he did not get along with the local sales team. And that he did not play the game well. This statement contradicted a statement made by Chuck Robbins on a conference call that

11

occurred March the 19th of 2201, where he explained that everyone that was laid off from Cisco was let go for financial reasons and not for poor performance on the job, or for political reasons. This meeting deeply upset Plaintiff Amado Navas who then decided to finally blow the whistle on defendant Bastian and the other conspirators.

30.    On or about February 17 2002, Plaintiff Amado Navas following Cisco's open door policy, sent an email message to several executives of Cisco Systems Inc., including John Chambers the CEO, Richard Justice a Senior Vice President, Tushar Kothari a Vice President in the Channels Organization, and Kate DCamp Vice President of Human Resources. Within this email was the original racial email sent to Plaintiff Amado Navas by Defendant Bruce Bastian. Mr. Navas was asking the senior executives for help in stopping further racial attacks, and further mental abuse from defendant Bastian. Plaintiff Amado Navas knew that exposing the protected manager Bastian would most likely get him fired. But Plaintiff Amado Navas could not take this mental abuse any longer. A copy of the email is attached hereto as **Exhibit J** to the complaint.

31.    The first executive to read and respond to Plaintiff Navas's email was Defendant Justice, on or about February 18 2002, he wrote:

   "...AMADO,


   THANK YOU FOR  HAVING THE COURAGE TO FORWARD

   THIS MESSAGE TO ME.  IT IS APPALLING..  WE WILL

12

**DEFINITELY BE FOLLOWING UP ON THIS INAPPROPRIATE**

**ACTION.**


**SINCERELY,**


**RICK JUSTICE"**

A copy of the email from Defendant Rick Justice is attached hereto as

**Exhibit K** to the complaint.

29.    The next executive to respond was Mr. Tushar Kothari Vice

President in the Channels organization; Plaintiff Amado Navas included

him because he is a member of a racial minority group, and should

understand first hand what Plaintiff Navas was going through. Mr. Kothari

wrote:

      **"...AMADO,**


      **THANKS FOR BRINGING THIS TO OUR ATTENTION. I AGREE**

      **WITH YOU THAT SUCH MESSAGES ARE NOT CONSISTENT**

      **WITH CISCO CULTURE AND IS UNACCEPTABLE. I HAVE**

      **ASKED DAVID CAMPBELL OUR HR DIRECTOR TO ENGAGE**

      **AND RECOMMEND APPROPRIATE REMEDY.**


      **TUSHAR..."**

A copy of Mr. Kothari's email is attached hereto as **Exhibit L** to the complaint.

30.    The other high executives Mr. John chambers the company's CEO and Senior Vice President of Human Resources Kate DCamp, received Plaintiff's email, but chose not to respond nor acknowledge Plaintiff Amado Navas's plea for help.

31.    On or about February 19 2002, Defendant Bastian left a voice mail message in Plaintiff Amado Navas's work voice mail box at Cisco Systems Inc. Once again Defendant Bastian was ridiculing Mr. Navas's race by deliberately mispronouncing his last name; even after numerous requests from Mr. Navas to correct Mr. Bastian's pronunciation of his name. Mr. Bastian would purposely mispronounce the last name Navas, in a sarcastic, demeaning way. A recording of the voice mail left by defendant Bastian is attached hereto as **Exhibit M** to the complaint.

32.    Plaintiff Amado Navas continued to wait for Cisco Management to conduct an investigation and take some measures to ensure that Defendant Bastian would not continue his racial attacks.

33.    On or about February 25th 2002, Defendant David Campbell contacted Plaintiff Amado Navas via voice mail. Mr. Campbell informed Mr. Navas that he would be conducting the investigation, and that he would keep Mr. Navas informed.

