UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| ANTHONY BAYAD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 04-10468-GAC |
| ) | |
| JOHN CHAMBERS, PATRICIA RUSSO, ) | |
| ANTHONY SAVASTANO, and ) | |
| CARL WIESE, ) | |
| ) | |
| Defendants. ) | |

**DECLARATION OF PAULA HUGHES**

I, PAULA HUGHES, declare under the pains and penalties of perjury, pursuant to 28 U.S.C. § 1746, the following:

1. I am a Human Resources Manager, World Wide Employee Relations, employed by Cisco Systems, Inc ("Cisco"). I have worked at Cisco out of its San Jose, California facility since December 18, 2000. *[handwritten annotation: Plaintiff traveled on 11-3-2000]*

2. In my capacity as Human Resources Manager, I am fully familiar with the facts and circumstances of Cisco's employment policies generally and with respect to Anthony Bayad's employment specifically.

3. I have read Mr. Bayad's Complaint in the captioned matter and submit this declaration in support of the Motion for Summary Judgment of John Chambers, Anthony Savastano and Carl Wiese (the "Cisco Defendants").

## Plaintiff's Alleged Efforts
## To Obtain A Transfer To North Africa

4.  Mr. Bayad alleges that on or about November 2, 2000, while he was employed by Cisco, he applied for a transfer to Cisco Europe for a position as a systems manager or a systems lead engineer for Cisco's North Africa region (the "North Africa Position"), that he was given an oral offer for the North Africa Position, but that Cisco corporate headquarters declined to approve the oral offer based upon discriminatory reasons.

5.  I have undertaken an exhaustive search of Cisco's records, and have located no documents, memoranda, vouchers or any other such materials that substantiate Mr. Bayad's allegations that (1) he applied for the position, (2) he was flown at Cisco's expense to Europe or Africa to interview for the position or (3) he interviewed with Cisco engineers for the position.

6.  I also have interviewed Cisco employees in an attempt to determine whether Mr. Bayad interviewed for a North Africa position and none of these employees have any memory of any such interview of Mr. Bayad having occurred.

7.  Moreover, Cisco's policy regarding transfer and promotion of new employees, in force at the time of Mr. Bayad's alleged interview for the North Africa position, states that Cisco employees are not eligible for transfer during their first year of employment with Cisco absent a business necessity and the Cisco employee's manager approval. Attached hereto as Exhibit A is a true and correct copy of Cisco's recruiting policy with respect to current and former Cisco employees.

8.  In November of 2000, the time Mr. Bayad alleges he applied for the North Africa Position, Mr. Bayad had been an employee of Cisco for only six (6) months. Thus, even if Mr. Bayad had applied for the North Africa Position, and even if he had received an oral offer for

2

that position, Cisco legitimately would not have approved the transfer absent a business necessity and his manager's approval because, without regard to Mr. Bayad's race or national origin, such a transfer would have violated Cisco's transfer policy.

9. Cisco's records concerning Mr. Bayad's employment indicates that he did not seek or receive Paid Time Off ("PTO") at any time during the month of November 2000, when, according to his own allegations, he was traveling in Europe or Africa. Instead, according to Cisco's records, Mr. Bayad received regular pay for performing his usual duties at Cisco's Lexington, Massachusetts facility. Attached hereto as Exhibit B is a true and correct copy of Cisco's complete records regarding Mr. Bayad's PTO for the May 1, 2000 – May 1, 2001 period of his employment with Cisco.

### Plaintiff's Alleged Efforts To Obtain Employment With Cisco Following His Termination From Cisco

10. On behalf of Cisco, I have undertaken a diligent search of Cisco's personnel files and interviewed Cisco employees to attempt to determine what positions, if any, Mr. Bayad applied for after his termination of employment with Cisco, and the disposition of any such applications.

11. In the Fall of 2003, Mr. Bayad applied to Cisco for a Systems Engineer II position (Requisition No. 713833) based at the company's Lexington, Massachusetts facility. Cisco rejected Mr. Bayad's application for this Systems Engineer II position because Mr. Bayad did not meet the minimum requirements necessary for that position. The position required extensive experience in Network Security and, following a preliminary telephone screening interview, the hiring manager determined that Mr. Bayad did not possess such experience.

12. The individual hired for Requisition No. 713833 did have extensive experience in Network Security and had won Cisco's "Systems Engineer of the Year" award the previous year.

13. Cisco's records reflect that Mr. Bayad applied for a Voice Specialist position in Cisco's California facility with respect to Requisition 714082. The Human Resources Manager who Mr. Bayad contacted did not consider him for that position after Lynn Fraser, Mr. Bayad's former supervisor at Cisco, truthfully informed her that Mr. Bayad had never completed the CCIE, despite his commitments to do so. In addition, Cisco was not at that time paying to relocate prospective employees, which would have been necessary had Cisco decided to hire Mr. Bayad. The Human Resources Manager did, however, forward Mr. Bayad's application to Cisco's sourcing group so that he could be considered for other Cisco positions. Attached hereto as Exhibit C is a true and correct copy of email correspondence dated January 7, 2004 confirming these reasons for rejecting Mr. Bayad for this position.

14. Although Mr. Bayad alleges he was denied a position with respect to Requisition 714007, contact name Michael Kent, Cisco's files contain no record of such an application. I have inquired of Mr. Kent and his staff as to whether they have an independent recollection of Mr. Bayad applying for this position, and they do not.

