UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANTHONY BAYAD,<br><br>*Plaintiff*,<br><br>v.<br><br>JOHN CHAMBERS, PATRICIA RUSSO,<br>ANTHONY SAVASTANO, and<br>CARL WIESE,<br><br>*Defendants*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) CIVIL ACTION NO. 04-10468-PBS<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANTS JOHN CHAMBERS, ANTHONY SAVASTANO,
AND CARL WIESE'S RESPONSE TO PLAINTIFF'S
NOTICE OF PERJURY AND MOTION FOR JURY TRIAL**

Defendants John Chambers, Anthony Savastano, and Carl Wiese[1] (the "defendants") oppose the "Notice of Perjury and Motion for Jury Trial Demanded the 7th Amendment of the U.S. Constitution" (the "Motion"). Docket Entry #97. The Motion requests this Court to either set this matter for trial or grant summary judgment for plaintiff Anthony Bayad ("Bayad") because of what Bayad maintains are discrepancies in certain affidavits submitted in support of the Defendants' Motion for Summary Judgment, Docket Entry #65. Motion at 19. The defendants interpret the Motion as a request for the Court to reconsider its Report and Recommendation RE: Defendants' Motion for Summary Judgment (Docket Entry #65) and Plaintiff's Cross Motion for Summary Judgment (Docket Entry #73) (the "Recommendation"),

---

[1] All of the claims against the remaining named defendant, Patricia Russo, were dismissed by this Court on October 25, 2004. See Memorandum and Order, Docket Entry #44 at 10.

~BOST1:393534.v1
26573-15

Docket Entry #88. This Court should deny the Motion because Bayad has failed to cast doubt on the Recommendation's conclusions.

## BACKGROUND

Bayad initiated this employment discrimination action on March 8, 2004. The complaint alleged, under a variety of theories, that the defendants discriminated against Bayad both before and after his termination by Cisco Systems, Inc. ("Cisco") in May 2001. Docket Entry #1. In October 2004 the Court dismissed all of Bayad's claims but those under 42 U.S.C. § 1981 that arose after March 8, 2000, and those conspiracy claims that arose after March 8, 2001. Memorandum and Order, Docket Entry #44. In February of 2005, the defendants moved for summary judgment. Motion for Summary Judgment by John Chambers, Anthony Savastano, and Carl Wiese, Docket Entry #65. The defendants submitted a number of documents in support of their motion, including a Statement of Undisputed Facts ("Statement of Facts"), Docket Entry #67, and declarations of John Chambers ("Chambers Declaration"), Carl Wiese ("Wiese Declaration") and Paula Hughes ("Hughes Declaration"), Docket Entry #68. The Recommendation, issued in May 2005, concluded that: (1) Bayad had released all claims arising from his employment with Cisco, id. at 12-15, and (2) Bayad had produced no admissible evidence to substantiate his post-employment discrimination and conspiracy claims. Id. at 15-24. On September 15, 2005, Judge Patti B. Saris accepted the Recommendation pending an evaluation of Bayad's post-argument filings. Docket Entry #96. On September 27, 2005, Bayad filed the Motion and an accompanying "Notice of Support of Newly Discovered Evidence and Declaration in Support of Notice of Perjury and Motion for Jury Trial Demanded the 7th Amendment of the U.S. Constitution" ("Bayad Declaration"). Docket Entry #98.

**ARGUMENT**

Bayad maintains that this Court should reconsider the Recommendation because Carl Wiese, John Chambers, and Paula Hughes filed "false declarations." Motion at 3. He also accuses Cisco and its attorneys of destroying evidence. Motion at 8. Bayad's accusations are baseless and should not alter the Court's decision.[2]

**A.   Carl Wiese Did Not Commit Perjury.**

Bayad accuses Mr. Wiese of misstating his job title in his declaration. Motion at 2-3. Mr. Wiese declared his title to be "Area Vice President for Advanced Technology with Cisco Systems, Inc." Wiese Declaration, ¶ 1. Bayad asserts that Mr. Wiese's true title is "Area Vice president [sic] U.S [sic] Sales of Cisco." Motion at 2. As evidence, Bayad points to a web page from Cisco's personnel directory that lists Mr. Wiese's title as "Area VP, US Sales." Motion at 3 and Ex. B.

The web page is hearsay as Cisco is not a party to this suit. Nor is the page admissible as a business record -- it is outdated (last modified in November 2003), and Bayad provides no foundation to establish that the title entry (an obvious abbreviation) is still, or ever was, an accurate record of Mr. Wiese's "true" title. See Belber v. Lipson, 905 F.2d 549, 552 (1st Cir. 1990) (writing inadmissible as business record absent foundation of accuracy laid by qualified witness).

Inadmissible hearsay cannot be used to oppose a motion for summary judgment, Fed. R. Civ. P. 56(e), but even if it could, the title discrepancy would be irrelevant. The meaningful portions of the Wiese declaration are Mr. Wiese's statements that he "was not aware that

---

[2]   At points in the Motion, Bayad reasserts various factual claims that were rendered moot by the Recommendation's conclusions. The defendants address only Bayad's new allegations.

