To David Huskey Jr.

Lucent Technologies
Bell Labs Innovations

Lucent Technologies Inc.
Business Communications Systems
6545 126th Avenue North
Largo, Fl. 34649

January 24th, 1997

Mr. Anthony Bayad
2900 NE. 30th, Apt 7F
Fort Lauderdale, Fl. 33306

Dear Mr. Bayad,

I have reviewed the information from the security investigation regarding the purchase of two airline tickets from Morocco to Miami. This is a serious violations of the Lucent Technologies Code of Conduct, misusing the Corporate American Express Card for personal expenses.

This is to notify you that your employment is terminated immediately as a result of your violation of the Lucent Technologies Code of Conduct.

Please call Tony Savastano to make an appointment to retrieve any personal items at the Ft. Lauderdale office.

Tony Savastano
General Manager

CARD MEMBER ACTIVITY

ACNO : 3787-863286-61002
NAME : ANTHONY BAYAD

DATE : 01/20/97
SSN : 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

| | DATE OF CHARGE | RECORD OF CHARGE | CHARGE DESCRIPTION | | | TRANS. AMOUNT |
|---|---|---|---|---|---|---|
| line 1. | 11/01/96 | 1471269246109 | ROYAL AIR MAROC NEW YORK NY | | | 941.84 |
| 2. | 11/05/96 | 0002090000000 | PAYMENT RECEIVED - THANK YOU | | 11/05 | -900.00 |
| 3. | 11/06/96 | 0000037415193 | RADISSON BAY HARBOR TAMPA | | F | 189.58 |
| 4. | 11/07/96 | 0000000021922 | MOBIL OIL GGP | LARGO | F | 16.01 |
| 5. | 11/07/96 | 0000000000332 | MOBIL OIL 600 | DAVIE | F | 15.00 |
| 6. | 11/10/96 | 0000001495860 | COMPUSA #337 | TAMPA | F | 978.52 |
| 7. | 11/10/96 | 0000000007347 | GALT MILE | FT LAUD | F | 9.50 |
| 8. | 11/10/96 | 0000000001501 | PAUL AMATO PRESIDENCLEARWATER | | F | 15.01 |
| 9. | 11/12/96 | 0000000044750 | 2025 EAST SUNRISE BLFT LAUDERDALE | | F | 15.00 |
| 10. | 11/12/96 | 0000001086541 | OFFICE DEPOT | LAUDERDALE LAKE | F | 1241.99 |
| 11. | 11/15/96 | 0008155000000 | CORPORATE REMITTANCE | | 11/15 | -1350.00 |
| 12 | 11/15/96 | 0008155000000 | CORPORATE REMITTANCE | | 11/15 | -1350.00 |
| 13 | 11/15/96 | 241595535 | AVIS RENT-A-CAR | DANIA | F | 398.69 |

MORE

Line 1 shows Royal AIR MAROC NEW YORK NY. amount $941.84

Line 2 Bayad sent the payment 4 days later of $900.00

What is the problem the card has Bayad Social Security above SS# 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 and his name. Anthony Bayad Acct# 3787-863286-61002

answer.
A. Mr. Laurino.
Q. All right. Getting back to the conversation that you had with Mr. Bayad. You told us that you went to your office.
Did you -- did you shut the door when you went to speak to him? Mr. Navas patched you through to Mr. Bayad, do you remember that?
A. Yes.
Q. Let's back up.
Do you remember that you told me that you spoke to Mr. Bayad personally the morning of his interview?
A. Yes.
Q. Okay. Do you remember that you told me that Mr. Navas effectively patched him through to you?
A. I asked Mr. Navas to --
Q. Transfer?
A. -- transfer the call into my office.
Q. All right. And did he, in fact, do that?
A. Yes.
Q. And did you have the conversation that we're going to talk about in a moment with Mr. Bayad from your office?
A. Yes, I did.

