```
              UNITED STATES DISTRICT COURT
                DISTRICT OF MASSACHUSETTS


ANTHONY BAYAD,
     Plaintiff,


     v.                                    CIVIL ACTION NO.
                                           04-10468-PBS

JOHN CHAMBERS, PATRICIA RUSSO,
ANTHONY SAVASTANO and
CARL WIESE,
     Defendants.
```

**REPORT AND RECOMMENDATION RE:
DECLARATION OF PLAINTIFF PRO SE NEWLY DISCOVERED EVIDENCE
IN SUPPORT OF HIS MOTION OBJECTING TO THE MAGISTRATE REPORT
& RECOMMENDATION (DOCKET ENTRY # 92); MOTION FOR JURY TRIAL
DEMANDED THE 7TH AMENDMENT OF THE U.S. CONSTITUTION (DOCKET
ENTRY # 97); MOTION TO STRIKE (DOCKET ENTRY # 99); MOTION
RESPECTFULLY DEMANDING THE AFFIDAVIT OF THE AFFIANT AND
WITNESS MR. AMADO NAVAS TO BE REVIEWED & ADMITTED AS ADMISSIBLE
AS IT IS SWORN TO BEFORE NOTARY PUBLIC IN COMPLIANCE WITH
FEDERAL RULES OF CIVIL PROCEDURE RULE 6(B) AND 28 U.S.C. §
1746 (DOCKET ENTRY # 107); MOTION TO ADMIT SUCH EVIDENCE
WHEN DISCOVERY AND DEPOSITIONS WERE DENIED (DOCKET ENTRY #
108); MOTION TO FILE NOTICE PRAYING HANDS (DOCKET ENTRY #
110); MOTION TO ADMIT SUCH DISGRACEFUL-HUMILIATING-
RACIALLY MOTIVATED AUDIO
<u>(DOCKET ENTRY # 113)</u>**

**November 15, 2005**

**BOWLER, U.S.M.J.**

On May 25, 2005, this court issued a Report and Recommendation ("the report and recommendation") to allow the motion for summary judgment filed by defendants John Chambers, Anthony Savastano ("Savastano") and Carl Wiese ("Wiese") (collectively: "defendants") (Docket Entry # 65) and to deny the

motion for summary judgment filed by plaintiff Anthony Bayad ("Bayad") (Docket Entry # 73). (Docket Entry # 88). After reviewing the objections (Docket Entry ## 89-91) as well as a declaration of newly discovered evidence (Docket Entry # 92) filed by Bayad, the district judge adopted the report and recommendation. The district judge then referred the declaration of newly discovered evidence (Docket Entry # 92) to this court "to evaluate the materiality of the 'newly discovered evidence' and to determine whether it should be considered." (Docket Entry # 96). Having conducted a hearing, the latter two issues are ripe for review.

Also pending before this court are the additional filings by Bayad, all of which challenge the appropriateness of entering summary judgment in defendants' favor. Bayad urges this court to reconsider the entry of summary judgment, consider certain additional "new" evidence and proceed to a jury trial on the alleged discrimination. (Docket Entry ## 97, 98, 102, 107, 108, 110 & 113). Defendants' motion to strike (Docket Entry # 99) the declaration in support of newly discovered evidence (Docket Entry # 102) is also ripe for review.

## DISCUSSION

Familiarity with the record is presumed. This court is also mindful of Bayad's pro se status which affords him a measure of

latitude. See Barrett v. Lombardi, 239 F.3d 23, 28 (1st Cir. 2001); Instituto de Educacion Universal Corp. v. United States Department of Education, 209 F.3d 18, 23 & n. 4 (1st Cir. 2000).

Turning to a number of the requests to belatedly include certain evidence in the summary judgment record, Bayad's request "to admit" an affidavit of Amado Navas ("Navas") dated March 7, 2005 (Docket Entry # 107;[1] Docket Entry # 102, Ex. 11) is moot because this court did consider and include the affidavit as part of the summary judgment record. (Docket Entry # 88, pp. 10-11; Docket Entry # 75). Similarly, the summary judgment record included the electronic correspondence Bayad attaches to the notice of liability and declaration in support of "newly discovered evidence."[2] (Docket Entry # 102, Ex. 5; Docket Entry # 92, ¶ 9).

