

## People



» **Overview**
» Related Publications

**RELATED GLOBAL SERVICES**
» Litigation
» Human Resources

**UNITED STATES RELATED SERVICES**
» Class Action
» Labor and Employment Law

### Richard J. Hafets | Partner

richard.hafets@dlapiper.com

6225 Smith Avenue
Baltimore, Maryland 21209-3600
United States
T: (410) 580-4168
F: (410) 580-3001

📧 Add to Outlook

**Richard Hafets** practices in all areas of labor and employment law, including union avoidance, traditional labor-management relations, employment litigation, EEO and affirmative action, OSHA, and general personnel. He is primary labor counsel to many Fortune 500 companies, health-care institutions, charities, and civic organizations, and represents many of the firm's significant clients. Mr. Hafets heads DLA Piper's Labor and Employment practice group in the Baltimore Office. Prior to joining the firm, Mr. Hafets worked with the National Labor Relations Board.

**EDUCATION**
J.D., American University Washington College of Law 1976 *magna cum laude*
B.S., American University 1973 *summa cum laude*

**ADMISSIONS**
Maryland
District of Columbia

Based on peer and client reviews, Rich Hafets is named as a leader for management side labor attorneys in the state of Maryland in *Who's Who Legal: USA -- Management Labour & Employment* and listed in *Chambers USA: America's Leading Lawyers for Business* as one of America's leading Labor and Employment lawyers. In addition, he was ranked in the top tier of attorneys in the state and first among management attorneys in Maryland.

**Selected Published Cases:**

» *Olarinde v. Holy Cross Hosp. of Silver Spring, Inc.*, 57 Fed. Appx. 595, 2003 WL 1356943 (4th Cir.) (Affirming summary judgment in race discrimination case)
» *Hamilton v. Village of Cross Keys, Inc.*, 36 Fed. Appx. 515, 2002 WL 1283898 (4th Cir.) (Affirming summary judgment in race, sex and sexual harassment case)
» *Davis v. Exxon Co.*, USA, 203 F.3d 820, 2000 WL 19206 (4th Cir.) (Affirming summary judgment in age discrimination, breach of contract and wrongful termination case)
» *Hammad v. Tate Access Floors, Inc.*, 31 F.Supp.2d 524, 42 Fed.R.Serv.3d 361 (D.Md. 1999) (Summary judgment in disability discrimination case)
» *Guo v. Ryland Group, Inc.*, 103 F.3d 117, 1996 WL 688223 (4th Cir.) (Affirming summary judgment in race and national origin discrimination case)
» *Diamond v. T. Rowe Price Associates, Inc.*, 852 F. Supp. 372, 64 Fair Empl. Prac. Cas. (BNA) 1574, 128 Lab. Cas. P 33, 118, 2 Wage & Hour Cas.2d

- (BNA) 65 (D. Md. 1994) (Summary judgment in sex discrimination and Equal Pay Act case)
- *Douglas v. PHH FleetAmerica Corp.*, 832 F. Supp. 1002, 62 Fair Empl. Prac. Cas. (BNA) 1615 (D. Md. 1993) (Summary judgment in age and sex discrimination case)
- *Banks v. McCormick & Co., Inc.*, 935 F.2d 267, 1991 WL 89904 (4th Cir.) (Affirming summary judgment in race discrimination case)
- *Sharma v. Lockheed Engineering & Management Services Co., Inc.*, 862 F.2d 314, 1988 WL 118154 (4th Cir.) (Affirming summary judgment in race and national origin discrimination case)
- *McKenna v. Kaiser Aluminum and Chemical Corp.*, 598 F. Supp. 511, 120 L.R.R.M. (BNA) 2258 (D. Md. 1984) (Summary judgment in Section 301 suit alleging breach of union contract)

**Publications**

- *Is Your Current E-Mail Policy a Ticking Time Bomb Under the NLRA?*, HR Advisor (Thomson/West Publishing), (May/June 2005)
- An Alternative to Alternative Dispute Resolution, *Employee Relations Law Journal*, Vol. 29, No. 3, (Winter 2003)
- Chapter Editor, *The Developing Labor Law*, 2004 Cumulative Supplement, BNA (2004)
- Contibutor, *How Arbitration Works*, 6th Ed., BNA (2003)
- *Survey of Maryland Employment Privacy Law*, 50 State Survey, Libel Defense Resource Center (1998)

Peer Review Rated   The Martindale-Hubbell Peer Review icon is a service mark of Reed Elsevier Properties Inc., used under permission from Reed Elsevier Properties Inc. in accord with the terms and conditions established by Martindale-Hubbell.

# IS YOUR CURRENT E-MAIL POLICY A TICKING TIME BOMB UNDER THE NLRA?

Richard J. Hafets and Emily T. Wright

In response to the prevalence of e-mail in today's business world, many companies have implemented policies regulating the use of company e-mail systems. This regulation is predicated on a variety of concerns including the potential liability arising from an employee's illegal use of these resources, the promotion of productivity and efficiency within a company, and privacy considerations.[1] One common construction of e-mail regulatory policy is the "business use only" rule that prohibits employees from using company e-mail or other electronic resources for personal use. Managers may be surprised to learn, however, that these broad policies may be invalid under the National Labor Relations Act (NLRA)-even if the company's employees are not unionized. Decisions of the National Labor Relations Board (NLRB or "the Board"), when considered in conjunction with several advisory opinions issued by the Office of Advice, indicate that e-mail policies intended to limit an employer's liability from one source may, in fact, open the employer up to liability from another.[2] Although this creates a troubling situation for employers seeking to regulate the use of company provided e-mail, there are a few guidelines employers can follow when creating e-mail policies that will help companies navigate these confusing waters. As discussed below, if an employer does institute a "business use only" e-mail policy, it must be certain to enforce the policy strictly and in a nondiscriminatory fashion, otherwise, it may open itself up to unwanted solicitation and other undesirable activity. Additionally, under the NLRA, an employer should be prepared to present substantial business justification for any limitations imposed on employee e-mail use, narrowly tailor any limitations, and draft its policy using clear and unambiguous language.

