understanding that district courts must apply the plain error standard, to the extent it is even on point. Suboh correctly quotes <u>Allied Chemical Corp.</u> as saying that "[t]he authority to grant a trial, moreover, is confided almost entirely to the exercise of discretion on the part of the district court." Pls.' Mem. at 19 (quoting 449 U.S. at 36). The next sentence in the case provides important context, however: "Where a matter is committed to discretion, it cannot be said that a litigant's right to a particular result is clear and indisputable." <u>Allied Chemical</u>, 449 U.S. at 36 (citation and internal quotation marks omitted). The Supreme Court's point is not that district courts can be more liberal in awarding new trials than appellate courts, but rather that the discretionary nature of decisions regarding award of a new trial is one of several considerations that makes reversal of such decisions via a writ of mandamus especially inappropriate. <u>See</u> <u>id.</u> The Supreme Court's recognition that district courts have discretion, and that discretionary judgments are reviewed for abuse of discretion, says nothing about what legal standard governs the exercise of that discretion, or whether district courts and appellate courts should apply different legal standards.

Thus, applying the plain error standard, this Court must consider whether the two errors in the jury charge rise to the

21

level of plain error.  The Court concludes that its error in delegating the question of qualified immunity to the jury does not constitute plain error warranting a new trial.  Although this was certainly error, Suboh's rights were not substantially affected in that this was an error that was arguably neutral in terms of prejudice as between her and Borgioli.  The Court's error in imposing upon Suboh the burden of showing Borgioli's unreasonableness, however, is far more grave.  As explained above, the undisputed facts in this case made clear that Suboh's procedural due process rights were, by definition, violated, but the Court instructed the jury that it could only so find if it also concluded that Borgioli's behavior had not been reasonable.  Thus instructed, the jury subsequently returned a verdict in Borgioli's favor.  Had this Court not committed that error, the <u>only</u> question put to the jury would have regarded the scope of damages, if any, that Borgioli's violation can be considered to have proximately caused.  The Court thus concludes that Suboh was prejudiced by the erroneous imposition of this burden upon her.

The Court must therefore consider whether this error meets the final prong of the plain error standard: miscarriage of justice.  The First Circuit has provided guidance as to the factors to consider in assessing whether there is a miscarriage of justice: namely, "whether the failure to raise the claim below

deprived the reviewing court of helpful factfinding; whether the issue is one of constitutional magnitude; whether the omitted argument is highly persuasive; whether the opponent would suffer any special prejudice; whether the omission was inadvertent or deliberate; and, perhaps most importantly, whether the issue is of great importance to the public." Play Time, Inc. v. LDDS Metromedia Communications, Inc., 123 F.3d 23, 30 n. 8 (1st Cir. 1997) (citing Nat'l Ass'n of Soc. Workers v. Harwood, 69 F.3d 622, 627-28 (1st Cir. 1995), which set forth and described these factors).

The error here satisfies a number of these criteria. It is clear that Suboh's failure to raise this argument was inadvertent and not strategic; the Court can discern no strategic benefit stemming from Suboh's lack of opposition to the imposition of an additional burden upon her. Additionally, there is no special prejudice to Borgioli here, because the omitted argument "is law-based, not fact-based." National Ass'n of Social Workers, 69 F.3d at 628. Further, there is no question as to the correctness and persuasiveness of Suboh's argument; Suboh was forced to bear a burden that was not appropriately hers, as discussed above.

Most importantly, the right at issue here is not only a constitutional right; it is in fact one of the most venerable constitutional rights, as the First Circuit stated in Suboh

23

itself. See Suboh, 298 F.3d at 91 ("Putting aside notions of generalized 'familial integrity,' there are, more pertinently, much more narrow interests that are at stake here. To begin, 'the interest of parents in the care, custody, and control of their children is among the most venerable of the liberty interests embedded in the Constitution.'" (internal citations omitted)).

    Admittedly, the relevant First Circuit cases defining the "constitutional magnitude" factor involve instances where the claim that the party failed to raise at trial was in fact the source of the constitutional issue, whereas the argument that Suboh failed to raise is not itself constitutional in nature, but rather tends to make it more likely that she can successfully assert an entitlement to exercise a venerable constitutional right. See National Ass'n of Social Workers, 69 F.3d at 628; United States v. La Guardia, 902 F.2d 1010, 1013 (1st Cir. 1990). This is a distinction without a difference, however. Whether a prisoner is saying that his conviction (and thus imprisonment) is unlawful based on a constitutional argument not raised at a trial, see La Guardia, 902 F.2d at 1013, or a mother is arguing what Suboh argues here, the question is whether, had the district court apprehended the law correctly, the person would be entitled to exercise some aspect of the liberty that the Constitution

guarantees to us all.  Such an understanding gives greater independent meaning to this factor, as limiting this factor to constitutional arguments would often make it superfluous in light of the "public interest" inquiry.

