This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

☒ EEOC   EPA
150972617

| Florida Comm. on Human Relations | and EEOC |
|---|---|
| State or local Agency, if any | |

| NAME (Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) |
|---|---|
| Mr. Handi H. Elsiah | (954) 255-9882 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 8825 Ramblewood Drive, Apartment 1502, Coral Springs, FL 33071 | | 02/11/64 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| Lucent Technologies, Inc. | Cat A (15-100) | (908) 582-8509 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 8548  126th Avenue N. Largo, FL 34649 | | 103 |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| Lucent Technologies | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| Fort Lauderdale, Florida | | |

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

☒ RACE  ☒ COLOR  ☐ SEX  ☒ RELIGION  ☒ NATIONAL ORIGIN
☐ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER (Specify)

| DATE DISCRIMINATION TOOK PLACE | |
|---|---|
| EARLIEST | LATEST |
| 01/23/97 | 04/21/97 |

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional space is needed, attach extra sheet(s)):

1.  Since January 23, 1997 I have been subjected to a hostile work enviornment.  I was subjected to racial comments by Lucent management personnel consistent with an E-mail message from Mike Reed to Bruce Brewer, a copy of which is attached hereto as Exhibit A.  On April 21, 1997 I was demoted and constructively discharged from my position as Manager of the Respondent's Fort Lauderdale group.  I am a Black Egyptian of Muslim decent.

2.  Mr.  Bruce Brewer, White, B-Band Manager and Lew Kaslow, White, C-Band Manager gave no reason for their harassment or intimidation.  Mr. David Ward, White, Manager replaced me and then demoted me.  Mr.  Ward also told me that I did not have a future with the Respondent.  Mr. Ward gave me the name of a Head Hunter.

3.  I believe I have been discriminated against based on my national origin, race, color, and religion in violation of Title VII of the Civil Rights Act of 1964, as amended.

☐ I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures.

| NOTARY - (When necessary for State and Local Requirements) |
|---|
| I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |

I declare under penalty of perjury that the foregoing is true and correct.

| SIGNATURE OF COMPLAINANT |
|---|

5/2/97
Date

X _Handi Elsiah_
Charging Party (Signature)

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year)

EEOC FORM 5 (Rev. 08/92)

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

**CIV – MARCUS**

HAMDI ELSIAH,

**97 - 6778**

          Plaintiff,   )

v.   )   Case No.   MAGISTRATE JOHNSON

   )

LUCENT TECHNOLOGIES INC.,   )
LEWIS KASLOW, MIKE REED,   )   Florida Bar No.: 0081078
RONALD LAURINO, ANTHONY   )
SAVASTANO, BRUCE BREWER,   )
DAVID WARD, and the   )
LUCENT TECHNOLOGIES INC.   )
SICKNESS AND ACCIDENT   )   JURY TRIAL DEMANDED
DISABILITY BENEFIT PLAN,   )
   )
          Defendants.   )
   )
_____)

### COMPLAINT

Plaintiff Hamdi Elsiah complains of Defendants Lucent
Technologies Inc., Lewis Kaslow, Mike Reed, Ronald Laurino, Anthony
Savastano, Bruce Brewer, David Ward, and the Lucent Technologies
Inc. Sickness and Accident Disability Benefit Plan as follows:

### PRELIMINARY STATEMENT

1.    This action seeks declaratory, injunctive, and equitable
relief, compensatory and punitive damages, and attorneys' fees and
costs for racial, ethnic, religious, and national origin
discrimination; retaliation; breach of contractual obligations;
false imprisonment; intentional or negligent infliction of
emotional distress; and, denial of employee benefits; suffered by
Plaintiff Hamdi Elsiah while employed by Lucent Technologies Inc.



## JURISDICTION

2.     This action arises under the Reconstruction Era Civil Rights Act, codified at 42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e et seq.; the Employee Retirement Income Security Act, codified at 29 U.S.C. § 1001 et seq.; and the laws of the State of Florida.

3.     Jurisdiction over the federal issues is invoked pursuant to: 28 U.S.C. § 1343(4) and, subject to being held in abeyance until the receipt of a requested right-to-sue letter, 42 U.S.C. § 2000e-5(f), as well as 29 U.S.C. § 1132(e)(1).  Jurisdiction over the state law claims is invoked pursuant to the doctrine of supplemental jurisdiction, now codified at 28 U.S.C. § 1367.

