GIETZEN & ASSOCIATES, INC.
SERVICE COPY

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| ANTHONY BAYAD, | ) |
| Plaintiff, | ) **97- 6671** |
| v. | ) Case No. |
| LUCENT TECHNOLOGIES INC., | ) |
| LEWIS KASLOW, MIKE REED, | ) Florida Bar No.: 0081078 |
| RONALD LAURINO, ANTHONY | ) |
| SAVASTANO, and JOAN GROHE, | ) JURY TRIAL DEMANDED |
| Defendants. | ) |
| | ) MAGISTRATE JUDGE |
| | ) SELTZER |

## COMPLAINT

Plaintiff Anthony Bayad complains of Defendants Lucent Technologies Inc., Lewis Kaslow, Mike Reed, Ronald Laurino, Anthony Savastano, and Joan Grohe as follows:

### PRELIMINARY STATEMENT

1.    This action seeks declaratory, injunctive, and equitable relief, compensatory and punitive damages, and attorneys' fees and costs for racial, ethnic, religious, and national origin discrimination; breach of contractual obligations; false imprisonment; intentional or negligent infliction of emotional distress, and; defamation suffered by Plaintiff Anthony Bayad while employed by Lucent Technologies Inc.

### JURISDICTION

2.    This action arises under the Reconstruction Era Civil Rights Act, codified at 42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e et seq.; and the laws of the State of Florida.

3.    Jurisdiction over the federal issues is invoked pursuant to 28 U.S.C. § 1343(4) and, subject to being held in abeyance until the receipt of a requested right-to-sue letter, 42 U.S.C. § 2000e-5(f); and over the state law claims pursuant to the doctrine of supplemental jurisdiction, now codified at 28 U.S.C. § 1367.

4.    Declaratory, injunctive, and equitable relief is sought pursuant to 28 U.S.C. §§ 2001 and 2002; 42 U.S.C. §§ 1981 and 2000e-5(g); and the supplemental state law claims.

5.    Compensatory and punitive damages are sought pursuant to 42 U.S.C. § 1981; 42 U.S.C. § 2000e et seq.; and the supplemental state law claims.

6.    Costs and attorneys' fees may be awarded pursuant to 42 U.S.C. §§ 1988 and 2000e-5(k), Federal Rule of Civil Procedure 54, and also under state law.

### VENUE

7.    This action properly lies in the Southern District of Florida, pursuant to 28 U.S.C. § 1391(b), because the claim initially arose in this judicial district, and pursuant to 42 U.S.C. § 2000e-5(f)(3), because the Plaintiff would have worked in this judicial district but for the allegedly unlawful employment practice.    Moreover, Defendant Lucent Technologies Inc. has a business office located in this judicial district and the Plaintiff resides here.

2

## PARTIES

8.   Plaintiff Anthony Bayad is a black Muslim who was born in Morocco and is of Arabic ethnicity.   Plaintiff is currently a United States citizen who resides in the United States.

9.   Defendant Lucent Technologies Inc. ("Lucent") is an employer that engages in an industry affecting commerce and employs more than 15 regular employees.   Defendants Lewis Kaslow, Mike Reed, Ronald Laurino, Anthony Savastano, and Joan Grohe are all current employees of Lucent.

## FACTS

10.   Mr. Bayad was born in Morocco and immigrated to the United States when he was 17 years old in the hopes of creating a better life for himself and his family.

11.   Mr. Bayad worked his way through college in the United States and received a Bachelor of Arts degree in Computer Engineering in 1994 from the Wentworth Institute of Technology in Boston, Massachusetts.

12.   Mr. Bayad graduated from college with a "B+" grade point average.

13.   While in college, Mr. Bayad worked at a Burger King, as a gas station attendant, and at a construction job in order to help finance his way through school.

14.   Mr. Bayad became employed by Lucent on or about December 15, 1995.   At that time, Mr. Bayad worked in Lucent's Largo, Florida office (outside of Tampa).

3

15.  Mr. Bayad's first position with Lucent was as a network engineer and his starting salary was $68,000.

16.  Within one week of becoming employed by Lucent, Mr. Bayad was promoted to the position of Group Leader and he began teaching networking and computer classes to the other engineers employed by Lucent in Largo, Florida.

17.  Some of Mr. Bayad's co-workers resented his promotion, openly stating that Mr. Bayad did not deserve a promotion because they did not like the way he spoke English.

18.  When Defendant Savastano became General Manager of Mr. Bayad's group he immediately stripped Mr. Bayad of his status as Group Leader for no reason.

19.  In March of 1996, at the insistence of Defendant Savastano, Mr. Bayad became "Certified" in the line of Bay Network products.  This certification was very advantageous to Lucent since it entitled the company to significant discounts from its supplier, Bay Networks.

20.  Mr. Bayad was an excellent network engineer who consistently satisfied Lucent customers with his expertise and service.  A copy of a letter commending Mr. Bayad's work performance is attached as Exhibit A to the Complaint.

21.  Because of his exemplary skill and dedication to Lucent, Mr. Bayad was asked by Defendant Savastano to head the start up of Lucent's new office in Fort Lauderdale, Florida.

22.  Although it was Lucent's policy to pay relocation benefits whenever an employee moved more than 100 miles, Mr. Bayad

4

received no relocation benefits to compensate him for the 300-mile move to Fort Lauderdale.

23.  Defendant Savastano promised Mr. Bayad a promotion to "B-band manager" for starting the Fort Lauderdale office.

24.  Mr. Bayad worked extremely hard to get the Fort Lauderdale office up and running and even wore a beeper so that he could respond to customer needs around the clock.

25.  After the Fort Lauderdale office had been in successful operation for several months, Mr. Bayad inquired about the promised promotion, but never received it.

26.  Defendant Savastano also denied Mr. Bayad a promotion to a "B-band manager" once before.  Mr. Bayad had been offered a lucrative transfer and promotion to a sales management position in another Lucent division, but Defendant Savastano refused to promote Mr. Bayad or allow Mr. Bayad to be promoted within the company.