34.    On or about March 1st 2002, defendant David Campbell called and wrote to Plaintiff Amado Navas with a very suspicious request. Defendant Campbell wanted Mr. Navas to modify the original racial email received from Defendant Bastian, modify the email following his very specific instructions and then send the modified email via the Cisco Systems internal network addressed directly to Defendant Campbell's email system. This request seemed very suspicious to Plaintiff Amado Navas since Cisco Systems upper Management already had several copies of the

14

racial email; therefore why did Mr. David Campbell want this?, if not to try to frame Plaintiff Navas perhaps making it look like Plaintiff Amado Navas was also engaging in this illegal activity of using the company's communication systems like copiers, faxes, phone systems, and email, for inappropriate or illegal use. Mr. Navas politely refused to comply offering the suggestion that Mr. Campbell should contact the Cisco Systems Corporate Security Organization to seek their assistance in conducting the investigation; or perhaps also contact local law enforcement. A copy of the email sent to Plaintiff Amado Navas by Defendant Campbell is attached hereto as **Exhibit N** to the complaint. Also a recording of the voice mail message left by Defendant David Campbell with his suspicious request is attached here to as **Exhibit M** to the complaint.

35.    After Plaintiff Amado Navas refused to comply to Mr. Campbell's request, Mr. Campbell in a phone conversation tried to force Mr. Navas by speaking to him in a threatening manner, and even by pulling rank by saying "I am the Director of Human Resources and you have to do as I say..."; Mr. Navas still refused to carry out Defendant Campbell's instructions, at that point Mr. Campbell in a frustrated, sarcastic tone of voice told Mr. Navas "I hope you have a nice week..." and hung up the phone,  the on or about March 4 2002, Defendant Campbell sent Mr. Navas an email with his findings, attached hereto as **Exhibit X** to the complaint.

36.    The next action taken by a representative of Cisco Systems management was a phone call from another individual with the Human Resources Organization by the name of Carson Brown. Mr. Brown let a voice message in Plaintiff Amado Navas's

box, requesting a meeting via telephone with Mr. Navas. A recording of the message left by Mr. Brown is attached hereto as **Exhibit M** to the complaint.

37.     Mr. Navas called Mr. Brown they agreed upon a time and spoke via telephone. Mr. Brown attempted to gain Plaintiff Navas's trust by mentioning the fact that he was an African American. Mr. Brown requested an explanation of what took place with the racial email; Plaintiff Amado Navas told Brown, the events that had taken place from the beginning, at which point Mr. Brown mentioned that he would investigate further, and then get back to Plaintiff Amado Navas within a few days. But he did not. In fact he never did.

38.     In the day and weeks that follow Plaintiff Amado Navas fell in a deep depression with tremendous stress, to the point where he could no longer sleep and was suffering constant nightmares. Mr. Navas felt he could not longer withstand this situation and contacted the human resources department for help, they in turn referred him to the EAP or Employee Assistance Program seeking the help of a doctor. Mr. Navas was referred to Mr. Joseph stark in Tampa. Mr. Navas started attending regular therapy sessions with Mr. Stark who after sometime had passed and no recovery was in sight told Plaintiff Amado Navas to take sometime off, or risk suffering a major mental breakdown. Plaintiff Amado Navas agreed to take sometime off. Mr. Stark suggested Short Term Disability was the best path to follow; Mr. Navas could take 12 weeks of paid medical leave. Mr. Stark also mentioned that he was 99% sure that a short term disability leave with pay would be approved since he had handled many of these types of cases before. At that point Mr. Stark filled out an application for Plaintiff Amado Navas; a copy of the paperwork submitted by Mr.

16

Stark to Cisco Systems Inc, and its mental health providers is attached hereto as **Exhibit O** to the complaint.

39.    Mr. Navas started his disability leave on or about May 3rd 2002, expecting that his paid time off would be approved, as suggested by Mr. Stark. Only to find out two weeks later that paid disability was not approved, in fact Mr. Navas could take the time off but without pay. A copy of the notice from Cisco's provider with their explanation of denial is attached hereto as **Exhibit P** to the complaint. This action by Cisco and their provider Unum Provident deeply upset Plaintiff Amado Navas, who believes that racist managers within Cisco contacted the provider Unum Provident to ask that Plaintiff's request for paid disability would not be approved.

40.    Plaintiff Amado Navas had no other choice but to make the best he could out of a terrible financial situation. The financial stress caused by Cisco Systems, and all defendants to Plaintiff Amado Navas and his wife, and three children was indeed very painful. Plaintiff Amado Navas and his family fell behind on the payments of all their financial commitments like the house mortgage, car payments and even purchasing food for the family was not always possible during this period of time. Plaintiff Amado Navas was indeed very angry with Cisco Systems, and the Defendants, who had succeeded on inflicting vast amounts of mental torture. Plaintiff felt compelled to inform Cisco that he would go to the media to tell his story, unless Cisco agreed to do something about the racial discrimination charges brought forth by Plaintiff Amado Navas to the executive leadership team.