15. Although Mr. Bayad alleges he was denied a position with respect to Requisition 713667, contact name Niki Peleuses, Cisco's records include no record of any such application. I have inquired of Ms. Peleuses' staff as to whether they have an independent recollection of Mr. Bayad applying for this position, and they do not.

16. Although Mr. Bayad alleges he was denied a position with respect to Requisition 713906, contact name Michael Kent, Cisco's records include no record any such application. I

have inquired of Mr. Kent and his staff as to whether they have an independent recollection of Mr. Bayad applying for this position, and they do not.

17. Although Mr. Bayad alleges he was denied a position with respect to Requisition 713644, contact name Niki Peleuses, Cisco's records include no record any such application. I have inquired of Ms. Peleuses' staff as to whether they have an independent recollection of Mr Bayad applying for this position, and they do not.

18. Although Mr. Bayad alleges he was denied a position with respect to Requisition 713123, contact name Michael Kent, Cisco's records include no record any such application. I have inquired of Mr. Kent and his staff as to whether they have an independent recollection of Mr. Bayad applying for this position, and they do not.

19. Although Mr. Bayad alleges he was denied a position with respect to Requisition 711846, contact name Chuck Ramsburg, Cisco's records include no record any such application. In addition, I have inquired of Mr. Ramsburg's staff as to whether they have any independent recollection of Mr. Bayad applying for Requisition 711846 and they do not. The individual who ultimately was selected for this position was an internal candidate, already employed at Cisco. Current Cisco employees are given preference over non-Cisco employees in filling any open job requisition.

20. Although Mr. Bayad alleges he was denied a position with respect to Requisition 711780, contact name Dominick Delfino, Cisco's records include no record any such application. In addition, I have inquired of Mr. Delfino and his staff as to whether they have any independent recollection of Mr. Bayad applying for Requisition 711780 and they do not. The individual who ultimately was selected for this position was also an internal candidate, already employed at Cisco.

21. Although Mr. Bayad alleges he was denied a position with respect to Requisition 72133, contact name Scott Lovett, Cisco's records include no record any such application. I have inquired of Mr. Lovett and his staff as to whether they have an independent recollection of Mr. Bayad applying for this position, and they do not.

22. Although Mr. Bayad alleges he was denied a position with respect to Requisition 712669, contact name Michael Kent, Cisco's records include no record any such application. I have inquired of Mr. Kent and his staff as to whether they have an independent recollection of Mr. Bayad applying for this position, and they do not.

23. Although Mr. Bayad alleges he was denied a position with respect to Requisition 713950, contact name Liz Bacchi, Cisco's records include no record any such application. I have inquired of Ms. Bacchi and her staff as to whether they have an independent recollection of Mr. Bayad applying for this position, and they do not.

### Cisco's Former No-Hire Policies

24. In the past, and in the interest of fostering positive working relationships with companies that were its business partners, Cisco entered into partnership agreements and cooperative business arrangements with the business partners (the "Partners") that included Cisco's agreement not to recruit employees from its Partners.

25. To ensure that Cisco fulfilled its obligations not to engage in targeted recruiting efforts directed at its Partners, Cisco provided to its employment recruiters various lists of Partners from whom Cisco agreed not to recruit.

26. In the past, Cisco also entered into partnership agreements and business arrangements with offshore partner companies (the "Offshore Partners") that included Cisco's agreement not to hire engineers employed by the Offshore Partners.

27. Cisco agreed not to hire engineers employed by its Offshore Partners in order to maintain the stability of its business projects with the Offshore Partners. Specifically, Cisco agreed not to hire any engineer who was working or had worked for an Offshore Partner, for a period of six (6) months after the engineer terminated his/her employment with the Offshore Partner. Cisco entered into these agreements to avoid the high attrition rates its Offshore Partners had experienced and would experience if Cisco did not agree not to hire their engineers

28. To ensure that Cisco fulfilled its obligations not to hire engineers of its Offshore Partners, Cisco provided to its employment recruiters various lists of engineers who were active employees of the Offshore Partners, or had terminated their employment with the Offshore Partners within six months, and were therefore ineligible for hire by Cisco. In this lawsuit, the Cisco Defendants produced to Mr. Bayad copies of such lists, which are attached hereto as Exhibit D.

29. Cisco does not currently maintain any "no-hire" lists.

30. Counsel for the Cisco Defendants has provided me with a copy of a "no-hire" list dated September 10, 2000 that Mr. Bayad produced to the Cisco Defendants during discovery in this lawsuit ("Plaintiff's No-Hire List"). The Plaintiff's No-Hire List highlights his name at the beginning of the document as an individual not to be hired, transferred or promoted by Cisco. I have conducted an extensive investigation at Cisco, reviewing relevant files and interviewing employees likely to have knowledge, to determine whether this list is a genuine Cisco document. I found no indication whatever that Cisco has ever generated, maintained or circulated any internal company document that lists or otherwise designates Mr. Bayad as an individual who should not be hired, transferred or promoted by Cisco.

31. With the exception of Mr. Bayad's name, the Plaintiff's No-Hire List includes only the names of companies, and not the names of any individuals. Cisco's no-hire lists listed either (a) Partner companies or (b) individual employees. The lists did not list both companies and individuals in the same list.

32. The Plaintiff's No-Hire List is dated September 10, 2000. On September 10, 2000, Mr. Bayad had been working at Cisco for approximately four (4) months. Mr. Bayad already had been hired by Cisco at that time and was, pursuant to Cisco's transfer and promotion policy, ineligible for transfer or promotion.

Signed under the pains and penalties of perjury this 25 day of February, 2005

_____
Paula Hughes