3

Mr. Bayad had worked at Cisco until after he filed this lawsuit in 2004," and that he has "no personal knowledge concerning, and [has] had no involvement with, any decision regarding Mr. Bayad's employment with Cisco, the termination of his employment, or Mr. Bayad's alleged subsequent attempts to obtain re-employment with Cisco or employment elsewhere." Wiese Declaration ¶¶ 3, 6. Nothing Bayad has said or presented casts any doubt on accuracy of these statements.

### B.   John Chambers Did Not Commit Perjury.

Bayad attacks as incredible John Chamber's declaration that he does not recall ever meeting Anthony Savastano. Motion at 10.[3] The statement itself is entirely plausible. Mr. Chambers is the Chief Executive Officer of a corporation employing over 40,000 people world-wide, Statement of Facts ¶ 2, and can hardly be expected to recall each of his employees, or even each of his corporate Vice Presidents. Bayad provides no admissible evidence to contradict Mr. Chambers on this point or even to support his assertion that Mr. Chambers and Mr. Savastano work in proximity to one another. In any case, the point is immaterial, as the Court concluded that evidence of collusion between the defendants would not alter the outcome of the summary judgment analysis. Recommendation at 23 ("even if Bayad produced evidence that defendants, in fact, acted in concert, the injury caused to Bayad, his denial of employment, does not appear to be substantially different from what a single defendant could have achieved by himself").

---

[3]   This portion of the Motion contains language that Bayad purports to be a quotation from the Statement of Facts. Bayad has, in fact, altered the text that appears in the original. <u>Compare</u> Statement of Facts ¶ 3 <u>with</u> Motion at 10.

4

C.   **Paula Hughes Did Not Commit Perjury.**

Bayad maintains that the portions of the Hughes Declaration relating to his alleged application for transfer to Cisco Europe in November 2000 must be false because Ms. Hughes did not go to work for Cisco until the following month. Motion at 12-14. Bayad's argument is specious. In the portion of the Hughes Declaration that Bayad questions, Ms. Hughes did not claim to relate her first-hand knowledge. She based her statements upon "an exhaustive search of Cisco's records," interviews with Cisco employees, and her knowledge of Cisco's personnel policies. Id. ¶¶ 5-9. None of these statements are inconsistent with her declaration that she began working for Cisco in December 2000.

Bayad also lists a host of evidence that, he asserts, would corroborate his claim to have traveled to France, England, and the United Arab Emirates in pursuit of a job transfer. Id. at 15-16, Bayad Declaration ¶¶ 12-17. He presents, however, only three documents: (1) a blank visa application for the Untied Arab Emirates; (2) a copy of a page from a United States passport with entry and exit stamps from the United Arab Emirates from November 5, 2000, and November 6, 2000, respectively; and (3) another page from a United States passport showing an entry stamp from Heathrow airport.[4] Id. ¶ 9 & Exs. 1-2. Bayad claims that these documents, taken together, establish that he entered the United Arab Emirates at the behest of Cisco, because Bayad would have needed Cisco's assistance to obtain a visa for his one-day visit. Id. ¶ 8. In fact, they do not -- the application states that a U.S. citizen may enter the United Arab Emirates without a visa for a stay lasting less than a month. Id. Ex. 1 at 2. Even if they did, however, it would alter nothing, as the Court correctly concluded that "Bayad's valid execution of the

---

[4]   The date of the Heathrow stamp is unclear but could be November 7, 2000. Noticeably absent is any indication that Bayad traveled to France, the third stop in his alleged interview tour. Motion at 15.

Release on May 1, 2001, precludes any claims arising from his employment with and termination from Cisco." Recommendation at 12.

### D. No One Destroyed Evidence.

Bayad claims, without basis, to have uncovered a plot by the "Cisco Legal Team" to destroy evidence. Motion at 8 & Ex. D. On its face, the document that Bayad describes as an "E-mail From Cisco Legal Team instructing Cisco Sales Organization to destroy Evidence in this litigation," Motion at 8, reveals it to be a request for Cisco employees to delete an erroneously disseminated document authored by a competitor. Id., Ex. D. There is no connection between that e-mail and this case.[5]

## CONCLUSION

For the foregoing reasons the defendants request that the Court deny the plaintiff's Motion for Jury Trial.

Respectfully submitted,

DEFENDANTS JOHN CHAMBERS,
ANTHONY SAVASTANO, and
CARL WIESE

By their attorneys,

/s/ Matthew Iverson

---

Matthew Iverson, BBO #653880
Bruce E. Falby, BBO #544143
DLA PIPER RUDNICK GRAY CARY US LLP
One International Place, 21st Floor
Boston, MA  02110-2613
(617) 406-6000 (*telephone*)
(617) 406-6100 (*fax*)

Dated:  October 14, 2005

---

[5] Exhibit D to the Motion also includes a copy of a Labor and Employment Law Alert published by Piper Rudnick LLP in 2004. The Law Alert discusses the implications of Zubulake v. UBS Warburg, 2004 WL 120866 (S.D.N.Y. July 20, 2004), a decision addressing the requirements for preserving electronic information. Neither the Law Alert nor the Zubulake decision have any connection to this case.