Q. Was your office door open or closed?
A. It was closed.
Q. Was anyone else in the room during that conversation?
A. No.
Q. Were you on the speaker phone?
A. No.
Q. Okay. Tell me what you -- is that the one and only conversation that you had with Mr. Bayad before he came to Largo that same day?
A. Yes, it was.
Q. Tell me what was said in that conversation.
A. The conversation essentially went, "Anthony, I understand that you are not planning on coming to Largo."
And he said "That's correct."
And I said, "Did you not understand that you were to be here at 1:00?"
He said, "Yes, but I'm not going to come."
I asked him, "Why not?"
He said -- one time he said he had customers that he was working and then another time he said, "Unless you tell me the specific reason why you want me to be there, I'm not coming."
And my response to him, to the best of my

recollection was, "Anthony, please listen to me very carefully. I am giving you a work directive that I want you here at this office as quickly as you can possibly be here. Should you decide not to come, I am going to view that as insubordination and you will suffer the consequences thereof."
He then said, "Are you going to fire me?"
I then said, "I didn't say that. I just need for you to be here as quickly as you possibly can."
Q. Was that the sum of the conversation?
A. Yes.
Q. Okay. Were those the exact words that you used?
A. Exact words.
Q. Okay. You have admitted, have you not, in paragraph 33 of your Answer, making the statement that you, "didn't care if Mr. Bayad had to take a flying carpet to Largo," and -- and language similar to that?
A. Yes, I admit that.
Q. All right.
A. I did not make that statement to Mr. Bayad.
Q. Okay. To whom did you make that statement?
A. I made that statement to Mr. Navas when he told me something to the effect, "How do you expect him to get here?"

Q. Okay. And in your conversation there, then, with Mr. Bayad, you did not actually use that language?
A. No.
Q. You do not deny, however, making a reference specifically contrary to the language that you used in the conversation with Mr. Bayad, "quickly,", but that he thought, if necessary, take a flying carpet? You do not deny having said that?
A. I did not say it to Anthony Bayad, but I did say it to Amado Navas.
Q. Where did you make that statement to Mr. Navas?
A. Out on -- right adjacent to his office.
Q. All right. Did Mr. Navas, at that time, have an enclosed office such as you did?
A. No, he did not.
Q. All right. Was it a work area which was open?
A. Yes.
Q. Cubicle?
A. Yes.
Q. All right. With others in the -- in the same area?
A. I believe so.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ANTHONY BAYAD,

Plaintiff,

Case No.: 97-6671-CIV-ROETTGER
Magistrate Seltzer

vs.

LUCENT TECHNOLOGIES, INC.,
LEWIS KASLOW, MIKE REED,
RONALD LAURINO, ANTHONY SAVASTANO,
and JOAN GROHE,

Defendants.

DEPOSITION OF: LEWIS KASLOW

TAKEN: Pursuant to Notice by Counsel for Plaintiff

PLACE: Marriott Hotel
Tampa International Airport
Manatee Room
Tampa, Florida

DATE: June 22, 1998

TIME: Began: 2:01 p.m.
Ended: 6:39 p.m.

REPORTED BY: KEVIN P. MIKUS, RPR, RMR
Registered Merit Reporter
Notary Public - State of Florida
at Large

APPEARANCES:

DAVID J. SALES, ESQUIRE
Searcy, Denney, Scarola,
Barnhart & Shipley, P.A.
2139 Palm Beach Lakes Boulevard
West Palm Beach, Florida 33402

-and-

STEPHANIE ALEXANDER, ESQUIRE
2450 Hollywood Boulevard, Suite 702
Hollywood, Florida 33020
Attorneys for Plaintiff;

TODD R. LEGON, ESQUIRE
Wallace, Bauman, Legon, Fodiman & Shannon
2222 Ponce de Leon Boulevard, Suite 600
Coral Gables, Florida 33134
Attorney for Defendants.