---

[1] The affidavit is attached as an unnumbered, unlabeled exhibit to Docket Entry Number 107. The filing (Docket Entry # 107) also includes an attached declaration by Navas concerning the allegations of mistreatment that occurred at Lucent Technologies, Inc. ("Lucent"). The district judge dismissed the allegations involving Lucent as time barred. As background evidence to the timely allegations involving Cisco Systems, Inc. ("Cisco"), they would not alter this court's recommendation.

[2] The assertion that the electronic correspondence as well as other evidence in the record amounts to direct evidence of discrimination thereby obviating resort to the McDonnell Douglas framework is misplaced. The evidence Bayad cites does not rise to the level of "'an admission by the employer that it explicitly took [Bayad's race] into account in reaching an employment decision'" or similar "'smoking gun' evidence." Santiago-Ramos v. Centennial P.R. Wireless Corporation, 217 F.3d 46, 53 (1st Cir. 2000).

Much of the "new" evidence involves Bayad's qualifications and experience. This court does not question the merits of Bayad's qualifications, the positive performance ratings he received from his superiors in certain areas while at Cisco, his hours on the job and the dedication Bayad exhibited towards improving his knowledge on the job and pursuing training. (Docket Entry # 102, Ex. 9-10, 21, 22, 24 & 25 ; Docket Entry # 92, Ex. B & E).³ Unfortunately, the System Engineer II position required *extensive* experience in network security. In contrast to Bayad's qualifications, the individual chosen had such extensive experience and had won Cisco's "Engineer of the Year" award the previous year.⁴ Thus, even if this court considered the additional evidence, Bayad still falters on the fourth prong of the prima facie case.⁵ See Lewis v. City of Boston, 321 F.3d 207, 217 (1ˢᵗ Cir. 2003) (fourth prong in failure to hire case requires the plaintiff to show that "the [employer] sought to fill the

---

    ³ Bayad previously submitted these qualifications as attachments to the opposition to defendants' summary judgment motion. (Docket Entry # 73, Ex. B, Q & S).

    ⁴ As additional "new" evidence, Bayad offers an award or accolade received by Navas in August 2000 as indicative of pretext. (Docket Entry # 92, ¶ 8 & Ex. D). This award is not the same "Engineer of the Year" award received by the hired individual and does not alter this court's original recommendation.

    ⁵ Bayad had the opportunity to submit interrogatories and requests for production of documents regarding the qualifications of this individual and the circumstances surrounding his hiring.

positions with individuals who had qualifications similar to his").

Bayad also continues to fail to make a sufficient showing of pretext with respect to the Voice Specialist position.  The reason given was the failure to complete Cisco Certified Internetworking Engineer ("CCIE") training and the location of the position in California.  Although Bayad completed the written portion of the CCIE, he was still working on the laboratory portion as of February 28, 2001.[6]  (Docket Entry # 102, Ex. 9).  Bayad's resume likewise indicates he was still working on CCIE for routing and switching.[7]  (Docket Entry # 92, Ex. B).  Lynn Fraser ("Fraser") therefore "truthfully informed" the Human Resources Manager that Bayad "had never completed the CCIE." (Docket Entry # 102, Ex. 5, ¶ 13; Docket Entry # 68, ¶ 13).  The electronic correspondence confirms this conversation and the veracity of the non-discriminatory reason.  There is also no dispute that the position was in California thereby necessitating Bayad's relocation.  Bayad therefore continues to fail to demonstrate sufficient evidence of pretext with respect to the

---

[6] Electronic correspondence submitted to support Bayad's opposition to defendants' summary judgment motion similarly reflects that as of September 30, 2003, Bayad had passed the CCIE written test but was "scheduled to take the lab next year." (Docket Entry # 83, Ex. 27; Docket Entry # 73, Ex. X-2).

[7] Bayad submitted the same resume in opposition to defendants' summary judgment motion.  (Docket Entry # 73, Ex. S).

Voice Specialist position to proceed to trial and defeat summary judgment. The discrepancy in Wiese's title (Docket Entry # 97, Ex. A-C; Docket Entry # 98, Ex. 6 & 7) would not and does not materially effect this court's recommendation.