Today's employers have good reason to fear potential liability from the use of company provided e-mail systems. An employer can be held liable under federal law, such as Title VII, if an employee uses company provided internet access to send sexually harassing e-mails.[3] Employers can also be held liable under a common law theory, such as *respondeat superior*[4] or negligent retention[5,] if an individual commits a tortious act while in the company's employ. In light of this, several scholars writing on the subject have advocated the implementation of "business use only" e-mail policies.[6] These policies typically state that computer resources, such as e-mail, are the exclusive property of the company, that the resources are only to be used for company purposes, and that the company reserves the right to monitor its system.[7]

The problem with this advice is that, if followed without careful analysis, it may unwittingly open up the employer to liability from another, often unanticipated, source - the NLRA. Section 7 of the National Labor Relations Act

---

RICHARD HAFETS is a partner in the Labor and Employment practice of DLA Piper Rudnick Gray Cary US LLP. EMILY WRIGHT is a law student at the University of Virginia and worked at the law firm's Baltimore, Maryland office during the summer of 2004.

© 2005 Thomson/West. This publication was created to provide you with accurate and authoritative information concerning the subject matter covered, however it may not necessarily have been prepared by persons licensed to practice law in a particular jurisdiction. Thomson/West are not engaged in rendering legal or other professional advice, and this publication is not a substitute for the advice of an attorney. If you require legal or other expert advice, you should seek the services of a competent attorney or other professional. For authorization to photocopy, please contact the Copyright Clearance Center at 222 Rosewood Drive, Danvers, MA 01923, USA (978) 750-8400; fax (978) 646-8600 or West's Copyright Services at 610 Opperman Drive, Eagan, MN 55123, fax (651)687-7551. Please outline the specific material involved, the number of copies you wish to distribute and the purpose or format of the use.

(Act) states, "Employees shall have the right to self organization, to form, join or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining and other mutual aid or protection...."[8] Section 8(a)(1) of the Act makes it illegal for an employer to "interfere with, restrain, or coerce employees" in the exercise of their rights under Section 7.[9] As the language of Section 7 indicates, the right of employees to engage in concerted activity extends beyond activity merely furthering the formation of or participation in a labor union; rather, Section 7 protects any concerted activity engaged in for the mutual aid or protection of other employees.[10] Therefore, even non-unionized employees acting together for the mutual aid of their fellow employees may invoke the protections of Section 7.[11]

This principle was made crystalline in *N.L.R.B. v. Washington Aluminum Co.*, when the Supreme Court held that a group of non-unionized employees who walked out of the machine shop in which they worked as protest against the extremely cold temperature had engaged in protected concerted activity within the meaning of Section 7.[12] In rendering its judgment, the Supreme Court cautioned against interpreting the protections of Section 7 "in a restricted fashion."[13] Courts, and the NLRB, examining the issue subsequently appear to have heeded this warning.[14] As a result, even employers of non-unionized employees must take care not to infringe on rights protected under Section 7 when establishing company policies, such as those involving electronic resources like e-mail.

A good illustration of this point can be seen in *Timekeeping Systems, Inc.*, where the NLRB found that a non-unionized employee had engaged in concerted activity protected under Section 7 when he sent an e-mail to several co-workers protesting a proposed change to the company's vacation policy.[15] The employer had e-mailed all employees regarding the new vacation policy with a notation that comments would be "welcome."[16] The employee first e-mailed his employer individually, but received no response.[17] Then, after a fellow employee responded to the group that the new policy was "GREAT!" The employee sent his criticism of the policy to his fellow employees, and explained that the policy would actually decrease vacation scheduling flexibility.[18] Responding to what the opinion referred to as "flippant and rather grating language" used throughout the message, the employer reprimanded the employee and eventually fired him.[19]

A pivotal issue before the Administrative Law Judge (ALJ) who heard the case was whether the employee, by sending the critical e-mail to his fellow employees, had engaged in concerted activity protected under Section 7. "Concerted activity" has been defined as the activity of employees who have joined together to achieve a common goal,[20] and the most frequent mode of analysis of the question derives from a well-known set of decisions referred to as *Meyer I*[21] and *Meyer II*.[22] Under the *Meyer* rubric, a court will generally require a "factual showing of some group action or collective activity, or action taken as a representative on behalf of the group."[23] Concerted activity has been interpreted broadly enough, however, to encompass also "employees who initiate, induce or prepare for group activity, or who are spokespersons for other employees on matters of common concern."[24] Applying this analysis, the ALJ held, and the Board later affirmed, that "the transmission to the other employees, was, in and of itself, concerted activity."[25] "In communicating with his fellow employees," the ALJ reasoned, "[the employee] was attempting to correct any misimpression of the vacation proposal ... and arouse support for his own decision to oppose [it]."[26] Although his "object of inducing group action" was not expressed, the ALJ found it was "manifest from the record" and so held that the employee's action was protected by Section 7.[27]