Additionally, as Suboh has pointed out, there are criminal cases as well as even some civil cases (albeit not from the First Circuit) in which an erroneous jury instruction as to the burden of proof was found to constitute plain error.  See, e.g., United States v. Colon-Pagan, 1 F.3d 80, 81 (1st Cir. 1993) (Breyer, C.J.) (holding that a district judge's erroneous jury instruction in regard to the definition of proof beyond a reasonable doubt constituted plain error warranting a new trial); United States v. Paniagua-Ramos, 251 F.3d 242, 246 (1st Cir. 2001) (noting that "plain error is theoretically possible with respect to an omitted jury instruction.  If, say, a trial court fails to instruct a criminal jury on a basic point like the government's burden of proof or the presumption of the defendant's innocence, the lack of a contemporaneous objection would not foreclose searching appellate review."); Melton v. City of Oklahoma City, 928 F.2d 920, 927 (10th Cir. 1991) ("[T]he plaintiff was permitted to recover a substantial verdict without carrying the entire burden of proof placed upon him.  We believe the instruction created plain error ...."); Batka v. Liberty Mut. Fire Ins. Co., 704 F.2d

25

684, 689-90 (3d Cir. 1983) (holding that the trial court's erroneous instruction that a preponderance of the evidence standard was applicable in a particular civil case was "fundamental and highly prejudicial," and required a new trial); Ostrov v. Metro. Life Ins. Co., 379 F.2d 829, 838 & n. 10 (3d Cir. 1967) (similar); but see Pulliam v. Tallapoosa County Jail, 185 F.3d 1182, 1188 (11th Cir. 1999) ("In this case, the failure to give an instruction on Defendant's burden of proof does not constitute plain error.  Plaintiff has failed to convince us that, given a completely accurate instruction on the burden of proof in mixed-motives issues, a substantial likelihood exists that the jury would have found for Plaintiff and determined that Plaintiff -- in the absence of retaliation -- would not have been fired." (footnote omitted)).

There is an additional wrinkle.  Like many judges, my practice since my days on the Massachusetts Superior Court has been to go back to the jury room after the verdict has been delivered personally to thank the jurors for their service.  I did so in this case.

The jurors, I saw, had carefully taped to the wall large panels of blank paper (routinely provided) and marked each one progressively with the essential factual issues in this case. The final two panels were entitled "Proximate cause" and

26

"Damages" in that order. Under the title "Proximate cause" was written "NO." There was no writing on the "Damages" panel. In light of the defendant's verdict, I am convinced that the jury, properly charged on the concept of proximate cause, did manifest justice after a detailed and ably tried case. But wait. None of the data recited in this paragraph is competent evidence to impugn a jury verdict. Fed. R. Evid. 606(b).

Here, of course, the data serve to uphold the verdict. Nevertheless, as the history of this evidentiary rule emphasizes that such data are simply incompetent regardless of their truth, I conclude I cannot consider them at all.

Disregarding the observations made in the jury room post-trial, and for all of the compelling legal reasons -- most importantly, the great significance of the constitutional right at issue here -- the Court concludes that this, like Chestnut, is the "rare civil case where the miscarriage of justice requirement is met," Chestnut, 305 F.3d at 20, and a new trial is warranted.

### B. Framework of the New Trial

Having concluded that a new trial is warranted in this case on the grounds that the jury instructions were plainly erroneous, the Court must now address the framework of that new trial. As noted above, at the hearing on the instant motion, the Court ruled that if a new trial were ordered, Borgioli would not be

27

entitled to qualified immunity. 4/8/03 Tr. at 11-12. The Court now addresses the basis of that ruling.

In its opinion on this case, the First Circuit ruled that it was clearly established as of 1998 that "a state official could not effectively resolve a disputed custody issue between a parent and another without following any due process procedures at all," Suboh, 298 F.3d at 94-95. It then indicated that the relevant question, in determining whether Borgioli was entitled to qualified immunity, was whether "a reasonable officer could have concluded on the facts before him that the Kandys had undisputed custody of the child, despite Suboh's claims, and so no process of any sort was due before the child could be released to the Kandys." Id. at 96.