4.     Declaratory, injunctive, and equitable relief is sought pursuant to 28 U.S.C. §§ 2001 and 2002; 42 U.S.C. §§ 1981 and 2000e-5(g); 29 U.S.C. § 1132; and the supplemental state law claims.

5.     Compensatory and punitive damages are sought pursuant to 42 U.S.C. § 1981; 42 U.S.C. § 2000e et seq.; and the supplemental state law claims.

6.     Costs and attorneys' fees may be awarded pursuant to 42 U.S.C. §§ 1988 and 2000e-5(k), Federal Rule of Civil Procedure 54, 29 U.S.C. § 1132(g)(1), and also under state law.

Scanned Image - 0:97CV6778 Document 1 page 2 Mon Nov 26 00:00:00 2001

## VENUE

7.   This action properly lies in the Southern District of Florida, pursuant to 28 U.S.C. § 1391(b), because the claim initially arose in this judicial district, and pursuant to 42 U.S.C. § 2000e-5(f)(3), because the Plaintiff would have worked in this judicial district but for the allegedly unlawful employment practice.  Venue is also appropriate in this jurisdiction pursuant to 29 U.S.C. § 1132(e)(2) because this is where breach of the employee welfare benefit plan in question took place.  Moreover, Defendant Lucent Technologies Inc. has a business office located in this judicial district and the Plaintiff resides here.

## PARTIES

8.   Plaintiff Hamdi Elsiah is a Muslim who was born in Cairo, Egypt and is of Arabic ethnicity.  Plaintiff is currently a United States citizen who resides in the United States.

9.   Defendant Lucent Technologies Inc. ("Lucent") is an employer that engages in an industry affecting commerce and employs more than 15 regular employees.  Defendants Lewis Kaslow, Mike Reed, Ronald Laurino, Anthony Savastano, Bruce Brewer and David Ward are all current management employees of Lucent.  The Lucent Technologies Inc. Sickness and Accident Disability Benefit Plan is an employee welfare benefit plan sponsored by Defendant Lucent Technologies Inc.

3

## FACTS

10.  Mr. Elsiah was born in Cairo, Egypt and immigrated to the United States to better his economic possibilities in life.

11.  Mr. Elsiah graduated from college with a "B+" grade point average.

12.  Before being hired by Lucent, Mr. Elsiah had been employed as a computer engineer by various high technology companies such as Bay Networks Inc., an industry leader in data networking.

13.  Mr. Elsiah was hired by Lucent in November of 1996 to support the Bay Network product line. At that time, Mr. Elsiah was assigned to work in Lucent's Fort Lauderdale, Florida office.

14.  Mr. Elsiah's first position with Lucent was as a senior network engineer and his starting salary was $75,000.

15.  Mr. Elsiah was an excellent network engineer who consistently satisfied Lucent customers with his expertise and service.   A copy of a letter commending Mr. Elsiah's work performance is attached as Exhibit A to the Complaint.

16.  Over the course of his employment at Lucent, Mr. Elsiah was repeatedly made aware that certain employees and managers of Lucent did not like him because of his ethnic background, religion, race and/or place of national origin and that many of his white co-workers and managers were openly hostile to minority employees.

17.  On January 23, 1997, Defendant Lewis Kaslow (the General Manager of Lucent's office in Largo, Florida) spoke to Anthony Bayad (Mr. Elsiah's immediate supervisor) on the telephone.

4

Defendant Kaslow demanded that Mr. Bayad fly immediately from Fort Lauderdale to the Largo office to see him. Mr. Bayad is a Black Muslim from Morocco and is also of Arabic ethnicity.

18.  With Defendant Kaslow's knowledge, Mr. Elsiah had joined the telephone conversation between Mr. Bayad and Defendant Kaslow.

19.  During this conversation, Defendant Kaslow repeatedly demanded that Mr. Bayad fly from Fort Lauderdale to Largo to meet with him, but refused repeated requests to explain the reasons behind his demand.