27.  Instead, Defendant Savastano raised Mr. Bayad's salary to $83,000, but consistently refused to allow Mr. Bayad a promotion.

28.  Over the course of his employment at Lucent, Mr. Bayad became repeatedly aware that certain employees and managers of Lucent did not like him because of his ethnic background, religion, race and/or place of national origin.

29.  In January of 1997, Mr. Bayad applied for the vacant position of General Manager of the Largo office (as well as other management positions), but was also denied these promotions by Lucent.

5

30. On January 23, 1997, Defendant Lewis Kaslow called Mr. Bayad in Fort Lauderdale.

31. Defendant Kaslow had been promoted to the Largo General Manager position that Mr. Bayad and others had sought, despite the fact that he knew virtually nothing about the data networking field.

32. During this conversation, Defendant Kaslow demanded that Mr. Bayad fly from Fort Lauderdale to Largo immediately to meet him, but refused repeated requests to explain the reasons behind his demand.

33. When Mr. Bayad explained that he was scheduled to meet with a Lucent client and could not fly to Largo on such short notice, Defendant Kaslow called him a "dirty Arab" and stated that he "didn't care if [Mr. Bayad] had to take a flying carpet" to Largo.

34. Mr. Bayad understood Defendant Kaslow's remarks to be demeaning and disparaging to his Arabic background, his race, his religion, and/or his ethnicity.

35. Mr. Bayad flew from Fort Lauderdale to Largo on January 23, 1997 at Defendant Kaslow's insistence.

36. Upon his arrival at Lucent's Largo office, Mr. Bayad was escorted by Defendant Joan Grohe to a meeting with Defendants Anthony Savastano, Lewis Kaslow, and Ronald Laurino (a Lucent police or security officer).

37. Mr. Bayad was then imprisoned alone in a room with Defendant Laurino who proceeded to scream at Mr. Bayad and accuse

6

him of stealing from Lucent by charging personal items on his corporate American Express card.

38. Defendant Laurino made it very clear to Mr. Bayad that he was not free to leave the interrogation room. At one point, Defendant Laurino struck Mr. Bayad on the back of the head and neck.

39. In response to Defendant Laurino's false and malicious allegations, Mr. Bayad explained that he had been given permission to use his American Express card to purchase supplies and furnishings for the newly opened Fort Lauderdale office. To that end, Mr. Bayad charged approximately $18,000 worth of company assets on his American Express card, the propriety of which Lucent has not disputed.

40. Mr. Bayad also informed Mr. Laurino that he been given advance permission by Lucent employees (including Defendant Joan Grohe) to purchase two airplane tickets for his elderly parents on his American Express card, so long as he paid for the tickets himself.

41. Defendant Laurino made no attempt to verify Mr. Bayad's explanation for the purchases charged on his American Express card.

42. Although Mr. Bayad could have easily afforded to pay for his parents' plane tickets, Mr. Bayad chose to use his American Express card for the insurance coverage it afforded such purchases. Mr. Bayad had planned to mail the plane tickets to his parents in Morocco and was afraid that they might get lost in Morocco's less than reliable mail system.

7

43. By bringing his elderly parents to live with him in the United States, Mr. Bayad was fulfilling a childhood promise that he made to support his parents.

44. After being screamed at, abusively interrogated, intimidated, physically assaulted, and confined alone in a room with Defendant Laurino, Mr. Bayad became extremely scared and afraid for his safety.

45. Mr. Bayad asked Mr. Laurino if he could leave the room, if he could call his attorney, or if someone else could be admitted to the room so that his personal safety could be assured.

46. Defendant Laurino refused Mr. Bayad's requests and kept him falsely imprisoned and proceeded to scare, harass, intimidate, and assault Mr. Bayad for a continued period.

47. During Defendant Laurino's harassment and interrogation of Mr. Bayad, he continuously made derogatory remarks about Mr. Bayad's ethnic, religious and racial background and about Mr. Bayad's ability to speak English.

48. For example, during Defendant Laurino's false imprisonment of Mr. Bayad, he stated things like: "I don't know what's wrong with this company hiring people like you." and "Ten years ago I wouldn't even be talking to someone like you."

49. Such remarks were directed specifically at Mr. Bayad's racial, religious, and ethnic background and the fact that he had been born in Africa and was a foreigner.

50. During the interrogation and false imprisonment, Defendant Laurino also tried to force Mr. Bayad into signing a

8

false confession, but Mr. Bayad refused and, in an attempt to escape his false imprisonment, asked again if he could consult with a lawyer before signing anything or if he could talk to someone from Lucent's human resources department.

51.   Mr. Bayad's refusal to sign a false confession further enraged Defendant Laurino who repeatedly threatened to send Mr. Bayad to jail, despite the fact that Mr. Bayad had done nothing wrong.  In particular, Defendant Laurino stated that he was going to send Mr. Bayad to jail and that "Black guys were going to marry him" there.

52.   After being falsely imprisoned and abusively interrogated by Defendant Laurino for such an intense period, Mr. Bayad became sick with fear and asked to receive medical attention.

53.   When Defendant Laurino opened the door to get medical attention, Mr. Bayad attempted to leave the room because he was sick and scared.

54.   When Mr. Bayad reached the door, several other security officers attempted to physically restrain him and keep him locked in the room where he was being falsely imprisoned.

55.   In the scuffle that ensued, Mr. Bayad was dragged or thrown down a flight of stairs and ended up submerged head first in a fountain on the floor below.

56.   As a result of the scuffle, Mr. Bayad received injuries to his head 'and neck and his clothes were torn.

57.   An ambulance was called to take Mr. Bayad to the hospital.

9

58.   While he was lying in the ambulance and being treated by paramedics, Mr. Bayad was terminated from Lucent at the direction of Defendants Laurino and Kaslow.