41.    On or about June 4 2002, Plaintiff Amado Navas sent an email to the executive leadership team of Cisco Systems informing them of his intentions to allow

17

the media to publish his story. A copy of the email is attached hereto as **Exhibit** to the complaint. Mr. Navas received a reply a few hours later from Ms. Angie Bently a representative of the Human Resources department. Then Mr. Navas was contacted after by Ms. Vicky Anderson, who promised Mr. Navas that she was asked by high executives within the company to take care of this situation. Once again Plaintiff Amado Navas was forced to tell his story from the very beginning to another representative of Cisco systems Management. Ms. Anderson actually flew to Tampa to personally interview Mr. Navas. The meeting was conducted at a local Hotel, Ms. Anderson offered to buy Mr. Navas lunch, and even acted motherly by at times putting her hands on Plaintiff Navas's shoulder and leg. Ms Anderson who said wanted to help offered as an idea to relieve the immediate financial stress the family was suffering, to order payroll to cut a check for all paid vacation time that Plaintiff Amado Navas had accumulated to date. Plaintiff Amado Navas had no choice but to agree. Plaintiff Amado Navas knew then that Ms. Anderson was on a mission to sweep everything under the rug, and hope that all problems would go away. She promised that after the medical leave was over Plaintiff Navas would return to work and things would be different. Plaintiff Navas was skeptical at best.

42.       The medical leave time came to an end, Plaintiff Amado Navas had no official resolution to the charges he brought forth, but his financial stress mandated that he would return to work. Mr. Navas was at the time in therapy with an actual Psychiatrist, Dr. Aifield who thoroughly examined Mr. Navas. A copy of these medical evaluations are attached hereto as **Exhibit Q** to the complaint. Mr. Navas informed Dr Aifield of his return to work, Dr. Aifield was indeed against the idea of

18

returning to the same environment that caused such mental stress, but Plaintiff Amado Navas had to convince him. The day Plaintiff Amado Navas was to start working again, Defendant Bastian called him informing Plaintiff Amado Navas that he could not set foot on any Cisco office until Dr. Aifield sent a notice stating that Plaintiff Navas was medically OK to return to work. Plaintiff Navas called Dr. Aifield who again expressed his reluctance to the idea, but after hearing that there were children involved that needed to be cared for, agreed to issue the note. A copy of Dr. Aifield's note is attached hereto as **Exhibit R** to the complaint.

43.     Plaintiff Amado Navas returned to work on or about August 5 2002, that same day Vicky Anderson returned to the Tampa area to meet Plaintiff Amado Navas and introduce him to his new Manager Mr. Robert Learned. Plaintiff Amado Navas was glad to be reporting to a different person other than racist manager Defendant Bruce Bastian, but was not totally convinced that the company had true intentions toward him.

44.     Ms. Anderson also informed Plaintiff that Mr. Bastian would not longer be allowed by the company to use the mail systems to carry out anymore racial attacks. But Plaintiff Amado Navas then knew that Defendant Bastian was getting away with just a soft slap on the wrist. Plaintiff Amado Navas believed that the company would just try to make his job very difficult from then forward to force him to resign.

45.     On or about August 15 2002, Plaintiff Amado Navas received an official response from Cisco Systems Inc., with regards to the charges brought by him. This official response made Plaintiff very unhappy, and confirmed his suspicions that a major sweep under the rug was taking place. A copy of this letter is attached hereto as

19

Exhibit S to the complaint. Also that from that point forward his job conditions would be such that he would be forced to resign at the end.

46.    Plaintiff Amado Navas's new manager Mr. Rob Learned forced Mr. Navas to sign a letter of agreement to a set of conditions that were very difficult to meet. These conditions including having to pass 4 very difficult technical exams in order to achieve the Cisco CCNP certification. Also that in order to keep his job Plaintiff Amado Navas would have to comply to all conditions described in the document. A copy of this letter of agreement is attached hereto as Exhibit T to the complaint. The letter was issued on or about August 12 2002, and Plaintiff Navas was given only 80 days to study and pass these 4 exams.