ALSO PRESENT: ANTHONY SAVASTANO

I N D E X

| | Page |
|---|---|
| Examination | |
| By Mr. Sales | 3 |
| STIPULATION | 225 |
| DEPONENT SIGNATURE PAGE | 226 |
| CERTIFICATE OF OATH | 227 |
| CERTIFICATE OF REPORTER | 228 |

E X H I B I T S

Plaintiff's Exhibit 1 (Marked After Deposition)
Plaintiff's Exhibit 27 (Marked Prior to Deposition)
Plaintiff's Exhibit 2 (Marked After Deposition)
Plaintiff's Exhibit 3 (Marked After Deposition)
Plaintiff's Exhibit 17 (Marked Prior to Deposition)
Plaintiff's Exhibit 29 (Marked Prior to Deposition)
Plaintiff's Exhibit 36 (Marked Prior to Deposition)
Plaintiff's Exhibit 32 (Marked Prior to Deposition)
Plaintiff's Exhibit 20 (Marked Prior to Deposition)
Plaintiff's Exhibit 4 (Marked After Deposition)
Plaintiff's Exhibit 26 (Marked Prior to Deposition)

(All Exhibits Attached)

The Deponent herein,

LEWIS KASLOW,

being first duly sworn to tell the truth, the whole truth, and nothing but the truth, was examined and testified as follows:

EXAMINATION

BY MR. SALES:

Q. What is your name, sir?

A. My name is Lewis Kaslow.

Q. And your date of birth?

A. Date of birth is 11-12-1948.

Q. Where do you reside?

A. I reside in Palm Harbor, Florida, and the address is 4498 Fallbrook Boulevard, Palm Harbor, Florida. The ZIP code is 34685.

Q. I was told by someone else that the Largo facility for Lucent has moved. Is that correct?

A. That is correct.

Q. Where are you all now?

A. We are at the northern part of St. Petersburg.

Q. What's the address there?

A. 11399 16th Court North.

MR. SAVASTANO: St. Petersburg, Florida, 33711.

Q. And when did that occur?

A. The move occurred in a four phase move. We actually started moving over there in late January and it finished up in February.

Q. So it's up and running now?

A. It is up and running.

Q. Tell me what that facility is like.

A. That facility is very analogous to the Largo Customer Care Center. We just moved it from the old Paradyne facility over to a new facility. It is a three story, 100,000 square foot facility where we supply network management to data networking customers as well as installation and support.

Q. And what is your title there?

A. My title there is General Manager of the Tampa Bay NetCare Services Center.

Q. So that hasn't changed in the last 12 to 17 months?

A. No, it has not.

Q. Is there anybody above you at the office?

A. At the office?

Q. Resident in that facility.

A. At the time this all occurred, no.

Q. How about now?

A. Yes.

**Lucent Technologies**
Bell Labs Innovations



8545 126th Avenue North
Largo, Florida 33773

# Memorandum

**DATE:** 1/22/1996

**TO:** Anthony Bayad

**FROM:** Amado Navas

**RE:** Reply to your memo on 1/22/1996

**CC:**

Mr. Bayad,

I am just letting you know that I have received your memo dated Jan 22nd regarding your request for a promotion. I am not able to make that kind of decision, for it is beyond the boundaries of my power as a B level manager in this company. Therefore I have escalated the issue to Mr. Savastano, for him to review and decide. On a personal note to you, I had a conversation with a C level manager here in Largo who informed me that your status in this company is not a very favorable one. What I mean by that is that certain hi level officers on this corporation do not think your approach when dealing with internal process problems is correct, and that you probably will not be welcome in this organization much longer.

Anthony, you know I always have had high regards for you both professionally and personally. I think you are the best troubleshooting engineer I have ever seen come out of Wellfleet/Bay Networks, I know you are excellent with customers, and furthermore I know that you are a person that does not like to see people collecting a paycheck in a company without doing any real work for it. And unfortunately we have a lot of that sickness in this company. My advise to you is to start exploring other opportunities elsewhere, because I believe that there are people in this company with power that are going to do everything they can to get you out.

It hurts me plenty to have to give you these news, but I see it my duty to at least make sure your reputation and your career are protected from the few bad seeds in this company.

Respectfully yours,

Amado Navas
Operations Manager.