The "new" evidence also involves Bayad's 1997 emergency room visit and the events that took place at Lucent Technologies. (Docket Entry # 108, Ex. 10 & 11; Docket Entry # 102, Ex. 1, 15 & 18;[8] Docket Entry # 113, Ex. D). The district judge, as opposed to this court on summary judgment, dismissed this claim as untimely. (Docket Entry # 44). Although this court could

---

[8] Exhibit eighteen, which Bayad also includes in the motion to admit (Docket Entry # 113, Ex. B) as evidence of racially discriminatory comments, is dated January 24, 1997, and thus temporally remote. See McMillan v. Massachusetts SPCA, 140 F.3d 288, 301 (1st Cir. 1998) (discussing stray remarks doctrine and temporal remoteness). The communication was also not made by a key decision maker or an individual in a position to influence a key decision maker with respect to the failure to hire allegations that took place in and around the fall of 2003. See Walton v. Nalco Chemical Co., 272 F.3d 13, 24 (1st Cir. 2001) (discriminatory comments "made by persons in a position to influence the challenged employment action may suffice to establish pretext"). The same deficiencies exist with respect to the September 2002 electronic transmission from Paul Mountford to Chuck Robbins and the May 2001 Heathrow Airport announcements (Docket Entry # 113, Ex. A & C). In short, the conduct and comments are temporally remote from the failure to hire allegations that took place in and around the fall of 2003 and do not involve persons in a position to influence key decision makers. Although the May 2001 conduct occurred in and around the time of the wrongful termination, the release bars this claim as fully discussed in the prior report and recommendation (Docket Entry # 88, pp. 12-15). Finally, as correctly pointed out by defendants (Docket Entry # 117), the exhibits do not constitute "new" evidence. To the contrary, the evidence (Docket Entry # 113, Ex. A-D) was previously submitted (Docket Entry # 83, Ex. 5, 6, 25 & 26) in the same deficient form.

6

consider such evidence as background to the timely claims that were before this court on summary judgment, Ingram v. Brink's, Inc., 414 F.3d 222, 229 (1st Cir. 2005) (untimely discriminatory acts that predate "the actionable period can be used as relevant background evidence"), the deposition testimony and the additional submissions would not alter this court's recommendation.

Bayad also submits "new" evidence concerning his application for a position in North Africa during the fall of 2000 and contends that Paula Hughes ("Hughes") submitted a false declaration by averring an inability to locate documents to support Bayad making the trip to North Africa. (Docket Entry # 102, ¶¶ 4 & 26;[9] Docket Entry # 98,[10] Ex. 2-5). The alleged misconduct regarding the denial of a promotion or transfer to

---

[9] In any event, Bayad's notice of liability (Docket Entry # 102) amounts to an unsworn declaration that lacks a statement to the effect that it is made under the pains and penalties of perjury. See 28 U.S.C. § 1746; Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit International, Inc., 982 F.2d 686, 689-690 (1st Cir. 1993) (noting that pursuant to 28 U.S.C. § 1746 "an unsworn statement *signed under penalty of perjury* may be used, in lieu of a sworn statement or affidavit, to support or oppose a motion for summary judgment") (emphasis added). Bayad's initial declaration (Docket Entry # 102) fails to comply with 28 U.S.C. § 1746 as does Bayad's subsequent attempt to cure the defect three days later (Docket Entry # 104, Ex. A). In contrast, defendants' submissions were declared as being made "under the pains and penalties of perjury." (Docket Entry # 68).

[10] Bayad properly submits this unsworn declaration as made "under the pains and perjury" and cites to 28 U.S.C. § 1746.

North Africa, however, occurred during Bayad's employment and is foreclosed by Bayad's execution of a knowing and voluntary release.  For reasons fully discussed in the report and recommendation (Docket Entry # 88, pp. 12-15), the release bars claims arising during Bayad's employment at Cisco prior to May 1, 2001.

The no hire list (Docket Entry # 102, Ex. 2), which Hughes describes by affidavit as "plaintiff's no-hire list" (Docket Entry # 68, Hughes Declaration, ¶ 30), remains unauthenticated as previously discussed in the report and recommendation (Docket Entry # 88, pp. 11-12).  In any event, the list is not discriminatory on its face and therefore does not amount to a discriminatory statement on the part of Savastano.  See Gonzalez v. El Dia, Inc., 304 F.3d 63, 69-70 (1st Cir. 2002).