As the case law is developing, it appears that the two most common ways that an e-mail policy may violate Section 7 are through discriminatory enforcement and facial invalidity, and in recent years, e-mail policies have been struck down by the NLRB for each reason. In *E.I. du Pont de Nemours & Co.*, for example, the NLRB ruled that an employer could not maintain an e-mail policy that facially discriminated against a union's use of computer resources.[28] The employer maintained an electronic use policy that permitted employees to send non-business e-mail messages, but prohibited employees from sending union-related messages.[29] In its decision, the NLRB noted that while employees were permitted to send messages on such diverse topics as "boredom, drugs, educational co-ops, Erich Fromm, Federal Express, higher education, [the] IRS, liberal arts, life, mortality, philosophy, TV

© 2005 Thomson/West. This publication was created to provide you with accurate and authoritative information concerning the subject matter covered, however it may not necessarily have been prepared by persons licensed to practice law in a particular jurisdiction. Thomson/West are not engaged in rendering legal or other professional advice, and this publication is not a substitute for the advice of an attorney. If you require legal or other expert advice, you should seek the services of a competent attorney or other professional. For authorization to photocopy, please contact the Copyright Clearance Center at 222 Rosewood Drive, Danvers, MA 01923, USA (978) 750-8400; fax (978) 646-8600 or West's Copyright Services at 610 Opperman Drive, Eagan, MN 55123, fax (651)687-7551. Please outline the specific material involved, the number of copies you wish to distribute and the purpose or format of the use.

programs, religion, riddles and attempted answers, skin cancer, victory and words of wisdom," employees were prohibited "from using the electronic mail to distribute any union literature or notice."[30] This disparate treatment, the Board ruled, was "clearly discriminatory," and the employer was found to be in violation of Section 8(a)(1).[31]

Similarly, an employer may not discriminatorily enforce a facially neutral e-mail policy. The e-mail policy at issue in *Adtranz, ABB Daimler-Benz Transportation*, like many widespread "business use only" policies, contained a blanket prohibition on the use of any computer hardware or software for non-business purposes.[32] Notwithstanding this simple rule, in reality and in practice, employees routinely sent and received personal e-mail through the Employer's e-mail system.[33] The ALJ analogized the case to previous decisions that found that while an employer has the right to restrict employee use of company property, such as bulletin boards[34] and telephones,[35] once the employer "grant[ed] the privilege of occasional personal use [of its resources] during worktime, it may not lawfully exclude union activities as a subject of discussion."[36] Accordingly, the ALJ found, and the Board affirmed, that while the employer "could bar its computers and E-mail system to any personal use by employees," once the employer allowed occasional personal use of those resources, it could not exclude union use.[37]

In a decision that has been pending on appeal before the NLRB for the past two years, the ALJ in *Guard Publishing Co.*[38] applied the same rationale discussed above to hold that where an employer discriminatorily enforced its "business use only" policy, it infringed on employees' rights under Section 7.[39] In *Guard Publishing*, the employer maintained a policy that prohibited the use of computer resources for "non-job related solicitations."[40] Despite the rule, employees routinely transmitted messages on a variety of topics, including "parties, jokes, breaks, community events, sporting events, births, meeting for lunch, and poker games."[41] It was only after an employee used the employer's network to send an e-mail to co-workers regarding an upcoming union rally, however, that the employer attempted to enforce the business use rule and reprimanded the employee.[42] Relying on the same case law referenced in *Adtranz*, the ALJ held that the employer's ban on personal use of its e-mail system was a permissible limitation;[43] but that once an employer allowed the use of its communications equipment for non-work related purposes, it could not "validly prohibit employee use of the equipment for Section 7 purposes."[44] Because the employer had permitted non-business use of the e-mail system, the ALJ found that the employer's discipline of an employee for protected non-business communication violated the Act.[45]

*E.I. du Pont, Adtranz*, and, for the moment, *Guard Publishing*, teach that for an employer to maintain a "business use only" e-mail policy, and to expect realistically that it will be a shield against unwanted hostile messaging, the employer must be prepared to enforce the policy strictly and prohibit *all* personal use, union and non-union alike. As a practical matter, not only would strict enforcement undoubtedly be difficult to accomplish, it would also run the risk of destroying employee morale. Moreover, as discussed below, maintaining such a policy is further problematic because the NLRB Office of Advice has issued several advice memoranda that provide that, in certain circumstances, "business use only" e-mail policies, regardless of their consistent enforcement, may still violate Section 7 if drawn too broadly.

In *Pratt & Whitney*, for example, a group of engineers, as part of a union organizing campaign, sent e-mails to a number of co-workers "addressing such subjects as salaries, layoffs, NLRB procedures and unionization generally."[46] The employer maintained a policy that strictly prohibited the use of its e-mail resources for non-business, unauthorized, or personal purposes.[47] The employer determined that, in sending the e-mails, the employees were in violation of the policy. As a result, some of the employees were "warned, suspended, or otherwise disciplined."[48] The issue before the Office of Advice was whether the e-mail policy was "facially unlawful because it completely prohibit[ed] any use of the Employer's computer resources for employees' messages otherwise protected by Section 7."[49]

The General Counsel began the *Pratt & Whitney* opinion by stating that the "starting point" of the analysis must be an examination of the particular rights protected by Section 7.[50] The rights protected by Section 7 are often separated into two categories: solicitation and distribution. Solicitation refers to oral communication between employees which "can easily be expected to occasion spontaneous response or initiate reciprocal conversation."[51] In contrast, distribution is the dissemination of written materials that usually does not invite an instantaneous response.[52] In *Republic Aviation Corp. v. N.L.R.B.*, the Supreme Court