By framing the issue in such a way, the First Circuit necessarily reduced the scope of facts determinative to the qualified immunity analysis. Were there, for example, a genuine dispute as to whether Suboh told Borgioli that she was Sofia's biological mother or that she wanted custody of her daughter, the jury would indeed be needed to resolve these crucial questions. To the extent that the determinative facts were unclear or disputed prior to the trial, however, that dispute was resolved by Borgioli's own trial testimony. As noted above, on the stand Borgioli testified that Suboh told him that she was Sofia's

28

biological mother, that she had not signed any papers giving custody of Sofia to her parents, and that she wanted to regain custody of her daughter. Regardless of the apparent credibility or lack thereof of Suboh's statements,[7] the Court fails to see how any reasonable officer could not have, at a minimum, concluded that there were indeed competing claims to Sofia's custody such that he simply could not decide the dispute himself. Borgioli argues that "there was certainly a hotly contested factual dispute as to what [he] knew at various points in his investigation," Def.'s Opp'n at 11 [Docket No. 179], but it is undisputed that the crucial piece of information -- that Suboh was claiming to be Sofia's biological mother and was asserting a right to custody of her daughter -- was known to Borgioli when he decided to place Sofia in the custody of the Kandys.

Accordingly, at this point, there are simply no remaining factual disputes that a jury needs to resolve for the Court to be able to rule on qualified immunity, given Borgioli's own testimony. In such a circumstance, it is appropriate for the Court to rule on qualified immunity straightaway, see Rinquette

---

[7] For his part, Borgioli has testified that he was "fairly reasonably sure" that Suboh was indeed Sofia's mother, 2/26 Tr. at 49. He further testified that he "didn't disbelieve" Suboh's claim that she wanted custody of her daughter, but that he believed that "if the parents paid the money for the daughter, the daughter would have been returned to the Kandys." Id. at 23.

29

v. <u>City of Fall River</u>, 146 F.3d 1, 6 (1st Cir. 1998) (describing as "eminently sensible" a district court's decision to dismiss on qualified immunity grounds, even though it resolved a relevant factual dispute in the process), and that is what the Court has done here.

Given the Court's determinations that (1) the undisputed facts of this case establish that Suboh's procedural due process rights were violated by her failure to receive any hearing attendant to the loss of custody of her daughter; and (2) the undisputed facts demonstrate that Borgioli is not entitled to qualified immunity, the scope of the new trial is necessarily limited. All that remains for the new trial is the important question of what -- if any -- damages were proximately caused by Borgioli's violation of Suboh's procedural due process rights.

### III. CONCLUSION

I deeply regret that my own error has so compounded the expense and delay visited on the litigants in this action. Nevertheless, we live under "the rule of law, and the just application of the law to the facts of the case lies at the very heart and core of our civilization."[8] Accordingly, for the

---

[8] Adapted from the charge to the jury of Chief Justice Walter H. McLaughlin in <u>Commonwealth</u> v. <u>Barber</u>. (The case was affirmed, 362 Mass. 672 (1972), reversed and remanded by the United States Supreme Court in light of new case law, 411 U.S. 945 (1973), and affirmed once again, 365 Mass. 66 (1974).) I

30

reasons set forth above, the Plaintiff's Motion for a New Trial [Docket No. 178] is GRANTED. The Court further rules that Suboh has established that her procedural due process rights were violated by Borgioli, and that Borgioli is not entitled to qualified immunity. A new trial will therefore be held on the issue of the amount of damages, if any, that were proximately caused by Borgioli's violation of Suboh's procedural due process rights.

    SO ORDERED.

/s/ William G. Young

------

WILLIAM G. YOUNG
CHIEF JUDGE

------

incorporate this language into the beginning of the jury charge in every criminal case.

Publisher Information
Note* This page is not part of the opinion as entered by the court.
The docket information provided on this page is for the benefit
of publishers of these opinions.

Michael J. Akerson
    Edward P. Reardon, P.C.
    397 Grove Street
    Worcester, MA 01605
    508-754-7285
    508-754-7220 (fax)
    mjakerson@yahoo.com
     Assigned: 05/10/2000
     LEAD ATTORNEY
     ATTORNEY TO BE NOTICED
            representing
                Carl Biorgioli
                (Defendant)
                Julieann Malvarosa
                TERMINATED: 07/12/2001
                (Defendant)
                Steven Pisano
                TERMINATED: 07/12/2001
                (Defendant)
                Steven Wallace
                TERMINATED: 07/12/2001
                (Defendant)
                Theodore Michalski
                TERMINATED: 07/12/2001
                (Defendant)
                John M. Azzari
                TERMINATED: 08/29/2001
                (Defendant)