20.  When Mr. Bayad explained that he was scheduled to meet with a Lucent client and could not fly to Largo on such short notice, Defendant Kaslow called him a "dirty Arab" and stated that he "didn't care if [Mr. Bayad] had to take a flying carpet" to Largo.

21.  Mr. Elsiah heard these remarks and understood Defendant Kaslow to be demeaning and disparaging his Arabic background, his race, his religion, and/or his ethnicity.

22.  Mr. Elsiah flew with Mr. Bayad from Fort Lauderdale to Largo on January 23, 1997 because Mr. Bayad's corporate American Express card was not working and the plane tickets had to be purchased on Mr. Elsiah's corporate American Express card instead.

24.  Upon their arrival at Lucent's Largo office, Mr. Elsiah remained in the car while Mr. Bayad was escorted into the building and to a meeting with Defendants Anthony Savastano, Lewis Kaslow, and Ronald Laurino (a Lucent police or security officer). After Mr. Bayad entered the front door of the building it was immediately

5

locked behind him.

25.  A short time after his arrival, Mr. Bayad was imprisoned alone in a room with Defendant Laurino who proceeded to scream at Mr. Bayad and accuse him of stealing from Lucent by charging personal items on his corporate American Express card.

26.  After being screamed at, abusively interrogated, intimidated, physically assaulted, and confined alone in a room with Defendant Laurino, Mr. Bayad became extremely scared and afraid for his safety and asked to receive medical attention.

27.  When Defendant Laurino opened the door to get medical attention, Mr. Bayad attempted to leave the room because he was sick and scared.

28.  When Mr. Bayad reached the door, several other security officers attempted to physically restrain him and keep him locked in the room where he was being falsely imprisoned.

29.  In the scuffle that ensued, Mr. Bayad was dragged or thrown down a flight of stairs and ended up submerged head first in a fountain on the floor below.

30.  As a result of the scuffle, Mr. Bayad received injuries to his head and neck and his clothes were torn.

31.  An ambulance was called to take Mr. Bayad to the hospital.

32.  During the altercation between Mr. Bayad and security, Mr. Elsiah remained in the car.

33.  After a period of time, Mr. Elsiah was jolted by a knock on the car window.

6

34. Joan Grohe (Human Resource Director of Lucent's Largo office) and Defendant Anthony Savastano (former General Manager of Lucent's Largo office) were at the car window asking if Mr. Elsiah could come and help counsel Mr. Bayad.

35. By this time, a crowd of people had formed in front of the building. A fire engine, police car, and ambulance had also arrived.

36. Mr. Elsiah forced his way through the crowd and found Mr. Bayad, who was soaking wet, screaming and crying on the ground. When Mr. Bayad saw Mr. Elsiah, he grabbed onto his shirt, stating "Don't leave me, they will destroy me like they destroyed my career."

37. Mr. Elsiah helped escort Mr. Bayad to the ambulance.

38. While Mr. Bayad was lying in the ambulance and being treated by paramedics, Defendant Laurino fired Mr. Bayad and also further humiliated Mr. Bayad by forcing him to give back his pager and his American Express card (despite the fact that it had already been deactivated) while Mr. Bayad was still in the ambulance and in front of the crowd.

39. At the direction, order, or encouragement of the Defendants, Mr. Bayad was taken to a hospital where the Defendants caused him to be involuntarily committed to a psychiatric ward against his will.

40. Mr. Elsiah accompanied Mr. Bayad to the hospital in the ambulance but returned to Fort Lauderdale later that same night.

41. During a conference call the next day, Defendant Anthony

7

Savastano denied that anything had ever happened to Mr. Bayad.

42. Mr. Bayad's termination was the result of a conspiracy or plan against him on account of his race, ethnic, religious, and place of national origin by the very prejudiced and discriminatory Defendants.