59.   While lying in the ambulance and with an I.V. in his arm, Mr. Bayad was forced through the further humiliation of having to give back his business cards, his pager, and his corporate American Express card, despite the fact that the card had already been deactivated and could no longer be used by anyone.

60.   At the direction, order, or encouragement of the Defendants, Mr. Bayad was taken to a hospital where the Defendants caused him to be involuntarily committed to a psychiatric ward against his will.

61.   At the scene, Lucent Human Resource Manager Joan Grohe was heard to exclaim, "I warned them." or "I told them not to do it.  They fucked it up."  Ms. Grohe also knew that Mr. Bayad was going to be "Baker Acted" (or committed to the psychiatric ward against his will) before the ambulance had even left the parking lot of the Largo office and remarked to a bystander that "We're going to Baker Act him."

62.   Defendant Joan Grohe clearly knew of the discriminatory conspiracy or plan against Mr. Bayad in advance and actively participated in it.   Indeed, Defendant Grohe actually aided and encouraged the commission of atrocities against Mr. Bayad since she had specifically given Mr. Bayad permission to charge his parents' plane tickets on his American Express card.

10

en

63.   The Defendants also had a trespass complaint sworn out against Mr. Bayad while he was in the ambulance or en route to the hospital, even though Mr. Bayad had been ordered to come to the Largo office by Defendant Kaslow and had never threatened anyone in anyway.

64.   On the same day, while Mr. Bayad was confined to a psychiatric ward, Lucent also had the locks changed in the Fort Lauderdale office so that Mr. Bayad could not get back in.  A copy of the letter directing the change in locks is attached to the Complaint as Exhibit B.

65.   Despite the fact that he was perfectly sane, Mr. Bayad spent a terrible and scary night in the psychiatric ward where he was witness to things so horrible that he still has nightmares about them.

66.   Mr. Bayad was released from the hospital on January 24, 1997 (the very next day after his false imprisonment and termination) by his treating physician who realized that Mr. Bayad had been improperly confined in the psychiatric ward.  Mr. Bayad had originally been admitted for a minimum of three days of observation and treatment.

67.   When Mr. Bayad was released from the hospital, he was left by the Defendants without any money, clothes, or means of transporting himself back to his home in Fort Lauderdale.

68.   Mr. Bayad's termination was the result of a conspiracy or plan against him on account of his race, ethnic, religious, and place of national origin by the very prejudiced and discriminatory

11

Defendants.

69. Proof of the Defendants' abject discrimination in this case is supported by an e-mail, titled "It's done!", that was sent in the early morning hours of January 24, 1997 (the day after Mr. Bayad's horrible false imprisonment, interrogation, termination, and confinement). This e-mail was authored by Defendant Mike Reed and exhorts:

> Bruce, I need your help we need to stop these **damned foreingners** [sic] they think they can come over to my country and first of all take our jobs, then be our bosses. **Anthony Bayad** needs to be stopped or before you know it he will be running this company. He is nothing but a **sand nigger** or a **dirty arab** or something like that. I think that with your help, we can make him look bad in the eyes of upper management, so we can finally get rid of him and his **spick** boss, once and for all.
>
> Tony [Savastano] already has a plan Scott Boda will get certified in the near future, and two other people they told to get certified, we can finally get rid of them. Even if they are right in saying most people in this company [] don't like to work hard, and all they do is play games they should not come in and make waves.
>
> Mike Reed.

A copy of this e-mail is attached as Exhibit C to the Complaint.

70. Further proof of a discriminatory conspiracy against Mr. Bayad lies directly in the fact that the "plan" specifically outlined in this offensive and despicable e-mail actually came to pass.

71. The e-mail speaks of getting rid of Mr. Bayad and his "spick boss" Amado Navas. Both were falsely fired for the alleged misuse of their corporate American Express card. The e-mail also speaks of Defendant Savastano's plan to get Scott Boda and other

12

white employees "certified" with Bay Networks in Mr. Bayad's place. Upon information and belief, Scott Boda and another Lucent employee have recently been so certified or have taken the certification test. Apparently, Defendant Savastano's "plan" has worked like a charm.

72. Lucent was made aware of the offending e-mail and of the outlined discriminatory conspiracy against Mr. Bayad, but has done nothing to reprimand the offending parties or to remedy the harm done to Mr. Bayad.

73. Mr. Bayad was allegedly terminated for violating the Lucent Technologies Code of Conduct because he charged two plane tickets for his elderly parents on his American Express card.

74. The asserted reason for Mr. Bayad's termination is completely pretextual since he had been given permission to use his American Express card to charge the plane tickets by Defendant Grohe and other Lucent management personnel.

75. The asserted reason for Mr. Bayad's termination is completely pretextual since Mr. Bayad paid for the plane tickets himself and never attempted to defraud Lucent by asserting that the plan tickets were somehow a company expense.

76. The asserted reason for Mr. Bayad's termination is completely pretextual since many other employees (with either the express or implied permission of Lucent) have used the card for personal charges and these employees have not been dismissed or even reprimanded.

13

77.  The asserted reason for Mr. Bayad's termination is completely pretextual since the Lucent Code of Conduct (now apparently called the "Lucent Business Guideposts") was changed only **after** Mr. Bayad's termination to specifically provide that the use of the corporate credit card for personal charges was cause for dismissal.  Instead, Mr. Bayad was actually terminated because he was the victim of a discriminatory conspiracy or "plan", as outlined in Defendant Reed's horrible e-mail.

78.  All of the discriminatory and prejudiced actions taken against Mr. Bayad by the Defendants were done intentionally, maliciously, wantonly, or with a reckless disregard for Mr. Bayad's rights and well-being.

79.  At all times pertinent to this Complaint, Lucent had an employee handbook and a stated policy barring discrimination on the basis of race, religion, and national origin.

80.  On April 4, 1997, Mr. Bayad filed a charge of discrimination under Title VII of the Civil Rights Act with the Equal Employment Opportunity Commission.