47.    Plaintiff Amado Navas having to perform his job as well as having to study nearly 8 hours everyday passed the required 4 exams, achieving the CCNP certification. Then just to show the company that he is indeed a very qualified engineer passed two more exams to achieve the CCDP certification as well, doing so well before the deadline of October 31st 2002.

48.    Plaintiff received yet another blow in face when his new Manager gave him an unsatisfactory performance review. Plaintiff Amado Navas was again deeply hurt and stressed by this act. Plaintiff Amado Navas believes that the bad performance review was given to him in retaliation for blowing the whistle on the racist managers. A copy of the bad performance review is attached hereto as Exhibit U to the complaint.

49.    Cisco racist managers complain that Plaintiff Amado Navas is not capable of performing the duties of a successful Systems Engineer, but in fact they do not have

any documentation to prove their allegations. Plaintff on the other hand has plenty of documented proof that his clients the Cisco partners/resellers in the territory think that Plaintiff Amado Navas is doing a great job. Copies of these emails and letters are attached hereto as **Exhibit Y** to the complaint.

50.     Defendant Chuck Robbins has been since promoted to Vice President within the Channels organization. According to racist manager Bruce Bastian Defendant Robbins gave Bastian green light and full support for his actions. In fact one the first things that Defendant Chuck Robbins did as a new Vice President was to send an email containing a joke. A joke where individuals were are called stupid. This kind of behavior shows a pattern of recklessness within the high executive ranks of Cisco Systems. A copy of the email containing the joke sent by Defendant Chuck Robbins is attached hereto as **Exhibit** V to the complaint.

51.     Plaintiff Amado Navas is still suffering from constant harasement at the hands of Cisco Management. In a meeting on or about February 24 2003, Plaintiff Amado Navas was summoned to a meeting with his present Manager Rob Learned, inside Mr. Learned's office, Mr. Navas was told that he was still considered by Mr. Learned's upper management to be the lowest performer, or bottom 5%. And as such was still a target for possible termination. Plaintiff Amado Navas is deeply disturbed by these allegations since he has been working really hard to try to repair his reputation.

52.     Plaintiff Amado Navas is still being racially harassed by white employees of the Souther channels organization. Mr. Navas's present manager Mr. Robert Learned recently took a vacation, and as is customary left another employee in charge of the

21

group as the acting manager. This person Steve Massey a white male, and also a know close associate of Defendant Bruce Bastian, left a voice mail ridiculing the race of Plaintiff Amado Navas. In this voice mail Mr. Massey called Plaintiff Amado Navas a **"HUEVOS RANCHEROS"**, what Mr. Massey is referring to an a very sarcastic tone is a well known Mexican dish of fried eggs on top of re-fried beans. Also in Spanish slang the word HUEVOS also mean testicles. Plaintiff Amado Navas interprets this act as a malicious racist act, he is being called a Mexican but in a racist demeaning manner, Plaintiff Navas also believes this message delivered by Steve Massey as the acting manager of the group is sent by Defendant Bruce Bastian and/or his upper management. A copy of the audio recording is attached hereto as **Exhibit W** to the complaint.

## COUNT I

## RACE, ETHNIC, NATIONAL ORIGIN, AND RELIGIOUS DISCRIMINATION

(Against Cisco Systems Inc.)

53.     Mr. Navas incorporates as if realleged paragraphs 1 through 52 of the complaint.

54.     By purposefully restricting Mr. Navas's promotional opportunities, and by harassing, abusing, and finally causing emotional and psychological harm, on account of his race and/or ethnicity, Cisco Systems Inc. has violated Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C § 2000e et seq.

## COUNT II

## RECONSTRUCTION ERA CIVIL RIGHTS ACT CLAIM

### (Against all Defendants)

55.    Mr. Navas incorporates as if realleged paragraphs 1 through 52 of the complaint.

56.    By engaging in a concerted effort to harass and discredit Mr. Navas, by fostering a hostile environment Cisco and the other defendants have intentionally, negligently inflicted emotional distress and deep psychological damage upon Mr. Navas in direct violation of Florida law.