Lucent Technologies
Bell Labs Innovations

8545 126th Ave. N.
P.O. Box 2826
Largo, FL 34646-2826

# Memorandum

**DATE:** June 20, 1996

**TO:** Tony Savastano

**FROM:** Amado Navas

**RE:** Anthony's Request for On-Call compensation

**CC:**

Tony, regarding the subject of pager compensation for Anthony Bayad, I like to convey to you my position. Anthony has demonstrated to me and to this company his willingness to sacrifice tremendously both professionally and his personal life. If I could not count on Anthony to help me run this group, I would be lost. I am having a tough time just like you, trying to succeed but not getting much help from a lot of our workers.
The subject of pager compensation is always controversial, I do not want to pay on-call money to any one else until they demonstrate to me the same level of commitment that Anthony has. It is the up to you to make a decision on this matter, I have seen plenty of people both in this center and on the field that should not be working in this company, and making the amount of money that they make. It is also a standard practice to pay an average of $500.00 to an engineer to be on-call 7 days, 24 hours a day. All the major companies in the industry like Bay, Cisco, 3Com etc. Utilize it.

Tony, there is no need to replay to me on this memo....

Amado
Amado Navas
Bay Team Lead

**Lucent Technologies**
Bell Labs Innovations

8545 126th Avenue North
Largo, Florida 33773

# Memorandum

**DATE:** 1/15/1997
**TO:** Tony Savastano
**FROM:** Amado Navas
**RE:** Merit Award to Anthony Bayad
**CC:** Carl Wiese, Anthony Bayad

Gentlemen,

I am hereby requesting a one time cash payment Merit Award be issued to Anthony Bayad, effective January 16th, and for the amount of $7,500.00 ( Seven Thousand five hundred ) so that after taxes the net amount is over $5,000.00 ( Five Thousand ) in order to recognize Mr. Bayad's achievements in the following areas:

- Anthony was instrumental in the rollout of the Fort Lauderdale project. When I took over this project back in September of 1996, I was told that Lucent has a real state group that would be ready to help us find and acquire a facility. This people turned out to be slow to respond to our need to have a facility in place in less than 60 days. It was a complete disappointment dealing with these group of people, some of them would not even return calls unless their managers were involved. Anthony took the time to along with his primary responsibilities, make countless telephone calls, drive his own vehicle at his own expense, without expecting anything in return, visit numerous potential sites, until we finally found a building that would suit our immediate needs.

- While fighting real state issues Anthony helped me in the process of hiring 7 very qualified individuals that would have cost the company in excess of $75,000.00 had we gone to a reputable recruitment agency. Their fee is usually $12,000.00 or more per qualified engineer. When we open the shop up for business, we found that the previous group had dropped the ball long before we were ready, which created a tremendous backlog, plus several threat of legal actions. Anthony stepped in, picked up the ball and ran with it. He turned the potential law suits and the backlog around, while implementing a very aggressive internal training program, that again saved the company tens of thousands of dollars.

- Anthony has been going well beyond the call of duty, and beyond the scope of his responsibilities, by on several occasions taking escalations from our post-sale group here in Largo. Mr. Bayad has also ignored the fact that numerous individuals within the company driven by jealousy and unfounded fears for their own incompetence, have started countless malicious rumors trying to keep Anthony's activities in the Fort Lauderdale group out of focus, and in the a track headed for failure. Furthermore Anthony has taking a double role both as an Engineer and as a Manager at my request in order to ensure the success of the operations of the Pre-sales, Design and Configuration Assurance group, which are very critical to the over all well being BCS initiative in Data Internetworking.

Gentlemen, I expect your full support in my decision to give credit where credit is due. Thank you.

Amado Navas
Operations Manager
Internetworking Products Support



**Lucent Technologies**
Bell Labs Innovations

**Anthony Bayad**
**SE Manager**
**2455 E. Sunrise Blvd. #PHS**
**Fort Lauderdale, FL 33301**
**(954)714-4702**

Date: January, 9 1996

Subject : New Position within Lucent Technologies.

Dear Mr. Sylvia,

It was a pleasure to meet with you in the Ft. Lauderdale Office this week. I am confident that the solutions we discussed will have a positive impact on the problems facing our organizations.

As we discussed, I was instrumental in establishing the Ft Lauderdale office. My Team and I have done a great deal to support BCS's Data Communications Sales and Service forces with limited resources. It has been very exciting and challenging for all of us, and we have done and continue to do a great job.

I understand that there are two even more exciting opportunities with Lucent Technologies. I would be a perfect fit for either of them. The positions are Technical General Manager for Remote Corporate Systems Engineers, and General Manager for International Sales Support.