In various filings, Bayad additionally contends that he lacked an adequate opportunity for discovery.  (Docket Entry ## 92, 97, 102 & 109).  This court disagrees.  At the November 12, 2004 status conference, this court set a February 4, 2005 deadline for written discovery.  Bayad had the opportunity during this time to conduct written discovery.  Although Bayad disparaged defendants for seeking summary judgment "without a proper time allowed for discovery" (Docket Entry # 73), he did not properly move for additional discovery under Rule 56(f), Fed. R. Civ. P.  In particular, he did not provide the necessary

8

showing, typically done by affidavit, see Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985, 987-989 (1st Cir. 1988), of articulating "a plausible basis for the movant's belief that previously undisclosed or undocumented facts exist, that those facts can be secured by further discovery, and that, if obtained, there is some credible prospect that the new evidence will create a trialworthy issue." Massachusetts School of Law at Andover v. American Bar Association, 142 F.3d 26, 44 (1st Cir. 1998). Instead, the record contains conclusory allegations of "no discovery." See, e.g., Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d at 989 (inadequate Rule 56(f) showing wherein the "[p]laintiff merely stated, in an entirely conclusory way, that '[d]iscovery should be commenced' and speculated that 'additional facts need to be established through discovery' in order to develop certain legal theories"). In addition, the present lament about the brevis nature of the discovery, if construed as an attempt to seek Rule 56(f) relief, is untimely. See Massachusetts School of Law at Andover v. American Bar Association, 142 F.3d at 44 ("Rule 56(f) extension request made after the conclusion of oral argument on a summary judgment motion ordinarily comes too late").

Alternatively, if construed as a means to support reconsideration, it is unavailing. It is true that, as an

interlocutory ruling, this court has the discretion to reconsider the allowance of summary judgment. See Geffon v. Micrion Corporation, 249 F.3d 29, 38 (1st Cir. 2001). The previous record on summary judgment was not inadequate and given the "salutory principles" embodied in the law of the case doctrine, see Ellis v. United States, 313 F.3d 636, 646-648 (1st Cir. 2002) (listing and describing in depth these principles), cert. denied, 540 U.S. 839 (2003), reconsideration because of the brevis discovery is denied.

    Separate and apart from the discovery complaint, reconsideration is inadvisable because "there is no showing that the information could not have been obtained through the use of due diligence before the summary judgment motions." Minh Tu v. Mutual Life Insurance Company of New York, 136 F.3d 77, 82 (1st Cir. 1998) (affirming denial of motion for reconsideration based on newly discovered evidence). Bayad fails to explain why he could not have submitted the "new" evidence in the proper form with the summary judgment materials. See Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 96 n. 6 (1st Cir. 1996) (refusing to take into consideration sworn statements submitted with motion for reconsideration of summary judgment ruling given absence of explanation of "why this new evidence could not have been timely provided with the summary judgment materials"). To the contrary, the evidence is not "new" in the sense that it was previously

available at the time of the summary judgment hearing.  See NPR, Inc. v. American International Insurance Co. of Puerto Rico, 262 F.Supp.2d 3, 5 (D.P.R. 2003) ("to justify a reconsideration of an order, a party must show that there has been some intervening development in the law, some new evidence *not previously available*, or that the prior order is in clear error or would operate to create a manifest injustice") (emphasis added); see also United States v. Rivera-Martinez, 931 F.2d 148, 150-152 (1st Cir. 1991).

In any event, the release forecloses the claims prior to May 2001 and the "new" evidence would not materially alter this court's prior recommendation regarding the failure to hire claim. Specifically answering the issues identified by the district judge (Docket Entry # 96), the "newly discovered evidence" is not material and should not be considered.  Even if this court did consider all of the evidence, it would not alter the recommendation to allow defendants' summary judgment motion.

## CONCLUSION

In accordance with the foregoing discussion, this court **RECOMMENDS**[11] that the motion for a jury trial (Docket Entry # 97),

---

[11] Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten days of receipt of the Report and Recommendation to which objection is made and the

11

the motions to admit (Docket Entry ## 108 & 113) and the motion to file notice of praying hands (Docket Entry # 110) be **DENIED**; the motion to admit the Navas affidavit (Docket Entry # 107) be **DENIED** as moot; and the motion to strike (Docket Entry # 99) be **ALLOWED**.

                                       /s/ Marianne B. Bowler
                                       **MARIANNE B. BOWLER**
                                       United States Magistrate Judge

---

basis for such objection.  Any party may respond to another party's objections within ten days after service of the objections.  Failure to file objections within the specified time waives the right to appeal the order.  United States v. Escoboza Vega, 678 F.2d 376, 378-379 (1st Cir. 1982); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).