© 2005 Thomson/West. This publication was created to provide you with accurate and authoritative information concerning the subject matter covered, however it may not necessarily have been prepared by persons licensed to practice law in a particular jurisdiction. Thomson/West are not engaged in rendering legal or other professional advice, and this publication is not a substitute for the advice of an attorney. If you require legal or other expert advice, you should seek the services of a competent attorney or other professional. For authorization to photocopy, please contact the Copyright Clearance Center at 222 Rosewood Drive, Danvers, MA 01923, USA (978) 750-8400; fax (978) 646-8600 or West's Copyright Services at 610 Opperman Drive, Eagan, MN 55123, fax (651)687-7551. Please outline the specific material involved, the number of copies you wish to distribute and the purpose or format of the use.

held that employers are permitted to prohibit employee solicitation during working time, but that employers are not permitted to restrict an employee's right to solicit during non-work time, even in working areas, unless the limitation is necessary "to maintain production or discipline."[53] Again, in contrast, an employer may prohibit distribution in working areas, during both working and non-working time, provided there are non-work areas available where distribution may take place.[54] In *Stoddard-Quirk Manufacturing Co.*, the NLRB justified the difference in the standards for the two methods of communication by observing that the more permanent nature of written literature allows it to be read and re-read at the receiving employee's convenience.[55] According to the Board, this factor obviates the need for employees to be able to distribute the literature throughout the employer's facility because "the purpose [of the literature] is satisfied so long as it is received."[56] Therefore, a company policy that infringes on the employee's right to solicit in a work area during non-work time, or to distribute information in a non-work area during non-work time, will be held facially invalid.

With this foundation, the advisory memorandum in *Pratt & Whitney* reached the conclusion that "the employees in the instant case[] use[d] the Employer's computer and computer network in such a way as to make them 'work areas.'"[57] In coming to this conclusion, the General Counsel found it significant that several employees testified that e-mail was the primary method of communication among employees and that most employees performed their work using computers; "one employee attested that he spen[t] 75-80% of his time on the computer."[58] This showing led the General Counsel to find that in the instant case, "computers [were] inextricably intertwined with the physical space" the employees occupied, and, as a result, the "'virtual space' they access[ed] on the various networks to perform their jobs" constituted work areas.[59] The General Counsel further concluded that while e-mail exhibited characteristics of both solicitation and distribution, it was "clear that at least some E-mail messages sufficiently carr[ied] the indicia of oral solicitation."[60] In this way, the General Counsel placed the case squarely within the purview of *Republic Aviation*: because the e-mail constituted solicitation, the employer was not permitted to limit its use in work areas during non-working time; and because the computer network constituted a work area, the employer was not permitted to limit the employees' use of the network for solicitation purposes during non-working time. Consequently, the General Counsel found that the employer's policy banning all non-business related communication was facially overbroad and in violation of Section 8(a)(1) of the NLRA.[61] On its face, the policy broadly prohibited solicitation in a work area, regardless of the circumstances, i.e., even during non-work time.[62]

There are a few factors an ALJ is likely to consider to determine whether an employer's computer network constitutes a work area. In *Pratt & Whitney*, the General Counsel afforded great weight to the testimony of employees regarding their time spent in front of a computer and the amount of communication that took place over e-mail.[63] Although in *Pratt & Whitney* the engineers in question spent 75-80% of their time on the network and the overwhelming majority of communication took place over e-mail, subsequent advice opinions have also found that computer networks can constitute work areas, even when the employees spend less time in front of computers. In *TU Electric*,[64] the employees used e-mail to communicate with one another and management on a daily basis. The company announced corporate policy through e-mail and posted required reading on the e-mail system, and one employee estimated he spent "about an hour" on the e-mail system each day.[65] Although the time TU Electric employees spent in the "virtual space" of the computer network was considerably less than that spent by the employees in *Pratt & Whitney*, the advisory opinion "nonetheless conclude[d] that TU Electric's E-mail network comprise[d] a sufficiently significant aspect of employees' work life to constitute a 'work area.'"[66]

In contrast, in *IRIS-USA*, the Office of Advice issued a memorandum stating that the company's computer network did not constitute a "work area."[67] There, the company maintained an e-mail policy that stated computer resources were to be used for "company business only and not for personal purposes."[68] The company further defined "personal purposes" as including "soliciting or proselytizing for commercial ventures, religious or political causes, outside organizations, or other non-job-related solicitations."[69] Despite its potential to infringe on e-mail use for Section 7 purposes, the General Counsel advised that the policy was valid because the majority of employees at the company performed "manual production and distribution work and [had] no access to electronic mail or computers

© 2005 Thomson/West. This publication was created to provide you with accurate and authoritative information concerning the subject matter covered, however it may not necessarily have been prepared by persons licensed to practice law in a particular jurisdiction. Thomson/West are not engaged in rendering legal or other professional advice, and this publication is not a substitute for the advice of an attorney. If you require legal or other expert advice, you should seek the services of a competent attorney or other professional. For authorization to photocopy, please contact the Copyright Clearance Center at 222 Rosewood Drive, Danvers, MA 01923, USA (978) 750-8400; fax (978) 646-8600 or West's Copyright Services at 610 Opperman Drive, Eagan, MN 55123, fax (651)687-7551. Please outline the specific material involved, the number of copies you wish to distribute and the purpose or format of the use.

generally."[70] Since the employees did not use computers as part of their "regular work," the General Counsel concluded, a "computer work area [did] not exist for them."[71]