Capizzi
    City Solicitor's Office
    City Hall
    281 Broadway
    Revere, MA 02151
    781-286-8166
     Assigned: 07/31/2001
     TERMINATED: 09/24/2001
     LEAD ATTORNEY
     ATTORNEY TO BE NOTICED
            representing
                City of Revere
                TERMINATED: 09/24/2001
                (Defendant)

Denise DiCarlo
    City Solicitor's Office
    City Hall
    281 Broadway
    Revere, MA 02151
    (781) 286-8168
     Assigned: 05/18/2000

LEAD ATTORNEY
ATTORNEY TO BE NOTICED
    representing
        James V. Russo
        (Defendant)
        Robert J. Haas, Jr.
        (Defendant)
        City of Revere
        TERMINATED: 09/24/2001
        (Defendant)

Laurie A. Frankl
Rodgers, Powers & Schwartz LLP
18 Tremont Street
Boston, MA 02108
617-742-7010
617-742-7225 (fax)
 Assigned: 01/24/2003
 ATTORNEY TO BE NOTICED
    representing
        Mouna Kandy Suboh
        (Plaintiff)

Austin M. Joyce
Edward P. Reardon, P.C.
397 Grove Street
Worcester, MA 01605
508-754-7285
508-754-7220 (fax)
austinj@masspolice.com
 Assigned: 05/10/2000
 LEAD ATTORNEY
 ATTORNEY TO BE NOTICED
    representing
        Carl Biorgioli
        (Defendant)
        Julieann Malvarosa
        TERMINATED: 07/12/2001
        (Defendant)
        Steven Pisano
        TERMINATED: 07/12/2001
        (Defendant)
        Steven Wallace
        TERMINATED: 07/12/2001
        (Defendant)
        Theodore Michalski
        TERMINATED: 07/12/2001
        (Defendant)
        John M. Azzari
        TERMINATED: 08/29/2001
        (Defendant)

James R. Knudsen
Whittenberg Knudsen, LLP
200 Broadway, Suite 306
Lynnfield, MA 01940
781-599-4000

781-581-2650 (fax)
jrk@wealthdesign.com
  Assigned: 02/25/2000
  LEAD ATTORNEY
  ATTORNEY TO BE NOTICED
        representing
           Mouna Kandy Suboh
           (Plaintiff)

Douglas I. Louison
Merrick, Louison & Costello
67 Batterymarch Street
Boston, MA 02110
617-439-0305
  Assigned: 07/07/2000
  TERMINATED: 07/12/2001
  LEAD ATTORNEY
  ATTORNEY TO BE NOTICED
        representing
           John Mcrae
           TERMINATED: 07/12/2001
           (Defendant)

Natalie S Monroe
Attorney General's Office
One Ashburton Place
Boston, MA 02108
617-727-2200 X 2833
617-727-5755 (fax)
natalie.monroe@ago.state.ma.us
  Assigned: 01/27/2003
  TERMINATED: 02/10/2003
  LEAD ATTORNEY
  ATTORNEY TO BE NOTICED
        representing
           District Attorney for the Suffolk District
           TERMINATED: 02/10/2003
           (Defendant)

Harvey A. Schwartz
Rodgers, Powers & Schwartz LLP
18 Tremont Street
Boston, MA 02108
617-742-7010
617-742-7225 (fax)
harvey@theemploymentlawyers.com
  Assigned: 05/19/2000
  ATTORNEY TO BE NOTICED
        representing
           Mouna Kandy Suboh
           (Plaintiff)

James W. Simpson, Jr.
Merrick, Louison & Costello
67 Batterytmarch Street
Boston, MA 02110
617-439-0305
617-439-0325 (fax)

33

jsimpson@merricklc.com
 Assigned: 07/07/2000
 TERMINATED: 07/12/2001
 LEAD ATTORNEY
 ATTORNEY TO BE NOTICED
                representing
                        John Mcrae
                        TERMINATED: 07/12/2001
                        (Defendant)
Linda A. Wagner
Attorney General's Office
One Ashburton Place
Room 2019
Boston, MA 02108-1698
617-727-2200
617-727-5755 (fax)
linda.wagner@ago.state.ma.us
 Assigned: 05/18/2000
 TERMINATED: 09/12/2000
 LEAD ATTORNEY
 ATTORNEY TO BE NOTICED
                representing
                        Ralph C. Martin, II
                        TERMINATED: 09/12/2000
                        (Defendant)
                        Michael N. Murphy
                        TERMINATED: 02/13/2003
                        (Defendant)
                        District Attorney for the Suffolk District
                        TERMINATED: 02/10/2003
                        (Defendant)

jsimpson@merricklc.com