43. Proof of the Defendants' abject discrimination in this case is supported by an e-mail, titled "It's done!", that was sent in the early morning hours of January 24, 1997 (the day after Mr. Bayad's horrible false imprisonment, interrogation, termination, and confinement). This e-mail was authored by Defendant Mike Reed and exhorts:

> Bruce, I need your help we need to stop these **damned foreigners** [sic] they think they can come over to my country and first of all take our jobs, then be our bosses. **Anthony Bayad** needs to be stopped or before you know it he will be running this company. He is nothing but a **sand nigger** or a **dirty arab** or something like that. I think that with your help, we can make him look bad in the eyes of upper management, so we can finally get rid of him and his **spick boss**, once and for all.
>
> Tony [Savastano] already has a plan Scott Boda will get certified in the near future, and two other people they told to get certified, we can finally get rid of them. Even if they are right in saying most people in this company [] don't like to work hard, and all they do is play games they should not come in and make waves.
>
> Mike Reed.

A copy of this e-mail is attached as Exhibit B to the Complaint.

44. Further proof of a discriminatory conspiracy against Mr. Bayad lies directly in the fact that the "plan" specifically outlined in this offensive and despicable e-mail actually came to pass.

8

45. The e-mail speaks of getting rid of Mr. Bayad and his "spick boss" Amado Navas. Both were falsely fired for the alleged misuse of their corporate American Express card. The e-mail also speaks of Defendant Savastano's plan to get Scott Boda and other white employees "certified" with Bay Networks in Mr. Bayad's place. Upon information and belief, Scott Boda and another Lucent employee have recently been so certified or have taken the certification test. Apparently, Defendant Savastano's "plan" has worked like a charm.

46. Lucent was made aware of the offending e-mail and of the outlined discriminatory conspiracy against "foreigners", but has done nothing to reprimand the offending parties. Lucent has also failed to remedy the harm done to Mr. Bayad as well as to other minority employees on account of the hostile work environment present at Lucent.

47. On February 25, 1997, the Fort Lauderdale office of Lucent was visited by Defendants Kaslow and Laurino who proceeded to imprison the entire Fort Lauderdale office by drawing all of the blinds, locking all the doors, and refusing to let any employee make telephone calls, take telephone calls, go to the bathroom, or leave the office (even to get lunch). The names of the employees so imprisoned are Hamdi Elsiah, Tracy Chamot, Johanna Lopez, Fred Dandes, and Richard Dodd.

48. Each of the above-named employees of the Fort Lauderdale office were taken, in turn, into another locked room and abusively interrogated by Defendant Laurino. Lucent Investigation Manager,

9

William Carr, was also present during the interrogations and could have stopped the abuse.

49.   By the time it was Mr. Elsiah's turn to be interrogated, all of the other employees had been released and Mr. Elsiah was left alone with Defendant Laurino and his boss.   Mr. Elsiah, in particular, was taken into the interrogation room, falsely imprisoned, and yelled at by Defendant Laurino who tried to make him sign a false confession that he had made personal purchases with his corporate American Express card.   Mr. Elsiah had never made any such purchases and refused to confess to something he was not guilty of doing.   Instead, Mr. Elsiah would only sign a statement which proved his innocence.   Mr. Elsiah's refusal to sign a false confession completely enraged Defendant Laurino who continued to scream and harass him.   Mr. Elsiah was finally allowed to leave the office at approximately 8:00 pm in the evening.

50.   During the interrogation, Mr. Elsiah was held against his will and was not allowed to leave the room.   Mr. Elsiah became very afraid because of Defendant Laurino's abusive conduct and because he knew that Defendant Laurino had already had Mr. Bayad committed to a mental institution the month before.   Mr. Elsiah was afraid that he would suffer the same fate as Mr. Bayad.

51.   A copy of the "statement" signed by Mr. Elsiah after his abusive interrogation and false imprisonment is attached as Exhibit C to the Complaint.   Mr. Elsiah believes that a tape recording of his interrogation was made by Defendant Laurino and his boss.

10

52.  As a result of the interrogations in Fort Lauderdale, two Hispanic female employees (Tracy Chamot and Johanna Lopez) were fired for personal use of their corporate American Express card, despite the fact they had been given express permission to use the card for personal purchases.  Between January and February, 1997, only minority employees of the Largo and Fort Lauderdale offices were fired by Lucent for using their American Express card to make personal purchases.  White employees who used their American Express card to make personal purchases have not been terminated.