81.  Mr. Bayad was issued a Right-To-Sue letter by the EEOC on April 22, 1997 (attached as Exhibit D to the Complaint).

82.  Shortly after his termination, Mr. Bayad attempted to find subsequent employment in the data networking industry.  Mr. Bayad was informed by several prospective employers that Lucent personnel had told them not to hire Mr. Bayad and that Mr. Bayad was crazy and that he had been fired for stealing from Lucent.

14

83.   Due to the discrimination, harassment, unfair treatment, and false imprisonment committed by the Defendants, Mr. Bayad suffered and continues to suffer severe emotional distress, mental anguish, and humiliation.

84.   Due to the defamation of Mr. Bayad by the Defendants, Mr. Bayad has suffered severe emotional distress, mental anguish, humiliation, damage to his reputation, and Mr. Bayad has been unable to find subsequent employment in his chosen field.

85.   Due to the fact that Mr. Bayad was wrongfully terminated for discriminatory reasons and that he has been unable to find subsequent employment, Mr. Bayad has been left virtually destitute. He is no longer able to support his elderly parents and has had to send them back to Morocco.

### COUNT I

### RACE, ETHNIC, NATIONAL ORIGIN, AND RELIGIOUS DISCRIMINATION

(Against Lucent Technologies Inc.)

86.   Mr. Bayad incorporates as if realleged paragraphs 1 through 85 of the Complaint.

87.   By purposefully restricting Mr. Bayad's promotional opportunities, and by harassing, abusing, and finally terminating him on account of his race, ethnicity, national origin, and religion, Lucent has violated Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e et seq.

15

## COUNT II

### RECONSTRUCTION ERA CIVIL RIGHTS ACT CLAIM

### (Against All Defendants)

88. Mr. Bayad incorporates as if realleged paragraphs 1 through 85 of the Complaint.

89. By purposefully restricting Mr. Bayad's promotional opportunities, and by harassing, abusing, and finally terminating him on account of his race, ethnicity, national origin, and religion, the Defendants have violated the Reconstruction Era Civil Rights Act, codified at 42 U.S.C. § 1981.

## COUNT III

### FALSE IMPRISONMENT

### (Against All Defendants)

90. Mr. Bayad incorporates as if realleged paragraphs 1 through 85 of the Complaint.

91. By unreasonably confining Mr. Bayad to a locked room at Lucent's Largo office against his will and by refusing to let him leave that room, the Defendants have violated Florida law against false imprisonment.

92. By ordering, encouraging, arranging, or causing Mr. Bayad's illegal and unwarranted confinement in a psychological ward, the Defendants have violated Florida law against false imprisonment.

16

## COUNT IV

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

#### (Against All Defendants)

93.  Mr. Bayad incorporates as if realleged paragraphs 1 through 85 of the Complaint.

94.  By engaging in a concerted effort to harass and discredit Mr. Bayad, by fostering a hostile work environment, by locking him in a room, screaming at him and hitting him and falsely accusing him of improper purchases on his corporate credit card, by firing him from his employment while he was in an ambulance on the way to the hospital, by ordering, arranging, or encouraging Mr. Bayad's confinement in a psychiatric hospital, by leaving him stranded in Largo after his release from the hospital without any money or means of transportation back to his home in Fort Lauderdale, and/or by the swearing out of a trespass complaint against him while he was hospitalized and after he had been specifically ordered to come to the Largo facility by Defendant Kaslow, Lucent and the other Defendants have intentionally, or in the alternative, negligently inflicted emotional distress upon Mr. Bayad in violation of Florida law.

17

## COUNT V

### DEFAMATION

#### (Against All Defendants)

95. Mr. Bayad incorporates as if realleged paragraphs 1 through 85 of the Complaint.

96. By intentionally and/or recklessly communicating and/or allowing the communication of malicious and defamatory e-mail about Mr. Bayad's racial, ethnic, religious, and national origin to others, the Defendants have defamed Mr. Bayad in violation of Florida law.

97. By intentionally and/or recklessly communicating malicious, injurious, negative, and false information about Mr. Bayad to prospective employers, the Defendants have defamed Mr. Bayad in violation of Florida law

## COUNT VI

### BREACH OF CONTRACT

#### (Against Lucent Technologies Inc.)

98. Mr. Bayad incorporates as if realleged paragraphs 1 through 85 of the Complaint.

99. By failing to follow its own personnel policies and procedures on evaluating, promoting, and providing equal employment opportunity and by failing to truthfully investigate and reprimand the author of the hateful e-mail against Mr. Bayad and the other conspirators in discrimination, Lucent Technologies has breached its contractual obligations to Mr. Bayad in violation of Florida law.

18

## COUNT VII

## RACE, ETHNIC, NATIONAL ORIGIN AND RELIGIOUS DISCRIMINATION

### IN VIOLATION OF FLORIDA LAW

(Against Lucent Technologies Inc.)

100. Mr. Bayad incorporates as if realleged paragraphs 1 through 85 of the Complaint.

101. By purposefully restricting Mr. Bayad's promotional opportunities, and by harassing, abusing, and finally terminating him on account of his race, ethnicity, national origin, and religion, Defendant Lucent Technologies has violated the Florida Civil Rights Act of 1992.

### RELIEF REQUESTED

102. WHEREFORE, Plaintiff Anthony Bayad prays that this Court:

(a) declare the Defendants' conduct to be in violation of his rights;

(b) enjoin Defendants from engaging in such conduct;

(c) award him back pay and benefits (with interest) that have accrued to date;

(d) award him front pay until normal retirement age;

(e) award him compensatory damages of $1,000,000 or more for emotional distress, mental anguish, and humiliation on account of the discrimination and false imprisonment he suffered at the hands of the Defendants;

(f) award him damages of $1,000,000 or more for defamation and damage to his career and reputation;

(g) award him punitive damages in the amount of $5,000,000 or

more;

(h) award him costs and attorneys' fees; and

(i) grant such other relief as the Court may deem just and proper.