## COUNT III

## BREACH OF CONTRACT

### (Against Cisco Systems Inc.)

57.    Mr. Navas incorporates as if realleged paragraphs 1 through 52 of the complaint.

58.    By failing to follow its own personnel policies and procedures on evaluating, promoting, and providing equal employment opportunity and by failing to truthfully investigate and reprimand the author(s) of the racial hateful email against Mr. Navas, Cisco Systems Inc. has breached its contractual obligations to Mr. Navas in direct violation of Florida law.

59.    By failing to protect him from discriminatory retaliation, Cisco has violated its own policies described in the Cisco Code of Business Conduct.

## COUNT IV

## RACE, ETHNIC, NATIONAL ORIGIN AND RELIGIOS DISCRIMINATION IN VIOLATION OF FLORIDA LAW

(Against Cisco Systems Inc.)

60.    Mr. Navas incorporates as if realleged paragraphs 1 through 52 of the complaint.

61.    By purposely restricting Ms. Navas's promotional opportunities, and by harassing, mentally abusing, creating a hostile work environment trying to drive him out of the company on account of his race and/or ethnicity, Defendant Cisco Systems Inc. has violated the Florida Civil Rights Act of 1992.

## RELIEF REQUESTED

62.    **WHEREFORE**, Plaintiff Amado Navas prays that this court:

(a) declare the Defendants' conduct to be in violation of his rights;

(b) enjoin the Defendants from engaging in such conduct;

(c) award him the short term disability pay denied in order to cause mental harm;

(d) order Cisco Systems to transfer Plaintiff Amado Navas into a non-discriminatory department of the company, that would require no contact with the Southern Channels organization.

24

(e) Award him compensatory damages of $1,000,000 or more for emotional distress, mental anguish and humiliation on account of the discrimination he suffered at the hands of the Defendants;

(f) Award him damages of 1,000,000 or more for defamation and damage to his career and reputation.

(g) Award him punitive damages in the amount of 3,000,000 or more;

(h) Award him court and other legal fees; and

(i) Grant him other relief as the Court may deem just and proper.


## JURY DEMAND

63.    Mr. Navas demands a jury on all claims triable as a matter of right by a jury.


Dated: March 18, 2003


Amado Navas
Pro se
7810 Greenshire drive
Tampa, Florida 33634
(813) 880-8977

By: _____
AMADO NAVAS Pro se

April 17, 2003


Mr. Fredrick H. L. McClure
Piper Rudnick
101 East Kennedy Boulevard
Tampa, FL 33602-5149
Cc: Bruce Bastian, Chuck Rohbins, David Campbell, and Rick Justice


*Re: Amado Navas v. Cisco Systems, Inc., Bruce Bastian, Chuck Robbins, David Campbell, and Rick Justice. Case # 8:03-CV-487-T-23*

Dear Mr. McClure:

I have received your letter of April the 15th, 2003. I appreciate your personal concern with regards to my wife's health; the particular test performed that day came back OK, thank God.

My position remains the same with regards to taking my case against Cisco and all the defendants, to arbitration. I refuse to do so, and I will present my reasons to Judge Merryday after you file your motion. Please understand that I will not loose this case quietly. If I am ordered by the court to go to arbitration, I will consider that a major defeat; since I have little else to loose I will immediately release to all the major news media networks all the documentation, including the audio recordings containing racial ridicule that I was subjected to by your clients. I will also go public with the evidence that I have that Cisco is falsifying Customer Satisfaction Surveys results, and If they are engaging in fabricating false Customer Satisfaction Surveys, perhaps they are also falsifying other critical financial data. I believe that the Wall Street Journal will have a field day with this story. Also as you are filing your motion, I will be filing a motion following the FRCP, Federal Rules of Civil Procedure, moving to designate this lawsuit as a Class Action Lawsuit.

Mr. McClure I am willing to resolve this matter quietly and privately, or in the eyes and ears of the American public. You and your clients decide.

Sincerely,

Amado Navas

*Amado Navas • 7810 Greenshire dr. • Tampa, FL. • 33634 • (813) 380-8977*

June 11, 2003


Mr. Fredrick H. L. McClure
Piper Rudnick
101 East Kennedy Boulevard
Tampa, FL 33602-5149
Cc: Bruce Bastian, Chuck Robbins, David Campbell, Rick Justice and Cisco Systems, Inc.