I look forward to hearing from you soon.

Sincerely,

Anthony Bayad

F



July 21, 1997

Anthony Bayad
2900 NE 30th St.
Suite 3E
Ft. Lauderdale, FL 33306

Dear Anthony:

On behalf of International Network Services (INS), please accept our offer of employment. The details of your offer are as follows:

- Title: Network Systems Engineer
- Reporting To: Neil Schmiedeberg, Managing Principal
- Location: Ft. Lauderdale office
- Salary: $2,576.93 bi-weekly ($67,000.18 annualized)
- Options: 1,500
- Start Date: August 18, 1997

Your salary in this exempt position will be annualized and paid bi-weekly, from which all legally required deductions will be made.

Upon approval of the Board of Directors, your shares will be offered to you, subject to the terms and conditions of the INS Incentive Stock Option Plan. Your stock option vests over a fifty (50) month period with the first twenty-four percent of your option vesting one year after the Grant Date and two percent vesting each month You will be eligible to be covered under the INS Benefits Plan on your first day of employment with INS.

In keeping with federal requirements, this offer of employment is made contingent upon your providing INS with acceptable documentation establishing both identity and employment authorization, regardless of national origin or citizen status.
We have an exciting and challenging time ahead of us, Anthony and I know that you will make a substantial contribution to our future success. I look forward to your acceptance of this offer and your first day at INS.

Please sign your full name, initial the start date confirming your concurrence with your first day of employment, and return one copy of this letter. Keep the second copy for your records. This letter expires within five days, so please complete this process in a timely manner.

Sincerely,

John L. Drew
President & COO

I accept this offer of employment as stated to begin on August 18, 1997.______

Signature: ______________________
Date: ______________________



July 30, 1997

Anthony Bayad
2900 NE 30th ST.
Suite 3E
Ft. Lauderdale, FL 33306

Dear Anthony:

This letter serves as notification that we are rescinding our offer to you for the Network Systems Engineer position in Ft. Lauderdale, reporting to Neil Schmiedeberg.

Your signature on the INS application for employment form authorizes INS to investigate your background, employment history and credentials and to obtain any relevant information needed to make an employment decision.

In checking your references and work experience, we became aware that you misrepresented your employment history. Misstatements or omissions on the application may result in disqualification from further consideration or termination of employment. INS is exercising its right to disqualify you from employment.

We regret having to make this decision.

Sincerely,

Steve Feller
Manager, Employee Services



August 8, 1997

Stephanie Alexander, Chartered
4403 West Tradewinds Avenue
Lauderdale by the Sea, FL 33308

    RE:    Bayad v. Lucent Technologies, et al.

Dear Ms. Alexander:

Please find enclosed a copy of the email transmittal that International Network Services received as employment verification for Anthony Bayad from Lucent Technologies. This concludes any and all communication between International Network Services and Lucent Technologies regarding this matter.

                      Best regards,

                      Stefani J. Nelson
                      Legal Administrator

enclosure

cc:    Steve Feller - HR

sjn\hr\bayad

From: "Grohe, Joan (Joan)" <grohe@lucent.com>
To: "'Steve Feller'" <steve_feller@INS.COM>
Subject: RE: VOE Bayad
Date: Thu, 31 Jul 1997 15:53:12 -0600

Anthony Bayad, ss# 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, was employed by Lucent Technologies as a Sr. Network Engineer from 12-18-95 to 1-24-97 with an ending salary of $82K.

This is the only information I can supply regarding employee verifications.

I hope this information is of help to you in your decision-making process.

Feel free to call anytime.