Finding that an employer's network is a "work area" within the meaning of *Republic Aviation*, does not end the inquiry, however. An employer would still be entitled to limit employees' use of the network for solicitation purposes "during work time."[72] Unfortunately, this concept is not always so clear when dealing with e-mail. As one ALJ noted in a case currently pending before the Board, the nature of e-mail blurs the line between working and non-working time. In *Prudential Insurance Company of America*,[73] the union moved to set aside the results of an election in which employees voted against union representation, claiming the company's "business use only" e-mail policy unlawfully prevented them from communicating with employees about the election.[74] The ALJ reviewed the relevant case law, including decisions upholding the employer's right to limit employee use of its equipment and the line of cases involving the rules for solicitation and distribution, but concluded that e-mail could not be easily analogized to existing case law and "should have a pigeonhole of its own."[75] In support of this conclusion, the ALJ pointed to, among other things, the ambiguity of working time in the e-mail context. The ALJ noted that e-mail messages "don't have to be sent or read on working time" since they "can be saved and read later. By the same token [an employee who receives an e-mail while on working time] can respond... when he is not occupied by work."[76] These ambiguities led the ALJ to conclude that the employer's business only e-mail policy was overly broad and interfered with employees' exercise of their Section 7 rights.[77]

The uncertainties that surround characterizations of work/non-work areas and work/non-work time in the e-mail context make it difficult for an employer to anticipate when its "business use only" e-mail policy, even if enforced in a nondiscriminatory way, would be in danger of violating the NLRA. Fortunately, several advice memoranda issued after *Pratt & Whitney* offer some insight into how an employer might draft an e-mail policy that balances its interests with those of the employee under Section 7. As will be explained, an employer should present substantial business justifications for any limitations imposed on employees' personal use of its e-mail system, narrowly tailor the limitations to respond to those justifications, and draft a policy using clear and unambiguous language so that employees understand that the policy is not meant to chill all rights under Section 7.

The experience of one employer, whose e-mail policy faced challenge under the NLRA on three separate occasions before the General Counsel finally advised that the policy was lawful, may be helpful to employers attempting to follow these guidelines. In 1999, the company then known as TU Electric maintained an e-mail policy that prohibited solicitation and distribution, except on behalf of charitable or local, nonprofit school and recreational organizations, provided such use was minimal and not continuous.[78] The policy further limited the use of all equipment to "legitimate business reasons on behalf of the company."[79] In evaluating the policy, the General Counsel found that the policy was overbroad because it did not distinguish between working time and non-working time, and work areas and non-work areas.[80] The company's subsequent attempt to draft a lawful policy a year later met with the same fate. The employer, then known as Texas Utilities Co., established a new policy that limited computer resources to "business related use" and stipulated that any personal use must be kept to a minimum.[81] The company further prohibited sending or storing files that consumed a large amount of storage space, such as photo or video files, and sending "chain E-mail or non-business related bulk E-mail."[82] The General Counsel held that the policy was facially invalid because it was unlawfully ambiguous. Specifically, the General Counsel noted that the terms "chain" and "bulk" were undefined, giving an employee no indication as to how many recipients needed to be involved before an e-mail was considered either chain or bulk.[83] "Where language is ambiguous and may be misinterpreted by the employees in such a way as to cause them to refrain from exercising their statutory rights," the General Counsel stated, "then the rule is invalid."[84]

On its third attempt, the company finally met with success. Now going by the name TXU Electric, the employer implemented an e-mail policy restricting computer resources to "business-related use," and requiring that personal use be kept to a minimum.[85] The policy defined both "non-work time" and "non-work areas" and limited the number of recipients allowed per personal e-mail (five) as well as the length of personal e-mails (half a page).[86] In addition, the policy again prohibited sending chain or

© 2005 Thomson/West. This publication was created to provide you with accurate and authoritative information concerning the subject matter covered, however it may not necessarily have been prepared by persons licensed to practice law in a particular jurisdiction. Thomson/West are not engaged in rendering legal or other professional advice, and this publication is not a substitute for the advice of an attorney. If you require legal or other expert advice, you should seek the services of a competent attorney or other professional. For authorization to photocopy, please contact the Copyright Clearance Center at 222 Rosewood Drive, Danvers, MA 01923, USA (978) 750-8400; fax (978) 646-8600 or West's Copyright Services at 610 Opperman Drive, Eagan, MN 55123, fax (651)687-7551. Please outline the specific material involved, the number of copies you wish to distribute and the purpose or format of the use.

non-business related bulk e-mail, and sending or storing files that used large amounts of computer storage space, such as messages that contained audio, video or file attachments.[87] The General Counsel held that the policy was facially valid as it narrowly addressed the employer's legitimate business concerns, while balancing the employees' Section 7 rights with those concerns.[88] Specifically, the General Counsel noted that excessive personal use would interfere with the employer's use of the e-mail system, which was essential to perform "certain critical business functions within [the energy] industry."[89] The e-mail system, for example, enabled the employer to maintain rapid communication among its different plants and trading organizations, allowing the employer to "produce, buy and sell energy" more effectively.[90] Allowing unmitigated personal use would impede on this rapid communication, the General Counsel found, since "the size of an E-mail and the number of recipients of the message could cause the E-mail system to freeze and/or cause substantial delays."[91] The General Counsel determined that the policy in question narrowly addressed those particular problems by "limiting the number and size of a particular message in the server queue, and the freezing of the server due to overload."[92] The General Counsel further found it significant that employees would still have an opportunity to communicate effectively, as there was no limit on the number of messages that could be sent.[93]