53.  Several weeks after being abusively interrogated and falsely imprisoned, Defendant Kaslow threatened, on or about March 15, 1997, to suspend Mr. Elsiah because he had remained friendly with Mr. Bayad and had socialized with him after company hours. Diana Canzona-Hindman, a Human Resources employee of Lucent, was also in the room when Defendant Kaslow threatened to suspend Mr. Elsiah.

54.  Later the same day, Defendant Kaslow returned to the Fort Lauderdale office with a copy of the newly printed Lucent "Business Guideposts" (which had apparently replaced the old AT&T Code of Conduct and had been conveniently changed after Mr. Bayad's firing).  Defendant Kaslow demanded that all of the Fort Lauderdale employees sit in a circle and read the material aloud like naughty children.  The employees, including Mr. Elsiah, found such behavior to be both threatening and intimidating, especially after the horrible things that had happened to Mr. Bayad.

11

55.  After Mr. Bayad's termination, Mr. Elsiah was promoted to the position of Design and Configuration Manager of the Fort Lauderdale office.  He was also promised further promotions.

56.  In the middle of March, Defendant David Ward (a white management employee of Lucent) was promoted to head of the Fort Lauderdale office, essentially demoting Mr. Elsiah.  Defendant Ward promised Mr. Elsiah that, even though he had been demoted,  Mr. Elsiah would still be the Group Leader of the Fort Lauderdale office.

57.  Despite promising the position of Group Leader to Mr. Elsiah, Defendant Ward hired an outsider named Frank O'Connor (a white individual) to be Group Leader of Lucent's Fort Lauderdale office, without directly informing Mr. Elsiah that he had been demoted again.  Both of the above demotions were intended to coerce Mr. Elsiah into leaving his employment with Lucent.

58.  In addition, after becoming head of Lucent's Fort Lauderdale office, Defendant Ward contacted Mr. Elsiah both in person and by telephone on several occasions.  The express purpose of these conversations was to convince Mr. Elsiah to leave the company.  In one of the first conversations between the two men, Defendant Ward stated that "he could have gotten anybody from bum fuck Egypt to run the operation" and that Mr. Elsiah was, therefore, nothing special.

59.  During another such conversation, Defendant Ward specifically told Mr. Elsiah that he was his friend and that Mr. Elsiah "had no future" at Lucent because of his race and/or

12

national origin. Defendant Ward also gave Mr. Elsiah the name of a headhunter who could help him leave the company and repeatedly encouraged Mr. Elsiah to leave his employment with Lucent as soon as possible.

60. On another occasion, Defendant Ward met with Mr. Elsiah at a hotel in Fort Lauderdale. At this meeting, Defendant Ward told Mr. Elsiah that he was cutting his salary by $10,000 and was assigning Texas as a sales territory to Mr. Elsiah (despite the fact that Mr. Elsiah was not a salesman). Such a territory is known in the industry as a very poor one since few of Lucent's target customers would be located there. All of Defendant Ward's actions were taken to try and get Mr. Elsiah to leave Lucent and were motivated by a desire to discriminate against Mr. Elsiah on account of his race, religion, ethnicity, and/or place of national origin.

61. Mr. Elsiah took Defendant Ward's encouragement to leave and his demotion as a sign that he had been constructively discharged. In addition, it was repeatedly made clear to Mr. Elsiah that his opportunities for advancement within Lucent were basically nonexistent because of his race, religion, ethnicity, and/or national origin.

62. Due to the fact that Mr. Elsiah had witnessed the heinous abuse of Mr. Bayad and the constant harassment and discrimination at Lucent, Mr. Elsiah was advised by Lucent's own Employee Assistance Program Manager, Brenda Donalds, to seek treatment with a psychiatrist for "post traumatic stress disorder" ("PTSD"). Ms.

13

Donalds also assured Mr. Elsiah that he would suffer no financial hardship or retaliation for seeking help. Copies of Ms. Donalds letters outlining Mr. Elsiah's PTSD, the discrimination problems at Lucent, and the stress that they caused, are attached as Exhibit D to the Complaint.

63. On April 3, 1997, Mr. Elsiah was granted a short-term disability leave by Lucent and he began receiving short-term disability benefits under the Lucent Technologies Inc. Sickness and Accident Disability Benefit Plan (the "Plan").