### JURY DEMAND

103. Mr. Bayad demands a jury on all claims triable as a matter of right by a jury.


Dated:  June 2, 1997

STEPHANIE ALEXANDER, CHARTERED
Attorneys for Plaintiff
4403 West Tradewinds Avenue
Lauderdale-By-The-Sea, FL 33308
(954) 772-2644
(954) 772-2845 (fax)


By: _Stephanie Alexander_____
        STEPHANIE ALEXANDER
        Fla. Bar No. 0081078

20



**Lucent Technologies**
Bell Labs Innovations

Lucent Technologies Inc.
Suite 110
1019 Central Parkway North
San Antonio, Texas 78232

July 3, 1996

Jeff Akers
National Vice President of Technical Support Operations
Lucent Technologies
6140 Greenwood Plaza Boulevard
Englewood, CO 80111

Dear Jeff:

Your organization employs two gentlemen out of the Largo,FL operations that are outstanding in their knowledge level as well as dedication in the data networking field. Amado Navas and Anthony Bayad know what it takes to support customers who are creating new wide area networks (WANs) and who need support for existing WANs using our product line. Anthony went beyond the normal call of duty to work after hours over several evenings to complete a new network installation for Play by Play out of San Antonio, TX. This was a 7 site installation of BayNetworks routers and data access equipment that required an after hours cutover beginning one Friday night and lasting through until the following Saturday afternoon. The customer had purchased another company and needed access to the new network. This installation was so complex that the customer did not have the correct and complete information that we normally need to achieve a successful installation. The fact that the customer did not have the information necessary about their own network is not uncommon in the SBD marketplace.

These two gentlemen exemplify the type of technical assistance and dedication that we need to be successful in this marketplace. This sale started out as a $40,000 sale and because of their technical skills and willingness to assist, this turned into a $140,000 sale with over $30,000 in services. Once the customer saw the complexity of their network and how skillful Anthony was, they allowed us to assist them in other areas that a consultant had attempted to assist them with.

Please extend our gratitude to both Anthony and Amado for their support. We would not be able to sell wide area networks of this type without people like them.

Sincerely,

Larry Clarkson
General Manager
SBD San Antonio

cc: Jennifer K. Ramirez, ASC
    Amado Navas, Technical Support Manager
    Anthony Bayad, Systems Engineer

 **AT&T**

EXHIBIT A

January 23, 1997

Abood and Associates
Attn: Deanna Lobinsky
FAX: 954-564-6335

Deanna,

Per our phone conversation, please make arrangements to immediately change the locks for the Lucent Technologies penthouse facilities at your 2455 E. Sunrise Blvd location. I attempted to contact Amado Navas prior to his departure but was unable to contact him in time to authorize this request.

I am the Lucent facilities manager for the Largo, FL office and was asked to handle this change. I have contacted John Stalzer of that Lucent office and asked him to see you about obtaining the new keys for the main door and deadbolt. I understand from Amado that there are eight (8) sets of keys, so please arrange for eight (8) keys to be made for the new lock.

If there are any questions, please contact me at (813) 530-8184, Amado Navas at (813) 530-8760, or Lew Kaslow (Amado's manager) at (813) 532-5463. Thank you for any expediency you can provide.

Richard K. Bailer
Lucent Technologies
Facilities Manager

cc:     L. Kaslow
        A. Savastano
        A. Navas

EXHIBIT B

From:       MIKE REED
To:         Bay, BBREWER
Date:       1/24/97 12:25am
Subject:    It's done!

Bruce, I need your help we need to stop these dammmed foreingners
they think they can come over to my country and first of all take
our jobs, then be our bosses. Anthony Bayad needs to be stopped
or before you know it he will be running this company. He is nothing
but a sand nigger or a dirty arab or somethig like that.
I think that with your help, we can make him look bad in the eyes
of upper management, so we can finally get rid of him and his
spick boss, once and for all.
Tony already has a plan Scott Boda will get certified in the near
future, and two other people they told to get certified, we can
finally get rid of them. Even if they are right in saying most
people in this company company don't like to work hard, and all they
do is play games they should not come in and make waves.
Mike Reed

EXHIBIT C

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# NOTICE OF RIGHT TO SUE

*(ISSUED ON REQUEST)*

| To: | From: |
|---|---|
| Anthony Bayad<br>2900 N.E. 30 Avenue, Apt 10 F<br>Ft. Lauderdale, FL 33306 | Miami District Office<br>Equal Employment Opportunity Commission<br>One Biscayne Tower, Suite 2700<br>2 South Biscayne Boulevard<br>Miami, Florida 33131-1805 |

☐ *On behalf of a person aggrieved whose identity is CONFIDENTIAL (29 C.F.R. 1601.7(a))*

| Charge Number | EEOC Representative | Telephone Number |
|---|---|---|
| 150 97 2340 | Robert K. Metaxa, Supervisor | (305) 530-6050 or 6021 |

(See the additional information attached to this f...

## NOTICE TO THE PERSON AGGRIEVED:

Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act(ADA): This is your Notice of Right to Sue, is under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your suit under Tit or the ADA must be filed in federal or state court **WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to based on the above-numbered charge will be lost.

☐ More than 180 days have passed since the filing of this charge.

☒ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of the charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

Age Discrimination in Employment Act (ADEA): You may sue under the ADEA at any time from 60 days after the charge was until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked b applies to your case:

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court WIT **90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be

☐ EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of your char you may file suit in federal or state court under the ADEA at this time.

Equal Pay Act (EPA): You already have the right to sue under the EPA (filing an EEOC charge is not required). EPA suits must brought in federal or state court within within 2 years (3 years for willful violations) of the alleged EPA underpayment. This me that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit based on this charge, please send a copy of your court compliant to this office.