*Re: Amado Navas v. Cisco Systems, Inc., Bruce Bastian, Chuck Robbins, David Campbell, and Rick Justice. Case # 8:03-CV-487-T-23*


Dear Mr. McClure:


Per our last telephone conversation, and also in response to your letter dated May 12, of 2003 also attached, enclosed you will find the exhibits that you requested. They are listed in the complaint, as exhibits D, M, and W.

Mr. McClure, it is becoming apparent that your clients do not wish to meet and try to resolve our dispute privately and amicably. I am now taking steps to prepare a motion to elevate the status of my case to a "class action" pursuant to Rule 23, Fed.R.Civ.P.; as enumerated in Rule 23(a) and (b), Fed.R.Civ.P.

I am very much conscious of the fact that the odds are your favor. I am going against a giant corporation with deep pockets, but I have the power of the news media and you know it, I will expose the wrong doings of your clients, numerous violations of their own code of ethics, I will prove in front of the eyes and ears of the American public that Cisco Systems, Inc., and its agents are lying to its share holders, with regards to the so called "Customer Satisfaction Surveys". That I plan to subpoena every member of the executive leadership team, from the CEO on down, their credit card records, mobile phone records, every single email they ever sent. Consider how it would look if your clients had to admit that the number one company in the world of the Internet, can not produce the email evidence because of some lame excuse. Mr. McClure I am just getting started. Or we can end this and get on with our lives, you and your clients decide.


Sincerely,


Amado Navas

**American Arbitration Association**

*Dispute Resolution Services Worldwide*

*Southeast Case Management Center*
L'Tanya Keith-Robinson
Vice President

Stacy Brown
Assistant Vice President

2200 Century Parkway, Suite 300, Atlanta, GA 30345
telephone: 404-325-0101 facsimile: 404-325-8034
internet: http://www.adr.org/

July 20, 2004

**Via e-mail**

Fredrick H.L. McClure
Piper Rudnick LLP
101 E. Kennedy Blvd.
Suite 2000
Tampa, FL  33602

Amado Navas
7810 Greenshire Drive
Tampa, FL  33634

Re: 33 160 00018 04
    Cisco Systems, Inc., Bruce Bastian, Chuck
    Robbins, David Campbell and Rick Justice
    AND
    Amado Navas

Dear Mr. McClure and Mr. Navas:

The Arbitrator advises that the record is now closed regarding Claimants' motion for summary judgment, which was submitted to her for decision under cover of the Association's June 9, 2004 letter addressed to Claimants' counsel and to Respondent; no additional papers will be accepted or considered.  Respondent originally asked for May 24, 2004 as the date for him to submit any opposition to the motion, but nothing was submitted and no request was made for an extension of time.  The Arbitrator was informed last week that Respondent stated on July 13, 2004 that he would submit any opposition on or before the close of business on July 16, 2004, but because nothing has been received, she advises that she will take the undisputed facts and case authorities set forth in Claimants' motion as unopposed.

For the remainder of the case, the Arbitrator cautions that the deadlines previously set by the parties and set forth in the Association's case management letter dated March 17, 2004 will be strictly enforced.  Unless otherwise agreed to by the parties, any requests for an extension must be submitted to the Arbitrator through the Association, with notice to the other side, at least two days in advance of the deadline and must be based on a showing of good cause and absence of prejudice to the other side.  Depending on the circumstances, a request may or may not be granted.

The Arbitrator also discloses that on or about July 12, 2004 a Mr. Bayad, apparently acting on behalf of Respondent, mailed her a package, which she forwarded (unopened) to the Association.  The Arbitrator is not able to accept unsolicited and unexplained submissions from anyone not officially part of this case (i.e., not from anyone other than Claimant's counsel or Respondent pro se).  Claimants' counsel is asked to confirm whether they also received a package from Mr. Bayad and, if so, to submit in writing by July 27, 2004 their position as to whether the contents should or should not be read by the Arbitrator.

Feel free to contact us with any questions or concerns.

Sincerely,


Charles K. Natho
Case Manager
888 320 6568
nathoc@adr.org

Andrea J. Dorsey
Supervisor
404 320 5117
Dorseya@adr.org

cc:      Edith N. Dinneen, Esq.