JG

\>----------
\>From: Steve Feller[SMTP:steve_feller@INS.COM]
\>Sent: Thursday, July 31, 1997 5:38PM
\>To: Grohe, Joan (Joan)
\>Subject: VOE Bayad
\>
\>Dear MS. Grohe:
\>
\>Please verify employment for Anthony Bayad:
\>
\>Start Date:
\>End Date:
\>Title:
\>Eligible for rehire?
\>
\>Thank you for you help.
\>
\>Steve Feller
\>
\>
\>
\>
\>Steve Feller
\>Manager, Employee Services
\>Phone 408-542-0245
\>Fax 408-542-0102
\>
\>

answer.
A. Mr. Laurino.
Q. All right. Getting back to the conversation that you had with Mr. Bayad. You told us that you went to your office.
Did you -- did you shut the door when you went to speak to him? Mr. Navas patched you through to Mr. Bayad, do you remember that?
A. Yes.
Q. Let's back up.
Do you remember that you told me that you spoke to Mr. Bayad personally the morning of his interview?
A. Yes.
Q. Okay. Do you remember that you told me that Mr. Navas effectively patched him through to you?
A. I asked Mr. Navas to --
Q. Transfer?
A. -- transfer the call into my office.
Q. All right. And did he, in fact, do that?
A. Yes.
Q. And did you have the conversation that we're going to talk about in a moment with Mr. Bayad from your office?
A. Yes, I did.

Q. Was your office door open or closed?
A. It was closed.
Q. Was anyone else in the room during that conversation?
A. No.
Q. Were you on the speaker phone?
A. No.
Q. Okay. Tell me what you -- is that the one and only conversation that you had with Mr. Bayad before he came to Largo that same day?
A. Yes, it was.
Q. Tell me what was said in that conversation.
A. The conversation essentially went, "Anthony, I understand that you are not planning on coming to Largo."
And he said "That's correct."
And I said, "Did you not understand that you were to be here at 1:00?"
He said, "Yes, but I'm not going to come."
I asked him, "Why not?"
He said -- one time he said he had customers that he was working and then another time he said, "Unless you tell me the specific reason why you want me to be there, I'm not coming."
And my response to him, to the best of my

recollection was, "Anthony, please listen to me very carefully. I am giving you a work directive that I want you here at this office as quickly as you can possibly be here. Should you decide not to come, I am going to view that as insubordination and you will suffer the consequences thereof."
He then said, "Are you going to fire me?"
I then said, "I didn't say that. I just need for you to be here as quickly as you possibly can."
Q. Was that the sum of the conversation?
A. Yes.
Q. Okay. Were those the exact words that you used?
A. Exact words.
Q. Okay. You have admitted, have you not, in paragraph 33 of your Answer, making the statement that you, "didn't care if Mr. Bayad had to take a flying carpet to Largo," and -- and language similar to that?
A. Yes, I admit that.
Q. All right.
A. I did not make that statement to Mr. Bayad.
Q. Okay. To whom did you make that statement?
A. I made that statement to Mr. Navas when he told me something to the effect, "How do you expect him to get here?"

Q. Okay. And in your conversation there, then, with Mr. Bayad, you did not actually use that language?
A. No.
Q. You do not deny, however, making a reference specifically contrary to the language that you used in the conversation with Mr. Bayad, "quickly,", but that he thought, if necessary, take a flying carpet? You do not deny having said that?
A. I did not say it to Anthony Bayad, but I did say it to Amado Navas.
Q. Where did you make that statement to Mr. Navas?
A. Out on -- right adjacent to his office.
Q. All right. Did Mr. Navas, at that time, have an enclosed office such as you did?
A. No, he did not.
Q. All right. Was it a work area which was open?
A. Yes.
Q. Cubicle?
A. Yes.
Q. All right. With others in the -- in the same area?
A. I believe so.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ANTHONY BAYAD,

Plaintiff,

vs.

Case No.: 97-6671-C.V.-ROETTGER
Magistrate Seltzer

LUCENT TECHNOLOGIES, INC.,
LEWIS KASLOW, MIKE REED,
RONALD LAURINO, ANTHONY SAVASTANO,
and JOAN GROHE.

Defendants.

DEPOSITION OF: LEWIS KASLOW

TAKEN: Pursuant to Notice by Counsel for Plaintiff

PLACE: Marriott Hotel
Tampa International Airport
Manatee Room
Tampa, Florida

DATE: June 22, 1998

TIME: Began: 2:01 p.m.
Ended: 6:39 p.m.