Strengthening the implication of *TXU Electric* that the more specific the e-mail policy the better, the General Counsel similarly held lawful the e-mail use policy at issue in *Associated Press*.[94] There, the employer's electronic resource policy stipulated that all equipment and networks (which included computers, e-mail facilities, and internet access) were intended for business use only, and that equipment was not to be used "in such a way as to interfere with work, to misappropriate computer resources, to waste staff time, compromise editorial integrity or reputation, [or] to operate a personal business."[95] "Reasonable use for non-business purposes," however, was allowed.[96] The employer further defined "reasonable use" with examples, such as confirming a doctor's appointment, "a quick internet purchase and sending or receiving an occasional joke."[97] In less clear cases, the policy required that employees ask a supervisor for guidance in advance, but stated that an employee who used "good faith common sense" and had the employer's "best interests as the first consideration" would "run little risk" of violating the policy.[98] The policy finally admonished that employees should avoid attaching oversized files to e-mails, routinely sending jokes, or transmitting sexually explicit material.[99] The employer justified these limitations "by reference to ... Employer efficiency, editorial integrity, the physical capabilities of the electronic systems, and the fact that all e-mail emanating from the Employer's system carrie[d] the Employer's name."[100] In rendering an opinion, although the General Counsel found that the computer network was a work area under *Republic Aviation* (the employees spent the "vast majority" of their time on the network and an estimated 70% of inter-employee communications were via e-mail[101]), he also found that the restrictions were not complete, for they allowed "'reasonable' personal use."[102] Nor was the policy vague: it offered specific examples of what was permissible and impermissible, and advised employees to seek supervisor guidance when faced with "gray areas."[103] As a result, the General Counsel held that employees would not be likely to interpret the policy as prohibiting Section 7 communications, and so it was not in violation of the NLRA.[104]

Several lessons may be gleaned from Board decisions and advice memoranda involving the legality of company e-mail policies. First, an employer may prohibit personal (including union) use of e-mail and other electronic resources, provided that it does so completely and in a non-discriminatory fashion.[105] If the employer's computer network is found to be a work area under *Republic Aviation*, however, it is possible that an ALJ or the NLRB would find that a complete prohibition on personal use, without regard to the work/non-work time distinctions, would be a facial violation of Section 7.[106] In that situation, the employer is best served by creating a detailed e-mail policy. The policy should stipulate that the e-mail system is intended for business use only, and that personal use should be kept to a minimum. The employer should specify the business reasons that justify this limitation, such as network capacity and efficiency, employee productivity, and company reputation. The employer should define as precisely as possible what "minimum" means, perhaps by specifying a maximum number of recipients per e-mail, listing examples of acceptable personal uses, and restricting the transmission of certain messages, such as video or audio files. Finally, the

© 2005 Thomson/West. This publication was created to provide you with accurate and authoritative information concerning the subject matter covered, however it may not necessarily have been prepared by persons licensed to practice law in a particular jurisdiction. Thomson/West are not engaged in rendering legal or other professional advice, and this publication is not a substitute for the advice of an attorney. If you require legal or other expert advice, you should seek the services of a competent attorney or other professional. For authorization to photocopy, please contact the Copyright Clearance Center at 222 Rosewood Drive, Danvers, MA 01923, USA (978) 750-8400; fax (978) 646-8600 or West's Copyright Services at 610 Opperman Drive, Eagan, MN 55123, fax (651)687-7551. Please outline the specific material involved, the number of copies you wish to distribute and the purpose or format of the use.

employer should encourage employees to seek guidance before sending any questionable e-mail and enforce the policy evenhandedly when it is violated.

The relationship between e-mail use policies and the NLRA is murky at best, but by keeping these considerations in mind, an employer increases its chances of creating an e-mail use policy that encourages employee productivity and limits its potential liability while also respecting employees' rights under Section 7.[107]