64. On May 2, 1997, Mr. Elsiah filed a charge of discrimination against Lucent Technologies with the Equal Employment Opportunity Commission (the "EEOC") in Miami, Florida. Mr. Elsiah received a Right-To-Sue Letter from the EEOC on May 13, 1997. A copy of the Right-To-Sue Letter is attached as Exhibit E to the Complaint.

65. Shortly after Lucent learned that Mr. Elsiah had filed a charge of discrimination against it, Mr. Elsiah's disability benefits were suddenly revoked (despite the fact that Mr. Elsiah had already been determined to be eligible for short-term disability benefits and had been receiving benefits thereunder for over a month). Lucent has also demanded that Mr. Elsiah repay the disability benefits that he had already received.

66. Lucent's decision to revoke Mr. Elsiah's disability benefits immediately after Mr. Elsiah filed a charge of discrimination clearly constitutes retaliatory conduct in violation of federal and state anti-discrimination laws.

14

67.  The retaliatory nature of Lucent's conduct is further supported by the fact that the appropriate disability Plan procedures were not followed when the decision to revoke Mr. Elsiah's disability benefits were made (_i.e._, the decision was made by someone without proper authority to make a disability determination, the decision was not communicated to Mr. Elsiah in writing or in an adequate fashion as required by law, and no attempt was made to contact Mr. Elsiah's treating psychiatrist or to obtain his treatment notes before the decision as to Mr. Elsiah's eligibility for disability benefits was made).  In short, the decision to revoke Mr. Elsiah's disability benefits was made improperly and without sufficient evidentiary foundation.

68.  Because of this retaliatory and illegal conduct, Mr. Elsiah has been left without any means of supporting his wife and three small children.

69.  Throughout his employment at Lucent, Mr. Elsiah was repeatedly subject to racially hostile actions and racially hostile remarks.  Defendant Brewer, for example, told Mr. Elsiah on one occasion that Mr. Elsiah's "only problem was that he was the same race as" Mr. Bayad (a Black Muslim from Morocco).  Defendant Brewer is an Operations Manager in Lucent's Largo office.

70.  All of the discriminatory and prejudiced actions taken against Mr. Elsiah by the Defendants were done intentionally, maliciously, wantonly, or with a reckless disregard for Mr. Elsiah's rights and well-being.

15

71. At all times pertinent to this Complaint, Lucent had an employee handbook and a stated policy barring discrimination on the basis of race, religion, and national origin.

72. Due to the discrimination, harassment, unfair treatment, false imprisonment, constructive discharge, and wrongful denial of disability benefits committed by the Defendants, Mr. Elsiah suffered and continues to suffer severe emotional distress, mental anguish, and humiliation.

### COUNT I

### RACE, ETHNIC, NATIONAL ORIGIN, AND RELIGIOUS DISCRIMINATION

(Against Lucent Technologies Inc.)

73. Mr. Elsiah incorporates as if realleged paragraphs 1 through 72 of the Complaint.

74. By purposefully restricting Mr. Elsiah's promotional opportunities, and by harassing, abusing, and finally constructively discharging him on account of his race, ethnicity, national origin, and religion, Lucent has violated Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e et seq.

### COUNT II

### RECONSTRUCTION ERA CIVIL RIGHTS ACT CLAIM

(Against All Defendants, except the Plan)

75. Mr. Elsiah incorporates as if realleged paragraphs 1 through 72 of the Complaint.

76. By purposefully restricting Mr. Elsiah's promotional opportunities, and by harassing, abusing, and finally constructively discharging him on account of his race, ethnicity,

16

national origin, and religion, the Defendants have violated the Reconstruction Era Civil Rights Act, codified at 42 U.S.C. § 1981.

## COUNT III

### FALSE IMPRISONMENT

#### (Against All Defendants, except the Plan)

77.  Mr. Elsiah incorporates as if realleged paragraphs 1 through 72 of the Complaint.

78.  By unreasonably confining Mr. Elsiah to a locked room at Lucent's Fort Lauderdale office against his will and by refusing to let him leave that room, the Defendants have violated Florida law against false imprisonment.