On Behalf of the Commission

**APR 2 2 1997**
_____
(Date Mailed)

*George E. Evans for*
_____
Federico Costales, District Director

Enclosures
   Information Sheet
   Copy of Charge

cc:  Henry B Schacht          J. David Huskey, Jr., Esq.
     Chief Executive Officer    McGee, Gainey & Huskey, P.A.
     Lucent Technologies, Inc.   International Building
     600 Mountain Avenue      Penthouse West
     Murray Hill, NJ 07974      2466 East Sunrise Blvd.
                            Fort Lauderdale, FL 33304

EEOC Form 161-B (10/96)

EXHIBIT D



## CISCO DIRECTORY

**CISCO SYSTEMS**

Quick Search | Advanced Search | Resource Search | Extra Features | Help | Edit Your Profile

[Search] [Clear]

**Tony Savastano**    vCard    Reporting Chain  9 Direct Reports



### Contact Information

| | | | |
|---|---|---|---|
| Userid | tsavasta | Mail Stop | SJC10/5/1 |
| Telephone | 408 526-6908 | Street Address | 300 East Tasman Drive |
| Voice Mail | 526 6908 | City | San Jose |
| Fax Number | 408-853-3607 | State | CALIFORNIA |
| Mobile Number | | Country | United States |
| Pager Number | | Zip | 95134 |
| Epage | Epage tsavasta | Personal URL | 2nd Ofc Bldg 2/3 Ofc#327 |
| Building | SJ-10 | Group URL | Admin Support: Patty Obillo x:64725 |
| Floor | 5 | Local Time (24 hr) | Wed  16: 18: 36  UTC-8 |
| Cube Number | 558 | Worktype | TRADITIONAL |

### Organizational Information

| | | | |
|---|---|---|---|
| Title | VP,Finance | Group | CA Finance |
| Manager | Dennis Powell (depowell) | Department Number | 020070983 |
| Employee Type | Regular | Cisco ID Number | 72444 |

---

**Cisco Systems, Inc. Internal Use Only**

To find the appropriate place to send data update requests and comments about the application please see the help page
Last Modified on Wed Nov 12 16:18:26 2003

..S. EQUAL EMPLOYMENT OPPORTUN..Y  ᴜMMISSION

# NOTICE OF RIGHT TO SUE
*(ISSUED ON REQUEST)*

| To: | From: |
|-----|-------|
| Anthony Bayad<br>2900 N.E. 30 Avenue, Apt 10 F<br>Ft. Lauderdale, FL 33306<br><br>☐ *On behalf of a person aggrieved whose identity is CONFIDENTIAL*<br>*(29 C.F.R. 1601.7(a))* | Miami District Office<br>Equal Employment Opportunity Commissioɴ<br>One Biscayne Tower, Suite 2700<br>2 South Biscayne Boulevard<br>Miami, Florida 33131-1805 |

| Charge Number<br>150 97 2340 | EEOC Representative<br>Robert K. Metaxa, Supervisor | Telephone Number<br>(305) 530-6050 or 6021 |
|---|---|---|

(See the additional information attached to this fᵢ

## NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act(ADA):** This is your Notice of Right to Sue, is under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your suit under Titl or the ADA must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice. Otherwise, your right to based on the above-numbered charge will be lost.

☐ More than 180 days have passed since the filing of this charge.

☒ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of the charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked be applies to your case:

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court WIT 90 DAYS of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be l

☐ EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of your charɡ you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required). EPA suits must brought in federal or state court within within 2 years (3 years for willful violations) of the alleged EPA underpayment. This me that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

If you file suit based on this charge, please send a copy of your court compliant to this office.

On Behalf of the Commission

**APR 2 2 1997**
_____
(Date Mailed)

*George E. Evans for*
Feɖerico Costales, District Director

Enclosures
  Information Sheet
  Copy of Charge

cc:  Henry B Schacht
     Chief Executive Officer
     Lucent Technologies, Inc.
     600 Mountain Avenue
     Murray Hill, NJ 07974

     J. David Huskey, Jr., Esq.
     McGee, Gainey & Huskey, P.A.
     International Building
     Penthouse West
     2466 East Sunrise Blvd.
     Fort Lauderdale, FL 33304

EEOC Form 161-B (10/96)

EXHIBIT D

IN UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FILING FEE
PAID  255°
In Forma  530375
Pauperis
Clarence Maddox, Clerk

CASE NO. 97-6671-CIV-ROETTGER

ANTHONY BAYAD,

       Plaintiff,

vs.

LUCENT TECHNOLOGIES, INC.,
LEWIS KASLOW, MIKE REED,
RONALD LAURINO, ANTHONY
SAVASTANO and JOAN GROHE,

       Defendant.

------------------------------------------/



### Notice of Appeal as of Right

Notice is hereby given that Anthony Bayad , Plaintiff in the above named

case, hereby appeal to the United States Court of Appeals for the eleventh

circuit from the final judgment entered in this action on the 28 day of

October 2000.

Anthony Bayad, pro se

2 Magoun Avenue
Medford, MA 02155
Tel:(781)-7048982

GIETZEN & ASSOCIATES, INC.
1302 NORTH MARION STREET
TAMPA, FLORIDA 33602
(813) 223-3233
FEDERAL I.D. #59-2975034


**REPORT OF INTERVIEW**

**IN RE:** BAYAD

**DATE OF INTERVIEW:** AUGUST 5, 1997

**PERSON INTERVIEWED:** JIM PLANTS
                        TELEPHONE: 393-8711
                        ADDRESS: 8971 STARKEY ROAD
                        SEMINOLE, FLORIDA

**LOCATION OF INTERVIEW:** FIRE DEPARTMENT
                           ADMINISTRATIVE HEADQUARTERS
                           70th AVENUE
                           SEMINOLE, FLORIDA


AFTER INTRODUCING MYSELF AND STATING THE NATURE OF THE INTERVIEW, MR.

PLANTS MADE THE FOLLOWING COMMENTS CONCERNING A RESCUE THAT TOOK

PLACE ON JANUARY 23RD, 1997 AT APPROXIMATELY 4:12 PM AT LUCENT

TECHNOLOGIES ON 8545 126TH AVENUE NORTH, LARGO, FLORIDA 33773.