REPORTED BY: KEVIN P. MIKUS, RPR, RMR
Registered Merit Reporter
Notary Public - State of Florida
at Large

APPEARANCES:

DAVID J. SALES, ESQUIRE
Searcy, Denney, Scarola,
Barnhart & Shipley, P.A.
2139 Palm Beach Lakes Boulevard
West Palm Beach, Florida 33402

-and-

STEPHANIE ALEXANDER, ESQUIRE
2450 Hollywood Boulevard, Suite 702
Hollywood, Florida 33020
Attorneys for Plaintiff;

TODD R. LEGON, ESQUIRE
Wallace, Bauman, Legon, Fodiman & Shannon
2222 Ponce de Leon Boulevard, Suite 600
Coral Gables, Florida 33134
Attorney for Defendants.

ALSO PRESENT: ANTHONY SAVASTANO

I N D E X

| | Page |
|---|---|
| Examination | |
| By Mr. Sales | 3 |
| STIPULATION | 225 |
| DEPONENT SIGNATURE PAGE | 226 |
| CERTIFICATE OF OATH | 227 |
| CERTIFICATE OF REPORTER | 228 |

E X H I B I T S

Plaintiff's Exhibit 1 (Marked After Deposition)
Plaintiff's Exhibit 27 (Marked Prior to Deposition)
Plaintiff's Exhibit 2 (Marked After Deposition)
Plaintiff's Exhibit 3 (Marked After Deposition)
Plaintiff's Exhibit 17 (Marked Prior to Deposition)
Plaintiff's Exhibit 29 (Marked Prior to Deposition)
Plaintiff's Exhibit 36 (Marked Prior to Deposition)
Plaintiff's Exhibit 32 (Marked Prior to Deposition)
Plaintiff's Exhibit [illegible] (Marked Prior to Deposition)
Plaintiff's Exhibit 4 (Marked After Deposition)
Plaintiff's Exhibit 26 (Marked Prior to Deposition)

(All Exhibits Attached)

The Deponent herein,
LEWIS KASLOW,
being first duly sworn to tell the truth, the whole truth, and nothing but the truth, was examined and testified as follows:

EXAMINATION

BY MR. SALES:
Q. What is your name, sir?
A. My name is Lewis Kaslow.
Q. And your date of birth?
A. Date of birth is 11-12-1948.
Q. Where do you reside?
A. I reside in Palm Harbor, Florida, and the address is 4498 Fallbrook Boulevard, Palm Harbor, Florida. The ZIP code is 34685.
Q. I was told by someone else that the Largo facility for Lucent has moved. Is that correct?
A. That is correct.
Q. Where are you all now?
A. We are at the northern part of St. Petersburg.
Q. What's the address there?
A. 11399 16th Court North.
MR. SAVASTANO: St. Petersburg, Florida, 33711.

Q. And when did that occur?
A. The move occurred in a four phase move. We actually started moving over there in late January and it finished up in February.
Q. So it's up and running now?
A. It is up and running.
Q. Tell me what that facility is like.
A. That facility is very analogous to the Largo Customer Care Center. We just moved it from the old Paradyne facility over to a new facility. It is a three story, 100,000 square foot facility where we supply network management to data networking customers as well as installation and support.
Q. And what is your title there?
A. My title there is General Manager of the Tampa Bay NetCare Services Center.
Q. So that hasn't changed in the last 12 to 17 months?
A. No, it has not.
Q. Is there anybody above you at the office?
A. At the office?
Q. Resident in that facility.
A. At the time this all occurred, no.
Q. How about now?
A. Yes.

**Amado Navas**

---

**From:** Tushar Kothari [tkothari@cisco.com]
**Sent:** Tuesday, February 19, 2002 12:46 PM
**To:** Amado Navas; chambers@cisco.com; kdcamp@cisco.com; justice@cisco.com
**Cc:** david Campbell
**Subject:** Re: I need your help with this awful situation

Amado,

Thanks for bringing this to our attention. I agree with you that such messages are not consistent with Cisco culture and is unacceptable. I have asked David Campbell our HR director to engage and recommend appropriate remedy.