■

## NOTES

1. Louis J. Papa & Stuart L. Bass, How Employers Can Protect Themselves from Liability for Employees' Misuse of Computer, Internet, and E-Mail Systems in the Workplace, 10 B.U. J. SCI. & TECH. L. 110, 111 (2004).
2. See infra notes 28-64.
3. Papa & Bass, supra note 1, at 112.
4. Under a theory of *respondeat superior*, an employer may be held responsible for the liabilities of an employee acting within the scope of his employment. Id. at 114.
5. Under a theory of negligent retention, an employer may be held liable if the employer is found to have negligently retained or managed an employee tortfeasor. Id. at 115.
6. See Papa & Bass, supra note 1, at 120 ("An employer can protect itself and minimize the risk of facing liability for illegal online acts of their employees through 'the formulation, distribution and enforcement of ... [a company] policy that emphasizes that all e-mail ... communications are for business purposes [only] ...'") (quoting and modifying Ruth Hill Bro, E-mail in the Workplace, in ONLINE LAW: THE SPA'S LEGAL GUIDE TO DOING BUSINESS ON THE INTERNET 422 (Thomas J. Smedinghoff ed., 1996)); David R. Singer, Does Your Company's E-Mail Policy Need a Makeover? EMP. L. COUNS. Sept. 15, 2003, at 8, 10 ("E-mail usage policies do not need to be long and should contain a clear and concise statement of the policy, such as 'electronic communications are to be used for company business....'").
7. See, e.g., Papa & Bass, supra note 1, at 122 (providing a sample e-mail use policy for businesses to emulate).
8. National Labor Relations Act, 29 U.S.C. § 157 (1994).
9. 29 U.S.C. § 158(a)(1).
10. Nancy J. King, Labor Law for Managers of Non-Union Employees in Traditional and Cyber Workplaces, 40 AM. BUS. L.J. 827, 832 (2003).
11. Id. at 832. See also DOUGLAS E. RAY ET AL., UNDERSTANDING LABOR LAW 415 (1999) ("Groups of employees who are not organized into a union are protected as long as their activity is for mutual aid and protection.").
12. N.L.R.B. v. Washington Aluminum Co., 370 U.S. 9, 17 (1962).
13. Id. at 14.
14. See Wilson Trophy Co. v. N.L.R.B., 989 F.2d 1502, 1508 (8th Cir. 1993) ("Non union employees as well as union employees share the right to engage in concerted activity."); Northeastern Univ., 235 N.L.R.B. 858, 865 (1978) ("Employees who are not members of a labor organization also have the right to engage in concerted activity.").
15. Timekeeping Systems, Inc., 323 N.L.R.B. 244, 248 (1997).
16. Id. at 246.
17. Id.
18. Id.
19. Id.
20. N.L.R.B. v. City Disposal Systems, Inc., 465 U.S. 822, 830 (1984).
21. Meyer Industries, Inc., 268 N.L.R.B. 493 (1984).
22. Meyer Industries Inc., 281 N.L.R.B. 882 (1986).
23. LEE MODJESKA & ABIGAIL COOLEY MODJESKA, FEDERAL LABOR LAW, NLRB PRACTICE § 5:2, at 5-12 (rev. ed. 2004).
24. King, supra note 10, at 834.
25. Timekeeping Systems Inc., 323 N.L.R.B. at 248.
26. Id.
27. Id.
28. E.I. du Pont de Nemours & Co., 311 N.L.R.B. No. 88 at 893, 919 (1993).
29. Id.
30. Id.
31. Id.
32. Adtranz, ABB Daimler-Benz Transportation, 331 N.L.R.B. 291, 293 (2000).
33. Id.
34. Honeywell, Inc., 262 N.L.R.B. 1402 (1982).
35. Union Carbide Corp., 259 N.L.R.B. 974 (1981).
36. Adtranz, 331 N.L.R.B. at 293.
37. Id.
38. Guard Publishing Co., 2002 N.L.R.B. LEXIS 70, at *1 (February 21, 2002).
39. Id. at *21-22.
40. Id. at *6.
41. Id. at *8.
42. Id. at *7.
43. Id. at *18.
44. Id. at *21.
45. Id. at *23.
46. Pratt & Whitney, 1998 N.L.R.B. Gen. Couns. Mem. LEXIS 51, at *1 (February 23, 1998).
47. Id. at *3.
48. Id. at *4.
49. Id.
50. Id. at *6.
51. Gwynne A. Wilcox, Section 7 Rights of Employees and Union Access to Employees: Cyber Organizing, LAB. LAW. 253, 256 (2000).
52. Elena N. Broder, (Net)Workers' Rights: The NLRA and Employee Electronic Communications, 105 YALE L.J. 1639, 1662 (1996).
53. Republic Aviation Corp. v. N.L.R.B., 324 U.S. 793, 803 n.10 (1945).
54. Stoddard-Quirk Mfg. Co., 138 N.L.R.B. 615, 621 (1962).
55. Id. at *620.
56. Id.
57. Pratt & Whitney, 1998 N.L.R.B. Gen. Couns. Mem. LEXIS 51 at *15.
58. Id. at *2.
59. Id. at *16.
60. Id. at *17.
61. Id. at *20-21.
62. For a situation presenting similar circumstances and a similar outcome, see Bureau of National Affairs, 2000 N.L.R.B. Gen. Couns. Mem. LEXIS 68, at *1 (October 3, 2000).
63. 1998 N.L.R.B. Gen. Couns. Mem. LEXIS 51 at *2.
64. TU Electric, 1999 N.L.R.B. Gen. Couns. Mem. LEXIS 19, at *1 (October 18, 1999).
65. Id. at *2-*3.
66. Id. at *11.
67. IRIS-USA, 2000 N.L.R.B. Gen. Couns. Mem. LEXIS 4, at *1 (February 2, 2000).
68. Id. at *7.
69. Id.
70. Id.
71. Id. at *9. See also Nat'l TechTeam, Inc., 2000 N.L.R.B. Gen. Couns. Mem. LEXIS 30, at *7 (April 11, 2000) (holding that when computers are not being used as a work area, employers are entitled to limit their non-business use).
72. Republic Aviation Corp. v. N.L.R.B., 324 U.S. at 803.
73. Prudential Insurance Co. of America, 2002 N.L.R.B. LEXIS 551, at *1 (November 1, 2002).
74. Id. at *2.
75. Id. at *30.
76. Id. at *31-32.
77. Id. at *33.
78. TU Electric, 1999 N.L.R.B. Gen. Couns. Mem. LEXIS 19, at *1-*2 (October 1999).

© 2005 Thomson/West. This publication was created to provide you with accurate and authoritative information concerning the subject matter covered, however it may not necessarily have been prepared by persons licensed to practice law in a particular jurisdiction. Thomson/West are not engaged in rendering legal or other professional advice, and this publication is not a substitute for the advice of an attorney. If you require legal or other expert advice, you should seek the services of a competent attorney or other professional. For authorization to photocopy, please contact the Copyright Clearance Center at 222 Rosewood Drive, Danvers, MA 01923, USA (978) 750-8400; fax (978) 646-8600 or West's Copyright Services at 610 Opperman Drive, Eagan, MN 55123, fax (651)687-7551. Please outline the specific material involved, the number of copies you wish to distribute and the purpose or format of the use.