## COUNT IV

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

#### (Against All Defendants, except the Plan)

79.  Mr. Elsiah incorporates as if realleged paragraphs 1 through 72 of the Complaint.

80.  By engaging in a concerted effort to harass and discredit Mr. Elsiah, by fostering a hostile work environment, by locking him in a room, screaming at him and falsely accusing him of improper purchases on his corporate credit card, by repeatedly trying to force him to leave the company on account of his race and/or national origin, and by retaliatorily revoking his disability benefits when he had no other means of supporting his wife and three small children, Lucent and the other Defendants have intentionally, or in the alternative, negligently inflicted emotional distress upon Mr. Elsiah in violation of Florida law.

17

## COUNT V

### WRONGFUL DENIAL OF EMPLOYEE BENEFITS

(Against Lucent Technologies Inc. and the Lucent Technologies Inc.
Sickness and Accident Disability Benefit Plan)

81.  Mr. Elsiah incorporates as if realleged paragraphs 1 through 72 of the Complaint.

82.  By denying Mr. Elsiah short-term disability benefits to which he is lawfully entitled, by denying Mr. Elsiah disability benefits on the fallacious ground that his short-term disability is not work-related, and by denying him disability benefits without properly following the legal and written requirements and terms of the Lucent Technologies Accident and Sickness Disability Plan, the Defendants have violated the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq.

83.  Mr. Elsiah has appealed the wrongful denial of disability benefits to him, but believes that such an appeal is actually futile since both Lucent and the Plan have already been guilty of improperly denying him benefits, have failed themselves to properly follow the claims procedure set out in the Plan, and have revoked Mr. Elsiah's disability benefits in order to illegally retaliate against Mr. Elsiah for filing a charge of discrimination.

18

## COUNT VI

### BREACH OF CONTRACT

(Against Lucent Technologies Inc.)

84.  Mr. Elsiah incorporates as if realleged paragraphs 1 through 72 of the Complaint.

85.  By failing to follow its own personnel policies and procedures on evaluating, promoting, and providing equal employment opportunity and by failing to truthfully investigate and reprimand the author of the hateful e-mail against foreigners, and by failing to investigate or reprimand the other conspirators in discrimination who repeatedly harassed Mr. Elsiah on account of his race, religion, ethnicity, and/or national origin, Lucent Technologies has breached its contractual obligations to Mr. Elsiah in violation of Florida law.

## COUNT VII

### RACE, ETHNIC, NATIONAL ORIGIN AND RELIGIOUS DISCRIMINATION IN VIOLATION OF FLORIDA LAW

(Against Lucent Technologies Inc.)

86.  Mr. Elsiah incorporates as if realleged paragraphs 1 through 72 of the Complaint.

87.  By purposefully restricting Mr. Elsiah's promotional opportunities, and by harassing, abusing, and finally constructively discharging him on account of his race, ethnicity, national origin, and religion, Defendant Lucent Technologies has violated the Florida Civil Rights Act of 1992.

19

## RELIEF REQUESTED

88.    WHEREFORE, Plaintiff Hamdi Elsiah prays that this Court:

(a) declare the Defendants' conduct to be in violation of his rights;

(b) enjoin Defendants from engaging in such conduct;

(c) award him any back pay and benefits (with interest) that have accrued to date;

(d) award him front pay until normal retirement age or reinstatement him to a comparable position in a non-discriminatory division within Lucent Technologies (if there is such a division);

(e) award him any short-term disability benefits due him;

(f) award him compensatory damages of $1,000,000 or more for emotional distress, mental anguish, and humiliation on account of the discrimination and false imprisonment he suffered at the hands of the Defendants;

(g) award him punitive damages in the amount of $3,000,000 or more;

(h) award him costs and attorneys' fees; and

(i) grant such other relief as the Court may deem just and proper.

20

## JURY DEMAND

89.   Mr. Elsiah demands a jury on all claims triable as a matter of right by a jury.

Dated:   June 27, 1997

                          STEPHANIE ALEXANDER, CHARTERED
                          Attorneys for Plaintiff
                          4403 West Tradewinds Avenue
                          Lauderdale-By-The-Sea, FL 33308
                          (954) 772-2644
                          (954) 772-2845 (fax)


                          By: _____
                              STEPHANIE ALEXANDER
                              Fla. Bar No. 0081078

21