MR. PLANTS IS EMPLOYED BY FIRE RESCUE PINELLAS COUNTY.


MR. PLANTS STATED HE WAS TOLD THE BASIC LIFE SUPPORT CREW HAD PULLED MR.

BAYAD OUT OF A FOUNTAIN AT LUCENT TECHNOLOGIES.  MR. PLANTS STATED

WHEN HE CAME IN CONTACT WITH MR. BAYAD HE WAS WET. MR. PLANTS STATED MR. BAYAD TOLD HIM HE WAS IN THE FOUNTAIN BECAUSE HE WAS VERY HOT. MR. PLANTS STATED MR. BAYAD TOLD HIM LICENT TECHNOLOGIES PERSONNEL KEPT HIM LOCKED IN A ROOM THAT WAS VERY HOT WHERE HE COULD NOT GO TO THE BATHROOM OR GET ANYTHING TO EAT OR DRINK. MR PLANTS STATED MR. BAYAD TOLD HIM THE COMPANY HAD MORE OR LESS LURED HIM TO THEIR OFFICE FROM FORT LAUDERDALE. MR. PLANTS STATED MR. BAYAD SAID THERE WAS SOMETHING ABOUT AN EXPENSE ACCOUNT WHICH HE HAS PAID BACK BUT THE COMPANY WAS MAKING A BIG DEAL OUT OF IT. MR. PLANTS STATED MR. BAYAD REQUESTED HIS DOCTOR. MR. PLANTS ASSURED MR. BAYAD THAT AFTER HE WAS TAKEN TO THE HOSPITAL CONTACT WOULD BE MADE WITH HIS DOCTOR. MR. PLANTS STATED MR. BAYAD TOLD HIM HE HAD A SLEEP DISORDER.

MR. PLANTS WAS A LITTLE UNSURE AS TO EXACTLY WHEN MR. BAYAD WAS FIRED. MR. PLANTS DOES REMEMBER COMPANY OFFICIALS SPEAKING WITH MR. BAYAD IN THE AMBULANCE WHERE THEY TOOK CREDENTIALS FROM HIM AND TOLD HIM HE COULD NOT COME BACK ON THE PROPERTY OR HE WOULD BE CONSIDERED TRESPASSING.

MR. PLANTS STATED MR. BAYAD WAS VERY DISTRAUGHT OVER WHAT HAPPENED TO HIM. MR. PLANTS BELIEVED MR. BAYAD WHEN HE TOLD HIM HE HAD BEEN LOCKED IN A ROOM. MR. PLANTS STATED MR. BAYAD NEVER REFUSED CARE HE WAS JUST EXCITED AND SHAKEN UP OVER WHAT HAPPENED TO HIM. MR. PLANTS

STATED HE ALSO THOUGHT THERE WAS A LITTLE BIT OF A LANGUAGE BARRIER BETWEEN MR. BAYAD AND ALL OF THE OFFICIALS THAT WERE AROUND HIM. MR. PLANTS STATED AFTER A LITTLE WHILE MR. BAYAD CALMED DOWN AND COOPERATED WITH EVERYONE FULLY.

MR. PLANTS STATED MR. BAYAD HAD A FRIEND WITH HIM. MR. BAYAD TOLD THEM HE HAD A FRIEND WAITING FOR HIM IN THE CAR. MR. PLANT STATED AFTER A LITTLE BIT OF TIME THEY WERE ABLE TO FIND THE FRIEND WHO APPEARED TO BE THE SAME NATIONALITY AS MR. BAYAD. MR. PLANTS DOES NOT REMEMBER THE FRIENDS NAME, BUT STATED THE FRIEND HELPED TO CALM MR. BAYAD DOWN AND GET HIM TAKEN TO THE HOSPITAL.

MR. PLANTS STATED HE DID NOT KNOW IF MR. BAYAD WAS BAKER ACTED OR NOT. MR. PLANTS STATED IF THAT DECISION WAS MADE IT WAS MADE BY POLICE, NOT BY THE RESCUERS.

MR. PLANTS STATED HE NEVER HEARD MR. BAYAD SAY HE WANTED TO HARM HIMSELF IN ANY WAY. MR. PLANTS STATED HE DID NOT BELIEVE MR. BAYAD WAS SUICIDAL. MR. PLANTS STATED AFTER MR. BAYAD CALMED DOWN HE EVEN THANKED RESCUERS FOR TRYING TO HELP HIM AND APOLOGIZED FOR HIS EXCITEMENT WHEN THEY FIRST CONTACTED HIM. MR. PLANTS STATED HE DID NOT BELIEVE MR. BAYAD EVER POSED A THREAT TO HIMSELF OR THE RESCUERS ON SCENE.

PINELLAS COUNTY SHERIFF'S OFFICE
Incident/Offense Report

Report Date  :  01-23-97

Report Number:  97-16244

----------------------------------------------------------------------

I was dispatched to the occurred reference a male employee trying to drown himself in the company pool. When I arrived, Fire Rescue was on scene. I spoke with the victim, Anthony Bayad, who was hysterical. I attempted to get information from him as to what happened and since he was so upset, he was very hard to understand.

Upon speaking with Deputy Byrd, he advised me he'd been speaking with Ronald Lavrino who informed him of what had just taken place. He gave me a brief synopsis.

I then spoke with Ronald Lavrino who advised me he had been speaking with Anthony and had asked for his resignation because Anthony had used Anthony's corporate credit card for things other than company business. Ron advised this went against company policy and procedure and was grounds for immediate termination. Ron advised when he had asked Anthony to sign the papers, he stated that is when Anthony began getting upset. Ron stated Anthony began raising his voice, waving his hands in the air and left the office. Ron advised he tried to get Anthony to calm down and get him back under control when Anthony stormed out of the office, becoming more hysterical and uncontrollable. Ron advised Anthony threw himself to the floor as he was walking down the steps. He then ran out into the pool/fountain, approximately knee deep and threw himself into it. Ron then stated Anthony was not coming up for air, so Ron pulled him out by the back of his head so he would not drown. Ron advised that's when Anthony became extremely angry.