Tushar

At 10:34 PM 2/17/2002 -0500, Amado Navas wrote:

> *** EXTREMELY CONFIDENTIAL ***<?xml:namespace prefix = o ns = "urn:schemas-microsoft-com:office:office" />
>
> Concerning an email message sent to me by Bruce Bastian, a member of management (Manager of Systems Engineering at Cisco Systems, Inc.)
>
> In light of the recent events that took placed following the unwanted release of a certain email to the news media, CNN, CNBC, and others. Action which affected the market, and potentially compromised the credibility and seriousness of our company. I am now convinced that it is my duty as a shareholder, to take this action, to protect the integrity and wellbeing of our company.
>
> Attached you will see an email message containing a racial attack, sent directly to me by my manager, Mr. Bruce Bastian.

**anthony**

---

**From:** Amado Navas [anavas@tampabay.rr.com]

**Sent:** Tuesday, March 02, 2004 9:39 PM

**To:** abayad@gicamerica.com

**Subject:** FW: Airport fun

**Importance:** High

Mr. Bayad,
Per your request I am enclosing this electronic mail message sent with the sole purpose of ridicule your termination from Cisco Systems by Tony Savastano and Bruce Bastian. The content of this email is public record currently under review by the US Federal of the Middle District of Florida in Tampa. This email was sent as a warning and ridicule to all employees of foreign origin that work at Cisco and want to pursue a management career. The white employees above mentioned warned both me you that we would be terminated if we attempted to seek promotions and or transfers to better jobs within the company. I know this fact because Mr. Savastano came to the St Petersburg office soon after your termination in early May of 2001, to verbally warn me, and ridicule both me and you. That people like me and you would not be allowed to stay at Cisco Systems. He said that he took care of us at Lucent with the help of Patricia Russo, and know he would take care of us again with the help of Carl Weise.

If you have any questions at all about my case please do not hesitate to contact me, since it is a matter of public record. If you aware of any other individuals that are also victims of this discriminatory behavior, and the conspiracy led by Savastano, Wiese and Patricia Russo please let me know immediately.

Respectfully,

Amado Navas
pro se

-----Original Message-----
**From:** Bruce A. Bastian [mailto:bbastian@cisco.com]
**Sent:** Wednesday, May 30, 2001 3:26 PM
**To:** amado Navas
**Subject:** FW: Airport fun

-----Original Message-----
**From:** Wes Hogentogler [mailto:wesh@ficomp.com]
**Sent:** Wednesday, May 23, 2001 2:37 PM
**Subject:** Airport fun

I thought you may like this...
<<LondonAirportAnnouncements.doc>>

WES HOGENTOGLER

*Senior Account Manager*

FICOMP, Inc.

<<...>>
Cell: 240-401-4470
FAX: 410-772-8200

## Do not play the sounds until you have read the following:

This is the story.....

We'd go and sit on the balcony at Terminal 3 at Heathrow Airport, directly under one of the PA speakers where we put a tape machine in a bag with the microphone poking out of the top. Then we'd look for a flight that had arrived in the last 40 minutes from somewhere where you'd expect people with unpronounceable names i.e. Saudi Arabia,

We would then go to the Airport Help Desk with a prewritten note containing the names of fictitious passengers and ask them to read out the names over the PA system.

The passenger's names looked innocent enough on paper but they sounded like something else when read out loud.

| Looks Like... | Sound | Reads Like... |
|---|---|---|
| Arheddis Varkenjaab and Aywellbe Fayed | | I hate this fucking job, and I will be fired |
| Arjevbin Fayed and Bybeiev Rhibodie | | I've just been fired, and bye-bye everybody |
| Aynayda Pizaqvick and Malexa Krost | | I need a piss quick, and my legs are crossed |
| Awul Dasfilshabeda and Nowaynayda Zheet | | Oo-ah, that ' s better and now I need a shit |
| Makollig Jezvahted and Levdaroum DeBahzted | | My colleague just farted, and left the room, the bastard |
| Steelaygot Maowenbach and Tuka Piziniztee | | Still, I got my own back and took a piss in his tea |

We got rumbled doing the "My colleague just, etc. " They actually threatened to arrest us as apparently they'd received complaints over the previous weeks!

The last one (Still, I got my own back...) was recorded at Gatwick airport which does not have such a good sound system, and is generally a much noisier place, so that's why is sounds crap!