79 Id. at *2.
80 Id. at *12.
81 Texas Utilities Co., 2000 N.L.R.B. Gen. Couns. Mem. LEXIS 31, at *2 (January 28, 2000).
82 Id.
83 Id. at *3.
84 Id. at *3-*4 (quoting Ace Machine Co., 249 N.L.R.B. 623, 624 (1980)).
85 TXU Electric, 2001 N.L.R.B. Gen. Couns. Mem. LEXIS 74, at *6 (February 7, 2001).
86 Id. at *6.
87 Id.
88 Id. at *25.
89 Id. at *18.
90 Id. at *16.
91 Id. at *17. But see Pratt & Whitney, 1998 N.L.R.B. Gen. Couns. Mem. LEXIS 51, at *20 ("A minimal burden placed upon an employer's computer network by ... electronic traffic does not constitute special circumstances making the rule necessary to maintain production or discipline, and it should not outweigh the employees' Section 7 interests.").
92 2001 N.L.R.B. Gen. Couns. Mem. LEXIS 74, at *23.
93 Id. at *22. See also Ocean Spray Cranberries, Inc., 2002 N.L.R.B. Gen. Couns. Mem. LEXIS 20, at *7 (May 22, 2002) (holding an employer's decision to deactivate a common e-mail address was not a violation of Section 7 since the employer had a legitimate and nondiscriminatory reason for doing so-namely, to prevent viruses from entering the network from an external source-and since employees could still communicate effectively by creating their own distribution lists).
94 Associated Press, 2002 N.L.R.B. Gen. Couns. Mem. LEXIS 26, at *1 (August 21, 2002).
95 Id. at *2.
96 Id.
97 Id. at *2-*3.
98 Id. at *3.
99 Id. at *4.
100 Id. at *4-*5.
101 Id. at *1.
102 Id. at *8.
103 Id. at *9.
104 Id.
105 See Adtranz, 331 N.L.R.B. at 293.
106 See Pratt & Whitney, 1998 N.L.R.B. Gen. Couns. Mem. LEXIS 51, at *21.
107 A sample policy is attached.

### Sample E-mail Use Policy[1]

All equipment and networks (desk computers, laptop computers, e-mail facilities, and internet access) are owned by the Employer and intended for business use. The Employer has an interest in encouraging employee productivity, avoiding liability, and maintaining the expediency and efficiency of the network. The equipment must not be used in such a way as to interfere with work, to misappropriate or overburden computer resources, to waste staff time, or to operate a personal business. Use of the e-mail system for illegal, fraudulent or malicious purposes is prohibited. Additionally, users should refrain from transmitting discriminatory, offensive, harassing, or sexually explicit messages.

Reasonable use of the equipment for non-business purposes is permitted. Examples of "reasonable use" include confirming a doctor's appointment, a quick internet purchase, or sending and receiving the occasional joke. Users should avoid the routine transmission of non-business e-mail and e-mails that contain photographs, video, audio or file attachments. Personal e-mail should not exceed one-half (1/2) page and should be sent to no more than five (5) recipients at a time. In questionable cases of "reasonable use," an employee must ask a supervisor for guidance in advance. If the employee does not, the employee assumes the risk that the Employer will deem the use unreasonable. An employee who uses good faith common sense-and maintains the Employer's best interest as the first consideration-will run little risk. But to avoid any such risk, the best course is to speak to a supervisor in advance.

All messages transmitted from Employer e-mail accounts, including permissible personal messages, carry the Employer's name and therefore must reflect high standards of professionalism. E-mail should not be used in such a way as to compromise the company's integrity or reputation. E-mail messages are not easily disposed of, and deleting a message does not ensure it has been removed from the system. The existence of e-mail passwords is not a guarantee of privacy. E-mail messages may be discoverable in legal proceedings, including those involving third parties. Consequently, confidentiality cannot be assured. The Employer maintains the right to monitor and access any e-mail messages or other files sent and received.

1. Policy based in large part on the policies described in Associated Press, 2002 N.L.R.B. Gen. Couns. Mem. LEXIS 26, at *1 (August 21, 2002); TXU Electric, 2001 N.L.R.B. Gen. Couns. Mem. LEXIS 74, at *6 (February 7, 2001); Christine Neylon O'Brien, The Impact of Employer E-Mail Policies on Employee Rights to Engage in Concerted Activities Protected by the National Labor Relations Act, 106 DICK. L. REV. 573, 589 (2002); and Louis J. Papa & Stuart L. Bass, How Employers Can Protect Themselves from Liability for Employees' Misuse of Computer, Internet, and E-Mail Systems in the Workplace, 10 B.U.J. SCI. & TECH. L. 110, 122 (2004).

© 2005 Thomson/West. This publication was created to provide you with accurate and authoritative information concerning the subject matter covered, however it may not necessarily have been prepared by persons licensed to practice law in a particular jurisdiction. Thomson/West are not engaged in rendering legal or other professional advice, and this publication is not a substitute for the advice of an attorney. If you require legal or other expert advice, you should seek the services of a competent attorney or other professional. For authorization to photocopy, please contact the Copyright Clearance Center at 222 Rosewood Drive, Danvers, MA 01923, USA (978) 750-8400; fax (978) 646-8600 or West's Copyright Services at 610 Opperman Drive, Eagan, MN 55123, fax (651)687-7551. Please outline the specific material involved, the number of copies you wish to distribute and the purpose or format of the use.