Seminole Fire Rescue was called to the scene. Ron terminated Anthony in our presence and also issued him a Trespass Warning (see 97-16850). Anthony gave Ronald back the company credit card and pager. Ronald stated the company did not want to pursue prosecution for the fraudulent use of the credit card because Anthony was making good on it.

I was advised by Ronald Lukasavich and Ron Lavrino, along with Fire Rescue, that Anthony made several statements about wanting to hurt himself. Sunstar then escorted Anthony to Suncoast Hospital. I made contact at Suncoast Hospital with Dr. Desai and explained the circumstances and I filled out the BA52 paperwork.

I was concerned for Anthony's safety due to his distraught state and the statements he made concerning that he was going to hurt himself. While at Suncoast, Anthony kept making statements that the company was 'out to get me' and 'they're going to take care of me'.

NFA.

# PINELLAS COUNTY SHERIFFS OFFICE

## ACISS INCIDENT/OFFENSE REPORT

Report Date   : 01/23/97                    Report Number : 97-16244

┌─Subject 4 (OTHER)────────────────────────────────────────────────
│ Name            :SUNCOAST HOSPITAL
│ Address         :2025 INDIAN ROCKS RD LARGO 33774
│ Residence Status:NOT APPLICABLE
│ Residence Type  :NOT APPLICABLE
│ Business Phone  :813-581-9474
│ Race            :NOT APPLICABLE
│ Sex             :NOT APPLICABLE
│ Contact Info.   :ER DR DESAI

┌─Subject 5 (OTHER)────────────────────────────────────────────────
│ Name            :SUNSTAR AMBULANCE
│ Address         :12490 ULMERTON RD LARGO 34644
│ Phone           :813-582-7822
│ Residence Status:NOT APPLICABLE
│ Residence Type  :NOT APPLICABLE
│ Race            :NOT APPLICABLE
│ Sex             :NOT APPLICABLE
│ Contact Info.   :PARAMEDIC PLANTS

┌─Subject 6 (OTHER)────────────────────────────────────────────────
│ Name            :SEMINOLE FIRE RESCUE #30
│ Address         :8971 STARKEY RD SEMINOLE 33777
│ Residence Status:NOT APPLICABLE
│ Residence Type  :NOT APPLICABLE
│ Business Phone  :813-393-8711
│ Race            :NOT APPLICABLE
│ Sex             :NOT APPLICABLE
│ Contact Info.   :PARAMEDIC PLANTS

┌─Incident Analysis────────────────────────────────────────────────
│ BAKER ACT
│   Action  :SUNCOAST HOSP

| Related Reports | Date | Type | Comment |
|---|---|---|---|
| 97-16850 | 01/23/97 | OFFENSE | TRESPASS WARNING |

┌─Report Status────────────────────────────────────────────────────
│ Unit Responding   :S22B
│ Assigned Squad    :SQ2B
│ Reporting Officer :PAGELS, STEPHANIE DEP. 54203
│ Backup Officer    :BYRD, WILLIAM DEP. 54118
│ ARMS  Specialist  :HOGG, MARY KAY CLK V 53521
│ ARMS  Entry Date  :01/24/97
│ ARMS  Entry Time  :12:43
│ Reviewed By       :FREYTAG, MARYANNE E ARMS-SUPV 50792
│ Approved By       :HAUCK, BRUCE A SGT. 50998
│ Case Status       :CLOSED
│ Referred To       :HOMICIDE UNIT

54395 06/24/97 12:12 lp27



# PINELLAS COUNTY SHERIFFS OFFICE

## ACISS INCIDENT/OFFENSE REPORT

```
Report Date    : 01/23/97            Report Number : 97-16244
Report Time    : 16:24               Type of Report: INCIDENT
Shift          : BRAVO - LATE        Incident Type : BAKER ACT
Time Dispatched: 16:24               Grid/Zone     : 405
Time Arrived   : 16:30               Occurred From : 01/23/97 16:24
Time Completed : 18:05  Source:DISPATCHED       To : 01/23/97 16:24
Reporting Area : PINELLAS SO
```

```
1st Loc/Occurred :8550 ULMERTON RD LARGO 34646
Business Area    :LUCIENT TECH
1st Dispatched To:8550 ULMERTON RD LARGO 34646
```

```
┌Subject 1 (VICTIM)─────────────────────────────────────
Name              :BAYAD, ANTHONY
Address           :2900 30 ST NE APT 10F FT LAUDERDALE
Phone             :954-565-0344
Residence Status:RENT/LEASE
Residence Type   :FLORIDA
Date of Birth     :04/07/67
Age on 01/23/97   :29
Occupation        :UNEMPLOYED
Race              :ARABIC
Sex               :MALE
Offense Number    :1ST OFFENSE
Victim Type       :ADULT
Extent of Injury:NONE
Injury Type       :NOT APPLICABLE
Injury Type       :NOT APPLICABLE
Rel/Offender      :NOT APPLICABLE
Sobriety          :SOBER
```

```
┌Subject 2 (OTHER)──────────────────────────────────────
Name              :LAVRINO, RONALD J
Address           :22 TECHNOLOGY PKWY NORCROSS GA 30092
Residence Status:PART TIME
Residence Type    :OUT OF STATE
Date of Birth     :12/06/42
Age on 01/23/97   :54
Occupation        :INVESTGVT MGR OF CORPORATE SEC
Business Phone    :770-209-8689
Race              :WHITE
Sex               :MALE
```

```
┌Subject 3 (OTHER)──────────────────────────────────────
Name              :LUKASAVICH, RONALD
Address           :8550 ULMERTON RD LARGO 34646
Residence Status:PART TIME
Residence Type    :COUNTY
Occupation        :FACILITIES MTNCE TECH
Race              :WHITE
Sex               :MALE
```

54395 06/24/97 12:12 lp27